UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| IN RE:<br><br>Andre Bisasor<br><br>Debtor, | Chapter 13<br>Case No.: 15-13369 |

## DEBTOR'S AFFIDAVIT AND CLARIFICATION STATEMENT IN SUPPORT OF DEBTOR'S REPLY MEMORANDUM TO GREYSTAR'S SUPPLEMENTAL MEMORANDUM FOR GREYSTAR'S OBJECTION TO CERTIFICATION AND GREYSTAR'S MOTION FOR RELIEF FROM STAY

I, Andre Bisasor, the debtor, hereby certify that the below is true and accurate to the best of my knowledge. While I have tried to avoid legal argument, a proper explanation of my position requires that I explain my understanding of the legal concepts since prior to this bankruptcy case, I was representing myself. My bankruptcy attorney is not responsible for anything I say here.

## CORRECTED PROCEDURAL HISTORY

This procedural history corrects the errors, inaccuracies and misstatements made in Greystar's procedural history.

### A. GREYSTAR'S PRIOR DISMISSED CASE

1) In January 2015, Greystar served a summons and complaint on me with a date of January 12, 2015. Under the uniform rules of summary process, the entry date was automatically set for January 19, 2015, the answer date was automatically set for January 26, 2015 and the automatic trial date was set for January 29, 2015.

2) Greystar voluntarily dismissed that case on January 28, 2015.

3) This dismissal was due to the fact that there was a false return of service submitted to the district court and because me had evidence of the perjury on a home video camera system. [NB: This is operates as a res judicata defense because of the attempted fraud on the court and as a result, the case should be dismissed. This is only one example of why the debtor need a trial in district court and/or a full opportunity to present our defenses to the full bench of the Appeals Court in order to justice to be served here in this matter].

## B. GREYSTAR'S REFILED CASE

4) Greystar served another summons and complaint on me with a return date of February 2, 2015.

5) Under the Uniform Rules of Summary Process, the entry date was automatically set for February 9, 2015 and the trial date was automatically set for February 19, 2015 and the answer date was automatically set for February 17, 2015.

6) However Greystar filed the case in the district court on February 11, 2015 which was two days after it was due in district court [NB: This is also a defense as to why this case is procedurally defective and should have been dismissed and the Greystar should have been required to start over the process in proper manner].

## C. GREYSTAR'S PROPOSAL TO MEDIATE AND POSTPONE THE REFILED CASE

7) On February 16, 2015, Greystar's counsel approached me with a proposal to do mediation, given the number and type of counterclaims and defenses that we have. Greystar's counsel also proposed that we do a continuance in order to put everything on hold in order to see if the matter could be resolved outside of court.

2

8) Greystar's counsel represented to us and made promises to us that we would not be harmed or prejudiced in any way by agreeing to the mediation and to the continuance. This included the explicit promise and agreement that we would preserve all our rights to discovery and a jury trial as well as all rights pursuant to the uniform rules of summary process

9) Greystar's counsel drafted an agreement titled "JOINT AGREEMENT TO CONTINUE" and that stated as follows: "Now come the Parties in the above captioned matter and request that this Honorable Court continue the trial date from February 19, 2015 to April 9, 2015 at 10:00 am. The Parties further agree that an Answer, if any, shall be served and filed with the Court no later than April 6, 2015. Both Parties reserve all other rights pursuant to the Uniform Rules of Summary Process and with respect to requesting a Jury Trial."

10) This agreement was signed and dated on February 17, 2015, the day that the Answer was due. It is evident that the joint motion was drafted by the Greystar's counsel and we were asked to sign on a line that said "assented to by me". This proves that we were not the ones asking for the continuance and that it was Greystar asking for this first continuance.

11) In addition, Greystar agreed in writing to the following reservation of rights by us as follows: "I reserve my rights not only for jury trial and for my Answer but I also reserve my rights regarding discovery or my doing any motions that I have a right to do, or regarding preserving my rights to my counterclaims including the 93A demand. By agreeing to this mediation and continuance, I do not relinquish or give up any rights or grounds whatsoever or concede anything that would put me at a disadvantage because I agreed to do this mediation or continuance."

3

12) Also, on February 19, 2015, Greystar's counsel wrote an email to us confirming acceptance of the agreement by the court as follows: **"I have contacted the court and they have accepted my office's representations that the case is continued by Agreement."**

13) All of these rights were reserved prior to their expiration date and representations were made to me by Greystar's counsel that all such rights were preserved and that the court agreed with this.

14) We later contacted the court clerk's office and they confirmed that the case was continued and the agreement was accepted and entered by the court.

15) On April 3, 2015, Greystar's attorney drafted another Joint Agreement To Continue and sent it for us to sign because the mediator had a scheduling issue that required the mediation to set a date of April 17, 2015, which was beyond the initial continuance date. This second Joint Agreement to Continue stated as follows:

**"Now come the Parties in the above captioned matter and request that this Honorable Court continue the trial date from April 9, 2015 to May 7, 2015 at 10:00 a.m.. The Parties further agree that an Answer, if any, shall be served and filed with the Court no later than May 4, 2015. Both Parties reserve all other rights pursuant to the Uniform Rules of Summary Process and with respect to requesting a Jury Trial."**

16) This is the same agreement that was signed on February 17, 2015 with the same reservation of rights and with the same intent of the parties. It is evident that the joint motion was drafted by Greystar's counsel and we were asked to sign on a line that said

"assented to by me". This proves that we were not the ones asking for the continuance and that it was the Greystar asking for this second continuance.

17) After one-day mediation session on April 17, 2015 took place, the parties did not reach an agreement that day but agreed to continue the mediation because of the possibility of still being able to reach a resolution with the help of the mediator. This led to consideration of one last continuance. The Greystar's attorney drafted another Joint Agreement To Continue and sent it to us to sign on Monday May 4, 2015. It stated as follows: ""Now come the Parties in the above captioned matter and request that this Honorable Court continue the trial date from May 7, 2015 to May 14, 2015 at 10:00 a.m.. The Parties further agree that an Answer, if any, shall be served and filed with the Court no later than May 11, 2015. Both Parties reserve all other rights pursuant to the Uniform Rules of Summary Process and with respect to requesting a Jury Trial."

18) It is evident that this third joint motion was drafted by the Greystar's counsel and we were asked to sign on a line that said "assented to by me". This proves that we were not the ones asking for this continuance and that it was the Greystar asking for this third continuance.

## D. MY EMERGENCY EX PARTE HEARING BEFORE JUDGE POMAROLE

19) Even though the parties agreed to at least a one week continuance, we still wanted to ask the court for at least a little more time because the mediator was going to be travelling for ten days and would be kept offline for the most during that time. This was what was we brought before the Court on Monday May 4th in a special emergency ex parte hearing.

20) After explaining this to the Judge Pomarole, the judge said that these joint agreements to continue have gone on long enough and he would allow this last motion but no further continuances would be allowed. This was said in the context of the parties asking for continuances for purposes like doing mediation etc. This was not stated in the context of the overturning the procedures of the uniform rules of summary process.

## E. MY SUBMISSION OF A TIMELY ANSWER AND REQUEST FOR DISCOVERY AND JURY TRIAL AND OBSTACLES WITH CIVIL CLERK OFFICE

21) On May 11, 2015, I submitted an Answer with Counterclaims, and Discovery and Request for Jury Trial in accordance with the uniform rules of summary process.

22) Under the uniform rules of summary process, the civil clerk court personnel is required to automatically enter a new rescheduled trial date of two weeks from the trial date upon submission of a request for discovery by me.

23) However, in this case, the civil clerk office indicated that they did not know whether the judge's note that said "no further continuances" was meant to deprive me of the right to a jury trial or the right to discovery, or whether the judge's note simply indicated that the allowance of these joint agreements to continue among the parties or other voluntary requests for such continuances would now come to an end.

24) We asked the civil clerk court personnel and the clerk to check with the judge but they declined and said that we had to do a motion for clarification.

25) We explained to the court personnel the context of the judge's statement i.e. it was in the context of an ex parte motion for continuance requesting more time than the joint agreement for continuance because the parties agreed to mediate further but could not agree on the exact date. It was in that context that the judge said "no further

continuances" and not in the context of denying our right to a jury trial or to discovery, which was explicitly preserved in the motion documents that were allowed on May 4 as well as in the prior joint motions to continue that have been previously submitted and accepted by the court.

26) We explained further that to force us to do a trial on May 14, 2015 would have created a substantial and irreparable prejudice to us. This is especially so because we were led to believe that we would have had the automatic rescheduling on May 11 of the trial date on May 14 to be two weeks out to May 28, 2015. This is what the uniform rules explicitly state. We would not have been able to arrange witnesses and evidence in time for a May 14 trial date since we only found on May 11, 2015 that the clerk was not sure what the Judge meant by his note.

27) We also explained that we were not requesting a continuance in the normal sense of the word. We were asserting our right to discovery under the uniform rules of summary process and to a jury trial.

28) If we were denied these rights, this would mean that the promises and representations by the Greystar counsel and by the court personnel were being undone.

29) We specifically were told that by agreeing to the continuance to do mediation, we would not be giving up any rights including the right to discovery, the right to a jury trial as well as all rights contained in the uniform rules of process.

30) To do this would only benefit Greystar and would harm us. This would have been particularly egregious because it is Greystar that asked us to do the continuances in the first place and made promises contained in the joint agreements to continue that was accepted by the court.

31) If we lost the rights to uniform rules of summary process then the case must be dismissed in order to preserve the equities and for the rightful and fair administration of justice.

32) If the court intended to not allow discovery and jury trial as requested by me, then this would have had serious consequences that could not be easily remedied when the case is over, even on appeal, and would therefore carry a substantial risk of miscarriage of justice and this will be extremely prejudicial to the us as me, especially where our right to live and have a home is being threatened.

33) This would be clearly biased in favor of Greystar and against us. The rules of summary process were relied upon by parties to know how to plan and how to interact or negotiate with each other.

34) Greystar should not be allowed to benefit from its representations and promises that benefit only them when we relied upon them to our detriment. We also called the court and spoke with the clerk's office and they told us that these joint continuances were allowed and accepted by the court and that all our rights would be preserved.

35) If we had known that there was a chance that we could lose our right to discovery or a jury trial, we would not have agreed to a continuance or to mediation. It would also require that instead of relying upon agreements among the parties or upon representations made by the court personnel, we would have to go before the judge every time to confirm any basic procedural rule that is guaranteed in the rules of process. This would be burdensome outcome to the court and to the parties.

36) On Monday May 11, 2015, Magistrate Beth Cook took our Answer and request for discovery but told us that this is not a guarantee that we don't have to appear for trial on Thursday May 14, 2015. She was rude and disrespectful to us. She refused to speak with

the judge about the matter though we asked her to do so. She told us we had to come in and go before the judge either on Tuesday May 12, 2015 or Wednesday May 13, 2015 to get clarification. We told her that we did not have time to come into court all the time. We are pro se, not lawyers, and that we have other obligations. She still refused to check with the judge and literally snapped at us and was antagonistic in her attitude towards us for no apparent reason. As we were leaving through the back door of the court, we immediately observed Beth Cook laughing and chuckling in an unprofessional and belittling manner as she spoke about us to other court staff behind our backs. It was evident that she did not realize we would exit through the back door of the court where we could observe and overhear her.

## F. MY MOTION FOR CLARIFICATION AND EMERGENCY EX PARTE HEARING BEFORE JUDGE MCGUINESS; MISTREATMENT BY JUDGE MCGUINESS

37) On Wednesday May 13, 2015, we submitted a motion for clarification to court staff Patty. She told us that this motion would be acted upon on the papers and that no hearing would be scheduled and that we would be notified by mail. We insisted that we needed to know the answer before Thursday May 14, 2015 and so we needed to get an answer today and that we would like to go before the judge today. Patty walked over to Beth Cook office. Beth Cook emerged from her office and walked right past us without acknowledging us or without being cordial. She exhibited a negative and dismissive attitude towards us as she ignored our presence.

38) About 10 minutes later, a phone call was received by Patty from apparently Beth Cook. Patty then told us that a hearing had been scheduled right then in courtroom 3 upstairs.

39) We proceeded to courtroom 3. When we arrived at courtroom 3, it was empty with one court magistrate there who was editing or copying a court recording. After he was done, he left the room. Then Ms. Beth Cook appeared and took the place/seating of the motion hearing magistrate/clerk would normally sit. Shortly thereafter, two other court magistrates appeared but remained in the audience seating section of the courtroom as spectators only. There was no else in the room except for the bailiff. Then Judge McGuiness appeared.

40) Judge McGuiness denied our request to have the case automatically rescheduled for two weeks pursuant to the uniform rules of summary process.

41) He was rude, abrupt, and didn't allow us to finish speaking and walked-off the bench while we were in the middle of speaking. The bailiff escorted us out of the room, though no one was left in there and he followed us.

42) Afterwards, we made a complaint to th Magistrate that we feel as if we were mistreated by Judge McGuiness and by this court and that we feel as though we have been discriminated against because of race.

43) We asked the magistrate how to make a complaint because we wanted file a written one. He told us that he did not know how to do that

44) The magistrate told us that we should file a motion for reconsideration and come in the morning at the time for trial and see what happens.

## G. SHORT HEARING BEFORE JUDGE FINIGAN AND RESCHEDULING FOR THE PURPOSE OF TRANSFERRING THE CASE TO JUDGE ROBERT ZIEMIAN – THURSDAY MAY 14, 2015

45) On Thursday May 14, 2015, we (as well as Greystar) were present at court. Instead of Judge McGuiness presiding as was stated on the docket, a new Judge, Thomas Finigan appeared. This was the first official court hearing on this matter with both parties present. This was the date that trial had been set and that all pre-trial motions were to be heard including our motion to dismiss and motion to transfer.

46) I requested to have our Motion to Dismiss heard at that time.

47) However, Judge Finnigan preferred to have Judge Robert Ziemian hear the Motion to Dismiss as well as the other motions that were before the court, so we were unable to present our Motion to Dismiss at that time though we requested to do so several times. It is also worthy of note that Greystar at that time requested a continuance for two weeks because Greystar was not ready for trial or to argue against our Motion to Dismiss.

48) At a later time, we found out that the court clerk fabricated the court records by writing that the trial was automatically rescheduled due to discovery filed by me, which was false.

49) The only reason the trial dates was reset was because Greystar was not ready for trial and wanted a two-week continuance.


## H. SHORT HEARING BEFORE JUDGE ZIEMIAN THAT HAD TO BE RESCHEDULED DUE TO COURT SCHEDULING PROBLEMS – THURSDAY MAY 21, 2015

50) On Thursday May 21, 2015, we were present at a hearing with Judge Ziemian. However, Judge Ziemian did not have time to hear these motions (including our Motion to Dismiss)

because another criminal jury trial that scheduled that same day took longer than expected.

51) At that time Defendant Bisasor indicated to Judge Ziemian that he had begun to feel ill with a high fever, pain, weakness and light-headedness from earlier that morning/the night before and that though he struggled to still come to court at 2 pm, he had an appointment to see his doctor later that evening at 4:15pm to seek medical care for the onset of severe illness. [NB: Mr. Bisasor had called the court earlier in the morning to inform the court of his illness but was told that Judge Ziemian said that if he did not show up default would enter against him, so Mr. Bisasor sacrificed his health and well-being to force himself while in great pain and being severely ill to attend court in order to not suffer a default).

52) Judge Ziemian was unsympathetic to Mr. Bisasor's indications of being in pain and being severely ill. However, it is worthy of note that Judge Ziemian expressed sympathy for the illness of Greystar counsel's sick son which was offered by Greystar's counsel as a reason why she could not return to court on Friday morning of May 22, 2015 when Judge Ziemian attempted to reschedule the motion hearing for Friday morning.

53) Due to the unexpected delay in the criminal jury trial, Judge Zieman required that we stay present from 2pm until 4:30pm. Because of extra questions from the jury of that trial, Judge Ziemian had no time to get into the motions that were to be heard that afternoon from our case and he essentially ran out of time right before the close of the court at 4:30 pm. After an initial attempt to reset the motion hearing for Friday, he rescheduled the motion hearing to occur on Tuesday May 26, 2015 at 9 am with the pronouncement that it would go all day if needed.

12

54) As a result of this unexpected delay in the motion hearing and being kept by Judge

Ziemian until 4:30pm, Mr. Bisasor missed his appointment with his doctor at 4:15 pm

and was unable to receive medical care for another day.

## I. MEDICAL SITUATION OF MR. BISASOR

55) On May 22, 2015 Mr. Bisasor again sought medical care and was diagnosed as having a

virulent viral infection. The doctor expressed concern that he might develop pneumonia.

The Doctor ordered that Mr. Bisasor take the necessary recommended medication, keep

hydrated and get plenty of rest but, when he learned that Mr. Bisasor had commitments

regarding a court case, the Doctor also ordered that Mr. Bisasor should not be involved in

preparation for court or in going to court on Tuesday May 26, 2015 as this would be

potentially detrimental to his health and the Doctor provided medical documentation to

that effect (See Exhibit A).

56) However, although Mr. Bisasor was tremendously ill, he still tried to do some preparation

for the court case over the weekend, against his Doctor's advice.

57) Defendant Anderson, as caretaker for her husband Defendant Bisasor, also was exposed

to infection and, over the weekend, also began to develop symptoms of a viral infection.

## J. WORSENED MEDICAL CONDITION OF DEFENDANT BISASOR AND
## HOSPITALIZATION

58) On the morning of May 26, 2015 as he attempted to get ready for court, Mr. Bisasor

further developed symptoms of shortness of breath, chest pain, head pain and loss of

consciousness, and he collapsed to ground and passed out. He was taken to the hospital

and admitted into Hospital ER at approximately 8:45am on the morning of May 26, 2015. (See Exhibit B).

59) On May 28, Defendant Bisasor was discharged.

60) Defendant Bisasor was instructed to get rest and not resume work until the following week Monday. I was also instructed to do follow-up in order to ensure all outstanding medical issues were addressed on an outpatient basis.

61) Hence, Defendant Bisasor was too ill to appear in court on May 26, 2015.

62) Even if he was able to show up to court on the morning of May 26, he would have been unable to stay for a long period of time as contemplated by Judge Ziemian (i.e. "..we will go all day until we get it done") given his medical condition without seriously jeopardizing his health and well-being.

63) Because Defendant Anderson was exposed to his viral illness she began to develop symptoms of a viral illness as well on Tuesday May 26, 2015. At a later point in time, she was admitted to the hospital on Wednesday May 27, 2015.

64) However, on the morning of May 26, Defendant Anderson drove Defendant Bisasor to the hospital on May 26. As a spouse, she was a witness and proxy for Defendant Bisasor as Defendant Bisasor would be put under medication and subjected to several procedures.

65) Given the serious of Defendant Bisasor's illness, Defendant Anderson was unable to attend court at 9 am on Tuesday morning.

66) She was however diligent to contact the court and fax information and a request for continuance to the court prior to the time of the hearing at 9 am.

14

67) If requested, I can provide medical records from the Norwood Hospital. They will verify the testimony of 3 doctors (under oath with notary) that Defendant Bisasor was hospitalized from May 26 to May 28.

68) This is veritable proof that Mr. Bisasor was in fact hospitalized on the date of the hearing and continued to be hospitalized for two more days thereafter.

69) Mr. Bisasor therefore had good cause for missing the hearing as he was hospitalized for 3 days, including the date of the hearing. His failure to attend is not the result of negligence, carelessness or any similar inexcusable ground, but rather a medical condition and emergency that landed him in the hospital. He should have another opportunity to have his day in court, to hear his motions and if needed, have a fair and proper trial by a jury of his peers as he has previously requested and which is his right.

70) Our conduct regarding our failure to appear for a motion hearing was aberrational and not consistent with our conduct relating to the case as we showed up for every hearing/court date that was previously set and had requested on more than one occasion that we be given an opportunity to argue our motion to dismiss which could have disposed of the case altogether previously.

71) We were concerned that because of this medical emergency situation, Judge Ziemian might still enter default against us, which he did.

72) We should not have had to choose between our home (i.e. having a place to live) and our health/well-being. This is an impossible position to be put in for us to sacrifice our health and possibly our lives in order to be present at court status hearing.

73) Therefore we requested a continuance of a minimum of ten (10) days to allow me to recover from my illness so that we could be fully fit and competent to present our motions and our case.

74) As further grounds for this request for continuance due to illness, I asked that Judge Ziemian take into consideration that:

1. I had come to court twice now (on Thursday May 14, 2015 and on Thursday May 21, 2015) to present our motions but due to no fault of their own, those motions were not heard either by Judge Finigan or Judge Ziemian.

2. We have shown that we are interested in presenting and vigorously defending our case. We filed a timely Answer and Counterclaims with discovery and a request for Jury Trial along with a Motion to Dismiss and a Motion to Transfer and Consolidate on May 11, 2015. We presented meritorious defenses and counterclaims in their Answer and in their Motion to Dismiss.

3. We have shown no interest in giving up our rights or in not presenting our case.

4. Clearly were it not for the health issues referenced herein, we would have been present on the morning of May 26, 2015 to argue the motions that we have been trying get heard for two weeks straight but to no avail.

5. After two reschedulings of this motion hearing by the court, the fact that we were unable to attend the third scheduled motion hearing should not be held against us to the point of default.

6. If the court had heard my motion previously when we were ready to present our motions, then an impromptu last minute scheduling (on Thursday May 21, 2015) of a new motion hearing for Tuesday May 26, 2015 (the day after Memorial Day

on Monday May 25, 2015) would have been unnecessary. Given the court's own delay and need to reschedule due to its scheduling problems, we should have been given some latitude in being unable to meet the court's changing need for scheduling the motion hearing.

7. We were prepared to argue our motion to dismiss on two occasions. The court did not facilitated our motion to be heard. Moreover, our motion to dismiss is based largely on a challenge to the court's subject matter jurisdiction (based not on amount in controversy but on the defective Notice to Quit) which is critical to a lawful final judgment.

8. We requested that the court preserve our right to have their motion to dismiss to be heard and not enter default or default judgment but grant a continuance as requested and as justice so requires.

9. However, Judgment by Default was entered on May 26, 2015 and was docketed on May 27, 2015 by the District Court.

## BEGINNING OF POST-JUDGMENT DISTRICT COURT PROCEEDINGS

10. Judgment by Default was entered on May 26, 2015 and was docketed on May 27, 2015 by the District Court.

11. There are five judgments that were entered:

   a. Judgment by default on possession for 3413.

   b. Judgment by default on possession for 2216;

   c. Judgment by default on money damages for 3413;

   d. Judgment by default on dismissal of defendant's counterclaims on 3413.

     e.  Judgment by default on dismissal of defendant's counterclaims on 2216.

12. A status hearing was scheduled for June 8, 2015. This was requested by Greystar's counsel so that she could ask for execution to issue on that day.

13. Greystar's counsel filed a motion for attorney's fees. This was essentially a request to amend the judgment, which removed the finality of the judgment. This meant that execution should not have issued until the judgment was final.

14. We filed a motion to remove default and for relief from judgment that same day on June 8, 2015.

15. We filed a notice of appeal (regarding the denial of the motion to continue due to ill-health, the entry of default and the dismissal of our counterclaims) also that day. This triggered the customary first stage of appellate review, which was to the Appellate Division of the District Court. This appeal also triggered the an automatic stay during pendency of an appeal as mandated by MRCP 62. [NB: At this stage, an appeal cannot properly lodge before the Appeals court because the summary process action took place in a district court and not a housing court or superior court. In order to properly lodge before the appeals court, the appellate division of the district court must have already ruled on the underlying appeal].

16. Because we filed a notice of appeal, then the appeal bond requirements kicked in. For possession only, the bond is only $100. For rent damages, the bond would be for the amount of the judgment for rent (i.e. back rent) plus periodic payments of future rent as they become normally due going forward. Both of these bond requirements for possession and rent are important to maintaining the prosecution of the underlying appeal

on the default issues. Please note that if there was no rent damages awarded and the judgment was for possession only, then the only requirement for the appeal bond is $100.

17. We also filed a motion to set the appeal bond hearing date and we also filed a motion to waive the bond that same day, which was denied by Judge Ziemian, along with an Affidavit of Indigency.

18. This triggered the provisions of GL 239 s. 5, which grants an automatic stay for 6 days allowing us the chance to file an appeal (on the denial of the waiver of the bond) to the appellate division of the district court. We also submitted a notice of appeal for the denial of the waiver of the bond within the 6 days in a timely manner and so the appeal on the denial of waiver of the bond properly lodged before the appellate division of the district court. Based on GL 239 s. 5, this continued the automatic stay provisions of MRCP 62 until the bond is either waived by the reviewing court or paid pursuant to any orders issued by the reviewing court [i.e. based on the review of the denial of the bond waiver by the appellate division of the district court].

## APPEAL PROCESS IN THE APPELLATE DIVISION OF THE DISTRICT COURT

19. Appellate division of the district court denied the waiver of the appeal bond.

20. They ordered that we pay the bond of $32,000 plus $4980 plus monthly rent of $2390.

21. This meant that if we could not or did not pay the bond within 5 days of receiving notice of the bond order from the appellate division of the district court, then the underlying appeal on the default issues would be dismissed for failure to pay the bond. It would not be dismissed because the underlying appeal was without merit or because the appellate division made an adverse ruling on the merits. All this would mean is that the bond surety

protections for Greystar (that goes along with the prosecution of an appeal by a defendant) was not met. Hence the dismissal of the underlying appeal of the default issues is based on a technicality related to the bond and the bond only (i.e. failure to pay the bond). The appeal process that started in the appellate division of the district court would thus be cut short before it had a chance to go forward any further. There were no briefs with records or hearings on/adjudication of the underlying appeal on the default issues.

22. So the 5 days passed and we did not pay the bond, thus triggering the dismissal of our underlying appeal on the default issues, as outlined above.

## EXECUTION ISSUED ON AUGUST 7, 2015 AND MOTION TO STAY IN DISTRICT COURT DENIED

23. Consequently, execution issued on August 7, 2015.

24. That same day we filed a notice of appeal (to the appeals court) in the district court on the denial of the waiver of the appeal bond. This is the proper procedure to further challenge the bond order pursuant to the rulings by the Supreme Judicial Court.

25. We also submitted a motion to stay the levy on the execution in the district court in accordance with Massachusetts Appellate Procedure Rule 6.

26. The district court denied the motion to stay the levy on the execution on August 10, 2015.

## MOTION TO STAY IN THE APPEALS COURT

27. We therefore under MRAP 6 filed a motion to stay the levy on the execution in the Appeals Court on August 11, 2015 and thus matter properly lodged before the single

justice of the appeals court on the matter of the granting of a stay during the pendency of the appeal to the full bench of the appeals court.

28. The Motion to Stay is regarding the limited appeal bond issue. The stay is not regarding the underlying appeal on the default issues.

29. Therefore the standard of review should not be whether the district court judge abused his discretion in denying the motion to continue or to enter default. The standard of review is whether the district court judge abused his discretion in denying the waiver of the appeal bond and whether the appellate division of the district court erred as well in affirming the denial of the waiver of the appeal bond. This standard of review is tied directly to the criteria for the waiver of the appeal bond, namely whether we are indigent and have at least one non-frivolous defense. GL 239 makes absolutely clear that if the court finds that we are both indigent and have at least one non-frivolous defense, then the appeal bond must be waived. There is no discretion on the matter. Since both the district court and appellate division of the district court found that we are indigent, then the only matter left to review is whether we have at least one non-frivolous defense.

30. Given the volumes of documentation of evidence of our defenses, particularly the breach of warranty of habitability, and given the admissions of Greystar regarding the problems with the elevator resulting in our apartment becoming uninhabitable and the need to displace us from our main apartment for 9 months due to the elevator problem alone, it is without a shadow of a doubt that we have at least a non-frivolous defense of breach of warranty of habitability and breach of quiet enjoyment.

31. We therefore sought a stay from a single justice of the SJC based on the fact that the single justice of the appeals court applied the incorrect standard of review based on the

entry of default/denial of the motion to continue due to ill-health, and not based on whether the appeal bond should have been waived in the lower court.

32. If the court is basing its review on the entry of default/denial of the motion to continue due to ill-health, then (though we believe this not correct) then we still believe we would prevail on that issue as well (see attached memorandum on the errors of law by judge ziemian)

33. Furthermore, prior to the August 14, 2015 hearing, we asked the appeals court staff (i.e. Clerk Paul Tuttle) what the hearing was about, and we were told that it was about the appeal bond waiver and whether the stay should be maintained based on that issue. Thus, during the hearing on Friday August 14, 2015, we were thus taken by surprise by the indications by Judge Katzmann that this court was going to base its review of the motion to stay on the entry of default/denial of the motion to continue due to ill-health.

34. Also to the extent that the opposition motion by Greystar misdirected this court to believe that the underlying appeal issue was already adjudicated when it was not, then this is also a potential source of confusion and misdirection in this matter (i.e. Greystar's counsel opposition motion may have wrongly given this court the impression that the issue on appeal relates to Judge Ziemian's entry of default when it is in fact based on the denial of bond waiver. We believe that Greystar's counsel did this intentionally in an attempt to misdirect this court).

## MOTION TO STAY EXECUTION TO THE SINGLE JUSTICE OF THE SJC

35. On August 27, 2015, we filed a motion with a single justice of the Supreme Judicial Court seeking a stay from the Greystar levying on its execution for possession and rent.

The motion was denied by the same day by Justice Duffly without any explanation other than we were found not to have shown that we were entitled to relief under GL 211 s. 3.

## MOTION TO STAY EXECUTION TO THE FULL BENCH OF THE SJC

36. On August 27, 2015, we filed a motion to the full bench of the Supreme Judicial Court seeking a stay from the Greystar levying on its execution for possession and rent. The motion is still pending and is expected to be fully briefed and heard in about 30 days. The full bench of the SJC has the power to overrule the single justice of the SJC and provide relief under GL 211 s. 3 allowing a stay of execution during the pendency of the appeal to the full bench of the appeals court.

## APPEAL TAKEN BY THE FULL BENCH OF THE APPEALS COURT ON THE DISMISSAL OF THE UNDERLYING APPEAL IN THE APPELLATE DIVISION OF THE DISTRICT COURT DUE TO THE DENIAL OF THE WAIVER OF THE APPEAL BOND

37. If the appeals court finds in my favor, then the bond waiver will be allowed and the dismissal of my underlying appeal in the appellate division of the district court will be reversed. Once that occurs, my underlying appeal will resume and the appellate division of the district court will then rule on the merits of the underlying appeal for the first time.

38. The appellate division could then find in my favor on the issue of the denial of the continuance, the entry of default, the dismissal of my counterclaims and the reconsideration of the continuance and recusal of Judge Ziemian

## FACTS RELATED TO DEBTOR'S LEGAL ISSUES IN THE STATE COURTS

In further support of, and supplement to, the legal arguments made by my attorney, I
would ask the court to take notice of the following points.

THE PENDING APPEALS

39. **Summary of the Process For Appeal of the Entry of Default and denial of**
**continuance due to ill-health That occurred in the State Courts**

f. Motion For Continuance → Motion for Continuance Denied→ Notice of
appeal on the denial of the continuance → Appeal transferred to and entered
in the Appellate Division of the District Court to be heard by three judge panel
→ Appeal never heard or briefed because of the below waiver of the bond
issue interrupted the appeal process.

40. **Process Related To Appeal Bond Waiver.**

g. Motion For Waiver Of The bond→Motion for waiver of bond denied on June
8, 2015 → tenants have 6 days in which to appeal the denial ( GL 239 s. 5)
with accompanying automatic stay (pursuant to MRCP Rule 62 and MAP
Rule 4)→ notice of appeal on the denial of the waiver of the bond entered on
June 14, 2015→ appeal transferred to and entered in the Appellate Division of
the District Court →bond hearing set to be heard by two judge panel only on
the waiver of the bond issue (July 8, 2015)→ bond waiver was denied on July
27, 2015 → tenants have 5 days after

41. **Process Related To Stay of Execution.**

h. Entry of Notice of Appeal triggered stay pursuant to Rule 62→Request to review bond order triggered automatic stay until appeal bond is either waived or paid→ If appeal on bond waiver is not paid or waived, then tenant has 5 days to bond, if not paid then appeal of the default and continuance is dismissed→Motion To Stay→

## MOTION TO REMOVE DEFAULT WAS BROUGHT UNDER RULE 55 AND 59 AND/OR 60, WHICH TOLLS FINALITY OF JUDGMENT. THIS MOTION IS STILL PENDING.

42. On June 8, 2015, I filed a motion to vacate the rulings made on May 26, 2015 and entered on May 27, 2015. This motion was based on Rule 55, 59 and/or 60. Pursuant to Mass.R.App.P. 4, the filing of this post-trial motion operated to suspend the finality of the judgments. [NB: **Rule 59(e) Motion to Alter or Amend a Judgment.** "Notes to Rule 59(e) - as amended (1994) (third paragraph from end) A motion under Rule 59(e) (taken with only slight changes from Federal Rule 59(e)), authorizes the court to alter or amend a judgment provided the motion is served within 10 days of entry of judgment. Since such a motion affects **the finality of the judgment**, it tolls the time for taking an appeal from the judgment; the time does not begin to run again until after disposition of the motion…"

## JUDGMENT WAS NOT ENTERED PROPERLY AND IS VOID

43. Rule 54 (iii) "The clerk shall review the documents filed with the court. No judgment by default shall enter against any defendant where it appears from such review that the

summons was not properly completed, served or returned, that the complaint was not properly completed or served, or that the other documents required to be filed with the court pursuant to Rule 2(d) have not been filed." The judgment is not final because the judgment should not have been entered without the filing of a proper notice to quit. Greystar filed a 30 day notice to quit with the court for 3413 which is defective as a 14 day notice to quit should have been filed with the court.

## APPEAL IS STILL PENDING IN THE DISTRICT COURT.

44. **Appellate Procedure Rule 6: Stay or Injunction Pending Appeal (a) Civil Cases. (1) Stay Must Ordinarily be Sought in the First Instance in Lower Court; Motion for Stay in Appellate Court.** In civil cases, an application for a stay of the judgment or order of a lower court pending appeal, or for approval of a bond under subsection (a) (2) of this rule, or for an order suspending, modifying, restoring or granting an injunction during the pendency of an appeal must ordinarily be made in the first instance in the lower court. A motion for such relief may be made to the appellate court or to a single justice, but the motion shall show that application to the lower court for the relief sought is not practicable, or that the lower court has denied an application, or has failed to afford the relief which the applicant requested, with the reasons given by the lower court for its action. The motion shall also show the reasons for the relief requested and the facts relied upon, and if the facts are subject to dispute the motion shall be supported by affidavits or other statements signed under the penalties of perjury or copies thereof. With the motion shall be filed such parts of the record as are relevant. Reasonable notice of the motion shall be given to all parties. The motion shall be filed with the clerk of the appellate court

to which the appeal is being taken (provided that if the court be the Supreme Judicial
Court, the motion shall be filed with the clerk of the Supreme Judicial Court for Suffolk
County).

45. **An Appeal under Appellate Procedure Rule 4: Appeal - When Taken. (a) Appeals in
Civil Cases was timely filed.** According to MAP Rule 4, the notice of appeal can only be
taken after the motion for relief from judgment is heard. If the court finds that the time
for appeal has not yet begun because the motion for relief from judgment has not yet been
acted upon, then it means that the notice of appeal was filed prematurely. If the notice of
appeal was filed prematurely, then the appeal is still pending until the motion for relief
from judgment has been ruled upon.

## MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURIDICTION AND VOID JUDGMENT TOLLS THE FINALITY OF JUDGMENT AND IS PENDING

46. The pending motion to dismiss (based on the defective Notice to Quit) leaves the
judgment rendered susceptible to being overturned.

## MOTION FOR ATTORNEY FEES TOLLS THE FINALITY OF JUDGMENT PENDING APPEAL TO FULL BENCH OF THE APPEALS COURT TOLLS

47. Greystar's motion for reimbursement of attorney fees is based on a contract, not a statute.
As a separate claim, independent of the underlying claim or claims that comprise the
merits of the action, the judgment was not final.

## THE EXECUTION IS NOT VALID BECAUSE THE APPEAL WAS NOT PROPERLY DISMISSED IN THE DEDHAM DISTRICT COURT

48. Appeals were not dismissed on August 7, 2015 but execution was still issued on August

7, 2015, because Ms. Ashton went to court and in haste tried to get the clerk to issue

execution without first following the correct procedures to have the appeal dismissed.

The District Court docket that Greystar attached to its filings reveals that there was no

entry of a dismissal of my appeal on the docket.

## DEBTOR HAS NOT EXHAUSTED HIS APPELLATE RRIGHTS

49. Debtor has not exhausted his claims and appellate rights.

50. The judgments for possession are not valid final judgments because of pending appeals

and pending motions.

51. Cases that involve approval or denial of the waiver of an appeal bond must be approved if

the tenant is indigent and has at least non-frivolous defense.

52. Tenant has been found to be indigent by at least 4 courts. The court dockets show this

approval on several occasions. See attached docket and court approval forms.

53. Tenant has at least the one non-frivolous defense of a breach of warranty of habitability

defense.

54. The breach of warranty of habitability defense is proven if there exists a Board of Health

citation for violations of the sanitation code. This standard of proof is articulated in MGL.

27. Tenant possesses two board of health citations showing that there are violations of the

state sanitation code and therefore violations of the minimum standards for human

habitability.

55. Therefore, since tenant possesses two board of health citations, and since MGL 27 states
that existence of such board of health citations constitutes prima facie proof of a breach
of warranty of habitability, then I have proven that I have a valid and legitimate breach of
warranty of habitability defense, which therefore proves that the bond waiver should have
been allowed in my case by the district court and the appellate division of the district
court.

56. Therefore, this also means that because these courts did not approve the bond waiver and
I had to go the appeals court to review the bond issue, then there is a substantial
likelihood that I will prevail in my appeal to the court on the issue of whether my request
to waive the appeal bond should have been allowed.

57. If it turns out that the full bench of the SJC later finds, after a full briefing/hearing, that I
should have been granted a stay of execution for possession, then it would be a travesty if
I was already evicted thereby making the issue of possession moot. A stay is needed to
maintain the status quo so that I do not suffer irreparable harm in the meantime. The
landlord will not suffer any harms in the meantime because I have already paid this
month's rent and I am prepared to do so if the court requires it (please note that the rent
for 3413 covers both that unit and the temporary unit 2216 while 3413 continues to be in
a state of being uninhabitable).

58. If the appeal was dismissed, then it means that the dismissal of the appeal can be reversed
upon the taking of a full appeal to the full bench of the appeals court. If the full bench
reverses the dismissal of the full appeal, then the entire matter goes back to the appellate
division of the district court where the normal process of the appeal of the denial of the
continuance and the entry of default and dismissal of the counterclaim will pick up back

where it left off. According to the district court docket that process was at the point of a
transfer of the record of the appeal and the formalizing the court transcripts. This was
interrupted by the bond waiver parallel process when my waiver was denied. If the full
bench denies relief, then my entire case is at an end and I will not be able to elect to post
bond. By going this route, a tenant takes a big gamble that he will win, instead of simply
paying the bond after a negative ruling by the appellate division of the district court.

59. This is where the confusion lies. The underlying summary process, defenses and
counterclaims was never dismissed on the merits. It was dismissed on a technicality, that
technicality was a default judgment. The underlying summary process appeal was never
dismissed on the merits. It was dismissed because I did not and was not able to post the
appeal bond at that time. So Greystar tries to make it sound as if the merits have been
heard, and they have not been heard or addressed.

60. Now while the above process was going on, I requested a stay pending appeal which is
provided for by M.A.P. Rule 6. I first sought a stay in the state district court and, then
took an appeal to a single justice of the appeals court.

61. Ms. Ashton has been notified by the SJC that there is an appeal pending.

62. So this is a factual circumstance by which the default judgment could be overturned. If a
stay is entered by the SJC, then the issue of possession would be held in status quo so that
it does not become moot once it gets to the full bench of the appeals court.

63. Once the full bench of the appeals court hears the case, if they rule in my favor then the
denial of the appeal bond will be reversed, which would cause the stay allowed under GL
239 s. 5 to kick back in and hold the status quo on possession, while the underlying
summary process appeal (of the denial of the continuance, the entry of default and the

dismissal of the counterclaims) resumes back in the appellate division of the district (three judge panel).

64. Once the underlying summary process appeal is heard by the appellate division of the district court, if they rule that the motion for continuance should have been allowed and therefore that the subsequent entry of default should not have taken place, then the default judgment would be reversed and the matter remanded back to trial in the district court.

65. Under this scenario, the judgment would not be final.

66. On several occasions, Greystar has inadvertently admitted that they want to act quickly, not because they would be harmed, but because they want to short circuit my appellate rights so that the issue becomes moot.

**NON-FRIVOLOUS DEFENSE**

67. Greystar has admitted that I have a non-frivolous defense. They should be asked in open court, do they believe that I have any non-frivolous defense. They conceded that they owed me money for the security deposit violation. They conceded that I am owed an abatement of rent for the time the elevator was down.

68. They conceded that there was overcharging for the water.

69. There is proof that they interrupted my utilities by negligently or otherwise failing to pay for it at least three times.

70. Greystar offer me $80,000 to settle the case. Not only were they a month ago willing to pay me money to move. Why because I have significant defenses but they are afraid that I will teach other tenants how to organize and stand up to a big landlord.

71. I give and serve the community. I am an upstanding citizen in the community. I give of myself and my time to help and serve others.

72. All appeals have not been exhausted.

73. The appeal has not been dismissed and therefore the state law stay is still in effect.

74. This landlord does not want to fix the apartment, they don't want me to move back to the original unit, they don't want to accept rent, they want to cooperate, they just want me out, they have said in this court that they will refuse to accept rent. This shows that there is a retaliatory motive involved here because the behavior of the landlord makes no rational sense. If you claim you are owed rent, and the tenant offers to pay it back, then the landlord should gladly accept it unless there is another unspoken reason that the landlord is trying to evict the tenants. Tenants can't be evicted for secret reasons.

75. For 2216, they admitted that I did not wrong to warrant eviction. The lease simply expired. This is a no-fault eviction.

76. They should have had me pay rent on the smaller unit but they charged me rent on the unit I was not living in.

## FACTS RELATED TO THE CHAPTER 13 BANKRUPTCY

### Facts related To Greystar's objection to certification

77. Regardless of the issue of possession, Greystar is not entitled to relief from stay on the money judgment for rent owed. Greystar's objection to certification has no bearing on the automatic stay that pertains to the execution for the money judgment for rent owed.

78. There are circumstances, detailed herein, under which I could cure the default that gives rise to the Judgment for Possession and Greystar admitted that at the hearing.

79. MGL 239 s 3 is one statute under non-bankruptcy law that would allow for a cure of the monetary default even after judgment for possession has entered. The statutory provision for the recall of a summary process execution for possession is G.L. c. 239, § 3, which provides for "motions to supersede or recall the execution" only where "the underlying money judgment has been fully satisfied and use and occupancy fully paid."

80. Greystar admitted in open court that there exists circumstances where the debtor-tenant could cure a monetary default under non-bankruptcy state law.

81. Moreover, the landlord can be compelled to accept a monetary cure as follows:

    i.  For 2216, it can be cured by winning my appeal or my motion to remove default or my motion to dismiss.

    j.  Landlord can be compelled to accept cure under MGL 239 8A. So MGL 239 8A is another statute in addition to MGL 239 s 3.

82. If I win my appeal in the SJC, there will be an opportunity for the state law stay to remain in effect. This bars Greystar from possession until the full bench of the Appeals Court rules on the bond issue.

83. If I win my appeal in the Appeals Court, there will be an opportunity to reverse the denial of the bond waiver, the matter will be remanded for trial, a trial will likely find 8A violations which will entitle me to either a complete reversal of the money judgment or the ability to pay the difference between what the landlord owes me versus what I owe them, which will cure any remaining monetary default, and this provision of a cure under GL 239 8A is mandatory in that the Landlord has no discretion to refuse payment.

84. My counterclaims could wipe out the entire monetary default plus I could have additional monies that could also go towards funding my chapter 13 plan. Greystar valued my claims to be worth at least $80,000.

## The Refusal of Rent Payment From Debtor By Greystar Does Not Invalidate The Certification as True

85. In terms of whether Greystar would accept the cure, it remains to be seen. Greystar is not the owner of the property. Greystar is simply the property management agent. Ultimately, the final decision is not up to Laura Donahue, the local Greystar manager. It is up to the corporate leadership at Deutsche Bank. Previously, there were certain decisions that Laura Donahue made that were overturned by Deutsche Bank. Therefore, the only way to know for sure is to allow me to tender payment and for Deutsche Bank to refuse it. The rent check is not to be made out to Greystar but to the owner, and so Greystar is not in a position to refuse it. Greystar is not a position to reject or accept the cure of the default. If Greystar's counsel would like to provide an affidavit from the actual owner who will be receiving the monetary payment, then that would be better than the current affidavit by a local property manager.

86. Because Greystar is merely the agent, we do not know if when I tender payment within the 30 days that the owner would accept it, or even if Greystar would change their mind once they see the hard cash.

87. I have recently sent an email to Laura Donahue's superiors in an attempt to settle this dispute. If her bosses overrule her, then her opinion is of none-effect. 2 months ago her superiors were willing to pay me $80,000 to settle and to drop my counter claims against Greystar as well as the parent company Deutsche Bank

34

88. If they do insist on refusing the payment, then my understanding is that, under state law, they would forfeit the money and I would no longer owe the debt.

89. Greystar may not be required to accept full satisfaction of the monetary default under MGL 239 s. 3, but it does not change the fact that the circumstance to cure the default does exist under state law.

90. Whether Greystar is required or not is immaterial to the threshold issue of whether nonbankruptcy law provides circumstances under which the default could be cured. If they refuse, then they forfeit the money judgment against me owed on the apartment.

91. If Greystar refuses to accept use and occupancy and the cure of the monetary default, then this creates a major legal problem because they then forfeit the money owed. They can't have it both ways. They don't want to accept rent but then they want to evict me for non-payment of rent. This is not fair.

92. I have previously offered to pay rent but they have chosen not to accept rent. This affidavit proves that point definitively.

## DEBTOR WILLING TO CURE THE ENTIRE MONETARY DEFAULT UNDER A CHAPTER 13 PLAN

93. I would like the opportunity to cure the default under a Chapter 13 plan. A plan to pay the monetary default would be simple enough at around $500 or $600 a month for 60 months. However, the fact that Greystar has refused to accept payment of the default, this will trigger a forfeiture of the default.

## DEBTOR IS WILLING TO CURE THE ENTIRE MONETARY DEFAULT WITHIN 30 DAYS IF THE CHAPTER 13 PLAN IS REJECTED BY THE COURT

94. I would like the opportunity to have the 30 days to cure the default if my chapter 13 plan is not approved by the court in this matter. However, the fact that Greystar has refused to accept payment of the default, this will trigger a forfeiture of the default.

## JUDGMENT FOR POSSESSION FOR 3413 AND 2216 ARISE FROM THE SAME MONETARY DEFAULT/SPECIAL CONSIDERATION FOR APARTMENT 2216 CERTIFICATION

95. Both judgments were included. I did not pay rent because they said no rent is due on temporary unit 2216. The rent for the main unit 3413 covers the rent for both unit 3413 and unit 2216. The reason they charged us $0 rent on unit 2216 was because they intended the rent for unit 3413 to cover the use of unit 2216. Otherwise why not charge us rent for the use of unit 2216? There is a reason why Greystar did not charge us rent on unit 2216 and it is not because they were feeling "philanthropic" by any means.

96. Therefore the rent paid to the bankruptcy court on August 27, 2015 covered both units. Unit 2216 is an extension of unit 3413 for purposes of rent. Greystar wants it both ways. If the units are not covered by one rent and they are separate for purposes of rent, then Greystar should not benefit from any argument or position or action that ties both units together as one. Therefore, Greystar should benefit from the application of the $32,000 bond applied to unit 2216 if no rent is owed on 2216 and since the rent for 3413 does not cover the use of 2216. Therefore, there should have been no bond required on unit 2216.

97. Pertaining to unit 2216, there is no "non-monetary default". I never defaulted on anything. A default means I did something wrong. By Greystar's own testimony at the hearing, they stated that I did nothing wrong and that lease simply expired. So it is a no-fault eviction. I did not do anything wrong to merit eviction. They just simply wanted me out for no reason other asking me to vacate. I had a lease. I did not breach the terms of the lease. Therefore, In re Griggsby doesn't apply because that case pertains to a situation where a tenant does something wrong outside of a non-payment of rent scenario, and hence Greystar's objection fails on those grounds.

98. To the extent that 2216 is an extension of 3413, then both properties should be treated as one with the issues surrounding unit 3413 being determinative. On that basis, the judgment for possession for 2216 resulted from not paying rent on 3413. The state courts treated it as one and so should this court for purposes of certification.

99. Contrary to Greystar's assertions, with my chapter 13 petition I did include the judgment for possession for unit 2216 which listed the address and location of the apartment 2216. I did not list it on the petition because the court would be confused as to where to send me mail and Greystar has refused to give me a mailbox key for unit 2216, forcing me to rely on the mailbox for 3413 to get any mail, even though I was displaced from the unit. Without a key to the mailbox, mail would either bounce-back (as it has on the district docket for mail sent to the address) or it would accumulate without any ability to retrieve it.

100.     Moreover, I did pay the rent that covers both units as determined by the Dedham district court and the appellate division of the district court.

101.        Both courts said I could maintain possession of both units if I paid the rent for

3413. That is the determination of the state courts and this court should likewise follow

that grouping of the rent payment issue because this is what has allowed the eviction to

move forward. In other words, the state courts could have stated that I had to move out of

2216 for non-monetary reasons, but it did not because it treated 2216 as an extension of

3413. For example, the rent for 3413 includes the use and lease of two separate storage

units. $2390 covers both the actual apartment and the two storage units.

102.        It would be ludicrous to require that I vacate the storage units because I did not

list that on the certification specifically (since they are an extension of the 3413 unit). In

the same way, 2216 is like an additional storage unit that is attached to the 3413 unit.

This is also laid out on the lease signed for 2216 where I wrote on the last page that both

leases were not connected and that 2216 lease did not replace or supersede 3413 lease,

which was signed and agreed to by Greystar. See 2216 lease.

103.        But if the court finds that it is separate then this would lead to an illogical result.

If the 2216 unit is separate and not attached or an extension of 3413, then the state court

should have not required that I pay a $32,000 bond on that unit in order for my appeal to

continue in the appellate division of the district court. If I were not required to pay the

$32,000 bond on 2216, then I would not have been subjected to eviction from 2216. By

requiring a $32,000 bond on 2216, it meant that the state court was treating 2216 as an

extension of 3413 and treating 2216 as if the rent for 3413 covered the rent for 2216.

104.        In its motion for relief from stay, the landlord uses language that admits this

attachment when it says "the accompanying temporary unit". This language is a tacit

admission to the inextricable link between the two apartments.

105.     Because the requirements of an appeal bond are not applicable to the apartment

2216 because it does not involve the non-payment of rent, then it means that the entire

edifice of the proceedings and rulings in the lower court regarding 2216 would be at once

destroyed by an irreconcilable contradiction because 2216 has been treated as if it were a

non-payment of rent case. This can only be true if it is treated as an extension of 3413. It

would a complete and utter logical contradiction for the 2216 case to be given an appeal

bond of $32,000 and then turn around and argue that no rent was due on 2216 and is

therefore not applicable to automatic stay or a curing of the monetary default that gave

rise to the judgment for possession on unit 2216.

106.     Therefore to summarize:

    k.   Both apartments are inextricably intertwined

    l.   Both apartments had the same bond amount covering them at $32,000.

    m.   The district court judge applied the monetary default to both apartments.

    n.   The appellate division of the district court applied the monetary default to

       both apartments.

    o.   If 2216 was based on a non-monetary default, then there would be no bond

       required

107.     There is no question that the property is in violation of the state building and state

sanitary code as shown by the Dedham Board of Health citations.

108.     From the inception of our tenancies to the present, our original unit has

continuously been below the minimum standards for human habitation, in violation of the

State Sanitary Code as found by the Dedham Board of Health with more than one citation

in a two year span of time (2012 and 2014).

109.    We ask the court to also take judicial note that we not only live at the premises
but we also maintain home-based professional services businesses there as well. We were
assured by the landlord that we could both live and work at the premises.

110.    We are faced with threat of immediate eviction from the building where we work
and live and have worked and lived for the past 8 years.

111.    We have paid over $140,000 in rent to the Landlord and though we had
experienced a number of defective conditions since we moved-in around July 2008, we
never withheld rent until May 2014 when the elevator were condemned by the State and
the apartment became uninhabitable, so much so that we had to be displaced. Therefore
the landlord owes us a rebate on rent due to the diminution of value of the premises, not
only for the time we have been displaced i.e. from April 2014 until present but also for
the entire time that we have had to live with the defective conditions since 2008. A mere
10% in the reduction of the value of the premises would result in approx. $14,000 owed
to us, which is almost half the amount of the 32,000 judgment.

112.    If Greystar is permitted to carry out their threat of evicting us, we will be deprived
of our home and place of business in a single stroke. We will be physically removed from
the building to face the substantial likelihood that they will be unable to find other legal
live/work space in the tight Boston market. Eviction would cause a serious disruption in
our personal and professional lives; our ability to live and work in peace would be
irretrievably lost while our legal right to remain in the property is being adjudicated. The
harm would be irreparable.

113.    The court should also take judicial note that we are African-American tenants and
evicted African-American face a substantially harder time finding a place to live after

eviction. Also we, as tenants with certain disabilities, require elevator access (for any

multi-floor situation) and hypo-allergenic conditions due to our disabilities which make it

harder to find suitable residence.  Our ability to conduct our work will also be affected.

114.        My outstanding motions including the **motion to remove default judgment**

            **and/or relief from judgment** and the **motion to stay eviction pending the motion to**

            **remove default judgment** submitted on June 8, 2015 and the **motion to dismiss**

            submitted on May 11, 2015.

## THE PROPERTY IS NECESSARY TO DEBTOR'S REORGANIZATION

115.        In this case, I filed a Chapter 13 case instead of a Chapter 7, which indicates an

            intention to address any obligations that I have through a reorganization plan.

116.        I have indicated that I will continue to pay monthly rent under a chapter 13 plan,

            which will provide adequate protection by the periodic payments provided for it under

            the Chapter 13 Plan.

117.        It would be illogical to argue that my residence is not "necessary to an effective

            reorganization."  I am married and have my personal services businesses that I operate

            from my home and I definitely need my home to complete my chapter 13 plan.


## GREYSTAR HAS ADEQUATE PROTECTION/ GREYSTAR WILL NOT BE HARMED
## OR PREJUDICED BY THE AUTOMATIC STAY BUT DEBTOR WILL SUFFER
## IRREPARABLE HARM

118.        Greystar will not be prejudiced by the continuation of the Automatic Stay with

            respect to the eviction.

119.    Greystar asserts claims for monetary damages arising from the debtor's non-payment of rent. These are claims subject to treatment through the Chapter 13 plan process in this case. Accordingly, the imposition of the fundamental protections offered by the Automatic Stay expose Greystar to no particularized harm. By contrast, requiring that I be evicted would distract me from my efforts to restructure and further divert my scant resources

120.    More fundamentally, absent exceptional circumstances that do not exist here, preventing me from curing the default and allowing an eviction will undermine the protections of the Automatic Stay and jeopardize my efforts to reorganize. It will also undermine the intent of Congress in allowing one last chance to pay the monetary default by getting caught up within 30 days in order to maintain possession and prevent eviction. Congress also intended to provide such relief under chapter 13 in part to allow debtors obtain the "breathing spell" afforded by the Automatic Stay and the consequent protection from its creditors while it reorganizes its affairs and prepares a Chapter 13 plan.

121.    My finances would be further depleted and my attention distracted from reorganizing my affairs if I were denied this basic protection of chapter 13.

## NO CAUSE EXISTS TO LIFT THE STAY

122.    There is no good cause to lift stay. If the issue is payment of rent, and I will pay rent and cure default, then why lift the stay. I have not endangered the property, I have not used illegal drugs, I have done nothing for a "for fault" eviction. Other than stop paying rent to force the landlord to fix repairs which I'm authorized to do by statute, I

have done nothing wrong. And if I am paying rent now and will cure the default, then the landlord wants me out for reasons that have not been presented to any court or this court. It is hiding its reasons including retaliation, discrimination reasons. I paid rent for 7 years almost $140,000 in rent. I stopped paying rent only after the state condemned the elevator and flooding apartment, insisting that the problems be fixed. Why are they refusing the accept rent? Then, there is no good cause

## DEBTOR HAS FILED THIS CASE FOR LEGITIMATE PURPOSES

123.    The automatic stay of §362 was intended, among other things, to stop landlords from evicting tenants who still had a legitimate interest in the property. There is a no abuse here. The code contemplates situations where a judgment for possession has occurred but intends to give a chance for the tenant to get caught up and rectify the situation before 30 days. If halting an eviction was not legitimate under the code then why did Congress put this exception in the code? Greystar would like to argue that any and every tenant or homeowner who files a chapter 13 bankruptcy to save their home and/or prevent eviction is abusing the code. This is clearly a ridiculous conclusion.

124.    I have not filed it to delay the inevitable eviction. I filed so that I can have an opportunity to have a breathing spell so that I can reorganize my affairs and interests and so that I can litigate the eviction issue in state court to permanently prevent eviction and establish my right to possession in state court. I also filed because I would like the opportunity to cure the default through the bankruptcy process.

**DEBTOR HAS A VALID LEASE AND TENANCY/DEBTOR WILL ASSUME THE**

**LEASE**

125.    Under mass statutory law, a residential tenant has a myriad of ways in which to
restore that tenancy or at least prevent one's dispossession if the tenancy is not revived,
and under equity procedures, a tenant may assert equitable defenses to prevent the
forfeiture of a lease.

126.    An equitable interest is a right fashioned by federal law in the bankruptcy court.

127.    Massachusetts law grants tenants certain rights or abilities to cure the termination
and reinstate the tenancy prior to and even after judgment for possession.

128.    The cure permitted by statute is treated as an interest in the property estate,
thereby subjecting the lease provisions to the automatic stay.

129.    The tenancy was revived by agreement from Laura Donahue, which was agreed
upon as a way to address the flooding that took place in February/March 2015. This is an
evidentiary issue that requires a follow-up hearing where evidence can be presented.

130.    Moreover, Greystar stated in its motion that the premises are "leased premises".
This is an admission that the premises are subject to a continuing lease. Therefore the
lease is not terminated.

131.    A notice to quit does not terminate all rights. Neither does a judgment. I still have
the right to appeal. I still have the right to a dwelling that meets the sanitation code. I still
have the right to a covenant of quiet enjoyment and the warranty of habitability. I still
have the right to have my security deposit returned to me. I still have the right not to be
discriminated against or retaliated against. I still have the right to not be harassed or

intimidated. I still have the right to not be evicted in an unlawful manner. I have the right to cure even after judgment for possession, which is like a redemption right.

132.    I live with my wife Natalie Anderson, the co-debtor in this case, in an apartment (the "Apartment") owned by RAR2 (Deutsche Bank) and operated/managed by Greystar Management Services. The lease on the Apartment (the "Lease") requires me to pay $2,390 per month in rent on or before the first day of each month. In addition, the lease provides, in relevant part, that the term of the lease shall be renewed automatically for successive terms.

133.    In my bankruptcy plan, I will propose, among other things, to cure the default on my Lease by paying all back rent over a 60-month period, and then to assume the Lease.

134.    Therefore my Chapter 13 reorganization plan will include an assumption of the Lease.

135.    Ms. Anderson, the codebtor, has not filed for bankruptcy protection under the Bankruptcy Code. However, because she is a resident at the Apartment, the automatic stay of §1301 created by Bisasor's Chapter 13 petition protects her as well.

## DEBTOR HAS COLORABLE CLAIM TO POSSESSION OF THE PREMISES

136.    Moreover, I as the debtor have a colorable claim to possession of the premises to invoke the automatic stay.

137.    Contrary to Greystar, this filing was not for the sole purpose of preventing an improper or unlawful eviction. This case was filed to allow me an opportunity to cure alleged breaches with Greystar contingent on the outcome of my pending State Court litigation filed before the filing of my bankruptcy.

138.        Also, the lease was not "terminated", but was "unexpired". I possess an unexpired

leasehold interest and properly retain possession of the premises in Chapter 13 because of

that interest. Therefore, since my lease was not validly "terminated" pre-petition, I seek to

cure and assume my lease. My ability to cure and require Greystar to accept my lease was

admittedly contingent upon my success in the litigation pending in the District Court at

the time I filed bankruptcy.

139.        At the time of this bankruptcy filing, my state Court action was pending. The

successful completion of that action would require Greystar to accept my tenancy and

grant me damages in excess of any back rent claim ultimately allowed to Greystar.


Respectfully Submitted under pains and penalties of
perjury.


Andre Bisasor
3000 Presidents Way #3413
Dedham, MA 02026
781-492-5675

Dated: September 21, 2015