**DebtEd, FUNDS, NTCAPR, TUA, AddChg, APLDIST, APPEAL**

# United States Bankruptcy Court
## District of Massachusetts (Boston)
## Bankruptcy Petition #: 15–13369

*Date filed:* 08/27/2015
*341 meeting:* 09/29/2015
*Deadline for filing claims:* 12/28/2015
*Deadline for filing claims (govt.):* 02/23/2016

*Assigned to:* Judge Joan N. Feeney
Chapter 13
Voluntary
Asset

*Debtor*
**Andre Bisasor**
3000 Presidents Way #3413
Dedham, MA 02026
SSN / ITIN: xxx–xx–9859

represented by **David G. Baker**
236 Huntington Avenue, Ste. 306
Boston, MA 02115
(617) 340–3680
Fax : (866) 661–5328
Email: david@bostonbankruptcy.org

*Assistant U.S. Trustee*
**John Fitzgerald**
Office of the US Trustee
J.W. McCormack Post Office &Courthouse
5 Post Office Sq., 10th Fl, Suite 1000
Boston, MA 02109

*Trustee*
**Carolyn Bankowski–13**
Chapter 13 Trustee Boston
P. O. Box 8250
Boston, MA 02114
617–723–1313

| Filing Date | # | | Docket Text |
|---|---|---|---|
| 08/27/2015 | | 1 | Chapter 13 Voluntary Petition with deficiencies. Exhibit D. Certificate of Credit Counseling. Filing Fee in the Amount of $310 Filed by Andre Bisasor. (nr) (Entered: 08/27/2015) |
| 08/27/2015 | | | Meeting of Creditors scheduled on 09/29/2015 at 11:00 AM at Room 325–B, U.S. Trustee Office, J.W. McCormack Post Office &Court House. Deadline to object to debtor's discharge or to challenge dischargeability of certain debts is 11/30/2015. Proof of Claim due by 12/28/2015. Government Proof of Claim due by 02/23/2016. (nr) (Entered: 08/27/2015) |
| 08/27/2015 | | 2 | Statement of Social Security Number(s) filed by Debtor Andre Bisasor (nr) (Entered: 08/27/2015) |
| 08/27/2015 | | 5 | Certification of Intent to Cure Entire Monetary Default for Residential Property and Rental Deposit in the amount of $2390.00 with judgment (Re: 1 Voluntary Petition (Chapter 13)) filed by Deadline to Cure Default: 9/28/2015 (Attachments: # 1 Judgment) (ymw) (Entered: 08/28/2015) |

| 08/28/2015 | | 4 | Notice to Pro Se Debtors. (ADI) (Entered: 08/28/2015) |
|---|---|---|---|
| 08/28/2015 | | 6 | Court's Notice Releasing Rental Deposit to the Landlord, RAR 2 Jefferson at Dedham Station MA, Inc., 1000 Presidents Way #3413, Dedham, MA 02026, in the amount of $2390.00 with certificate of service. Deadline to cure default and file second Certification is 30 days from the filing date of the voluntary petition. (Sent by Certified U.S. Mail Tracking Number 7011 3500 0001 5898 3140) (Re: 5 Rental Deposit and Intent to Cure Default filed by Debtor) (Entered: 08/28/2015) |
| 08/28/2015 | | 7 | Order to Update (Re: 1). Chapter 13 Voluntary Petition Matrix Due 9/2/2015. Chapter 13 Plan due by 9/11/2015. Schedules A–J due 9/11/2015. Statement of Financial Affairs due 9/11/2015. Summary of schedules due 9/11/2015. Chapter 13 Statement of Your Current Monthly Income and Calculation of Commitment Period Form 22C–1 Due: 9/11/2015. Statistical Summary of Certain Liabilities due 9/11/2015.Evidence of Current and Sufficient Liability and Property Insurance Due 9/11/2015. Incomplete Filings due by 9/11/2015. (nr) (Entered: 08/28/2015) |
| 08/28/2015 | | 8 | Court Certificate of Mailing. (Re: 7 Order to Update) (nr) (Entered: 08/28/2015) |
| 08/28/2015 | | | Receipt of Chapter 13 Filing Fee – $200.00 by NR. Receipt Number 631123. (adi) (Entered: 08/31/2015) |
| 08/28/2015 | | | Receipt of Chapter 13 Filing Fee – $110.00 by NR. Receipt Number 631123. (adi) (Entered: 08/31/2015) |
| 08/28/2015 | | | Receipt of Forfeit Filing Fee – $10.00 by NR. Receipt Number 631123. (adi) (Entered: 08/31/2015) |
| 08/30/2015 | | 10 | BNC Certificate of Mailing. (Re: 4 Notice to ProSe Debtors.) Notice Date 08/30/2015. (Admin.) (Entered: 08/31/2015) |
| 09/01/2015 | | 11 | Emergency Motion filed by Debtor Andre Bisasor to Extend Time to File Documents [Re: 7 Order to Update]. (jb) (Entered: 09/02/2015) |
| 09/02/2015 | | 12 | Endorsed Order dated 9/2/2015 Re: 11 Emergency Motion filed by Debtor Andre Bisasor to Extend Time to File Documents Re: 7 Order to Update. MOTION ALLOWED IN PART. THE DEBTOR SHALL FILE THE MATRIX BY 09/04/15 AND THE REMAINING DOCUMENTS BY 09/23/15. (jb) (Entered: 09/02/2015) |
| 09/02/2015 | | 13 | Expedited Motion filed by Creditor Greystar Management Services LP as agent for owner RAR2–Jefferson at Dedham Station MA Inc. for Relief from Stay Re: 3000 Presidents Way #3413, Dedham MA 02026 with certificate of service and proposed order Fee Amount $176, Objections due by 09/16/2015. (Attachments: # 1 Exhibit A–B # 2 Exhibit Exhibits C–D # 3 Exhibit Exhibits E–F # 4 Exhibit Exhibits G–H # 5 Proposed Order Proposed Order 3413) (Ashton, Donna) (Entered: 09/02/2015) |
| 09/02/2015 | | 14 | Expedited Motion filed by Creditor Greystar Management Services LP as agent for owner RAR2–Jefferson at Dedham Station MA Inc. |

2

| | | | |
|---|---|---|---|
| | | | for Relief from Stay Re: 2000 Presidents Way #2216, Dedham, MA 02026 with certificate of service and proposed order Fee Amount $176, Objections due by 09/16/2015. (Attachments: # 1 Exhibit Exhibits A–B # 2 Exhibit Exhibits C–D # 3 Exhibit Exhibits E–F # 4 Exhibit Exhibits G–H # 5 Proposed Order) (Ashton, Donna) (Entered: 09/02/2015) |
| 09/02/2015 | | | Receipt of filing fee for Motion for Relief From Stay(15–13369) [motion,mrlfsty] ( 176.00). Receipt Number 14947024, amount $ 176.00 (re: Doc# 13) (U.S. Treasury) (Entered: 09/02/2015) |
| 09/02/2015 | | | Receipt of filing fee for Motion for Relief From Stay(15–13369) [motion,mrlfsty] ( 176.00). Receipt Number 14947024, amount $ 176.00 (re: Doc# 14) (U.S. Treasury) (Entered: 09/02/2015) |
| 09/02/2015 | | 15 | Certified Return Receipt (Re: 6 Court's Notice Releasing Rental Deposit) (ymw) (Entered: 09/02/2015) |
| 09/04/2015 | | 16 | Hearing Scheduled for 9/17/2015 at 01:00 PM at Boston Courtroom 1, 12th Floor, 5 Post Office Square, Boston, MA 02109 Re: 13 Expedited Motion filed by Creditor Greystar Management Services LP as agent for owner RAR2–Jefferson at Dedham Station MA Inc. for Relief from Stay Re: 3000 Presidents Way #3413, Dedham MA 02026. Objections due by 9/16/2015 at 03:00 PM. (pd) (Entered: 09/04/2015) |
| 09/04/2015 | | 17 | Hearing Scheduled for 9/17/2015 at 01:00 PM at Boston Courtroom 1, 12th Floor, 5 Post Office Square, Boston, MA 02109 Re: 14 Expedited Motion filed by Creditor Greystar Management Services LP as agent for owner RAR2–Jefferson at Dedham Station MA Inc. for Relief from Stay Re: 2000 Presidents Way #2216, Dedham, MA 02026. Objections due by 9/16/2015 at 03:00 PM. (pd) (Entered: 09/04/2015) |
| 09/04/2015 | | 18 | BNC Certificate of Mailing – PDF Document. (Re: 12 Order on Motion to Extend) Notice Date 09/04/2015. (Admin.) (Entered: 09/05/2015) |
| 09/04/2015 | | 19 | Matrix (Re: 1 Voluntary Petition (Chapter 13)) filed by Debtor Andre Bisasor (jb) (Entered: 09/08/2015) |
| 09/09/2015 | | 20 | Court's Notice of 341 sent. (ADI) (Entered: 09/09/2015) |
| 09/11/2015 | | 21 | BNC Certificate of Mailing – Meeting of Creditors. (Re: 20 Court's Notice of 341 sent 13) Notice Date 09/11/2015. (Admin.) (Entered: 09/12/2015) |
| 09/14/2015 | | 22 | Emergency Motion filed by Debtor Andre Bisasor to Extend Time for Responding to Motion for Relief from Stay and to Continue Hearing [Re: 13 Motion for Relief From Stay, 14 Motion for Relief From Stay] with certificate of service. (chy) (Entered: 09/14/2015) |
| 09/15/2015 | | 23 | Objection *to Debtor's Emergency Motion for Continuance* with certificate of service filed by Creditor Greystar Management Services LP as agent for owner RAR2–Jefferson at Dedham Station MA Inc. Re: 22 Emergency Motion filed by Debtor Andre Bisasor to Continue Hearing [Re: 13 Motion for Relief From Stay, 14 Motion for Relief From Stay] with certificate of service. |

| | | | |
|---|---|---|---|
| | | | (Attachments: # 1 Exhibit Exhibit A) (Ashton, Donna) (Entered: 09/15/2015) |
| 09/15/2015 | | 24 | MDOR Notice of Unfiled Prepetition Tax Returns and Request for same pursuant to 11 U.S.C. Section 1308 with certificate of service (Hankard, Katie) (Entered: 09/15/2015) |
| 09/15/2015 | | 25 | Rebuttal filed by Debtor Andre Bisasor [Re: 23 Objection filed by Creditor Greystar Management Services LP as agent for owner RAR2–Jefferson at Dedham Station MA Inc. Re: 22 Emergency Motion filed by Debtor Andre Bisasor to Continue Hearing [Re: 13 Motion for Relief From Stay, 14 Motion for Relief From Stay] with certificate of service. (jb) (Entered: 09/15/2015) |
| 09/15/2015 | | 26 | Amended Rebuttal filed by Debtor Andre Bisasor (Re: 25 RebuttalRe: 23 Objection filed by Creditor Greystar Management Services LP as agent for owner RAR2–Jefferson at Dedham Station MA Inc. Re: 22 Emergency Motion filed by Debtor Andre Bisasor to Continue Hearing [Re: 13 Motion for Relief From Stay, 14 Motion for Relief From Stay] with certificate of service. (jb) (jb) (Entered: 09/15/2015) |
| 09/15/2015 | | 27 | Endorsed Order dated 9/15/2015 Re: 22 Emergency Motion filed by Debtor Andre Bisasor to Extend Time for Responding to Motion for Relief from Stay and to Continue Hearing Re: 13 Motion for Relief From Stay, 14 Motion for Relief From Stay. DENIED. MOTION DENIED FOR THE REASONS STATED IN THE OBJECTION OF GREYSTAR MANAGEMENT SERVICES LP. SEE ALSO 11 U.S.C. SEC. 362(L)(3)(A). THE 09/17/15 HEARING SHALL GO FORWARD. (jb) (Entered: 09/15/2015) |
| 09/16/2015 | | 28 | Notice of Appearance and Request for Notice by David G. Baker with certificate of service filed by Debtor Andre Bisasor (Baker, David) (Entered: 09/16/2015) |
| 09/16/2015 | | 29 | Objection with certificate of service filed by Debtor Andre Bisasor Re: 13 Expedited Motion filed by Creditor Greystar Management Services LP as agent for owner RAR2–Jefferson at Dedham Station MA Inc. for Relief from Stay Re: 3000 Presidents Way #3413, Dedham MA 02026 with certificate of service and proposed order, 14 Expedited Motion filed by Creditor Greystar Management Services LP as agent for owner RAR2–Jefferson at Dedham Station MA Inc. for Relief from Stay Re: 2000 Presidents Way #2216, Dedham, MA 02026 with certificate of service and proposed order (Baker, David) (Entered: 09/16/2015) |
| 09/16/2015 | | 30 | Brief/Memorandum In Support of *Debtor* (Re: 29 Objection) filed by Debtor Andre Bisasor (Attachments: # 1 Answer and Counterclaims # 2 State Court Docket # 3 Lease #1 # 4 Lease #2 # 5 Summary Process Complaints, etc.) (Baker, David) (Entered: 09/16/2015) |
| 09/17/2015 | | 31 | Order dated 9/17/2015 Re: 13 Expedited Motion filed by Creditor Greystar Management Services LP as agent for owner RAR2–Jefferson at Dedham Station MA Inc. for Relief from Stay Re: 3000 Presidents Way #3413, Dedham MA 02026. HEARING HELD. #13, TAKEN UNDER ADVISEMENT. THE MOVANT SHALL FILE A SUPPLEMENTAL BRIEF BY 09/18/15 WITH RESPECT TO THE ISSUES RAISED AT THE HEARING, AND |

| | | | |
|---|---|---|---|
| | | | THE DEBTOR MAY FILE A REPLY BRIEF WITHIN 24 HOURS AFTER SUCH FILING. (jb) (Entered: 09/17/2015) |
| 09/17/2015 | | 32 | Order dated 9/17/2015 Re: 14 Expedited Motion filed by Creditor Greystar Management Services LP as agent for owner RAR2–Jefferson at Dedham Station MA Inc. for Relief from Stay Re: 2000 Presidents Way #2216, Dedham, MA 02026 . HEARING HELD. #14, TAKEN UNDER ADVISEMENT. THE MOVANT SHALL FILE A SUPPLEMENTAL BRIEF BY 09/18/15 WITH RESPECT TO THE ISSUES RAISED AT THE HEARING, AND THE DEBTOR MAY FILE A REPLY BRIEF WITHIN 24 HOURS AFTER SUCH FILING. (jb) (Entered: 09/17/2015) |
| 09/17/2015 | | 33 | BNC Certificate of Mailing – PDF Document. (Re: 27 Order on Motion to Continue/Cancel Hearing) Notice Date 09/17/2015. (Admin.) (Entered: 09/18/2015) |
| 09/18/2015 | | 34 | Supplemental Document: *Supplemental Filing* with certificate of service (Re: 13 Motion for Relief From Stay, 14 Motion for Relief From Stay) filed by Creditor Greystar Management Services LP as agent for owner RAR2–Jefferson at Dedham Station MA Inc. (Attachments: # 1 Exhibit A # 2 Exhibit B # 3 Exhibit C # 4 Exhibit D) (Ashton, Donna) (Entered: 09/18/2015) |
| 09/18/2015 | | 35 | An official transcript of hearing (RE: 13 Expedited Motion of Greystar Management Services LP as Agent for Owner RAR2–Jefferson at Dedham Station, MA Inc. for Relief from Stay RE: 3000 Presidents Way #3413, Dedham, MA (Donna Ashton); 29 Objection of Debtor (David Baker); 30 Verified Memorandum of Debtor in Support of 29 (David Baker); 14 Expedited Motion of Greystar Management Services LP as Agent for Owner RAR2–Jefferson at Dedham Station MA Inc. for Relief from Stay RE: 2000 Presidents Way #2216, Dedham, MA (Donna Ashton); 29 Objection of Debtor (David Baker); 30 Verified Memorandum of Debtor in Support of 29 (David Baker)) heard on 09/17/2015 has been filed. Pursuant to Judicial Conference Policy, electronic access to transcripts is restricted for 90 days from the date of filing. The transcript is available for inspection at the Clerk's Office or a copy may be purchased from the transcriber. Contact the ECR Operator for transcriber information. Parties have until 10/9/2015 to file a Request for Redaction with the Court. If no request is filed, the transcript may be made available electronically on 12/18/2015. (Cascade Hills Transcription, Inc.) (Entered: 09/18/2015) |
| 09/19/2015 | | 36 | BNC Certificate of Mailing – PDF Document. (Re: 31 Order on Motion For Relief From Stay) Notice Date 09/19/2015. (Admin.) (Entered: 09/20/2015) |
| 09/19/2015 | | 37 | BNC Certificate of Mailing – PDF Document. (Re: 32 Order on Motion For Relief From Stay) Notice Date 09/19/2015. (Admin.) (Entered: 09/20/2015) |
| 09/19/2015 | | 38 | Notice of Filing of Official Transcript. Notice is hereby given that an official transcript has been filed. Pursuant to the Judicial Conference policy governing public access to transcripts of federal court proceedings, transcripts are not electronically available(online) until 90 days after filing but may be inspected by clerk's office or purchased from the court transcriber during the 90–day period. (ADI) (Entered: 09/21/2015) |

| | | | |
|---|---|---|---|
| 09/21/2015 | | 39 | Supplemental Brief (Re: 13 Motion for Relief From Stay, 14 Motion for Relief From Stay) filed by Debtor Andre Bisasor (Baker, David) (Entered: 09/21/2015) |
| 09/21/2015 | | 40 | Affidavit of Andre Bisasor and clarification statement in support of Debtor's Reply Memorandum to Greystar's Supplemental Memorandum for Greystar's Objection to Certification and Greysstar's Motion for Relief from Stay (Re: 13 Motion for Relief From Stay, 14 Motion for Relief From Stay) filed by Debtor Andre Bisasor (Baker, David). Modified on 9/25/2015 (lkaine, Usbc). (Entered: 09/21/2015) |
| 09/21/2015 | | 41 | DISREGARD: Request from David G. Baker Debtor Andre Bisasor *for evidentiary hearing,* with certificate of service. filed by Debtor Andre Bisasor (Baker, David) Corrective entry: disregard. Incorrect event used. Two Day Order to re−docket using correct event. Modified on 9/22/2015 (ymw). (Entered: 09/21/2015) |
| 09/22/2015 | | 42 | Order Requiring Corrective Action. You are hereby **ORDERED** to file the required document(s) **identified in the attached order** within (2) business days of the date of this order (Re: 41 Request filed by Debtor Andre Bisasor) (ymw) (Entered: 09/22/2015) |
| 09/23/2015 | | 43 | Withdrawal with certificate of service (Re: 39 Brief) filed by Debtor Andre Bisasor (Baker, David) (Entered: 09/23/2015) |
| 09/23/2015 | | 44 | Supplemental Brief *(Corrected)* (Re: 32 Order on Motion For Relief From Stay) filed by Debtor Andre Bisasor (Attachments: # 1 Appellate courts case listing) (Baker, David) (Entered: 09/23/2015) |
| 09/23/2015 | | 45 | Motion filed by Debtor Andre Bisasor to Extend Time to File Documents [Re: 7 Order to Update] with certificate of service. (Baker, David) (Entered: 09/23/2015) |
| 09/23/2015 | | 46 | BNC Certificate of Mailing. (Re: 38 Notice of Filing of Official Transcript) Notice Date 09/23/2015. (Admin.) (Entered: 09/24/2015) |
| 09/24/2015 | | 47 | Endorsed Order dated 9/24/2015 Re: 45 Motion filed by Debtor Andre Bisasor to Extend Time to File Documents (Re: 7 Order to Update). ALLOWED. (lkaine, Usbc) (Entered: 09/24/2015) |
| 09/25/2015 | | 48 | Request for Evidentiary Hearing filed by Debtor Andre Bisasor Re: 13 Motion for Relief From Stay, 14 Motion for Relief From Stay, with certificate of service. (Baker, David) Modified on 10/6/2015 (lkaine, Usbc). (Entered: 09/25/2015) |
| 09/26/2015 | | 49 | BNC Certificate of Mailing − PDF Document. (Re: 47 Order on Motion to Extend) Notice Date 09/26/2015. (Admin.) (Entered: 09/27/2015) |
| 09/28/2015 | | | Continuance of Meeting of Creditors 10/21/2015 at 10:30 AM (Bankowski−13, Carolyn) (Entered: 09/28/2015) |
| 09/28/2015 | | 50 | Emergency Motion filed by Debtor Andre Bisasor to Extend Time to File Documents Re: 1 Voluntary Petition (Chapter 13). (lkaine, Usbc) (Entered: 09/28/2015) |

| | | | |
|---|---|---|---|
| 09/28/2015 | | 51 | Endorsed Order dated 9/28/2015 Re: 39 Supplemental Memorandum filed by Debtor Andre Bisasor. WITHDRAWN. (lkaine, Usbc) (Entered: 09/29/2015) |
| 09/29/2015 | | 52 | Endorsed Order dated 9/29/2015 Re: 50 Emergency Motion filed by Debtor Andre Bisasor to Extend Time to File Documents (Re: 1 Voluntary Petition) TO THE EXTENT THE DEBTOR SEEKS AN EXTENSION OF TIME TO 10/05/15 TO FILE THE DOCUMENTS REQUIRED PURSUANT TO THE COURT'S ORDER TO UPDATE DATED 08/28/15 (DOC. NO. 7), THE MOTION IS ALLOWED. (lkaine, Usbc) (Entered: 09/29/2015) |
| 09/29/2015 | | 53 | Court Certificate of Mailing Re: 52 Order on Motion to Extend. (lkaine, Usbc) (Entered: 09/29/2015) |
| 10/01/2015 | | 54 | Notice of Appearance with certificate of service filed by Creditor Foley Hoag LLP (Ottenberg, John) (Entered: 10/01/2015) |
| 10/01/2015 | | | Notice of Certified Copy of Docket Report to RAR2 Jefferson at Dedham Station MA, Inc. (Re: 5 Rental Deposit and Intent to Cure Default) (cpd) (Entered: 10/01/2015) |
| 10/01/2015 | | 55 | Court Certificate of Mailing. (Re: Certified Copy of Docket Report). (cpd) (Entered: 10/01/2015) |
| 10/01/2015 | | 56 | Order dated 10/1/2015 Re: 13 Expedited Motion filed by Creditor Greystar Management Services LP as agent for owner RAR2–Jefferson at Dedham Station MA Inc. for Relief from Stay Re: 3000 Presidents Way #3413, Dedham MA 02026. PURSUANT TO 11 U.S.C. SEC. 362(e), THE COURT CONTINUES THE AUTOMATIC STAY PENDING THE COURT'S RULING ON THE MOTION. (cpd) (Entered: 10/01/2015) |
| 10/01/2015 | | 57 | Order dated 10/1/2015 Re: 14 Expedited Motion filed by Creditor Greystar Management Services LP as agent for owner RAR2–Jefferson at Dedham Station MA Inc. for Relief from Stay Re: 2000 Presidents Way #2216, Dedham, MA 02026. PURSUANT TO 11 U.S.C. SEC. 362(e), THE COURT CONTINUES THE AUTOMATIC STAY PENDING THE COURT'S RULING ON THE MOTION. (cpd) (Entered: 10/01/2015) |
| 10/03/2015 | | 58 | BNC Certificate of Mailing – PDF Document. (Re: 56 Order on Motion For Relief From Stay) Notice Date 10/03/2015. (Admin.) (Entered: 10/04/2015) |
| 10/03/2015 | | 59 | BNC Certificate of Mailing – PDF Document. (Re: 57 Order on Motion For Relief From Stay) Notice Date 10/03/2015. (Admin.) (Entered: 10/04/2015) |
| 10/06/2015 | | 60 | Summary of Schedules , Statistical Summary of Certain Liabilities, Statement of Financial Affairs , Schedules A–J. (Re: 7 Order to Update) filed by Debtor Andre Bisasor (Baker, David) (Entered: 10/06/2015) |
| 10/06/2015 | | 61 | Chapter 13 Plan Without Certificate of Service filed by Debtor Andre Bisasor (Baker, David) (Entered: 10/06/2015) |

| 10/06/2015 | | 62 | Chapter 13 Statement of Your Current Monthly Income and Calculation of Commitment Period for 3 Years Form 22C−1. Disposable Income Is Not Determined (Re: 7 Order to Update) filed by Debtor Andre Bisasor (Baker, David) (Entered: 10/06/2015) |
| 10/06/2015 | | 63 | Chapter 13 Agreement between debtor and counsel filed by Debtor Andre Bisasor (Baker, David) (Entered: 10/06/2015) |
| 10/06/2015 | | 64 | Disclosure of Compensation of Attorney David G. Baker in the amount of $3,500.00. Plus $0.00 paid to debtor`s counsel for court filing fees filed by Debtor Andre Bisasor (Baker, David) (Entered: 10/06/2015) |
| 10/06/2015 | | 65 | Court's Order of Deficiency Re: 61 Chapter 13 Plan filed by Debtor Andre Bisasor. The deadline to cure the deficiency is 10/13/2015 at 04:30 PM. (lkaine, Usbc) (Entered: 10/06/2015) |
| 10/06/2015 | | 66 | Signature Page (Re: 60 Summary of Schedules, Statistical Summary of Certain Liabilities, Statement of Financial Affairs, Schedules A−J, 61 Chapter 13 Plan) filed by Debtor Andre Bisasor (Baker, David) (Entered: 10/06/2015) |
| 10/06/2015 | | 67 | Declaration Re: Electronic Filing filed by Debtor Andre Bisasor (Baker, David) (Entered: 10/06/2015) |
| 10/06/2015 | | 68 | Supplemental Document: *Addendum* (Re: 60 Summary of Schedules, Statistical Summary of Certain Liabilities, Statement of Financial Affairs, Schedules A−J) filed by Debtor Andre Bisasor (Baker, David) (Entered: 10/06/2015) |
| 10/08/2015 | | 69 | BNC Certificate of Mailing. (Re: 65 Court's Order of Deficiency) Notice Date 10/08/2015. (Admin.) (Entered: 10/09/2015) |
| 10/13/2015 | | 70 | Certificate of Service (Re: 61 Chapter 13 Plan) filed by Debtor Andre Bisasor (Baker, David) (Entered: 10/13/2015) |
| 10/19/2015 | | 71 | Order dated 10/19/15 Re: 13 Motion for Relief From Stay filed by Creditor Greystar Management Services LP, and 14 Motion for Relief From Stay filed by Creditor Greystar Management Services LP. See Order for Full Text. (lkaine, Usbc) (Entered: 10/19/2015) |
| 10/21/2015 | | 72 | Emergency Motion filed by Debtor Andre Bisasor For Contempt and for Sanctions with certificate of service. (Attachments: # 1 Constable's Notices) (Baker, David) (Entered: 10/21/2015) |
| 10/21/2015 | | 73 | Order dated 10/21/2015 Re: 72 Emergency Motion filed by Debtor Andre Bisasor For Contempt and for Sanctions. GREYSTAR SHALL FILE A RESPONSE TO THE MOTION TODAY BY 3:00 PM. (lkaine, Usbc) (Entered: 10/21/2015) |
| 10/21/2015 | | 74 | Opposition *to Debtor's Emergency Motion for Contempt for Violation of the Co−Debtor Stay of 1301* with certificate of service filed by Creditor Greystar Management Services LP as agent for owner RAR2−Jefferson at Dedham Station MA Inc. Re: 72 Emergency Motion filed by Debtor Andre Bisasor For Contempt and for Sanctions with certificate of service. (Ashton, Donna) (Entered: 10/21/2015) |

| | | | |
|---|---|---|---|
| 10/21/2015 | | | Meeting of Creditors Held and Examination of Debtor *concluded on 10/21/2015, Debtor was not present.* (Bankowski−13, Carolyn) (Entered: 10/21/2015) |
| 10/21/2015 | | 75 | Chapter 13 Trustee's Motion for Order Dismissing Case with certificate of service. Objections due by 11/16/2015. (Bankowski−13, Carolyn) (Entered: 10/21/2015) |
| 10/21/2015 | | 76 | Reply with certificate of service filed by Debtor Andre Bisasor Re: 72 Emergency Motion filed by Debtor Andre Bisasor For Contempt and for Sanctions with certificate of service. (Baker, David) (Entered: 10/21/2015) |
| 10/21/2015 | | 77 | Order dated 10/21/2015 Re: 72 Emergency Motion filed by Debtor Andre Bisasor For Contempt and for Sanctions. UPON CONSIDERATION OF THE MOTION, THE OPPOSITION OF GREYSTAR AND THE DEBTOR'S REPLY, THE MOTION IS ALLOWED IN PART AND DENIED IN PART AND THE OPPOSITION IS SUSTAINED IN PART AND OVERRULED IN PART. THE COURT RULES THAT THE "48 HOUR NOTICES," IN PARTICULAR, THE NOTICE OF REMOVAL OF THE DEBTOR AND THE CODEBTOR AND THEIR PERSONAL PROPERTY FROM THE SUBJECT APARTMENTS, IS NOT WITHIN THE SCOPE OF 11 U.S.C. SEC. 1301. GREYSTAR MAY PROCEED WITH THE EVICTION OF THE DEBTOR AND THE CODEBTOR AND REMOVAL OF THEIR PROPERTY FROM THE SUBJECT APARTMENTS, BUT IT SHALL NOT SEEK TO COLLECT ANY DEBT FROM THE DEBTOR OR THE CODEBTOR, INCLUDING ANY MONEY JUDGMENT OR ANY STORAGE FEES, WITHOUT FURTHER ORDER FROM THIS COURT. THE DEBTOR'S REQUEST FOR ATTORNEYS' FEES IS DENIED. (lkaine, Usbc) (Entered: 10/21/2015) |
| 10/21/2015 | | 78 | BNC Certificate of Mailing − PDF Document. (Re: 71 Order) Notice Date 10/21/2015. (Admin.) (Entered: 10/22/2015) |
| 10/23/2015 | | 79 | BNC Certificate of Mailing − PDF Document. (Re: 73 Order on Motion for Contempt) Notice Date 10/23/2015. (Admin.) (Entered: 10/24/2015) |
| 10/28/2015 | | 80 | Notice of Change of Address *for creditors,* filed by Debtor Andre Bisasor (Baker, David) (Entered: 10/28/2015) |
| 10/28/2015 | | 81 | Objection with certificate of service filed by Debtor Andre Bisasor Re: 75 Chapter 13 Trustee's Motion for Order Dismissing Case with certificate of service. (Baker, David) (Entered: 10/28/2015) |
| 10/29/2015 | | 82 | Hearing Scheduled for 11/19/2015 at 01:00 PM at Boston Courtroom 1, 12th Floor, 5 Post Office Square, Boston, MA 02109 Re: 75 Chapter 13 Trustee's Motion for Order Dismissing Case. (pd) (Entered: 10/29/2015) |
| 10/29/2015 | | 83 | Certificate of Service of Notice of Hearing (Re: 75 Chapter 13 Trustee's Motion for Order Dismissing Case) filed by Trustee Carolyn Bankowski−13 (Bankowski−13, Carolyn) (Entered: 10/29/2015) |
| 10/29/2015 | | | |

| | | | |
|---|---|---|---|
| | | | Continuance of Meeting of Creditors 12/9/2015 at 10 AM (Bankowski−13, Carolyn) (Entered: 10/29/2015) |
| 10/29/2015 | | 84 | Motion filed by Debtor Andre Bisasor to Continue Hearing [Re: 75 Chapter 13 Trustee's Motion for Order Dismissing Case] with certificate of service. (Baker, David) (Entered: 10/29/2015) |
| 10/30/2015 | | 85 | Endorsed Order dated 10/30/2015 Re: 84 Motion filed by Debtor Andre Bisasor to Continue Hearing (Re: 75 Chapter 13 Trustee's Motion for Order Dismissing Case. ALLOWED. THE HEARING IS CONTINUED TO 01/07/16 AT 1:00 PM. (lkaine, Usbc) (Entered: 10/30/2015) |
| 10/30/2015 | | 86 | Hearing Rescheduled for 1/7/2016 at 01:00 PM at Boston Courtroom 1, 12th Floor, 5 Post Office Square, Boston, MA 02109 Re: 75 Chapter 13 Trustee's Motion for Order Dismissing Case. (lkaine, Usbc) (Entered: 10/30/2015) |
| 11/01/2015 | | 87 | BNC Certificate of Mailing − Hearing. (Re: 86 Hearing Scheduled) Notice Date 11/01/2015. (Admin.) (Entered: 11/01/2015) |
| 11/02/2015 | | 88 | Certificate of Service of Notice of Hearing (Re: 75 Chapter 13 Trustee's Motion for Order Dismissing Case) filed by Trustee Carolyn Bankowski−13 (Bankowski−13, Carolyn) (Entered: 11/02/2015) |
| 11/02/2015 | | 89 | Motion filed by Debtor Andre Bisasor to Extend Time to Appeal Under Rule 8002(c) [Re: 71 Order] with certificate of service. (Baker, David) (Entered: 11/02/2015) |
| 11/04/2015 | | 90 | Endorsed Order dated 11/4/2015 Re: 89 Motion filed by Debtor Andre Bisasor to Extend Time to Appeal Under Rule 8002(c) (Re: 71 Order). THE MOTION IS ALLOWED TO THE EXTENT PERMITTED UNDER FED. R. BANKR. P. 8002(D)(2)(A). (lkaine, Usbc) (Entered: 11/04/2015) |
| 11/04/2015 | | 91 | Notice of Appeal and Statement of Election to District Court filed by Debtor Andre Bisasor Re: 77 Order dated 10/21/15 (Re: 72 Emergency Motion for Contempt. Appellant Designation due by 11/18/2015. Compiled Records Due by 12/2/2015. Transmission of Designation Due by 12/4/2015. (lkaine, Usbc) (Entered: 11/05/2015) |
| 11/05/2015 | | 92 | Motion filed by Debtor Andre Bisasor to Waive Fee for Appeal. (lkaine, Usbc) (Entered: 11/05/2015) |
| 11/05/2015 | | 93 | Notice of Appeal to District Court Re: 91 Notice of Appeal and Statement of Election filed by Debtor Andre Bisasor. (lkaine, Usbc) (Entered: 11/05/2015) |
| 11/05/2015 | | 94 | Initial Transmittal to District Court (Re: 91 Notice of Appeal and Statement of Election to District Court filed by Debtor Andre Bisasor Re: 77 Order dated 10/21/15 (Re: 72 Emergency Motion for Contempt). (lkaine, Usbc) (Entered: 11/05/2015) |
| 11/06/2015 | | 95 | Endorsed Order dated 11/6/2015 Re: 92 Motion filed by Debtor Andre Bisasor to Waive Fee for Appeal. THE COURT WILL RULE ON THIS MOTION UPON THE DEBTOR'S FILING OF |

| | | | |
|---|---|---|---|
| | | | UPDATED SCHEDULES I AND J IN SUPPORT OF HIS REQUEST. (lkaine, Usbc) (Entered: 11/06/2015) |
| 11/06/2015 | | <u>96</u> | BNC Certificate of Mailing – PDF Document. (Re: <u>90</u> Order on Motion to Extend Time to Appeal Under Rule 8002(c)) Notice Date 11/06/2015. (Admin.) (Entered: 11/07/2015) |
| 11/07/2015 | | <u>97</u> | Statement of Issues , Appellant Designation of Contents For Inclusion in Record On Appeal Filed by Debtor Andre Bisasor (RE: <u>91</u> Notice of Appeal and Statement of Election). Appellee designation due by 11/23/2015. (Baker, David) (Entered: 11/07/2015) |
| 11/08/2015 | | <u>98</u> | BNC Certificate of Mailing – PDF Document. (Re: <u>95</u> Order on Motion to Waive) Notice Date 11/08/2015. (Admin.) (Entered: 11/09/2015) |
| 11/13/2015 | | 99 | Notice of Docketing Record on Appeal to District Court. Case Number: 15−13813 Re: <u>91</u> Notice of Appeal and Statement of Election filed by Debtor Andre Bisasor. (lkaine, Usbc) (Entered: 11/13/2015) |
| 11/16/2015 | | <u>100</u> | Motion filed by Debtor Andre Bisasor to Waive Appellate Fees. (lkaine, Usbc) (Entered: 11/17/2015) |
| 11/16/2015 | | <u>101</u> | Notice of Appeal and Statement of Election to District Court. Fee Amount $298. Filed by Debtor Andre Bisasor Re: <u>71</u> Order dated 10/19/15 (Re: <u>13</u> Motion for Relief From Stay filed by Creditor Greystar Management Services LP, <u>14</u> Motion for Relief From Stay filed by Creditor Greystar Management Services LP. Appellant Designation due by 11/30/2015. Compiled Records Due by 12/14/2015. Transmission of Designation Due by 12/16/2015. (lkaine, Usbc) (Entered: 11/17/2015) |
| 11/17/2015 | | <u>102</u> | Notice of Appeal to District Court Re: <u>101</u> Notice of Appeal and Statement of Election filed by Debtor Andre Bisasor. (lkaine, Usbc) (Entered: 11/17/2015) |
| 11/17/2015 | | <u>103</u> | Initial Transmittal to District Court Re: <u>101</u> Notice of Appeal and Statement of Election filed by Debtor Andre Bisasor. (lkaine, Usbc) (Entered: 11/17/2015) |
| 11/20/2015 | | <u>104</u> | Order dated 11/20/2015 Re: <u>100</u> Motion filed by Debtor Andre Bisasor to Waive Appellate Fees. THE COURT WILL RULE ON THIS MOTION UPON THE DEBTOR'S FILING OF UPDATED SCHDULES I AND J TO SUPPORT HIS REQUEST. THE COURT ALSO CONSTRUES THIS MOTION AS REQUEST FOR AN EXTENSION OF TIME TO FILE AMENDED SCHEDULES PURSUANT TO THE COURT'S ORDER DATED 11/06/15 (DOC. NO. 95), WHICH IS ALLOWED. THE DEBTOR SHALL FILE AMENDED SCHEDULES I AND J BY 11/27/15 TO SUPPORT HIS REQUEST UNDER THIS MOTION AND DOC. NO. 92. (lkaine, Usbc) (Entered: 11/20/2015) |
| 11/22/2015 | | <u>105</u> | BNC Certificate of Mailing – PDF Document. (Re: <u>104</u> Order on Motion to Waive) Notice Date 11/22/2015. (Admin.) (Entered: 11/23/2015) |

| | | | |
|---|---|---|---|
| 11/25/2015 | | 106 | Motion filed by Debtor Andre Bisasor to Extend Time to File Documents Re: 104 Order dated 11/20/2015 (Re: 100 Motion to Waive Appellate Fees).(lkaine, Usbc) (Entered: 11/27/2015) |
| 12/01/2015 | | 107 | Certification of Default Re: 101 Notice of Appeal and Statement of Election filed by Debtor Andre Bisasor. (lkaine, Usbc) (Entered: 12/01/2015) |
| 12/01/2015 | | 108 | Transmittal to District Court Re: 107 Certification of Default. (lkaine, Usbc) (Entered: 12/01/2015) |
| 12/01/2015 | | 109 | Endorsed Order dated 12/1/2015 Re: 106 Motion filed by Debtor Andre Bisasor to Extend Time to File Documents (Re: 100 Motion to Waive Appellate Fees). ALLOWED. (lkaine, Usbc) (Entered: 12/02/2015) |
| 12/02/2015 | | 110 | Transmittal of Complete Record on Appeal to District Court Re: 91 Notice of Appeal and Statement of Election filed by Debtor Andre Bisasor. (lkaine, Usbc) (Entered: 12/02/2015) |
| 12/02/2015 | | 111 | Transmittal of Addendum of Appeal Re: 91 Notice of Appeal and Statement of Election filed by Debtor Andre Bisasor. (lkaine, Usbc) (Entered: 12/02/2015) |
| 12/02/2015 | | 112 | Appellant Designation of Contents For Inclusion in Record On Appeal , Statement of Issues Filed by Debtor Andre Bisasor (RE: 101 Notice of Appeal and Statement of Election, 102 Notice of Appeal to District Court). Appellee designation due by 12/16/2015. (Baker, David) (Entered: 12/02/2015) |
| 12/04/2015 | | 113 | BNC Certificate of Mailing – PDF Document. (Re: 109 Order on Motion to Extend) Notice Date 12/04/2015. (Admin.) (Entered: 12/05/2015) |
| 12/08/2015 | | 114 | Appellant Designation of Contents For Inclusion in Record On Appeal *(Corrected)*, Statement of Issues *(Corrected)*, Filed by Debtor Andre Bisasor (RE: 101 Notice of Appeal and Statement of Election). Appellee designation due by 12/22/2015. (Baker, David) (Entered: 12/08/2015) |
| 12/09/2015 | | 115 | Notice of Docketing Record on Appeal to District Court Re: 101 Notice of Appeal and Statement of Election filed by Debtor Andre Bisasor. Case Number: 15−13964. (lkaine, Usbc) (Entered: 12/09/2015) |
| 12/09/2015 | | | Meeting of Creditors Held and Examination of Debtor *held on 12/9/2015, Debtor's Counsel appeared telephonically, Debtor did not appear.* (Bankowski−13, Carolyn) (Entered: 12/09/2015) |
| 12/18/2015 | | 116 | Notice of Settlement filed by Debtor Andre Bisasor. (lkaine, Usbc) (Entered: 12/18/2015) |

B 1 (Official Form 1) (1/08)

| United States Bankruptcy Court | Voluntary Petition |
|---|---|

**BISASOR, Andre**

| Name of Debtor (if individual, enter Last, First, Middle): | Name of Joint Debtor (Spouse) (Last, First, Middle): |
|---|---|
| All Other Names used by the Debtor in the last 8 years (include married, maiden, and trade names): | All Other Names used by the Joint Debtor in the last 8 years (include married, maiden, and trade names): |
| Last four digits of Soc. Sec. or Individual-Taxpayer I.D. (ITIN) No./Complete EIN (if more than one, state all): **9859** | Last four digits of Soc. Sec. or Individual-Taxpayer I.D. (ITIN) No./Complete EIN (if more than one, state all): |
| Street Address of Debtor (No. and Street, City, and State): **3000 Presidents Way #3413** **Dedham MA 02026** ZIP CODE | Street Address of Joint Debtor (No. and Street, City, and State): ZIP CODE |
| County of Residence or of the Principal Place of Business: **NORFOLK** | County of Residence or of the Principal Place of Business: |
| Mailing Address of Debtor (if different from street address): ZIP CODE | Mailing Address of Joint Debtor (if different from street address): ZIP CODE |
| Location of Principal Assets of Business Debtor (if different from street address above): ZIP CODE | |

*(Right margin stamp: 2015 AUG 27 PM 4 42 US BANKRUPTCY COURT)*

| Type of Debtor (Form of Organization) (Check one box.) | Nature of Business (Check one box.) | Chapter of Bankruptcy Code Under Which the Petition is Filed (Check one box.) |
|---|---|---|
| ☑ Individual (includes Joint Debtors) *See Exhibit D on page 2 of this form.* ☐ Corporation (includes LLC and LLP) ☐ Partnership ☐ Other (If debtor is not one of the above entities, check this box and state type of entity below.) | ☐ Health Care Business ☐ Single Asset Real Estate as defined in 11 U.S.C. § 101(51B) ☐ Railroad ☐ Stockbroker ☐ Commodity Broker ☐ Clearing Bank ☐ Other | ☐ Chapter 7 ☐ Chapter 15 Petition for Recognition of a Foreign Main Proceeding ☐ Chapter 9 ☐ Chapter 11 ☐ Chapter 12 ☐ Chapter 15 Petition for Recognition of a Foreign Nonmain Proceeding ☑ Chapter 13 |
| | **Tax-Exempt Entity** (Check box, if applicable.) ☐ Debtor is a tax-exempt organization under Title 26 of the United States Code (the Internal Revenue Code). | **Nature of Debts** (Check one box.) ☑ Debts are primarily consumer debts, defined in 11 U.S.C. § 101(8) as "incurred by an individual primarily for a personal, family, or household purpose." ☐ Debts are primarily business debts. |

| Filing Fee (Check one box.) | Chapter 11 Debtors |
|---|---|
| ☑ Full Filing Fee attached. ☐ Filing Fee to be paid in installments (applicable to individuals only). Must attach signed application for the court's consideration certifying that the debtor is unable to pay fee except in installments. Rule 1006(b). See Official Form 3A. ☐ Filing Fee waiver requested (applicable to chapter 7 individuals only). Must attach signed application for the court's consideration. See Official Form 3B. | Check one box: ☐ Debtor is a small business debtor as defined in 11 U.S.C. § 101(51D). ☐ Debtor is not a small business debtor as defined in 11 U.S.C. § 101(51D). Check if: ☐ Debtor's aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $2,190,000. ------------------------------------- Check all applicable boxes: ☐ A plan is being filed with this petition. ☐ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b). |

| Statistical/Administrative Information | THIS SPACE IS FOR COURT USE ONLY |
|---|---|
| ☐ Debtor estimates that funds will be available for distribution to unsecured creditors. ☐ Debtor estimates that, after any exempt property is excluded and administrative expenses paid, there will be no funds available for distribution to unsecured creditors. | |

Estimated Number of Creditors

| ☑ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
|---|---|---|---|---|---|---|---|---|---|
| 1-49 | 50-99 | 100-199 | 200-999 | 1,000-5,000 | 5,001-10,000 | 10,001-25,000 | 25,001-50,000 | 50,001-100,000 | Over 100,000 |

Estimated Assets

| ☑ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
|---|---|---|---|---|---|---|---|---|
| $0 to $50,000 | $50,001 to $100,000 | $100,001 to $500,000 | $500,001 to $1 million | $1,000,001 to $10 million | $10,000,001 to $50 million | $50,000,001 to $100 million | $100,000,001 to $500 million | $500,000,001 to $1 billion | More than $1 billion |

Estimated Liabilities

| ☐ | ☐ | ☑ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
|---|---|---|---|---|---|---|---|---|---|---|
| $0 to $50,000 | $50,001 to $100,000 | $100,001 to $500,000 | $500,001 to $1 million | $1,000,001 to $10 million | $10,000,001 to $50 million | $50,000,001 to $100 million | $100,000,001 to $500 million | $500,000,001 to $1 billion | More than $1 billion |

13

B 1 (Official Form 1) (1/08)                                                                    Page 2

| Voluntary Petition *(This page must be completed and filed in every case.)* | Name of Debtor(s): BISASOR, ANDRE |
|---|---|

**All Prior Bankruptcy Cases Filed Within Last 8 Years** (If more than two, attach additional sheet.)

| Location Where Filed: | N/A | Case Number: | Date Filed: |
|---|---|---|---|
| Location Where Filed: | | Case Number: | Date Filed: |

**Pending Bankruptcy Case Filed by any Spouse, Partner, or Affiliate of this Debtor** (If more than one, attach additional sheet.)

| Name of Debtor: | | Case Number: | Date Filed: |
|---|---|---|---|
| District: | | Relationship: | Judge: |

| Exhibit A | Exhibit B |
|---|---|
| (To be completed if debtor is required to file periodic reports (e.g., forms 10K and 10Q) with the Securities and Exchange Commission pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934 and is requesting relief under chapter 11.) | (To be completed if debtor is an individual whose debts are primarily consumer debts.) I, the attorney for the petitioner named in the foregoing petition, declare that I have informed the petitioner that [he or she] may proceed under chapter 7, 11, 12, or 13 of title 11, United States Code, and have explained the relief available under each such chapter. I further certify that I have delivered to the debtor the notice required by 11 U.S.C. § 342(b). |
| ☐ Exhibit A is attached and made a part of this petition. | X _____ Signature of Attorney for Debtor(s)     (Date) |

**Exhibit C**

Does the debtor own or have possession of any property that poses or is alleged to pose a threat of imminent and identifiable harm to public health or safety?

☐ Yes, and Exhibit C is attached and made a part of this petition.

☑ No.

**Exhibit D**

(To be completed by every individual debtor. If a joint petition is filed, each spouse must complete and attach a separate Exhibit D.)

☑ Exhibit D completed and signed by the debtor is attached and made a part of this petition.

If this is a joint petition:

☐ Exhibit D also completed and signed by the joint debtor is attached and made a part of this petition.

**Information Regarding the Debtor – Venue**
(Check any applicable box.)

☑ Debtor has been domiciled or has had a residence, principal place of business, or principal assets in this District for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other District.

☐ There is a bankruptcy case concerning debtor's affiliate, general partner, or partnership pending in this District.

☐ Debtor is a debtor in a foreign proceeding and has its principal place of business or principal assets in the United States in this District, or has no principal place of business or assets in the United States but is a defendant in an action or proceeding [in a federal or state court] in this District, or the interests of the parties will be served in regard to the relief sought in this District.

**Certification by a Debtor Who Resides as a Tenant of Residential Property**
(Check all applicable boxes.)

☑ Landlord has a judgment against the debtor for possession of debtor's residence. (If box checked, complete the following.)

RAR2 Jefferson at Dedham Station MA, Inc.
(Name of landlord that obtained judgment)

1000 Presidents Way, Dedham MA 02026
(Address of landlord)

☑ Debtor claims that under applicable nonbankruptcy law, there are circumstances under which the debtor would be permitted to cure the entire monetary default that gave rise to the judgment for possession, after the judgment for possession was entered, and

☑ Debtor has included with this petition the deposit with the court of any rent that would become due during the 30-day period after the filing of the petition.

☑ Debtor certifies that he/she has served the Landlord with this certification. (11 U.S.C. § 362(l)).

US BANKRUPTCY COURT
15 AUG 27 PM 4 42

| B 1 (Official Form) 1 (1/08) | | Page 3 |
|---|---|---|
| **Voluntary Petition**<br>*(This page must be completed and filed in every case.)* | | **Name of Debtor(s):**<br>BISASOR, Andre |

| Signatures | |
|---|---|

| **Signature(s) of Debtor(s) (Individual/Joint)** | **Signature of a Foreign Representative** |
|---|---|
| I declare under penalty of perjury that the information provided in this petition is true and correct.<br><br>[If petitioner is an individual whose debts are primarily consumer debts and has chosen to file under chapter 7] I am aware that I may proceed under chapter 7, 11, 12 or 13 of title 11, United States Code, understand the relief available under each such chapter, and choose to proceed under chapter 7.<br><br>[If no attorney represents me and no bankruptcy petition preparer signs the petition] I have obtained and read the notice required by 11 U.S.C. § 342(b).<br><br>I request relief in accordance with the chapter of title 11, United States Code, specified in this petition.<br><br>X _Andre Bisasor_<br>Signature of Debtor<br><br>X _____<br>Signature of Joint Debtor<br><br>Telephone Number (if not represented by attorney) 781-492-5675<br><br>Date 8/27/15 | I declare under penalty of perjury that the information provided in this petition is true and correct, that I am the foreign representative of a debtor in a foreign proceeding, and that I am authorized to file this petition.<br><br>(Check only one box.)<br><br>☐ I request relief in accordance with chapter 15 of title 11, United States Code. Certified copies of the documents required by 11 U.S.C. § 1515 are attached.<br><br>☐ Pursuant to 11 U.S.C. § 1511, I request relief in accordance with the chapter of title 11 specified in this petition. A certified copy of the order granting recognition of the foreign main proceeding is attached.<br><br>X _____<br>(Signature of Foreign Representative)<br><br>_____<br>(Printed Name of Foreign Representative)<br><br>Date _____ |

| **Signature of Attorney*** | **Signature of Non-Attorney Bankruptcy Petition Preparer** |
|---|---|
| X _____<br>Signature of Attorney for Debtor(s)<br><br>Printed Name of Attorney for Debtor(s)<br><br>Firm Name<br><br>Address<br>_____<br>_____<br><br>Telephone Number<br><br>Date<br><br>*In a case in which § 707(b)(4)(D) applies, this signature also constitutes a certification that the attorney has no knowledge after an inquiry that the information in the schedules is incorrect. | I declare under penalty of perjury that: (1) I am a bankruptcy petition preparer as defined in 11 U.S.C. § 110; (2) I prepared this document for compensation and have provided the debtor with a copy of this document and the notices and information required under 11 U.S.C. §§ 110(b), 110(h), and 342(b); and, (3) if rules or guidelines have been promulgated pursuant to 11 U.S.C. § 110(h) setting a maximum fee for services chargeable by bankruptcy petition preparers, I have given the debtor notice of the maximum amount before preparing any document for filing for a debtor or accepting any fee from the debtor, as required in that section. Official Form 19 is attached.<br><br>Printed Name and title, if any, of Bankruptcy Petition Preparer<br><br>Social-Security number (If the bankruptcy petition preparer is not an individual, state the Social-Security number of the officer, principal, responsible person or partner of the bankruptcy petition preparer.) (Required by 11 U.S.C. § 110.)<br><br>Address<br><br>X _____<br><br>Date |

| **Signature of Debtor (Corporation/Partnership)** | |
|---|---|
| I declare under penalty of perjury that the information provided in this petition is true and correct, and that I have been authorized to file this petition on behalf of the debtor.<br><br>The debtor requests the relief in accordance with the chapter of title 11, United States Code, specified in this petition.<br><br>X _____<br>Signature of Authorized Individual<br><br>Printed Name of Authorized Individual<br><br>Title of Authorized Individual<br><br>Date | Signature of bankruptcy petition preparer or officer, principal, responsible person, or partner whose Social-Security number is provided above.<br><br>Names and Social-Security numbers of all other individuals who prepared or assisted in preparing this document unless the bankruptcy petition preparer is not an individual.<br><br>If more than one person prepared this document, attach additional sheets conforming to the appropriate official form for each person.<br><br>*A bankruptcy petition preparer's failure to comply with the provisions of title 11 and the Federal Rules of Bankruptcy Procedure may result in fines or imprisonment or both. 11 U.S.C. § 110; 18 U.S.C. § 156.* |

US BANKRUPTCY COURT 2015 AUG 27 PM 4

B 1D (Official Form 1, Exhibit D) (12/09)

# UNITED STATES BANKRUPTCY COURT

In re _Andre Bisasor_        Case No._____
        Debtor                                   (if known)

## EXHIBIT D - INDIVIDUAL DEBTOR'S STATEMENT OF COMPLIANCE WITH CREDIT COUNSELING REQUIREMENT

**Warning: You must be able to check truthfully one of the five statements regarding credit counseling listed below. If you cannot do so, you are not eligible to file a bankruptcy case, and the court can dismiss any case you do file. If that happens, you will lose whatever filing fee you paid, and your creditors will be able to resume collection activities against you. If your case is dismissed and you file another bankruptcy case later, you may be required to pay a second filing fee and you may have to take extra steps to stop creditors' collection activities.**

*Every individual debtor must file this Exhibit D. If a joint petition is filed, each spouse must complete and file a separate Exhibit D. Check one of the five statements below and attach any documents as directed.*

☑ 1. Within the 180 days **before the filing of my bankruptcy case**, I received a briefing from a credit counseling agency approved by the United States trustee or bankruptcy administrator that outlined the opportunities for available credit counseling and assisted me in performing a related budget analysis, and I have a certificate from the agency describing the services provided to me. *Attach a copy of the certificate and a copy of any debt repayment plan developed through the agency.*

☐ 2. Within the 180 days **before the filing of my bankruptcy case**, I received a briefing from a credit counseling agency approved by the United States trustee or bankruptcy administrator that outlined the opportunities for available credit counseling and assisted me in performing a related budget analysis, but I do not have a certificate from the agency describing the services provided to me. *You must file a copy of a certificate from the agency describing the services provided to you and a copy of any debt repayment plan developed through the agency no later than 14 days after your bankruptcy case is filed.*

B 1D (Official Form 1, Exh. D) (12/09) – Cont.

     ☐ 3. I certify that I requested credit counseling services from an approved agency but was unable to obtain the services during the seven days from the time I made my request, and the following exigent circumstances merit a temporary waiver of the credit counseling requirement so I can file my bankruptcy case now.  *[Summarize exigent circumstances here.]*

**If your certification is satisfactory to the court, you must still obtain the credit counseling briefing within the first 30 days after you file your bankruptcy petition and promptly file a certificate from the agency that provided the counseling, together with a copy of any debt management plan developed through the agency.  Failure to fulfill these requirements may result in dismissal of your case.  Any extension of the 30-day deadline can be granted only for cause and is limited to a maximum of 15 days.  Your case may also be dismissed if the court is not satisfied with your reasons for filing your bankruptcy case without first receiving a credit counseling briefing.**

     ☐ 4. I am not required to receive a credit counseling briefing because of:  *[Check the applicable statement.]  [Must be accompanied by a motion for determination by the court.]*

          ☐ Incapacity.  (Defined in 11 U.S.C. § 109(h)(4) as impaired by reason of mental illness or mental deficiency so as to be incapable of realizing and making rational decisions with respect to financial responsibilities.);

          ☐ Disability.  (Defined in 11 U.S.C. § 109(h)(4) as physically impaired to the extent of being unable, after reasonable effort, to participate in a credit counseling briefing in person, by telephone, or through the Internet.);

          ☐ Active military duty in a military combat zone.

     ☐ 5. The United States trustee or bankruptcy administrator has determined that the credit counseling requirement of 11 U.S.C. § 109(h) does not apply in this district.

     **I certify under penalty of perjury that the information provided above is true and correct.**

          Signature of Debtor:  *Andre Brooer*

          Date:  8 / 27 / 15

Certificate Number: 00134-MA-CC-026020802

||||||||||||||||||||||||||||||||||||||||||||||||||||||||

00134-MA-CC-026020802

# CERTIFICATE OF COUNSELING

I CERTIFY that on <u>August 10, 2015</u>, at <u>8:28</u> o'clock <u>PM EDT</u>, <u>Andre Bisasor</u> received from <u>Cricket Debt Counseling</u>, an agency approved pursuant to 11 U.S.C. § 111 to provide credit counseling in the <u>District of Massachusetts</u>, an individual [or group] briefing that complied with the provisions of 11 U.S.C. §§ 109(h) and 111.

A debt repayment plan <u>was not prepared</u>. If a debt repayment plan was prepared, a copy of the debt repayment plan is attached to this certificate.

This counseling session was conducted <u>by internet</u>.

Date: <u>August 10, 2015</u>          By:     <u>/s/Taylor Frazier</u>

                                  Name:  <u>Taylor Frazier</u>

                                  Title:   <u>Counselor</u>

* Individuals who wish to file a bankruptcy case under title 11 of the United States Bankruptcy Code are required to file with the United States Bankruptcy Court a completed certificate of counseling from the nonprofit budget and credit counseling agency that provided the individual the counseling services and a copy of the debt repayment plan, if any, developed through the credit counseling agency. *See* 11 U.S.C. §§ 109(h) and 521(b).

Bank of America, N.A.
SAN ANTONIO, TX
Date  08/11/15 02:07:13 PM

Void After 90 Days

30-1/1140
NTX

Pay    BANK OF AMERICA  THREE NINE ZERO  CTS CTS    ***$390.00

To The Order Of  RAR2 Jefferson at Dedham Station MA, Inc.

Not Valid Over $1,000

0003    0081368    0103    TREMONT STREET

Bank of America is not liable for lost or stolen Money Orders. For your protection against loss or theft, sign and complete this Money Order as soon as possible.

Andre Bisasor
Signature of Purchaser (Drawer)
Andre Bisasor
Name of Purchaser (Drawer)
3000 Presidents Way #3413, Dedham MA 02021
Address    City, State, Zip

⑈143390518 2⑈ ⑆111400001 9⑆ 00 1641005396⑈

THE ORIGINAL DOCUMENT HAS A REFLECTIVE WATERMARK ON THE BACK.   HOLD AT AN ANGLE TO VIEW WHEN CHECKING THE ENDORSEMENTS.

Bank of America    Personal Money Order    No.  1433905181

Bank of America, N.A.
SAN ANTONIO, TX
Date  08/11/15 02:07:13 PM

Void After 90 Days

30-1/1140
NTX

Pay    BANK OF AMERICA  ONE ZERO ZERO ZERO  CTS CTS    ***$1,000.00

To The Order Of  RAR2 Jefferson at Dedham Station MA, Inc.

Not Valid Over $1,000

0003    0081368    0103    TREMONT STREET

Bank of America is not liable for lost or stolen Money Orders. For your protection against loss or theft, sign and complete this Money Order as soon as possible.

Andre Bisasor
Signature of Purchaser (Drawer)
Andre Bisasor
Name of Purchaser (Drawer)
3000 Presidents Way #3413, Dedham MA 02026
Address    City, State, Zip

⑈143390518 1⑈ ⑆111400001 9⑆ 00 1641005396⑈

THE ORIGINAL DOCUMENT HAS A REFLECTIVE WATERMARK ON THE BACK.   HOLD AT AN ANGLE TO VIEW WHEN CHECKING THE ENDORSEMENTS.

Bank of America    Personal Money Order    No.  1433905180

Bank of America, N.A.
SAN ANTONIO, TX
Date  08/11/15 02:07:13 PM

Void After 90 Days

30-1/1140
NTX

Pay    BANK OF AMERICA  ONE ZERO ZERO ZERO  CTS CTS    ***$1,000.00

To The Order Of  RAR2 Jefferson at Dedham Station MA, Inc.

Not Valid Over $1,000

0003    0081368    0103    TREMONT STREET

Bank of America is not liable for lost or stolen Money Orders. For your protection against loss or theft, sign and complete this Money Order as soon as possible.

Andre Bisasor
Signature of Purchaser (Drawer)
Andre Bisasor
Name of Purchaser (Drawer)
3000 Presidents Way #3413, Dedham MA 02026
Address    City, State, Zip

⑈143390518 0⑈ ⑆111400001 9⑆ 00 1641005396⑈

| JUDGMENT FOR PLAINTIFF(S) FOR POSSESSION AND RENT | DOCKET NUMBER **1554SU000028** | Trial Court of Massachusetts District Court Department Summary Process Session |
|---|---|---|

Greystar Management Services, L.P. As officer of or agent for Owner RAR2 Jefferson at Dedham Station MA, Inc. v. Andre Bisasor

**SUBJECT PREMISES**
2000 President's Way #2216, Dedham, MA 02026

**PLAINTIFF(S) WHO ARE PARTIES TO THIS JUDGMENT**
Greystar Management Services, L.P. As officer of or agent for Owner RAR2 Jefferson at Dedham Station MA, Inc.

**COURT NAME & ADDRESS**
Dedham District Court
631 High Street
Dedham, MA 02026

**DEFENDANT(S) WHO ARE PARTIES TO THIS JUDGMENT**
Andre Bisasor
Natalie Anderson

**NEXT COURT EVENT (IF ANY)**
**Status Review**

**06/08/2015 at 09:00 AM**
**Summary Process Session**

**ATTORNEY (OR PRO SE PARTY) TO WHOM THIS COPY OF JUDGMENT IS ISSUED**
File Copy

**FURTHER ORDERS OF THE COURT**

## JUDGMENT FOR PLAINTIFF(S) FOR POSSESSION AND RENT

On the above action , after default, the issues having been duly tried or heard, and a finding or verdict having been duly rendered, IT IS ORDERED AND ADJUDGED by the Court (Hon. Robert P Ziemian ) that the plaintiff(s) named above recover of the Defendant(s) named above possession of the subject premises shown above and, for unpaid rent, use and occupation, the "Judgment Total" shown below plus other costs as may be taxed pursuant to law, with postjudgment interest thereon pursuant to G.L. c. 235, § 8 at the "Annual Interest Rate" shown below from the "Date Judgment Entered" shown below until the date of payment.

## NOTICE OF ENTRY OF JUDGMENT

Pursuant to Mass. R. Civ. P. 54, 58, 77(d) and 79(a) and Uniform Summary Process Rule 10(d),  this Judgment has been entered on the docket on the "Date Judgment Entered" shown below, and this notice is being sent to all parties.

| | |
|---|---|
| 1.  Date of Breach, Demand or Complaint | 02/11/2015 |
| 2.  Date Judgment Entered | 05/27/2015 |
| 3.  Number of Days of Prejudgment Interest *(line 2 - Line1)* | 105 |
| 4.  Annual Interest Rate of 0.12/365.25 = Daily Interest rate | .000329 |
| 5.  Single Damages | $ |
| 6.  Prejudgment Interest   *(lines 3x4x5)* | $ |
| 7.  Double or Treble Damages Awarded by Court *(where authorized by law)* | $ |
| 8.  Costs Awarded by Court | $.00 |
| 9.  Attorney Fees Awarded by Court *(where authorized by law)* | $ |
| 10. **JUDGMENT TOTAL PAYABLE TO PLAINTIFF(S)** *(Lines 5+6+7+8+9)* | $0.00 |

| DATE JUDGMENT ENTERED | CLERK-MAGISTRATE/ASST. CLERK |
|---|---|
| 05/27/2015 | X |

021

| JUDGMENT FOR PLAINTIFF(S) FOR POSSESSION AND RENT | DOCKET NUMBER 1554SU000026 | Trial Court of Massachusetts District Court Department Summary Process Session  |
|---|---|---|

Greystar Management Services, L.P. As officer of or agent for Owner RAR2 Jefferson at Dedham Station MA, Inc. v. Andre Bisasor

**SUBJECT PREMISES**
3000 President's Way #3413, Dedham, MA 02026

| PLAINTIFF(S) WHO ARE PARTIES TO THIS JUDGMENT | COURT NAME & ADDRESS |
|---|---|
| Greystar Management Services, L.P. As officer of or agent for Owner RAR2 Jefferson at Dedham Station MA, Inc. | Dedham District Court 631 High Street Dedham, MA 02026 |

| DEFENDANT(S) WHO ARE PARTIES TO THIS JUDGMENT | NEXT COURT EVENT (IF ANY) |
|---|---|
| Andre Bisasor Natalie Anderson | **Status Review** **06/08/2015 at 09:00 AM** **Summary Process Session** |

| ATTORNEY (OR PRO SE PARTY) TO WHOM THIS COPY OF JUDGMENT IS ISSUED | FURTHER ORDERS OF THE COURT |
|---|---|
| File Copy | |

### JUDGMENT FOR PLAINTIFF(S) FOR POSSESSION AND RENT

On the above action , after default, the issues having been duly tried or heard, and a finding or verdict having been duly rendered, IT IS ORDERED AND ADJUDGED by the Court (Hon. Robert P Ziemian ) that the plaintiff(s) named above recover of the Defendant(s) named above possession of the subject premises shown above and, for unpaid rent, use and occupation, the "Judgment Total" shown below plus other costs as may be taxed pursuant to law, with postjudgment interest thereon pursuant to G.L. c. 235, § 8 at the "Annual Interest Rate" shown below from the "Date Judgment Entered" shown below until the date of payment.

### NOTICE OF ENTRY OF JUDGMENT

Pursuant to Mass. R. Civ. P. 54, 58, 77(d) and 79(a) and Uniform Summary Process Rule 10(d), this Judgment has been entered on the docket on the "Date Judgment Entered" shown below, and this notice is being sent to all parties.

| | |
|---|---|
| 1. Date of Breach, Demand or Complaint | 02/11/2015 |
| 2. Date Judgment Entered | 05/27/2015 |
| 3. Number of Days of Prejudgment Interest *(line 2 - Line1)* | 105 |
| 4. Annual Interest Rate of 0.12/365.25 = Daily Interest rate | .000329 |
| 5. Single Damages | $31,070.00 |
| 6. Prejudgment Interest *(lines 3x4x5)* | $1,073.31 |
| 7. Double or Treble Damages Awarded by Court *(where authorized by law)* | $ |
| 8. Costs Awarded by Court | $280.00 |
| 9. Attorney Fees Awarded by Court *(where authorized by law)* | $ |
| 10. **JUDGMENT TOTAL PAYABLE TO PLAINTIFF(S)** *(Lines 5+6+7+8+9)* | $32,423.31 |

| DATE JUDGMENT ENTERED 05/27/2015 | CLERK-MAGISTRATE/ASST. CLERK X |
|---|---|

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re    Andre Bisasor | Chapter: 13 |
| | Case No: 15-13369 |
|     Debtor | Judge Joan N. Feeney |

## COURT NOTICE RELEASING RENTAL DEPOSIT

**NOTICE IS HEREBY GIVEN** that the Debtor has filed with the Court a *Certification of Intent to Cure* which states that there are circumstances under which he/she would be permitted to cure the entire monetary default that gave rise to the landlord's judgment. Additionally, the Debtor has deposited with the Clerk the rent payment in the amount of $2390.00 that would come due during the 30 day period after the filing of the debtor's bankruptcy petition.

The Clerk of the U.S. Bankruptcy Court has released the rental deposit held by the Court to the landlord identified in the Debtor's Certification, said deposit to be delivered via certified mail to the landlord at the address provided.

**NOTICE IS HEREBY GIVEN** that within 30 days of filing the voluntary petition, the debtor must file with the Court and serve upon the landlord, a second certification that the entire monetary default giving rise to the judgment has been paid to the landlord.

Date: 8/28/15

By the Court,

Yvonne Woodbury
Deputy Clerk
617-748-5340

## COURT'S CERTIFICATE OF MAILING

Certificate of Mailing by 'Certified U.S. Mail Postage Paid, Receipt Requested' on 8/28/15 of Notice Releasing Rental Deposit and Deposit in the amount of $2390.00 to the following parties:

**Debtor Name and Address:**
Andre Bisasor
3000 Presidents Way #3413
Dedham, MA 02026

**Landlord Name and Address:**
RAR 2 Jefferson at Dedham
Station MA, Inc.
1000 Presidents Way
Dedham, MA 02026

**Debtor's Counsel:**
Andre Bisasor
3000 Presidents Way #3413
Dedham, MA 02026

Date of Mailing:8/28/15

By the Court,

Yvonne Woodbury
Deputy Clerk
617-748-5340

6-5

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| In Re: | ) | |
| | ) | |
| Andre Bisasor, | ) | Chapter  13 |
| | ) | Case No.  15-13369 |
| Debtor | ) | |
| | ) | |

## OBJECTION TO DEBTOR'S CERIFICATION PURSUANT TO 11 U.S.C. 362(*l*)(l)(A)
### *OR IN THE ALTERNATIVE*
## GREYSTAR MANAGEMENT SERVICES LP AS AGENT FOR OWNER RAR2 JEFFERSON AT DEDHAM STATION MA INC. REQUEST FOR RELIEF FROM THE AUTOMATIC STAY REGARDING APARTMENT #3413

### (EXPEDITED DETERMINATION REQUESTED)

TO THE HONORABLE JOAN N. FEENEY, BANKRUPTCY JUDGE FOR THE REFERENCED MATTER:

Now comes Greystar Management Services LP as agent for Owner RAR2 Jefferson at Dedham Station MA Inc. ("Greystar"), a creditor in the above-captioned proceeding, and hereby respectfully objects to the Debtor's Certification pursuant to 11 U.S.C. §362(*l*)(1)(A).  The Debtor's certification fails because, as more fully described below and in the accompanying Affidavit of Greystar's Manager, there are no circumstances under which this Debtor will be able to cure the monetary default that gives rise to the Judgment for Possession.

Alternatively, in the event that this Court finds that the Defendant is entitled to the protections of 11 U.S.C. §362(1) Greystar respectfully moves this Court pursuant to 11 U.S.C. §362(d), for Relief from the Automatic Stay, so as to permit the movant to exercise and pursue all of the rights and remedies available to it in accordance with state law, including, but not limited to, recovery of possession of the subject apartment located at 3000 Presidents Way, Unit #3413, Dedham, MA ("Leased Premises") and in a companion filing, requests recovery of

1

possession of the temporary apartment located at 2000 Presidents Way, Unit #2216, Dedham,

MA ("Temporary Premises").

As reasons therefore, Greystar states:

1. On August 27, 2015 at 4:51 p.m. the Debtor filed a bankruptcy petition under Chapter 13 of the Bankruptcy Code. As a result, an order of relief was entered and all proceedings against the Debtor and his estate were stayed pursuant to 11 U.S.C. § 362(a).

2. Greystar is the Plaintiff in <u>Greystar Management Services LP as agent for Owner RAR2 Jefferson at Dedham Station MA Inc. v. Andre Bisasor and Natalie Anderson</u>, Dedham District Court, Docket No. 15-SU-0026 for the Leased Premises which was served upon the Debtor on February 2, 2015 and entered on February 9, 2015 seeking to evict the Debtor from his apartment due to nonpayment of rent.

3. Greystar terminated the Lease for the premises by Notice to Quit on December 23, 2014. There is no possibility that movant would re-instate this tenancy with the Debtor.

4. The Debtor failed to appear at a hearing, the Court defaulted the Debtor and Judgment entered for the Plaintiffs on May 27, 2015. Attached hereto **Exhibit A** (Judgment) and **Exhibit B** (Memorandum of the Honorable Judge Ziemian for Decision Concerning Entry of Default Judgment).

5. Debtor filed a Notice of Appeal regarding the entry of default and a request for a waiver of the appeal bond on June 8, 2015. The appeal bond waiver was denied and the bond was set by the court on June 8, 2015 in the amount of the $32,000.00 representing 13 months of rent that were unpaid by the Debtor for the Leased Premises.

6. The Debtor requested a review of the appeal bond pursuant to MGL ch. 239 §5 and that hearing was held on July 8, 2015 at which time the Appellate Division upheld the waiver denial, increased the bond to reflect an additional two months of rent and required payment of use and occupancy during the pending appeal. Attached hereto **Exhibit C**.

7. The Debtor failed to post the bond or pay the use and occupancy required for August 2015 and the Execution issued on August 7, 2015. Attached hereto **Exhibit D**.

8. The Debtor was served with more than 48 hours notice that the levy was to take place on Wednesday August 12, 2015. The Debtor sought a stay of Execution in the Dedham District Court and filed a Notice of Appeal on August 7, 2015. The stay request was denied on August 10, 2015. Attached hereto **Exhibit E.**

9. The Debtor sought relief from the Appeals Court on August 11, 2015. A temporary stay was imposed until a full hearing on August 14, 2015, at which time the Honorable Judge Katzman denied the request, but held the temporary stay in place until August 27, 2015,

allowing Greystar to levy on Friday August 28, 2015 without further constable notice. Attached hereto **Exhibit F**.

10. The Debtor filed an Emergency Petition in the Supreme Judicial Court on August 27, 2015 seeking relief pursuant MGL ch 211§3, which was denied by the Honorable Judge Duffly at approximately 4:00 p.m.. Attached hereto **Exhibit G**.

11. According to the United States Bankruptcy Court Docket, the Debtor filed the present Bankruptcy Petition on August 27, 2015 at 4:51 p.m., included with that petition was a Certification of Intent to Cure Monetary Default for Residential Property and Rental Deposit in which the Debtor claims that "under applicable nonbankruptcy law, there are circumstances under which the debtor would be permitted to cure the entire monetary default that gave rise to the judgment for possession, after the judgment for possession was entered".

12. Pursuant to MGL ch. 239 §3 states:
    *". . . the plaintiff shall not be required to accept full satisfaction of the money judgment. Any refusal by the plaintiff to accept full satisfaction of the money judgment under this paragraph shall not be a bar to the enforcement of said judgment in any lawful manner."*

13. The movant-Landlord is not required to accept full satisfaction of the underlying money judgment if tendered by the Debtor with current use and occupancy included. There are no set of circumstances in which Greystar would accept full satisfaction of the underlying money judgment, per the attached Affidavit of Greystar Manager Laura Donahue, and therefore there are no circumstances in which the Debtor will be able to cure the underlying summary process case regarding apartment #3413. Attached hereto **Exhibit H.**

14. The Debtor should not be allowed to file bankruptcy as a means to postpone eviction, after exhausting all of his State Appellate rights seeking to postpone the levy. The Debtor holds no equity in the property as all rights have been terminated by a Notice to Quit and the Judgment in the Eviction Action, and the Leased Premises are not necessary to an effective reorganization.

**WHEREFORE**, Greystar respectfully requests that this Court:

A. Sustain Greystar's Objection to the Certification under §362(*l*)(3)(A), and order that Section §362(b)(22) shall apply immediately and relief from the stay of §362(a) shall not be required to enable Greystar to complete the process to recover full possession of the Temporary Premises; and in the alternative,

B. Enter an order affording it relief from the automatic stay in order to allow Movant

to exercise any and all of its rights and remedies under state law, including, but

not limited to, taking possession of the Leased Premises forthwith.

Respectfully submitted
Greystar Management Services LP
as agent for owner RAR2-Jefferson at
Dedham Station MA, Inc.
By its attorneys,
ASHTON LAW, P.C

Donna M. Ashton
BBO# 634984
28 Church Street, Suite 10
Winchester, Massachusetts 01890
(781) 756-6600
dma@ashton-law.com

Dated: September 2, 2015

## CERTIFICATE OF SERVICE

I, Donna M. Ashton, hereby certify that on this 2nd day of September, 2015, copies of the foregoing:

OBJECTION TO DEBTOR'S CERIFICATION PURSUANT TO 11 U.S.C. 362(*l*)(l)(A)
*OR IN THE ALTERNATIVE*
GREYSTAR MANAGEMENT SERVICES LP AS AGENT FOR OWNER RAR2 JEFFERSON
AT DEDHAM STATION MA INC. REQUEST FOR RELIEF FROM THE AUTOMATIC
STAY REGARDING APARTMENT #3413
(EXPEDITED DETERMINATION REQUESTED)

And

PROPOSED ORDER

were served upon the following parties of interest by emailing a copy and mailing a copy, first class, postage prepaid to the following:

Trustee:

Carolyn Bankowski-13
Chapter 13 Trustee Boston
P.O Box 8250
Boston, MA 02114
cbankowski@ch13boston.com

Debtor:

Andre Bisasor
3000 Presidents Way, Apt. #3413
Dedham, Ma Suite 02026
quickquantum@aol.com

Assistant US Trustee:

John P. Fitzgerald
John. W. McCormack Post Office and Court House
5 Post Office Square, 10th Floor, Suite 1000
Boston, MA 02109-3945

Donna M. Ashton, Esq.

# EXHIBIT A

| JUDGMENT FOR PLAINTIFF(S) FOR POSSESSION AND RENT | DOCKET NUMBER **1554SU000026** | Trial Court of Massachusetts District Court Department Summary Process Session |
|---|---|---|

Greystar Management Services, L.P. As officer of or agent for Owner RAR2 Jefferson at Dedham Station MA, Inc. v. Andre Bisasor

**SUBJECT PREMISES**
3000 President's Way #3413, Dedham, MA 02026

| PLAINTIFF(S) WHO ARE PARTIES TO THIS JUDGMENT | COURT NAME & ADDRESS |
|---|---|
| Greystar Management Services, L.P. As officer of or agent for Owner RAR2 Jefferson at Dedham Station MA, Inc. | Dedham District Court 631 High Street Dedham, MA 02026 |

| DEFENDANT(S) WHO ARE PARTIES TO THIS JUDGMENT | NEXT COURT EVENT (IF ANY) |
|---|---|
| Andre Bisasor Natalie Anderson | **Status Review** **06/08/2015 at 09:00 AM** **Summary Process Session** |

| ATTORNEY (OR PRO SE PARTY) TO WHOM THIS COPY OF JUDGMENT IS ISSUED | FURTHER ORDERS OF THE COURT |
|---|---|
| Donna M. Ashton, Esq. Ashton Law PC 28 Church Street Suite #10 Winchester, MA 01890 | |

### JUDGMENT FOR PLAINTIFF(S) FOR POSSESSION AND RENT

On the above action , after default, the issues having been duly tried or heard, and a finding or verdict having been duly rendered, IT IS ORDERED AND ADJUDGED by the Court (Hon. Robert P Ziemian ) that the plaintiff(s) named above recover of the Defendant(s) named above possession of the subject premises shown above and, for unpaid rent, use and occupation, the "Judgment Total" shown below plus other costs as may be taxed pursuant to law, with postjudgment interest thereon pursuant to G.L. c. 235, § 8 at the "Annual Interest Rate" shown below from the "Date Judgment Entered" shown below until the date of payment.

### NOTICE OF ENTRY OF JUDGMENT

Pursuant to Mass. R. Civ. P. 54, 58, 77(d) and 79(a) and Uniform Summary Process Rule 10(d), this Judgment has been entered on the docket on the "Date Judgment Entered" shown below, and this notice is being sent to all parties.

| | |
|---|---:|
| 1. Date of Breach, Demand or Complaint | 02/11/2015 |
| 2. Date Judgment Entered | 05/27/2015 |
| 3. Number of Days of Prejudgment Interest (line 2 - Line1) | 105 |
| 4. Annual Interest Rate of 0.12/365.25 = Daily Interest rate | .000329 |
| 5. Single Damages | $31,070.00 |
| 6. Prejudgment Interest  (lines 3x4x5) | $1,073.31 |
| 7. Double or Treble Damages Awarded by Court (where authorized by law) | $ |
| 8. Costs Awarded by Court | $280.00 |
| 9. Attorney Fees Awarded by Court (where authorized by law) | $ |
| 10. **JUDGMENT TOTAL PAYABLE TO PLAINTIFF(S)** (Lines 5+6+7+8+9) | $32,423.31 |

| DATE JUDGMENT ENTERED 05/27/2015 | CLERK-MAGISTRATE/ASST. CLERK X | |
|---|---|---|

021    www.mass.gov/courts    Date/Time Printed: 05-27-2015 08:32:23

# EXHIBIT B

# COMMONWEALTH OF MASSACHUSETTS
## DISTRICT COURT DEPARTMENT OF THE TRIAL COURT

NORFOLK, ss.                                          DEDHAM DIVISION

|  |  |
|---|---|
| GREYSTAR MANAGEMENT ) | |
| SERVICES LP as agent for ) | |
| RAR2 JEFFERSON AT DEDHAM ) | |
| STATION-MA, INC., ) | |
|       Plaintiff ) | |
| ) | **DOCKET NO. 1554 SU 0026** |
| ) | **DOCKET NO. 1554 SU 0028** |
| v. ) | |
| ) | |
| ANDRE BISASOR and ) | |
| NATALIE ANDERSON, ) | |
|       Defendants ) | |
| ) | |

## MEMORANDUM OF DECISION CONCERNING
## ENTRY OF DEFAULT JUDGMENT

From an examination of the court papers and filings, the court makes the following findings:

1.  The Entry Date in these cases was 9 February 2015, with an intended trial date of 19 February 2015.

2.  The case was not tried on 19 February 2015 and after a series of events, (i.e. motions, agreements to continue the trial and various filings), the case was scheduled for trial on 14 May 2015 and marked to have no further continuances.

3.  On Monday, 11 May 2015, the defendant filed discovery that would ordinarily continue the case for two weeks.

4.  Numerous motions were then filed by both plaintiff and defendants in both cases.

5.  However, despite Judge Pomarole's order that the cases be tried on 14 May with no further continuances, a visiting Judge allowed the cases to be continued again until 28 May 2015 for trial.

6. At this point, the cases were specially assigned to this Court to be tried on 28 May 2015.

7. The parties appeared on 21 May 2015 for the court to consider all pretrial matters prior to the trial date, and the court at that time informed all parties that the case would proceed on 28 May 2015 for jury or non-jury waived trial with again no further continuances.

8. On 21 May 2015, court congestion did not allow all pretrial matters to be completed and the court ordered both parties to appear on 26 May 2015 to dispose of all pretrial matters/motions and that the case would be tried on 28 May 2015 until completed.

9. On 21 May 2015 the defendant Andre Bisasor did complain of illness. The court observed no signs of illness and in fact, the defendant appeared to be in good health and argued especially effectively on that date.

10 On 26 May 2015, neither defendant appeared to complete all pretrial matters. The defendants were defaulted and default judgment entered on 27 May 2015 for possession of the premises in both cases and additionally, for damages in case 1554 SU 0026.

11. At 08:44 am on 26 May 2015, the court received a fax of an Affidavit and Motion with a note on a prescription slip that stated that defendant Bisasor could not appear on 26 May 2015. This note was dated 22 May 2015. The motion requested a minimum of a 10 day continuance of the trial. This motion was denied.

12. On 8 June 2015, the defendants filed numerous motions and a hospital memorandum was provided concerning defendant Andre Bisasor's hospital stay. No objective medical record was provided.

13. The only medical record provided by the defendants was the "discharge and summary", which reflects subjective symptoms.

14. The court finds that the failure of both defendants to appear on 26 May 2015 was a deliberate attempt to further continue the trial of this matter because of the court's earlier order that there be no further continuances of the trial.

Dated: 7/2/15

Hon. Robert Ziemian, Associate Justice

# EXHIBIT C



COPY

COMMONWEALTH OF MASSACHUSETTS
APPELLATE DIVISION OF THE DISTRICT COURT DEPARTMENT
SOUTHERN DISTRICT

NORFOLK, SS.                                                    APPELLATE DIVISION

GREYSTAR MANAGEMENT SERVICES, L.P.,
AS OFFICER OF OR AGENT FOR OWNER RAR2 JEFFERSON
AT DEDHAM STATION MA, INC.
V. NATALIE ANDERSON AND ANDRE BISASOR
Appellate Division No. 15-ADMS-60010
Dedham Division No. 1554SU0026

GREYSTAR MANAGEMENT SERVICES, L.P.,
AS OFFICER OF OR AGENT FOR OWNER RAR2 JEFFERSON
AT DEDHAM STATION MA, INC.
V. NATALIE ANDERSON AND ANDRE BISASOR
Appellate Division No. 15-ADMS-60011
Dedham Division No. 1554SU0028

## DECISION AND ORDER

This summary process action came on to Appellate Division, Southern District, sitting in Fall River, on the defendants' G.L. c. 239, § 5 appeal of the trial court's June 8, 2015 order denying the defendants' motion for waiver of the appeal bond in each case and setting such bond in the amount of $32,000.00 for both cases.

Written and telephone notice was provided to the parties on July 1, 2015 of a hearing before this Division on July 8, 2015. On July 6, 2015, the defendants moved to continue the hearing, which the plaintiff opposed on July 7, 2015. The hearing went forward on July 8, 2015, and only the plaintiff's counsel appeared. Following the hearing, the defendants filed a motion for rehearing on July 9, 2015, and an affidavit in support of the motion on July 10, 2015.

The statutory requirements for waiver of a G.L. c. 239, § 5 bond are indigency of the appellant and a nonfrivolous defense to be presented on appeal. After hearing and upon review of the defendants' written submissions, we are persuaded that while the defendants are indigent, they have failed to raise a defense that is not frivolous. Accordingly,

It is hereby ORDERED that the Clerk of the Trial Court shall make the following entry on the dockets of the above captioned cases:

(1) The defendants' motion to continue hearing is denied. (2) The defendants' motion for rehearing is denied. (3) The trial court's order of June 8, 2015, setting an appeal bond for both cases in the amount of $32,000.00, is affirmed. (4) The defendants shall also post a bond in the trial court in the amount of $4,780.00, representing two months' rent. (5) The defendants are further ordered to make monthly use and occupancy payments to the plaintiff in the amount of $2,390.00, commencing August 1, 2015, and during the pendency of the appeal.

*Greystar Mgt. Servs., LLP et al. v. Anderson & Bisasor*
Nos. 15-ADMS-60010; 15-ADMS-60011
July 27, 2015
Page 2 of 2

HON. CHRISTOPHER D. WELCH, Justice
HON. KEVIN J. FINNERTY, Justice

DATE: JULY 27, 2015

This certifies that this is the Decision
& Order of the Appellate Division in
this matter.  A True Copy, Attest:

*Brien M. Cooper*

Brien M. Cooper, Clerk

# EXHIBIT D

| EXECUTION ON MONEY JUDGMENT | DOCKET NUMBER 1554SU000026 | Trial Court of Massachusetts District Court Department |  |
|---|---|---|---|

**CASE NAME** Greystar Management Services, L.P. As officer of or agent for Owner RAR2 Jefferson at Dedham Station MA, Inc. v. Andre Bisasor

| JUDGMENT DEBTOR AGAINST WHOM EXECUTION IS ISSUED | COURT NAME & ADDRESS |
|---|---|
| Natalie Anderson 3000 President's Way #3413 Dedham, MA 02026 | Dedham District Court 631 High Street Dedham, MA 02026 |

**JUDGMENT CREDITOR(S) IN WHOSE FAVOR EXECUTION IS ISSUED**

Greystar Management Services, L.P. As officer of or agent for Owner RAR2 Jefferson at Dedham Station MA, Inc.

| JUDGMENT CREDITOR (OR CREDITOR'S ATTORNEY) WHO MUST ARRANGE SERVICE OF EXECUTION | FURTHER ORDERS OF THE COURT |
|---|---|
| Donna M. Ashton, Esq. Ashton Law PC 28 Church Street Suite #10 Winchester, MA 01890 | |

**TO THE SHERIFFS OF THE SEVERAL COUNTIES OR THEIR DEPUTIES, OR (SUBJECT TO THE LIMITATIONS OF G.L. C. 41 § 92) ANY CONSTABLE OF ANY CITY OR TOWN WITHIN THE COMMONWEALTH:**

The judgment creditor(s) has recovered judgment against the judgment debtor named above in the amount shown below:

**WE COMMAND YOU**, therefore, from out of the value of any real or personal property of such judgment debtor found within your territorial jurisdiction, to cause payment to be made to the judgment creditor(s) in the amount of the "Execution Total" shown below, plus additional postjudgment interest as provided by G.L. c. 235 § 8 on the "Judgment Total" shown below commencing from the "Date Execution Issued" shown below at the "Annual Postjudgment Interest Rate" shown below, and to collect your own fees, as provided by law. This Writ of Execution is valid for twenty years from the "Date Judgment Entered" shown below. It must be returned to the court, along with your return of service, within ten days after this judgment has been satisfied or discharged, or after twenty years if this judgment remains unsatisfied or undischarged.

| | |
|---|---|
| 1. Judgment Total | 32,423.31 |
| 2. Date Judgment Entered | 05/27/2015 |
| 3. Date Execution Issued | 08/07/2015 |
| 4. Number of Days from Judgment to Execution *(Line 3 - Line 2)* | 72 |
| 5. Annual Postjudgment Interest Rate | 0.12 |
| 6. Postjudgment Interest from Judgment to Execution *(lines 1x4x5)* | $768.04 |
| 7. Postjudgment Costs *(if any)* | $ |
| 8. Credits *(if any)* | $ |
| 9. **EXECUTION TOTAL** *( Lines 1 + 6 + 7, minus Line 8)* | $33,191.35 |
| LEVYING OFFICER: (a) Add daily interest from date execution issued. | |
| (b) Add your fees as provided by law: | |

| TESTE OF FIRST JUSTICE **WITNESS: Hon. Michael J Pomarole** | DATE EXECUTION ISSUED 08/07/2015 | CLERK-MAGISTRATE/ASST. CLERK X _Alegal Bryan_ |
|---|---|---|



| EXECUTION ON MONEY JUDGMENT | DOCKET NUMBER<br>1554SU000026 | **Trial Court of Massachusetts**<br>**District Court Department** |
|---|---|---|

**CASE NAME** Greystar Management Services, L.P. As officer of or agent for Owner RAR2 Jefferson at Dedham Station MA, Inc.
v. Andre Bisasor

| JUDGMENT DEBTOR AGAINST WHOM EXECUTION IS ISSUED | COURT NAME & ADDRESS |
|---|---|
| | Dedham District Court<br>631 High Street<br>Dedham, MA 02026 |
| Andre Bisasor<br>3000 President's Way<br>#3413<br>Dedham, MA 02026 | **JUDGMENT CREDITOR(S) IN WHOSE FAVOR EXECUTION IS ISSUED**<br>Greystar Management Services, L.P. As officer of or agent for Owner RAR2 Jefferson at Dedham Station MA, Inc. |

| JUDGMENT CREDITOR (OR CREDITOR'S ATTORNEY) WHO MUST ARRANGE SERVICE OF EXECUTION | FURTHER ORDERS OF THE COURT |
|---|---|
| Donna M. Ashton, Esq.<br>Ashton Law PC<br>28 Church Street<br>Suite #10<br>Winchester, MA 01890 | |

**TO THE SHERIFFS OF THE SEVERAL COUNTIES OR THEIR DEPUTIES, OR (SUBJECT TO THE LIMITATIONS OF G.L. C. 41 § 92) ANY CONSTABLE OF ANY CITY OR TOWN WITHIN THE COMMONWEALTH:**

The judgment creditor(s) has recovered judgment against the judgment debtor named above in the amount shown below:

**WE COMMAND YOU**, therefore, from out of the value of any real or personal property of such judgment debtor found within your territorial jurisdiction, to cause payment to be made to the judgment creditor(s) in the amount of the "Execution Total" shown below, plus additional postjudgment interest as provided by G.L. c. 235 § 8 on the "Judgment Total" shown below commencing from the "Date Execution Issued" shown below at the "Annual Postjudgment Interest Rate" shown below, and to collect your own fees, as provided by law. This Writ of Execution is valid for twenty years from the "Date Judgment Entered" shown below. It must be returned to the court, along with your return of service, within ten days after this judgment has been satisfied or discharged, or after twenty years if this judgment remains unsatisfied or undischarged.

| | |
|---|---:|
| 1. Judgment Total | 32,423.31 |
| 2. Date Judgment Entered | 05/27/2015 |
| 3. Date Execution Issued | 08/07/2015 |
| 4. Number of Days from Judgment to Execution *(Line 3 - Line 2)* | 72 |
| 5. Annual Postjudgment Interest Rate | 0.12 |
| 6. Postjudgment Interest from Judgment to Execution *(lines 1x4x5)* | $768.04 |
| 7. Postjudgment Costs *(if any)* | $ |
| 8. Credits *(if any)* | $ |
| 9. **EXECUTION TOTAL** *( Lines 1 + 6 + 7, minus Line 8)* | $33,191.35 |
| LEVYING OFFICER:  (a) Add daily interest from date execution issued. | |
| (b) Add your fees as provided by law. | |

| TESTE OF FIRST JUSTICE<br><br>**WITNESS: Hon. Michael J Pomarole** | DATE EXECUTION ISSUED<br><br>08/07/2015 | CLERK-MAGISTRATE/ASST. CLERK<br><br>X *Abigail Bryan* |
|---|---|---|

| EXECUTION FOR POSSESSION OF LEASED OR RENTED DWELLING | DOCKET NUMBER 1554SU000026 | Trial Court of Massachusetts District Court Department Summary Process Session |
|---|---|---|

**CASE NAME**
Greystar Management Services, L.P. As officer of or agent for Owner RAR2 Jefferson at Dedham Station MA, Inc. v. Andre Bisasor

| DEFENDANT AGAINST WHOM EXECUTION IS ISSUED | COURT NAME & ADDRESS |
|---|---|
| Andre Bisasor<br>3000 President's Way<br>#3413<br>Dedham, MA 02026 | Dedham District Court<br>631 High Street<br>Dedham, MA 02026 |
| | **PLAINTIFF(S) IN WHOSE FAVOR EXECUTION IS ISSUED** |
| Natalie Anderson<br>3000 President's Way<br>#3413<br>Dedham, MA 02026 | Greystar Management Services, L.P. As officer of or agent for Owner RAR2 Jefferson at Dedham Station MA, Inc. |

| PLAINTIFF (OR PLAINTIFF(S) ATTORNEY) WHO MUST ARRANGE SERVICE OF EXECUTION | FURTHER ORDERS OF THE COURT |
|---|---|
| Donna M. Ashton, Esq.<br>Ashton Law PC<br>28 Church Street<br>Suite #10<br>Winchester, MA 01890 | |

**SUBJECT DWELLING PREMISES**
3000 President's Way #3413, Dedham, MA 02026

**TO THE SHERIFFS OF THE SEVERAL COUNTIES OR THEIR DEPUTIES, OR ANY CONSTABLE OF ANY CITY OR TOWN WITHIN THE COMMONWEALTH:**

The plaintiff(s) named above has recovered judgment against the defendant named above for possession of the subject premises shown above, which were leased or rented for dwelling purposes.

**WE COMMAND YOU,** therefore, subject to the requirements of G.L. c. 235 § 23 and G.L. c. 239, § 3, to cause the plaintiff(s) to have possession of the premises shown above without delay.

This Writ of Execution is **VALID FOR THREE CALENDAR MONTHS ONLY.** It may not be levied upon if any underlying money judgment for non-payment of rent, along with any use and occupancy accruing since the date of judgment, has been fully satisfied. It must be returned to the clerk-magistrate's office of this court, along with your return of service, within ten days after this judgment for possession has been satisfied or discharged, or after three calendar months if this judgment remains unsatisfied or undischarged.

| TESTE OF FIRST JUSTICE<br>**WITNESS: Hon. Michael J Pomarole** | DATE EXECUTION ISSUED<br>08/07/2015 | CLERK-MAGISTRATE/ASST. CLERK<br>x _Alegal Bryan_ |
|---|---|---|

**RETURN OF SERVICE**

☐ Pursuant to this writ, I have caused the plaintiff(s) to have possession of the subject premises.

    ☐ After notice the defendant(s) vacated the subject premises voluntarily.

    ☐ I have physically removed the defendant(s) and his/her/their personal possessions from the subject premises.

☐ I have not caused the plaintiff(s) to recover possession of these premises pursuant to this writ because:

| DATE & TIME WRIT SERVED | DATE OF RETURN | CONSTABLE/DEPUTY SHERIFF<br>X |
|---|---|---|

| 025 | www.mass.gov/courts | Date/Time Printed: 08-07-2015 08:34:48 |
|---|---|---|

# EXHIBIT E

# COMMONWEALTH OF MASSACHUSETTS

NORFOLK, ss.

**DISTRICT COURT DEPARTMENT**
DEDHAM DISTRICT COURT–DEDHAM DIVISION

2015 AUG -7 PH 4:23

|   |   |
|---|---|
| GREYSTAR MANAGEMENT SERVICES LP, As agent for owner RAR2 JEFFERSON AT DEDHAM STATON – MA, INC., | ) ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) ) ) ) |
| ANDRE BISASOR; NATALIE ANDERSON, | ) ) |
| Defendants. | ) ) ) ) |

SUMMARY PROCESS
DOCKET NO: 1554SU000026 &
1554SU000028

8-10-15

## EMERGENCY MOTION TO STAY THE LEVY OF THE EXECUTION FOR POSSESSION AND DAMAGES

We, Andre Bisasor and Natalie Anderson, the tenant-defendants in this case, hereby request this Court to stay the levy of the execution for possession and damages under M.G.L. c. 239, applicable rules, and the court's equitable powers for the following reasons:

1. Defendants have initiated an appeal and an appeal is pending in the Appeals Court.

2. Defendants are prosecuting an appeal, in the Appeals Court, of the dismissal of the appeal due to a denial of the waiver of the appeals bond.

3. Defendants are requesting a stay until the appeals court has the opportunity to hear the matter on the appeal bond.

4. If the Appeals Court grants our appeal, then it would make no sense for defendants to have already been evicted.

5. If the Appeals court grants our appeal, then the appeal bond waiver would be in effect and the execution should have been stayed.

# EXHIBIT F

## COMMONWEALTH OF MASSACHUSETTS

**APPEALS COURT CLERK'S OFFICE**
John Adams Courthouse
One Pemberton Square, Suite 1200
Boston, Massachusetts 02108-1705
(617) 725-8106

August 17, 2015

Donna M. Ashton, Esquire
28 Church Street
Suite #10
Winchester, MA 01890

RE: No. 2015-J-0306
    Lower Ct. No.: 1554SU000026 & 1554SU000028

    GREYSTAR MANAGEMENT SERVICE, LP
        vs.
    ANDRE BISASOR & another [1]

### NOTICE OF DOCKET ENTRY

Please take note that on August 17, 2015, the following entry was made on the docket of the above-referenced case:

ORDER: The defendants filed a motion seeking to stay levy on the execution on the judgment for possession of two apartments in a building managed by the plaintiff. This Court briefly stayed levy on the execution and scheduled a hearing on the defendants' motion. After review of the parties' submissions and a hearing, the defendants' motion for a stay pending their appeal is DENIED.

To obtain a stay pending resolution of their appeal, the defendants would have to demonstrate, inter alia, a likelihood of success on the merits of their appeal. See Packaging Industries Group, Inc. v. Cheney, 380 Mass. 609 (1980). The defendants have failed to do so here. The defendants pending appeal is from the dismissal of their appeal occasioned by their failure to pay the required appeals bond. While such an appeal is properly brought before a panel of this Court, see Erickson v. Somers, 446 Mass. 1015 (2006), the defendants have not shown that their appeal, though procedurally correct, is likely to be successful. To succeed the defendants would have to demonstrate, at a minimum, that they have a nonfrivolous defense to the default. Following review of the defendants' submission and the District Court docket, the court cannot discern any indication that the District Court judge abused his discretion when he entered the default. Accordingly, the motion is denied. The stay currently in place shall expire at the end of the day on August

27, 2015. The plaintiff may levy on the execution on Friday, August 28, 2015 without the need for any further notice to the defendants. (Katzmann, J.). *Notice/Attest/Ziemian, J.

Footnote

1. Natalie Anderson

Very truly yours,

The Clerk's Office

Dated: August 17, 2015

To: Donna M. Ashton, Esquire
Andre Bisasor
Natalie Anderson
Dedham District Court

# EXHIBIT G

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.                           SUPREME JUDICIAL COURT
                                       FOR SUFFOLK COUNTY
                                       NO: SJ-2015-00347

                                       APPEALS COURT
                                       NO. SJ-2015-3036
                                       DEDHAM DISTRICT COURT
                                       NOs. 1554SU00026
                                            1554SU00028


GREYSTAR MANAGEMENT SERVICE, L.P.

vs.

ANDRE BISASOR and NATALIE ANDERSON


JUDGMENT

This matter came before the court, Duffly, J., on the petitioners' emergency petition pursuant to G. L. c. 211, § 3. The petitioners seek relief from the denial by a single justice of the Appeals Court of the petitioners' emergency petition to stay levy of execution on the judgement for possession of two apartments occupied by the petitioners in a building managed by the plaintiff. The underlying eviction action was undertaken for nonpayment of rent since at least May of 2014. The levy of execution is scheduled to take place on Friday, August 28, 2015, after the petitioners' appeal was dismissed because of their failure to pay the required appeals bond. The petitioners have filed an appeal from that dismissal in the Appeals Court.

The petitioners have not demonstrated that they are entitled to the extraordinary relief available under G. L. c. 211, § 3.

Upon consideration, it is ORDERED that the emergency petition pursuant to G. L. c. 211, § 3, shall be, and hereby is, DENIED.

By the Court (Duffly, J.)

Assistant Clerk

Entered: August 27, 2015

# Exhibit H

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**

In Re:                         )
                               )
Andre Bisasor,                 )            Chapter    13
                               )            Case No.   15-13369
                  Debtor       )
                               )

**Affidavit of Laura Donahue**
**Regional Property Manager, Greystar Management Services LP**

1. I am the Regional Property Manager for Greystar Management Services LP ("Greystar").

2. One of the properties that is within my region is Jefferson at Dedham Station which is managed by Greystar and owned by RAR(2)-Jefferson at Dedham Station MA.

3. I have been actively involved with the litigation surrounding the Debtor and his wife, Natalie Anderson, regarding their non-payment of rent since May 2014 for apartment #3413 at Jefferson at Dedham Station, as well as their failure to vacate apartment #2216.

4. I have attended most, if not all, of the court proceedings in the State Courts regarding this matter, including the one hour hearing before the Appeals Court regarding the Debtor's request for a stay on the levy of execution.

5. Being fully aware of the facts and circumstances of this case, the arguments and requests by the Debtor and the District and Appellate Court rulings, under <u>no circumstances</u> would Greystar accept full satisfaction of the Judgment and use and occupancy charges by the Debtor.

Signed to under the pains and penalties of perjury this 1st day of September 2015.

_Laura Donahue RPM_
_Authorized Signer_

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS

In Re:                   )

Andre Bisasor,         )         Chapter   13

                         )         Case No.   15-13369

          Debtor      )

### Proposed Order
### Apartment #3413

This matter came before the Court on the Objection to Debtor's Certification Pursuant to

11 U.S.C. § 362(*l*)(1)(A) or in the alternative Request for Relief (Objection/Request) by Greystar

Management Services, L.P. as agent for owner RAR2-Jefferson at Dedham Station MA, Inc.

(Greystar), a creditor in the above-captioned proceeding with respect to property located at 3000

Presidents Way, Unit #3413, Dedham, Massachusetts (Leased Premises).

1. In the Objection/Request, Greystar objects to Debtor's 11 U.S.C. §362(*l*)(1)(A)

   certification.

2. The owner of the Leased Premises is RAR2-Jefferson at Dedham Station MA, Inc., for

   which Greystar is the managing agent.

3. There is a prepetition Judgment for Possession for the Leased Premises in favor of

   Greystar, issued by the Dedham District Court on May 27, 2015 (Prepetition Judgment

   for Possession).

4. Greystar has submitted an Affidavit asserting that it will refuse any payment of full

   satisfaction of the money judgment underlying the Prepetition Judgment for Possession

   for the Leased Premises, such refusal being permitted by MGL ch. 239 § 3.

1

5. As a result, there are no circumstances under which Debtor will be permitted to cure the monetary default that gave rise to the Prepetition Judgment for Possession for the Leased Premises and Debtor's 11 U.S.C. §362(l)(1)(A) certification is inaccurate.

6. The Court therefore upholds Greystar's Objection and 11 U.S.C. § 362(b)(22) applies immediately and relief from the automatic stay is not be required to enable Greystar to complete the process to recover full possession of the Leased Premises.

7. In the alternative, good cause exists to grant Greystar relief from the automatic stay pursuant to 11 U.S.C. § 362(d) as against Debtor.

8. Due and adequate notice of the Objection/Request was given to Debtor.

Consequently, it is ORDERED that:

A. Greystar's Objection to Debtor's 11 U.S.C. § 362(l)(1)(A) certification is upheld and Greystar is entitled to immediately complete the process to recover full possession of the Leased Premises; and in the alternative

B. Greystar is granted relief pursuant to 11 U.S.C. § 362(d) from the automatic stay so that it may immediately enforce its rights under the Judgment for Possession for the Leased Premises.

Approved and so ordered,

_____

U.S. Bankruptcy Judge

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In Re: | ) |
| | ) |
| Andre Bisasor, | ) Chapter 13 |
| | ) Case No. 15-13369 |
| Debtor | ) |
| | ) |

OBJECTION TO DEBTOR'S CERIFICATION PURSUANT TO 11 U.S.C. 362(*l*)(1)(A)
*OR IN THE ALTERNATIVE*
GREYSTAR MANAGEMENT SERVICES LP AS AGENT FOR OWNER RAR2 JEFFERSON
AT DEDHAM STATION MA INC. REQUEST FOR RELIEF FROM THE AUTOMATIC
STAY REGARDING APARTMENT #2216

### (EXPEDITED DETERMINATION REQUESTED)

TO THE HONORABLE JOAN N. FEENEY, BANKRUPTCY JUDGE FOR THE
REFERENCED MATTER:

Now comes Greystar Management Services LP as agent for Owner RAR2 Jefferson at

Dedham Station MA Inc. ("Greystar"), a creditor in the above-captioned proceeding, and hereby

respectfully objects to the Debtor's Certification pursuant to 11 U.S.C. §362(*l*)(1)(A). The

Debtor's certification fails for numerous reasons including (1) the underlying judgment for

Apartment #2216 did not arise from a monetary default; (2) the Debtor fails to list 2000

Presidents Way Unit #2216, Dedham Massachusetts on the petition or declaration and (3) the

Debtor has failed to include with the petition any rent that would become due during the 30 day

period after the filing of the petition, therefore the Debtor cannot comply with the requirements

of 11 U.S.C. §362(*l*)(1)(A).

Alternatively, in the event that this Court finds that the Defendant is entitled to the

protections of 11 U.S.C. §362(*l*)(1)(A) Greystar respectfully moves this Court for Relief from the

Automatic Stay, so as to permit the movant to exercise and pursue all of the rights and remedies

1

available to it in accordance with state law, including, but not limited to, recovery of possession of the temporary apartment located at 2000 Presidents Way, Unit #2216, Dedham, MA ("Temporary Premises") and in a companion filing possession of the Debtor's listed residence located at 3000 Presidents Way, Unit #3413, Dedham, MA ("Leased Premises").

As reasons therefore, Greystar states:

1. On August 27, 2015 at 4:51 p.m. the Debtor filed a bankruptcy petition under Chapter 13 of the Bankruptcy Code. As a result, an order of relief was entered and all proceedings against the Debtor and his estate were stayed pursuant to 11 U.S.C. § 362(a).

2. Greystar is the Plaintiff in <u>Greystar Management Services LP as agent for Owner RAR2 Jefferson at Dedham Station MA Inc. v. Andre Bisasor and Natalie Anderson</u>, Dedham District Court, Docket No. 15-SU-0028 for the Temporary Premises which was served upon the Debtor on February 2, 2015 and entered on February 9, 2015 seeking to evict the Debtor from his apartment due to his failure to vacate pursuant to a lawful notice terminating tenancy.

3. Greystar terminated the Lease for the premises by Notice to Quit on December 29, 2014. There is no possibility that movant would re-instate this tenancy with the Debtor.

4. The Debtor failed to appear at a Hearing, the Court defaulted the Debtor and Judgment entered for the Plaintiffs on May 27, 2015. Attached hereto **Exhibit A** (Judgment) and **Exhibit B** (Memorandum of the Honorable Judge Ziemian for Decision Concerning Entry of Default Judgment).

5. The Judgment for the Temporary Premises did not include any monetary amount, as it was based on the Debtor's failure to vacate and not based on failure to pay use and occupancy/rent.

6. Debtor filed a Notice of Appeal regarding the entry of default and a request for a waiver of the appeal bond on June 8, 2015. The appeal bond waiver was denied and the bond was set by the court on June 8, 2015 in the amount of the $32,000.00 representing 13 months of rent that were unpaid by the Debtor for the Leased Premises.

7. The Debtor requested a review of the appeal bond pursuant to MGL ch. 239 §5 and that hearing was held on July 8, 2015 at which time the Appellate Division upheld the waiver denial, increased the bond to reflect an additional two months of rent and required payment of use and occupancy during the pending appeal. Attached hereto **Exhibit C**.

8. The Debtor failed to post the bond and the Execution issued on August 7, 2015. Attached hereto **Exhibit D**.

9. The Debtor was served with more than 48 hours notice that the levy was to take place on Wednesday August 12, 2015. The Debtor sought a stay of Execution in the Dedham District Court and filed a Notice of Appeal on August 7, 2015. The stay request was denied on August 10, 2015. Attached hereto **Exhibit E.**

10. The Debtor sought relief from the Appeals Court on August 11, 2015. A temporary stay was imposed until a full hearing on August 14, 2015, at which time the Honorable Judge Katzman denied the request, but held the temporary stay in place until August 27, 2015, allowing Greystar to levy on Friday August 28, 2015 without further constable notice. Attached hereto **Exhibit F.**

11. The Debtor filed an Emergency Petition in the Supreme Judicial Court on August 27, 2015 seeking relief pursuant MGL ch 211 §3, which was denied by the Honorable Judge Duffly at approximately 4:00 p.m.. Attached hereto **Exhibit G.**

12. According to the United States Bankruptcy Court Docket, the Debtor filed the present Bankruptcy Petition on August 27, 2015 at 4:51 p.m., included with that petition was a Certification of Intent to Cure Monetary Default for Residential Property and Rental Deposit in which the Debtor claims that "under applicable nonbankruptcy law, there are circumstances under which the debtor would be permitted to cure the entire monetary default that gave rise to the judgment for possession, after the judgment for possession was enter".

13. Similar to the holdings of In re Soto, 500 B.R. 679 (Bankr. S.D.N.Y. 2013) and In re Griggsby, 404 B.R. 83 (Bankr. S.D.N.Y. 2009) where a Debtor's underlying case for possession is based on a non-monetary basis 11 U.S.C. §362($l$)(1)(A) does not apply.

14. Further, as the Griggsby case held, "where state court litigation is not pending or in the cards, or where the debtor has failed to show any basis for a belief that the state court will grant relief, the prepetition termination of the landlord-tenant relationship will at least normally provide cause for relief from the stay." Id at 93-94.

15. As indicated above and in the attached Exhibits from the District Court, Appellate Division, Appeals Court and Supreme Judicial Court of Massachusetts, the Debtor has failed to demonstrate that he has a non-frivolous defense and all of the above State Courts have declined to grant relief from the pending eviction action.

16. The Debtor should not be allowed to file bankruptcy as a means to postpone eviction, after exhausting all of his State Appellate rights seeking to postpone the levy. Furthermore, the Debtor holds no equity in the property, and the premises are not necessary to an effective reorganization.

**WHEREFORE**, Greystar respectfully requests that this Court:

A. Sustain Greystar's Objection to the Certification under §362(1)(3)(A), and order that Section §362(b)(22) shall apply immediately and relief from the stay of §362(a) shall not be required to enable Greystar to complete the process to recover full possession of the Temporary Premises; and in the alternative,

B. Enter an order affording it relief from the automatic stay in order to allow Movant to exercise any and all of its rights and remedies under state law, including, but not limited to, taking possession of the Temporary Premises forthwith.

Respectfully submitted
Greystar Management Services LP
as agent for owner RAR2-Jefferson at
Dedham Station MA, Inc.
By its attorneys,
ASHTON LAW, P.C

Donna M. Ashton
BBO# 634984
28 Church Street, Suite 10
Winchester, Massachusetts 01890
(781) 756-6600
dma@ashton-law.com

Dated: September 2, 2015

4

## CERTIFICATE OF SERVICE

I, Donna M. Ashton, hereby certify that on this 2nd day of September, 2015, a copy of the foregoing,

OBJECTION TO DEBTOR'S CERIFICATION PURSUANT TO 11 U.S.C. 362($l$)(l)(A)
*OR IN THE ALTERNATIVE*
GREYSTAR MANAGEMENT SERVICES LP AS AGENT FOR OWNER RAR2 JEFFERSON AT DEDHAM STATION MA INC. REQUEST FOR RELIEF FROM THE AUTOMATIC STAY REGARDING APARTMENT #2216
(EXPEDITED DETERMINATION REQUESTED)

And

PROPOSED ORDER

were served upon the following parties of interest by emailing a copy and mailing a copy, first class, postage prepaid to the following:

Trustee:

Carolyn Bankowski-13
Chapter 13 Trustee Boston
P.O Box 8250
Boston, MA 02114
cbankowski@ch13boston.com

Debtor:

Andre Bisasor
3000 Presidents Way, Apt. #3413
Dedham, Ma Suite 02026
quickquantum@aol.com

Assistant US Trustee:

John P. Fitzgerald
John. W. McCormack Post Office and Court House
5 Post Office Square, 10th Floor, Suite 1000
Boston, MA 02109-3945

Donna M. Ashton, Esq.

5

# EXHIBIT A

| JUDGMENT FOR PLAINTIFF(S) FOR POSSESSION AND RENT | DOCKET NUMBER 1554SU000028 | Trial Court of Massachusetts District Court Department Summary Process Session |
|---|---|---|

Greystar Management Services, L.P. As officer of or agent for Owner RAR2 Jefferson at Dedham Station MA, Inc. v. Andre Bisasor

**SUBJECT PREMISES**
2000 President's Way #2216, Dedham, MA 02026

| PLAINTIFF(S) WHO ARE PARTIES TO THIS JUDGMENT | COURT NAME & ADDRESS |
|---|---|
| Greystar Management Services, L.P. As officer of or agent for Owner RAR2 Jefferson at Dedham Station MA, Inc. | Dedham District Court 631 High Street Dedham, MA 02026 |

| DEFENDANT(S) WHO ARE PARTIES TO THIS JUDGMENT | NEXT COURT EVENT (IF ANY) |
|---|---|
| Andre Bisasor Natalie Anderson | **Status Review** 06/08/2015 at 09:00 AM **Summary Process Session** |

| ATTORNEY (OR PRO SE PARTY) TO WHOM THIS COPY OF JUDGMENT IS ISSUED | FURTHER ORDERS OF THE COURT |
|---|---|
| Donna M. Ashton, Esq. Ashton Law PC 28 Church Street Suite #10 Winchester, MA 01890 | |

### JUDGMENT FOR PLAINTIFF(S) FOR POSSESSION AND RENT

On the above action , after default, the issues having been duly tried or heard, and a finding or verdict having been duly rendered, IT IS ORDERED AND ADJUDGED by the Court (Hon. Robert P Ziemian ) that the plaintiff(s) named above recover of the Defendant(s) named above possession of the subject premises shown above and, for unpaid rent, use and occupation, the "Judgment Total" shown below plus other costs as may be taxed pursuant to law, with postjudgment interest thereon pursuant to G.L. c. 235, § 8 at the "Annual Interest Rate" shown below from the "Date Judgment Entered" shown below until the date of payment.

### NOTICE OF ENTRY OF JUDGMENT

Pursuant to Mass. R. Civ. P. 54, 58, 77(d) and 79(a) and Uniform Summary Process Rule 10(d), this Judgment has been entered on the docket on the "Date Judgment Entered" shown below, and this notice is being sent to all parties.

| | |
|---|---|
| 1. Date of Breach, Demand or Complaint | 02/11/2015 |
| 2. Date Judgment Entered | 05/27/2015 |
| 3. Number of Days of Prejudgment Interest *(line 2 - Line1)* | 105 |
| 4. Annual Interest Rate of 0.12/365.25 = Daily Interest rate | .000329 |
| 5. Single Damages | $ |
| 6. Prejudgment Interest *(lines 3x4x5)* | $ |
| 7. Double or Treble Damages Awarded by Court *(where authorized by law)* | $ |
| 8. Costs Awarded by Court | $.00 |
| 9. Attorney Fees Awarded by Court *(where authorized by law)* | $ |
| 10. **JUDGMENT TOTAL PAYABLE TO PLAINTIFF(S)** *(Lines 5+6+7+8+9)* | $0.00 |

| DATE JUDGMENT ENTERED 05/27/2015 | CLERK-MAGISTRATE/ASST. CLERK X _(signature)_ |
|---|---|

021        /www.mass.gov/courts        Date/Time Printed: 05-27-2015 11:11:59

# EXHIBIT B

COMMONWEALTH OF MASSACHUSETTS
DISTRICT COURT DEPARTMENT OF THE TRIAL COURT

NORFOLK, ss.                                        DEDHAM DIVISION


GREYSTAR MANAGEMENT                    )
SERVICES LP as agent for               )
RAR2 JEFFERSON AT DEDHAM               )
STATION-MA, INC.,                      )
                    Plaintiff          )
                                       )        DOCKET NO. 1554 SU 0026
                                       )        DOCKET NO. 1554 SU 0028
v.                                     )
                                       )
ANDRE BISASOR and                      )
NATALIE ANDERSON,                      )
                    Defendants         )
                                       )

## MEMORANDUM OF DECISION CONCERNING
## ENTRY OF DEFAULT JUDGMENT


From an examination of the court papers and filings, the court makes the following findings:

1.  The Entry Date in these cases was 9 February 2015, with an intended trial date of 19 February 2015.

2.  The case was not tried on 19 February 2015 and after a series of events, (i.e. motions, agreements to continue the trial and various filings), the case was scheduled for trial on 14 May 2015 and marked to have no further continuances.

3.  On Monday, 11 May 2015, the defendant filed discovery that would ordinarily continue the case for two weeks.

4.  Numerous motions were then filed by both plaintiff and defendants in both cases.

5.  However, despite Judge Pomarole's order that the cases be tried on 14 May with no further continuances, a visiting Judge allowed the cases to be continued again until 28 May 2015 for trial.

6.    At this point, the cases were specially assigned to this Court to be tried on 28 May 2015.

7.    The parties appeared on 21 May 2015 for the court to consider all pretrial matters prior to the trial date, and the court at that time informed all parties that the case would proceed on 28 May 2015 for jury or non-jury waived trial with again no further continuances.

8.    On 21 May 2015, court congestion did not allow all pretrial matters to be completed and the court ordered both parties to appear on 26 May 2015 to dispose of all pretrial matters/motions and that the case would be tried on 28 May 2015 until completed.

9.    On 21 May 2015 the defendant Andre Bisasor did complain of illness.  The court observed no signs of illness and in fact, the defendant appeared to be in good health and argued especially effectively on that date.

10    On 26 May 2015, neither defendant appeared to complete all pretrial matters.  The defendants were defaulted and default judgment entered on 27 May 2015 for possession of the premises in both cases and additionally, for damages in case 1554 SU 0026.

11.    At 08:44 am on 26 May 2015, the court received a fax of an Affidavit and Motion with a note on a prescription slip that stated that defendant Bisasor could not appear on 26 May 2015.  This note was dated 22 May 2015.  The motion requested a minimum of a 10 day continuance of the trial.  This motion was denied.

12.    On 8 June 2015, the defendants filed numerous motions and a hospital memorandum was provided concerning defendant Andre Bisasor's hospital stay.  No objective medical record was provided.

13.    The only medical record provided by the defendants was the "discharge and summary", which reflects subjective symptoms.

14.    The court finds that the failure of both defendants to appear on 26 May 2015 was a deliberate attempt to further continue the trial of this matter because of the court's earlier order that there be no further continuances of the trial.

Dated:  7/2/15

                                    Robert P. Zum
                                    Hon. Robert Ziemian, Associate Justice

61

# EXHIBIT C



COPY

COMMONWEALTH OF MASSACHUSETTS
APPELLATE DIVISION OF THE DISTRICT COURT DEPARTMENT
SOUTHERN DISTRICT

NORFOLK, SS.                                                    APPELLATE DIVISION

GREYSTAR MANAGEMENT SERVICES, L.P.,
AS OFFICER OF OR AGENT FOR OWNER RAR2 JEFFERSON
AT DEDHAM STATION MA, INC.
V. NATALIE ANDERSON AND ANDRE BISASOR
Appellate Division No. 15-ADMS-60010
Dedham Division No. 1554SU0026

GREYSTAR MANAGEMENT SERVICES, L.P.,
AS OFFICER OF OR AGENT FOR OWNER RAR2 JEFFERSON
AT DEDHAM STATION MA, INC.
V. NATALIE ANDERSON AND ANDRE BISASOR
Appellate Division No. 15-ADMS-60011
Dedham Division No. 1554SU0028

## DECISION AND ORDER

This summary process action came on to Appellate Division, Southern District, sitting in Fall River, on the defendants' G.L. c. 239, § 5 appeal of the trial court's June 8, 2015 order denying the defendants' motion for waiver of the appeal bond in each case and setting such bond in the amount of $32,000.00 for both cases.

Written and telephone notice was provided to the parties on July 1, 2015 of a hearing before this Division on July 8, 2015. On July 6, 2015, the defendants moved to continue the hearing, which the plaintiff opposed on July 7, 2015. The hearing went forward on July 8, 2015, and only the plaintiff's counsel appeared. Following the hearing, the defendants filed a motion for rehearing on July 9, 2015, and an affidavit in support of the motion on July 10, 2015.

The statutory requirements for waiver of a G.L. c. 239, § 5 bond are indigency of the appellant and a nonfrivolous defense to be presented on appeal. After hearing and upon review of the defendants' written submissions, we are persuaded that while the defendants are indigent, they have failed to raise a defense that is not frivolous. Accordingly,

It is hereby ORDERED that the Clerk of the Trial Court shall make the following entry on the dockets of the above captioned cases:

(1) The defendants' motion to continue hearing is denied. (2) The defendants' motion for rehearing is denied. (3) The trial court's order of June 8, 2015, setting an appeal bond for both cases in the amount of $32,000.00, is affirmed. (4) The defendants shall also post a bond in the trial court in the amount of $4,780.00, representing two months' rent. (5) The defendants are further ordered to make monthly use and occupancy payments to the plaintiff in the amount of $2,390.00, commencing August 1, 2015, and during the pendency of the appeal.

*Greystar Mgt. Servs., LLP et al. v. Anderson & Bisasor*
Nos. 15-ADMS-60010; 15-ADMS-60011
July 27, 2015
Page 2 of 2

HON. CHRISTOPHER D. WELCH, Justice
HON. KEVIN J. FINNERTY, Justice

DATE: JULY 27, 2015

This certifies that this is the Decision
& Order of the Appellate Division in
this matter. A True Copy, Attest:

Brien M. Cooper, Clerk

# EXHIBIT D

| EXECUTION FOR POSSESSION<br>OF LEASED OR RENTED DWELLING | DOCKET NUMBER<br>1554SU000028 | Trial Court of Massachusetts<br>District Court Department<br>Summary Process Session |
|---|---|---|

**CASE NAME**
Greystar Management Services, L.P. As officer of or agent for Owner RAR2 Jefferson at Dedham Station MA, Inc. v. Andre Bisasor

| DEFENDANT AGAINST WHOM EXECUTION IS ISSUED | COURT NAME & ADDRESS |
|---|---|
| Andre Bisasor<br>2000 President's Way<br>#2216<br>Dedham, MA 02026 | Dedham District Court<br>631 High Street<br>Dedham, MA 02026 |

| | PLAINTIFF(S) IN WHOSE FAVOR EXECUTION IS ISSUED |
|---|---|
| Natalie Anderson<br>2000 President's Way<br>#2216<br>Dedham, MA 02026 | Greystar Management Services, L.P. As officer of or agent for Owner RAR2 Jefferson at Dedham Station MA, Inc. |

| PLAINTIFF (OR PLAINTIFF(S) ATTORNEY) WHO MUST ARRANGE SERVICE OF EXECUTION | FURTHER ORDERS OF THE COURT |
|---|---|
| Donna M. Ashton, Esq.<br>Ashton Law PC<br>28 Church Street<br>Suite #10<br>Winchester, MA 01890 | |

**SUBJECT DWELLING PREMISES**
2000 President's Way #2216, Dedham, MA 02026

**TO THE SHERIFFS OF THE SEVERAL COUNTIES OR THEIR DEPUTIES, OR ANY CONSTABLE OF ANY CITY OR TOWN WITHIN THE COMMONWEALTH:**

The plaintiff(s) named above has recovered judgment against the defendant named above for possession of the subject premises shown above, which were leased or rented for dwelling purposes.

**WE COMMAND YOU**, therefore, subject to the requirements of G.L. c. 235 § 23 and G.L. c. 239, § 3, to cause the plaintiff(s) to have possession of the premises shown above without delay.

This Writ of Execution is **VALID FOR THREE CALENDAR MONTHS ONLY.** It may not be levied upon if any underlying money judgment for non-payment of rent, along with any use and occupancy accruing since the date of judgment, has been fully satisfied. It must be returned to the clerk-magistrate's office of this court, along with your return of service, within ten days after this judgment for possession has been satisfied or discharged, or after three calendar months if this judgment remains unsatisfied or undischarged.

| TESTE OF FIRST JUSTICE<br>**WITNESS:** Hon. Michael J Pomarole | DATE EXECUTION ISSUED<br>08/07/2015 | CLERK-MAGISTRATE/ASST. CLERK<br>X Abigail Bryan |
|---|---|---|

**RETURN OF SERVICE**

☐ Pursuant to this writ, I have caused the plaintiff(s) to have possession of the subject premises.

   ☐ After notice the defendant(s) vacated the subject premises voluntarily.

   ☐ I have physically removed the defendant(s) and his/her/their personal possessions from the subject premises.

☐ I have not caused the plaintiff(s) to recover possession of these premises pursuant to this writ because:

| DATE & TIME WRIT SERVED | DATE OF RETURN | CONSTABLE/DEPUTY SHERIFF<br>X |
|---|---|---|

| 025 | www.mass.gov/courts | Date/Time Printed: 08-07-2015 08:38:50 |

# EXHIBIT E

# COMMONWEALTH OF MASSACHUSETTS

NORFOLK, ss.

DEDHAM DISTRICT COURT

2015 AUG -7  PM 4:28

DISTRICT COURT DEPARTMENT
DEDHAM DIVISION

GREYSTAR MANAGEMENT SERVICES )
LP, As agent for owner RAR2 JEFFERSON )
AT DEDHAM STATON – MA, INC., )
)
    Plaintiff, )
)
v. )
)
)
ANDRE BISASOR; NATALIE ANDERSON, )
)
    Defendants. )
)
)

SUMMARY PROCESS
DOCKET NO: 1554SU000026 &
1554SU000028

*Motion Denied*

*[signature]*

8-10-15

## EMERGENCY MOTION TO STAY THE LEVY OF THE EXECUTION FOR POSSESSION AND DAMAGES

We, Andre Bisasor and Natalie Anderson, the tenant-defendants in this case, hereby request this Court to stay the levy of the execution for possession and damages under M.G.L. c. 239, applicable rules, and the court's equitable powers for the following reasons:

1. Defendants have initiated an appeal and an appeal is pending in the Appeals Court.

2. Defendants are prosecuting an appeal, in the Appeals Court, of the dismissal of the appeal due to a denial of the waiver of the appeals bond.

3. Defendants are requesting a stay until the appeals court has the opportunity to hear the matter on the appeal bond.

4. If the Appeals Court grants our appeal, then it would make no sense for defendants to have already been evicted.

5. If the Appeals court grants our appeal, then the appeal bond waiver would be in effect and the execution should have been stayed.

# EXHIBIT F

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT CLERK'S OFFICE
John Adams Courthouse
One Pemberton Square, Suite 1200
Boston, Massachusetts 02108-1705
(617) 725-8106

August 17, 2015

Donna M. Ashton, Esquire
28 Church Street
Suite #10
Winchester, MA 01890

RE: No. 2015-J-0306
    Lower Ct. No.: 1554SU000026 & 1554SU000028

    GREYSTAR MANAGEMENT SERVICE, LP
        vs.
    ANDRE BISASOR & another [1]

NOTICE OF DOCKET ENTRY

Please take note that on August 17, 2015, the following
entry was made on the docket of the above-referenced case:

ORDER: The defendants filed a motion seeking to stay levy on the
execution on the judgment for possession of two apartments in a
building managed by the plaintiff. This Court briefly stayed
levy on the execution and scheduled a hearing on the defendants'
motion. After review of the parties' submissions and a hearing,
the defendants' motion for a stay pending their appeal is DENIED.

To obtain a stay pending resolution of their appeal, the
defendants would have to demonstrate, inter alia, a likelihood
of success on the merits of their appeal. See Packaging
Industries Group, Inc. v. Cheney, 380 Mass. 609 (1980). The
defendants have failed to do so here. The defendants pending
appeal is from the dismissal of their appeal occasioned by their
failure to pay the required appeals bond. While such an appeal
is properly brought before a panel of this Court, see Erickson
v. Somers, 446 Mass. 1015 (2006), the defendants have not shown
that their appeal, though procedurally correct, is likely to be
successful. To succeed the defendants would have to demonstrate,
at a minimum, that they have a nonfrivolous defense to the
default. Following review of the defendants' submission and the
District Court docket, the court cannot discern any indication
that the District Court judge abused his discretion when he
entered the default. Accordingly, the motion is denied. The stay
currently in place shall expire at the end of the day on August

27, 2015. The plaintiff may levy on the execution on Friday, August 28, 2015 without the need for any further notice to the defendants. (Katzmann, J.). *Notice/Attest/Ziemian, J.

Footnote

1. Natalie Anderson

                          Very truly yours,

                          The Clerk's Office


Dated: August 17, 2015

To:  Donna M. Ashton, Esquire
Andre Bisasor
Natalie Anderson
Dedham District Court

# EXHIBIT G

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.

SUPREME JUDICIAL COURT
FOR SUFFOLK COUNTY
NO: SJ-2015-00347

APPEALS COURT
NO. SJ-2015-3036
DEDHAM DISTRICT COURT
NOs. 1554SU00026
     1554SU00028

GREYSTAR MANAGEMENT SERVICE, L.P.

vs.

ANDRE BISASOR and NATALIE ANDERSON

JUDGMENT

This matter came before the court, Duffly, J., on the
petitioners' emergency petition pursuant to G. L. c. 211, § 3.
The petitioners seek relief from the denial by a single justice
of the Appeals Court of the petitioners' emergency petition to
stay levy of execution on the judgement for possession of two
apartments occupied by the petitioners in a building managed by
the plaintiff.  The underlying eviction action was undertaken for
nonpayment of rent since at least May of 2014.  The levy of
execution is scheduled to take place on Friday, August 28, 2015,
after the petitioners' appeal was dismissed because of their
failure to pay the required appeals bond.  The petitioners have
filed an appeal from that dismissal in the Appeals Court.

The petitioners have not demonstrated that they are entitled to the extraordinary relief available under G. L. c. 211, § 3.

Upon consideration, it is ORDERED that the emergency petition pursuant to G. L. c. 211, § 3, shall be, and hereby is, DENIED.

By the Court (Duffly, J.)

Assistant Clerk

Entered: August 27, 2015

2

74

# Exhibit H

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |  |
|---|---|---|
| In Re: | ) | |
| | ) | |
| Andre Bisasor, | ) | Chapter 13 |
| | ) | Case No. 15-13369 |
| Debtor | ) | |

**Affidavit of Laura Donahue**
**Regional Property Manager, Greystar Management Services LP**

1. I am the Regional Property Manager for Greystar Management Services LP ("Greystar").

2. One of the properties that is within my region is Jefferson at Dedham Station which is managed by Greystar and owned by RAR(2)-Jefferson at Dedham Station MA.

3. I have been actively involved with the litigation surrounding the Debtor and his wife, Natalie Anderson, regarding their non-payment of rent since May 2014 for apartment #3413 at Jefferson at Dedham Station, as well as their failure to vacate apartment #2216.

4. I have attended most, if not all, of the court proceedings in the State Courts regarding this matter, including the one hour hearing before the Appeals Court regarding the Debtor's request for a stay on the levy of execution.

5. Being fully aware of the facts and circumstances of this case, the arguments and requests by the Debtor and the District and Appellate Court rulings, under no circumstances would Greystar accept full satisfaction of the Judgment and use and occupancy charges by the Debtor.

Signed to under the pains and penalties of perjury this 1st day of September 2015.

Laura Donahue RPM
Authorized Signer

76

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| In Re: | ) | |
| | ) | |
| Andre Bisasor, | ) | Chapter 13 |
| | ) | Case No. 15-13369 |
| Debtor | ) | |
| | ) | |

## Proposed Order
### Apartment #2216

This matter came before the Court on the Objection to Debtor's Certification Pursuant to

11 U.S.C. § 362(*l*)(1)(A) or in the alternative Request for Relief (Objection/Request) by Greystar

Management Services, L.P. as agent for owner RAR2-Jefferson at Dedham Station MA, Inc.

(Greystar), a creditor in the above-captioned proceeding with respect to property located at 2000

Presidents Way, Unit #2216, Dedham, Massachusetts (Temporary Premises).

1. In the Objection/Request, Greystar objects to Debtor's 11 U.S.C. §362(*l*)(1)(A)

   certification.

2. The owner of the Temporary Premises is RAR2-Jefferson at Dedham Station MA, Inc.,

   for which Greystar is the managing agent.

3. There is a prepetition Judgment for Possession for the Temporary Premises in favor of

   Greystar, issued by the Dedham District Court on May 27, 2015 (Prepetition Judgment

   for Possession).

4. The Prepetition Judgment for Possession for the Temporary Premises has solely a non-

   monetary basis and is not the result of a monetary default.

5. Therefore, 11 U.S.C. § 362(*l*)(1) does not apply to the Prepetition Judgment for

   Possession and in any event Debtor's 11 U.S.C. § 362(*l*)(1)(A) certification is incorrect.

1

6. The Court therefore upholds Greystar's Objection and 11 U.S.C. § 362(b)(22) applies immediately and relief from the automatic stay is not be required to enable Greystar to complete the process to recover full possession of the Temporary Premises.

7. In the alternative, good cause exists to grant Greystar relief from the automatic stay pursuant to 11 U.S.C. § 362(d) as against Debtor.

8. Due and adequate notice of the Objection/Request was given to Debtor.

Consequently, it is ORDERED that:

A. Greystar's Objection to Debtor's 11 U.S.C. § 362(*l*)(1)(A) certification is upheld and Greystar is entitled to immediately complete the process to recover full possession of the Temporary Premises; and in the alternative

B. Greystar is granted relief pursuant to 11 U.S.C. § 362(d) from the automatic stay so that it may immediately enforce its rights under the Judgment for Possession for the Temporary Premises.

Approved and so ordered,

_____

U.S. Bankruptcy Judge

2

78

UNITED STATES BANKRUPTCY COURT
EASTERN DIVISION, DISTRICT OF MASSACHUSETTS

| In re: | |
|---|---|
| Andre Bisasor | Chapter 13 |
| Debtor | Case No.   15-13369 |

## DEBTOR'S RESPONSE TO OBJECTION OF GREYSTAR MANAGEMENT AND OBJECTION TO MOTION OF GREYSTAR MANAGEMENT FOR RELIEF FROM STAY

NOW COMES Andre Bisasor, and responds to the numbered paragraphs of the objection (docket number 13 AND 14) of Greystar Management to his certification pursuant to §362(l)(1)(A), and also objects to its motion for relief from the automatic stay, for the following reasons. Any averments in the introductory paragraphs on the first page are admitted or denied to the same extent as set forth below.

1. Admitted.
2. Admitted.
3. The first sentence is admitted. The second sentence is denied.
4. Admitted. As stated elsewhere, the debtor was temporarily hospitalized at the time, which he believes counsel for Greystar knew.
5. Admitted, except that the issue of unpaid rent is denied for the reasons stated below. In essence, due to habitability issues, the parties had agreed that no rent would be due until the habitability issues were resolved.
6. The Appellate Division order speaks for itself.
7. Admitted, except that Greystar has falsely claimed that use and occupancy was due since the habitability issues were never resolved.
8. The order speaks for itself.
9. The order speaks for itself.
10. The order speaks for itself.
11. Admitted.
12. This allegation appears to quote the statute correctly.
13. While it appears to be true that *Massachusetts* law would not require the landlord to accept full satisfaction of the underlying money judgment, that does not constrain this court from determining if circumstances exist that would permit the debtor to cure the default. *See, e.g.,* §1322(b)(3). To the extent that state law conflicts with the Bankruptcy Code, state law is preempted. *See, e.g.*, In re Weinstein, 164 F.3d 677 (1st Cir. 1999).
14. As argued below and elsewhere, he has not exhausted all of his State Appellate rights. The appellate court orders referenced in the motion pertain to the waiver of an appeal bond, not to the merits of the eviction, which was entered on default, and probably is not final nor *res judicata*. *See generally* In re Strangie, 192 F.3d 192 (1st Cir. 1999). In addition, a number of courts have held that a debtor's home is presumptively and irrebuttably necessary for an effective reorganization, *see, e.g.,* In re Ford, 522 BR 829 (Bankr. D.S.C., 2014), *citing* Grundy Nat'l Bank v. Stiltner, 58 BR 592 (W.D.Va. 1986).

15. FURTHER RESPONDING, the debtor incorporates herein by reference all of the statements made in his *pro se* filings, as well as the memorandum attached hereto. In addition, the debtor respectfully suggests that the court should abstain from hearing the landlord/tenant issues and grant relief from the stay ONLY so that the parties may resume the state court litigation, but NOT to evict the debtor and his family from their home, *see* 28 USC §1334(c).

16. A memorandum in support of this opposition is in preparation and will be filed at th earliest possible moment.

WHEREFORE the debtor requests that the objection be overruled, the motion for relief from stay be denied except for the limited purpose of permitting the parties to resume the state court litigation but not to evict the debtor and his family without further order of this court.

September 16, 2015

Respectfully submitted,
Andre Bisasor,
By his attorney

/s/ *David G. Baker*

David G. Baker, Esq.
236 Huntington Avenue, Ste. 306
Boston, MA 02115
(617) 367-4260
BBO# 634889

Certificate of Service

The undersigned states upon information and belief that the within Objection and related documents will be served on the persons named below by the Court's CM/ECF system on the date set forth above.

/s/ *David G. Baker*

David G. Baker, Esq.

- Donna Ashton on behalf of Creditor Greystar Management Services LP as agent for owner RAR2-Jefferson at Dedham Station MA Inc. - dma@ashton-law.com
- Carolyn Bankowski-13 - 13trustee@ch13boston.com
- John Fitzgerald - USTPRegion01.BO.ECF@USDOJ.GOV

UNITED STATES BANKRUPTCY COURT
EASTERN DIVISION, DISTRICT OF MASSACHUSETTS

| In re: | |
|---|---|
| Andre Bisasor | Chapter 13 |
| Debtor | Case No.   15-13369 |

MEMORANDUM IN SUPPORT OF
DEBTOR'S RESPONSE TO OBJECTION OF GREYSTAR MANAGEMENT AND
OBJECTION TO MOTION OF GREYSTAR MANAGEMENT FOR RELIEF FROM STAY

In support of his response and objection, debtor Andre Bisasor incorporates herein by reference all of his prior *pro se* statements filed in this case, and further states as follows:

ARGUMENT

At issue is the provision of §362(l)(3)(A), which states;

**(A)** If the lessor files an objection to any certification filed by the debtor under paragraph (1) or (2), and serves such objection upon the debtor, the court shall hold a hearing within 10 days after the filing and service of such objection to determine if the certification filed by the debtor under paragraph (1) or (2) is true.

*Relief from stay*

Bisasor is the debtor and has filed the necessary certification and paid to the clerk of the court the rent coming due for the first month post-petition.  The lessor has objected to it, however, and further moved (in the same document) for relief from the automatic stay, contending, in conclusory fashion that "the Leased Premises are not necessary to an effective reorganization."  Aside from the conclusory nature of the assertion, a number of courts have held that a debtor's home is presumptively and irrebuttably necessary for an effective reorganization, *see, e.g.,* In re Ford, 522 BR 829 (Bankr. D.S.C., 2014), *citing* Grundy Nat'l Bank v. Stiltner, 58 BR 592 (W.D.Va. 1986).  The property at issue here is the principal residence for Bisasor and his family.  While other courts seem to disagree that it is *irrebutable*, *see* In re Huggins, 357 BR 180 (Bankr. D.Mas. 2006), nonetheless something more than a conclusory assertion is required in order to demonstrate that the debtor's home is not necessary to an effective reorganization.

The Huggins court required evidence, citing In re Timbers of Inwood Forest Assocs., Ltd., 484 US 365 (1988).  Thus if the court reaches the motion for relief from stay (which is unnecessary if the court "upholds" the lessor's objection, §362(l)(3)(B)), it should be denied, or, at a minimum, an evidentiary hearing should be scheduled.

*Greystar's objection to the debtor's Certification*

Greystar quotes from a part of Mass.Gen.Laws Ch. 239 §3 which states, essentially, that notwithstanding the other tenant protections in the statute, a landlord shall not be required to accept full satisfaction of the money judgment and refusal to do so shall not be a bar to enforcement of said judgment in any lawful manner.  This section applies only to a <u>final</u> judgment, however, and the section does not define "final judgment".  *See* ROPT Limited Partnership v. Katin, 431 Mass. 601 (2000), *esp. fn. 11.*

Greystar's judgment is not "final".  To understand why, it is necessary to look to the docket of the action in the Dedham District Court, a copy of which is attached.  The material entries are as follows;

| Date | Event |
| --- | --- |
| 2/11/15 | Summary process complaint filed |
| 5/4/15 | After several continuances of a bench trial, the judge ordered no more continuances. |
| 5/11/15 | Bisasor (which includes his wife unless the context requires otherwise) files an answer and counterclaims, including a demand for a jury trial.  In addition, he files discovery requests. |
| 5/14/15 | Greystar files motions to strike portions of the answer and counterclaims and for a protective order. |
| 5/26/15 | Bisasor and his wife request a continuance due to illness, which is denied and default judgment entered against them. |
| 6/8/15 | Bisasor files motion to remove default with an affidavit, a Notice of Appeal and motion to waive appeal bond, a motion to stay issuance of execution, and for recusal of the trial judge. |
| 6/9/15 | Motion to waive appeal bond denied. |
| 6/19/15 | Notices of Appeal filed re Reconsideration and Recusal |
| 7/2/15 | Memorandum of Decision concerning entry of default judgment is filed, but does not address the merits of the case or of Bisasor's counterclaims. |
|  |  |

4

UNITED STATES BANKRUPTCY COURT
EASTERN DIVISION, DISTRICT OF MASSACHUSETTS

In re:

|  |  |
|---|---|
| Andre Bisasor | Chapter 13 |
| Debtor | Case No. 15-13369 |

## VERIFIED MEMORANDUM IN SUPPORT OF
## DEBTOR'S RESPONSE TO OBJECTION OF GREYSTAR MANAGEMENT AND
## OBJECTION TO MOTION OF GREYSTAR MANAGEMENT FOR RELIEF FROM STAY

In support of his response and objection, debtor Andre Bisasor incorporates herein by reference all of his prior *pro se* statements filed in this case, and further states as follows:

## ARGUMENT

At issue is the provision of §362(l)(3)(A), which states;

**(A)** If the lessor files an objection to any certification filed by the debtor under paragraph (1) or (2), and serves such objection upon the debtor, the court shall hold a hearing within 10 days after the filing and service of such objection to determine if the certification filed by the debtor under paragraph (1) or (2) is true.

*Relief from stay*

Bisasor is the debtor and has filed the necessary certification and paid to the clerk of the court the rent coming due for the first month post-petition, and according to the docket, the clerk has sent the rent to Greystar, the lessor. The lessor has objected to it, however, and further moved (in the same document) for relief from the automatic stay, contending, in conclusory fashion, that "the Leased Premises are not necessary to an effective reorganization." Aside from the conclusory nature of the assertion, a number of courts have held that a debtor's home is presumptively and irrebuttably necessary for an effective reorganization, *see, e.g.,* In re Ford, 522 BR 829 (Bankr. D.S.C., 2014), *and* In re Alberts, 381 BR 171 (Bankr.W.D.Pa., 2008), *both citing* Grundy Nat'l Bank v. Stiltner, 58 BR 592 (W.D.Va. 1986). The property at issue here is the principal residence for Bisasor and his wife. While other courts seem to disagree that it is *irrebuttable, see* In re Huggins, 357 BR 180 (Bankr. D.Mass. 2006), nonetheless something more than a conclusory assertion is required in order to demonstrate that the debtor's home is not necessary to an effective reorganization. In addition, Mr. Bisasor is self-employed in several areas, primarily as a business management consultant and trainer, and works out of his apartment. Thus eviction would severely interrupt his business, which has already been negatively affected by all of the state court controversy and the habitability issues, which he has thus far tried to handle without the assistance of an attorney.

The Huggins court required evidence, citing In re Timbers of Inwood Forest Assocs.,

a.b.

Ltd., 484 US 365 (1988). Thus if this court reaches the motion for relief from stay (which is unnecessary if the court "upholds" the lessor's objection, §362(l)(3)(B)), it should be denied, or, at a minimum, an evidentiary hearing should be scheduled, especially as Bisasor has only been able to retain counsel earlier today, and counsel needs time to fully review the facts and circumstances, and prepare appropriate schedules, statements and plan[1].

*Greystar's objection to the debtor's Certification*

Greystar quotes from a part of Mass.Gen.Laws Ch. 239 §3 which states, essentially, that notwithstanding the other tenant protections in the statute, a landlord shall not be required to accept full satisfaction of the money judgment and refusal to do so shall not be a bar to enforcement of said judgment in any lawful manner. This section applies only to a <u>final</u> judgment, however, and the section does not define "final judgment". *See* <u>ROPT Limited Partnership v. Katin</u>, 431 Mass. 601, 605 (2000), *esp. fn. 11*. *See also* <u>In re Alberts</u>, *supra* (holding that §362(b)(22) does not apply until a judgment is final); <u>In re Nitzsky</u>, 516 BR 846 (Bankr.W.D.N.C., 2014) (discussing <u>Alberts</u>).

Greystar's judgment is not "final". To understand why, it is necessary to look to the docket of the action in the Dedham District Court, a copy of which is attached. The material entries are as follows:

| Date | Event |
|------|-------|
| 2/11/15 | Summary process complaint filed |
| 5/4/15 | After several continuances of a bench trial, the judge ordered no more continuances. |
| 5/11/15 | Bisasor (which includes his wife[2] unless the context requires otherwise) files an answer and counterclaims, including a demand for a jury trial. In addition, he files discovery requests. |
| 5/14/15 | Greystar files motions to strike portions of the answer and counterclaims and for a protective order. |
| 5/26/15 | Bisasor and his wife request a continuance due to illness, which is denied and default judgment entered against them. |
| 5/27/15 | Judgment for plaintiff by default enters on both possession and rent, and on the counterclaim. |
| 6/8/15 | Bisasor files motion to remove default with an affidavit, a Notice of Appeal and motion to waive appeal bond, a motion to stay issuance of execution, and for recusal of the trial judge. |
| 6/9/15 | Motion to waive appeal bond denied. |
| 6/19/15 | Notices of Appeal filed re Reconsideration and Recusal |
| 7/2/15 | Memorandum of Decision concerning entry of default judgment is filed, but does not address the merits of the case or of Bisasor's counterclaims. (Document 13-1, pg. 4) |

---

[1] Greystar filed its papers only about five days post-petition.

[2] Greystar has not requested relief from the co-debtor stay of §1301. Section 1301 has no provision remotely similar to §362(l). Furthermore, Greystar did not serve this motion on Mr. Bisasor's wife.

2

a . b.

What is noteworthy about the foregoing except from the docket is that the state court judge <u>never</u> decided the merits of Bisasor's motion to remove his default. All that the appellate court decisions decided was that Bisasor had not met the standards for a stay pending appeal[3]. Given that no decision about removing Bisasor's default was rendered by the trial court judge, and appeals are still pending, there is no final judgment. ROPT Partnership, *supra*. *See also* In re Tatum, *Slip op., case no. 14-03676-NPO (Bankr. S. D. Mississippi, March 6, 2015)[4]*.

At 59 pages, Bisasor's Answer and Counterclaims (attached) is rather more prolix that most *pro se* non-lawyers[5]. As such, it arguably does not comply with the rule requiring "short and plain" pleadings. Nonetheless, there can be no real dispute that it accurately and fully sets forth the extensive background of the dispute from Bisasor's viewpoint, the agreement between Bisasor and Greystar to remedy the situation, and why Bisasor believes the eviction action was a reprisal for reporting violations of law and for tenant's union activity, which reprisal is prohibited by Mass.Gen. Laws Ch. 239 §2A.

Absent a final judgment, the terms of §362(l)(3) should not control. *See* In re Weinraub, 361 BR 586 (Bankr. S.D. Fla., 2007) (holding, in similar circumstances, that the court has authority to waive §362(l) pursuant to its equitable powers under §105, *citing, inter alia,* Norwest Bank Worthington v. Ahlers, 485 US 197 (1988)).

The court's task as regards Greystar's objection is only to determine whether "circumstances exist" under state law whereby Bisasor would be permitted to cure the default, not whether Bisasor qualifies under those circumstances, which is an issue committed to the state court. *Cf.* Grella v. Salem Five Cent Sav. Bank, 42 F.3d 26 (1st Cir. 1994) (*res judicata* ordinarily does not apply as regards orders granting relief from the automatic stay).

*Because this is a chapter 13 case, the debtor can cure the default during the term of a plan.*

It hardly needs any citation to assert that the most common reason for individuals to file a chapter 13 case is to save their homes. While the usual cause is foreclosure of a mortgage, eviction of a tenant from a residential apartment is not uncommon. *See generally* Sarah Keith-Bolden, Down and Out and Now Kicked Out: Residential Lease Evictions and the Automatic Stay, 23 Emory Bankr. Dev. J. 585 (2006-2007).

This is because §1322(b)(3) says that a plan may "provide for the curing or waiving any default." "Any" *means* <u>any</u>, and there is no textual basis in the Bankruptcy Code for holding that a debtor may not cure a default in residential rent payments by way of a chapter 13 plan, nor (in

---

[3] All that the Appeals Court stated (arguably in dicta) was that Bisasor had not demonstrated a nonfrivolous defense to the <u>default</u>. The Appeals Court did not reach the merits of the eviction or of Bisasor's counterclaims, especially for breach of the warranty of habitability. *See generally* Boston Housing Authority v. Hemingway, 363 Mass. 184 (1973).

[4] Available at https://scholar.google.com/scholar_case?case=1441293673535234301&q=14-03676-NPO+&hl=en&as_sdt=40000003

[5] And probably most lawyers. Mr. Bisasor is a graduate of Oral Roberts University and Harvard University.

a.b

85

the limited time available to the undersigned) has any case been found that holds otherwise. *Cf.* Law v. Siegel, 134 S.Ct. 1188 (2014). The cases dealing with §362(l) all seem to pertain to whether a *non-monetary* default may be cured, not to whether the "cure" may be through a chapter 13 plan. Given the plain language of §1322(b)(3), this is understandable.

Greystar asserts that the default for apartment 2216 (at 2000 Presidents Way) is a non-monetary default. However, the reality of the underlying facts belies that assertion. As Mr. Bisasor's Answer and Counterclaims makes relatively clear, apartment 2216 was intended to be a temporary apartment while his apartment at 3000 Presidents Way was made habitable. The lease for 2216 states that no rent will be due unless Bisasor becomes a month-to-month tenant. Given that Greystar did not seek any rent in its summary process complaint regarding 2216, three inferences are justified: 1) 3413 was never made habitable since he never moved back there; 2) Bisasor never became a month-to-month tenant in 2216; and 3) the "no payment" lease for 2216 controls Greystar's right to rental payments, not the lease for 3413, meaning ultimately that Bisasor should not be required to pay *any* rent due to the breach of the warranty of habitability.

Where a rental apartment is uninhabitable, as Bisasor's still is, the tenant has an affirmative counterclaim and his damages for breach of the warranty of habitability are likely to be far in excess of any rent that would be due. See, e.g., Boston Housing Authority v. Hemingway, 363 Mass. 184 (1973). Here, again, the state court judge dismissed the counterclaims on default, without ever entering a decision on Bisasor's motion to remove the default. Consequently, Mr. Bisasor still has state law rights, including appellate rights, that very well could result in the default judgment being set aside and Bisasor not having any financial liability, at least until his apartment is made habitable.

Bisasor has stated repeatedly that he is ready, willing and able to pay the rent in accordance with the contract, subject to his state court rights to obtain a decision on his motion to remove the default, the merits of his counterclaim, and to appeal any adverse judgment. He and his wife should not be rendered homeless, however temporary that might be, while he still has such rights.

WHEREFORE Bisasor requests that Greystar's objection be overruled and the motion for relief from stay be denied.

September 16, 2015

<div style="margin-left:40%">

Respectfully submitted,

/s/ David G. Baker

David G. Baker, Esq.
236 Huntington Avenue, Ste. 306
Boston, MA  02115
(617) 367-4260
BBO# 634889

</div>

VERIFICATION

Andre Bisasor, debtor, hereby states under pains and penalties of perjury that the facts and circumstances stated herein are true and correct to the best of my knowledge and belief.

_Andre Bisasor_

Andre Bisasor, debtor

Certificate of Service

The undersigned states upon information and belief that the within Memorandum will be served on the persons named below by the Court's CM/ECF system on the date set forth above.

/s/ _David G. Baker_

David G. Baker, Esq.

- Donna Ashton on behalf of Creditor Greystar Management Services LP as agent for owner RAR2-Jefferson at Dedham Station MA Inc. - dma@ashton-law.com
- Carolyn Bankowski-13 - 13trustee@ch13boston.com
- John Fitzgerald - USTPRegion01.BO.ECF@USDOJ.GOV

5

COMMONWEALTH OF MASSACHUSETTS

NORFOLK, ss.

DISTRICT COURT DEPARTMENT
DEDHAM DIVISION

| | |
|---|---|
| GREYSTAR MANAGEMENT SERVICES LP; RAR2 JEFFERSON AT DEDHAM STATION – MA, INC.; DEUTSCHE BANK; SIMPSON GUMPERTZ & HEGER INC.; ASHTON LAW PC; LAURA DONAHUE; SARAH MCNEELY; CHRIS ESMOND; NATHAN TRAVALGIA; JOE GIULIANNO; DONNA ASHTON; DEBBIE WEBRE; W. TODD HENDERSON; ROBERT A. FAITH; J. DEREK RAMSEY; BILL MADDUX; MATTHEW LUPICA, | SUMMARY PROCESS DOCKET NO: 1554SU000026 |

SUMMARY PROCESS
DOCKET NO: 1554SU000026

Original Trial Date: 5/14/15

Rescheduled Trial Date: 5/28/15

(Discovery requested)

Plaintiff,

v.

ANDRE BISASOR; NATALIE ANDERSON,

Defendants.

## SUMMARY PROCESS ANSWER
## COUNTERCLAIM AND JURY DEMAND

Pursuant to Uniform Summary Process Rules, the defendants-tenants hereby respond to the Plaintiff's summary process complaint as follows:

### INTRODUCTION

This is a general overview of some of the issues, challenges, and harm we have encountered with our landlord. We have appealed these issues as whistle-blowers all the way up to Deutsche Bank, who is the ultimate owner of the property along with RAR2 Jefferson at Dedham Station-MA Inc (dba Jefferson at Dedham Station) and Greystar Management Services LP (the property management agent), and Donna Ashton Law Offices, to prevent them from engaging in retaliatory eviction (together herein referred as "Jefferson"), as well as to protect our rights. It is worthy of note that as recent as on Tuesday, 4/14/15, Jefferson's lawyer, Donna Ashton tried to distance Deutsche Bank from any accountability as Jefferson's owner by denying that they are the actual owner. This is while we have clear proof that they (Deutsche Bank) are in fact the owner of the property, and after Donna Ashton herself and Deutsche Bank themselves have acknowledged as much in writing. This is another sign of bad faith, and of unfair and deceptive business practices.

To be clear, after months of appealing to reason and ethics, Jefferson refused to deal with us on a good-faith basis, and instead threatened and started the process to evict us. We have been appealing to Jefferson management since April 2014—for an entire year now—when the elevator in our building was first condemned by the State. It was only after several intense rounds of communications (indeed strong advocacy and negotiation on our part) where we provided evidence of Jefferson's outrageous behavior and wrongdoing, to Deutsche Bank's Board of Directors and Management Board, that mediation was finally proposed. However, because no key decision-maker from Deutsche Bank was present at the negotiation table so-to-speak, Jefferson managers were unwilling or unable to shift out of their default tendency/culture of twisting the truth, hiding certain facts, not taking responsibility or accountability for their acts, blame-shifting, etc to manipulate the situation in their favor (this they are quite skilled at). Deutsche Bank claimed that they would investigate the matter—the results of which were not presented to us—so we are not sure if an investigation actually took place because we were never interviewed.

That said, Jefferson has been engaging in several wrong and unlawful acts against me and my wife, as well as other tenants including racial discrimination, disability discrimination, retaliation, unfair and deceptive practices, among other things. We have evidence of these acts. We were denied alternative housing, though we asked more than once about accommodations for those with medical conditions that make traversing the stairs a real hardship (i.e. four floors/over 80 stairs). We were also retaliated against. Yet no one at Jefferson has engaged us to investigate these issues and seek information from us that can prove these wrongdoings. Instead, we have been hounded, harassed, threatened, bullied, intimidated, badgered, pushed around, ignored, rebuffed, belittled, and disrespected by Jefferson or otherwise ignored by upper management of Greystar and the Boards of RREEF and RAR2 Jefferson at Dedham Station.

Jefferson has refused to investigate wrongdoing by its staff, and has instead sought to get rid of us because we have brought attention to these issues by first complaining to property staff, then to the Town of Dedham, then to Greystar upper management, then to State officials, then to the Board of RAR2 Jefferson, then to Deutsche Bank. Instead, Jefferson has tried to evict us, which was only recently been put on hold to allow for a voluntary mediation, only after we provided evidence of wrongdoing along with our plea for intervention by Deutsche Bank.

We are still awaiting a status on my request to the Deutsche Bank board for a full investigation into the activities of Jefferson as well as the RREEF/Deutsche Bank employees who have sat by and done nothing regarding these matters outlined herein and attached. These persons have engaged in provable wrongdoing which will be borne out by a thorough investigation. Also, Jefferson has failed to respond to the 93A demand letter within the 30 days allotted; however they did send a response after the fact (while we were awaiting the mediation), denying much of our claims and did not provide a counter-offer.

We believe that based on all the evidence we have in our possession, Jefferson has significant liability and that we are owed damages in our case (and there is potentially a class action to include other tenants).

### Background Summary

As a brief background, we are both Black, U.S. citizens, originally from Jamaica. We have lived at this property since 2008 (about 7 years now). Upon confirming tenancy, Jefferson made several representations to us, including

promises/commitments about the general amount and frequency of rent increases (i.e. that if there were any, it would generally be around $50 but never above a $100 increase), which they have reneged on. Since then, the Landlord has charged us exorbitant rents with around $300-400 annual rent increases which seems equivalent to a "black tax" or "premium charge" to us as Black tenants, in an attempt to either force us out of our home or otherwise to take advantage of us (NB: some Black tenants report $500 rent increases). We have evidence that they have charged other similarly situation White tenants a fraction of what they have charged us for equivalent/identical units, including much more favorable rent increases and extra long lease terms, which they have denied us.

Most recently, Jefferson has engaged in a number of illegal and unfair/deceptive practices that has caused us much harm/damages and pain and suffering. That said, Jefferson did represent to us in or around May 2014 that they would work on providing a settlement to us, but they never followed through. They also said they were amenable to moving us to an alternative permanent apartment unit, but they reneged on that as well (only recently adding new stipulations that we need to pay all the monies they are demanding before they will allow us to move to a more suitable unit). For the record, they represented to us (as per the new lease contract we signed in May 2014) for the temporary unit #2216, that we would not be charged anything for that unit, and so we have a "$0" lease agreement. As for our original apartment #3413, we told them that we would be withholding rent until the elevator was fixed as well as the ongoing issues in that apartment. And so, they understood our position, and did not object, at least not initially. However, they later back-tracked on our understanding about the rent withholding, and issued a notice to quit, but then "withdrew" it. It is worthy of note that other tenants also withheld rent due to the elevators being down.

Beyond that, Jefferson has gone back and forth (i.e. flipped-flopped) about putting together an offer for us related to the harms we have suffered as a result of their misconduct, etc. They had also told us and we understood that we would not be required to pay back-rent for our primary apartment (which we were no longer occupying), and that after we moved back to that unit, we would only be charged going forward. However, Jefferson has gone back on that commitment as well, and has since demanded we pay back-rent for that unit (that we were displaced from), as well as the zero-rent temporary unit. This is in retaliation for us speaking up about mistreatment and discrimination, etc.

Our lives have been turned upside down due to this situation. We have lost critical work time, personal time, even family time having to deal with these issues related to being displaced from our home as well as managing an onslaught of relentless harassing behavior, attacks and unfair tactics by the Landlord and their lawyers. Our quality of life and family and social gatherings have been affected as a result of the loss of use of our home. It has also been a hardship having portions of our business and personal effects and various items including files/documents, equipment, materials etc in one place while we're in a small temporary unit. Even simple things such as getting urgent or couried mail has been impacted because they refuse to allow us to receive mail or package delivery in the temporary unit (i.e. they refuse giving us the mailbox key for the temp. unit), in addition to the impact on accessing our storage unit (next to our unit 3413 on the fourth floor of building 3) due to the elevator issue. We've had to pay for utilities in our home that we are not able to use. They have allowed us limited services and access in the temporary apartment which has impacted our quality of life and peaceful enjoyment of our home (i.e. though they promised to provide equivalent services in the temporary unit but reneged by withdrawing proper services and providing only limited services; and they have allowed our utilities to be shut-off several times due to non-payment

even though they receive several payment reminders every time from the utility provider). In addition to an inadequate couch with bad cushions/support, they have refused to provide us a proper bed (i.e. a cheap unstable and shaky bed which has caused us injury) and they have maliciously refused to replace the bed though they promised to do so. Most recently, when asked again about this, they lied and said that they thought it was taken care of, and then later when we made a formal request from our doctors with a reasonable accommodations request, they simply denied the request saying there is no proof that the bed is causing us injury. They have even refused to assist us with moving our own bed from unit 3413 though we asked because they don't want to be liable for any damage during moving. Consequently, we've had to endure sleeping apart as husband and wife for a year due to the inadequate bed and furniture provided which has caused us injury and medical issues, and stress/setbacks in a fairly young marriage where we were trying to conceive. This entire thing has derailed our plans to start a family. At our age, we are now saddled with neck and back and issues, as well as leg/foot issues requiring months of physical therapy for us both.

Though we notified management to add a note in our file to not enter our home without an appointment, maintenance has continued to enter our home on multiple occasions without our permission. My wife has been traumatized by illegal entry by maintenance (where there was no announcement or appointment, just a random entry) into our home while she happened to be at home in the shower naked. This was a traumatizing experience that has resulted in nightmares for my wife, and caused tremendous anguish. This is in addition to management's collusion with and/or negligence related to maintenance staff entering our home, which has resulted in us having to call the police twice to make report these entries and theft of property coming to the point that we have been forced to purchase a security system with cameras.

Jefferson has refused the basic reasonable accommodations request we have made to them (though they initially signaled in writing that they agreed, they later reneged on that agreement. This was after we provided letters from our doctors confirming our medical condition/disability). They have also used intimidation and harassment tactics coming to our door and banging and talking loudly causing an unnecessary scene. They've also demanded to enter our home for non-emergencies in the middle of the holidays, as opposed to coordinating with us to schedule an appointment. Their staff, including their maintenance staff and their process server, has come to our door eavesdropping on our conversations—we've actually caught them in the act. In fact, subsequently their own process server lied in a sworn statement about delivering a document to us for court, but this was not true and we have video-recorded evidence from a home security camera to prove it.

Also, most recently in February 2015, when our apartment flooded requiring that they had to rip up the carpet in the master bedroom and bring in equipment to dry out the water, they refused to try to find investigate the source of the breach or make appropriate attempts to fix it. They also did nothing to address the strong mold smell (though it further inflamed my wife's asthma). They also refused to do anything else to remediate the mold, such as removal of the padding or replacing the carpeting.

Additionally, we've been complaining about a non-working dishwasher for years, and they have never successfully fixed it. They did recently replace it with a more basic/smaller dishwasher, but that dishwasher was worse, and wasn't even installed properly. It had loose parts still in the washer and even though we pointed this out to the

maintenance supervisor, he never fixed it. Also, the washer continues to flood and leak, and the shoddy installation has blocked us from being able to freely open a kitchen drawer that stores our utensils.

We have issues that signal that there is a structural problem where the leveling is off kilter, such that some doors don't shut, whereas others swing/close on their own and won't stay open. We also have jamming windows that are difficult to open or close, as well as bunching carpets and displaced floor panels. We were told by several State officials both at the Dept of Public Health and the Dept of Public Safety that these issues, combined with the cracking throughout the apartment are tell-tale signs of a structural issue.

Maintenance continues to be disrespectful and rude to us, refusing to engage us when we are talking to them (particularly the maintenance supervisor, who takes his cues from the negative and dismissive attitude that management has shown to us) or if we ask questions about an issue with the apartment, sometimes walking away without acknowledging us when we're in the middle of a sentence. We also have a leaky water heater that has greenish/bluish gunk corrosion buildup on the pipes, we've asked maintenance to address this and they refused to. The maintenance supervisor said the corrosion probably resealed the leak so he's leaving it as is. Management was also aware but has done nothing to address it. We are concerned about the safety of the water and the soundness of the water heater. In fact, one of our neighbors said maintenance didn't properly address a leak in her apartment, and the equipment burst and flooded her home requiring the removal of her furniture and several days of use of fans to dry out her home. That said, we have been subject to extra hostility from management and maintenance as a result of the concerns we have raised.

There are noxious odors that flare up throughout the entire apartment and affects both of us, but especially causes a major issue for my wife, including headaches, difficulty breathing, difficulty sleeping, etc.

Given these issues, we raised concerns to management but they have refused to address them; and so we have withheld rent in order to force them to properly address these issues. Instead they have attempted to retaliate and evict us. We don't want to have to uproot our lives and to be forced to move completely simply because we are speaking up against mistreatment and wrongdoing. We have built a life, we operate our business, and go to church in Dedham, so we don't want to be scared off and bullied into moving for speaking up for our rights as tenants and citizens. We are certain that much of the hostility we have been subject to is based on the fact that we are Black, and after we reported the discrimination we experienced, they blatantly proceeded to retaliate against us.

For the bulk of time we've lived at the property, we have not had much interactions or conflict with management (i.e. for the first few years of our tenancy). While there have been some challenges, we are generally quite busy with our work/business, school, and travel so we have largely not made a huge deal about some of the issues we've experienced with Jefferson over the years. However, there have been certain issues we've brought to the attention of management, including the cracks in our apartment. Yet they refused to fix this so we were forced to finally report this to the Town of Dedham in 2012, and they issued a citation requiring the cracks to be fixed, among other things. Instead of fixing the cracks, Jefferson did temporary patches that recracked within a couple of months. We asked them to fix the cracks, but they did not. Finally, we called the Town again in October 2014 about the cracks after Jefferson maintenance staff neglected to fix the cracks though we gave them access to do so on several occasions. Subsequently, the Town's Building Commissioner/Inspector stated that he was concerned that the

cracks may be related to the structural issues that caused the elevator to be shut down. He stated that given my wife's medical condition, that we should remain in the temporary unit until permanent repairs were made, so as to avoid further exposure (he is also a leader in the Town's Commission on Disability). As a result of that inspection of our unit (as well as a brief look at the common areas), he ordered an Engineer's Evaluation.

Jefferson has erected roadblocks to prevent our primary apartment from being included in the engineer inspection ordered by the Town of Dedham, after they inspected our apartment cracks etc. Instead Jefferson manipulated us and lied about the appointment date in order to exclude our unit from being evaluated by their own engineer in December 2014. It was only following numerous appeals by us, Deutsche Bank's involvement, the recent flooding of our home, further appeals by us to the Town, that they finally allowed the engineer evaluation at the end of February 2015. Nevertheless, they attempted to rush the engineer in an appointment overseen by Jefferson management. Furthermore, the engineer doing the evaluation had incomplete information or misinformation about the larger context of the situation, including the elevator etc). Additionally, the engineer results were not given to us until a few days ago (on 4/11/15) after my request for a status (while Jefferson received those results a month ago).

Our concern about the cracks in our primary home is highlighted by the impact of not having a working elevator for much of 2014. My wife and I have been displaced from our home and have been in a temporary apartment unit since after the elevator in our building was condemned and put out of service by the State (in mid-April 2014) due to structural concerns related to cracking and rapid state of "settling" (or sinking) in the elevator shaft. This has been the case until the State finally agreed to Jefferson's own appeals that they not be required to do the mandated fixes required by the State before the elevator could be operational. The State has expressed concern about a catastrophic failure of the elevator that would put residents at risk. The State finally relented after Jefferson refused to make the repairs and they and their attorneys and engineer made numerous appeals (causing months and months of delays) requesting that the State allow interim fixes via essentially a temporary patch-up which was finally done in December 2014, before the elevator was fully operational again. Yet, we have been trying to get the related and ongoing issue of cracks etc in our permanent apartment addressed prior to moving back to that unit, due to safety and health concerns, as well as due to the equities involved in renting a sub-par deteriorating apartment unit. The landlord refused to budge to provide an engineer assessment until well after our pleas to Deutsche Bank, the Town, the State, as well as a flooding our bedroom (from water leaking in and causing which resulted in mold and noxious odors, etc.), forced them to re-consider their approach, and this was only after the mediation was already being contemplated.

NB: Due to time constraints, this brief summary does not capture a number of issues including our impacted health issues and a number of other things that the Landlord. However, further details are largely outlined in the remainder of the body of this document.

---

## FACTUAL BACKGROUND

---

1. We are Andre Bisasor and Natalie Anderson. We are co-tenants. We are married.

2. We live at 3000 Presidents Way #3413, Dedham, MA 02026. We moved in on or about July 2008. This is building 3 of the property.

3. We also live at 2000 Presidents Way #2216, Dedham MA 02026. We were displaced to this unit in May 2014 until the present time due to a broken elevator that serviced our apartment 3413 in building 3 and because of structural problems that affected our health/wellbeing in unit 3413. This unit is located in building 2 of the property.

4. We are charged rent of $2390 per month for unit 3413. We do have a written lease for unit 3413.

5. We are charged $0 in rent per month for unit 2216. We do have a written lease for unit 2216.

---

## DEFENSES FOR POSSESSION

---

### Summary of Defenses for Possession

6. Tenants deny that they are living in the premise unlawfully and against the right of the Landlord.

7. Tenants deny that they owe the Landlords the amount of rent listed in the complaint.

### *Affirmative Defenses*

8. FIRST AFFIRMATIVE DEFENSE: The Landlords do not have a superior right to possession or standing to bring this claim.

9. SECOND AFFIRMATIVE DEFENSE: The Landlords do not state a claim upon which relief can be granted.

10. THIRD AFFIRMATIVE DEFENSE: The Landlords lack grounds to terminate the Tenants' tenancy. Even if the tenancy was terminated, which is denied, a new tenancy has been created by the Landlords' conduct.

11. FOURTH AFFIRMATIVE DEFENSE: Based on principles of equity and fairness, it is unfair to evict Tenants.

12. FIFTH AFFIRMATIVE DEFENSE: The Tenants are not now and have not in the past been in violation of their lease agreement sufficient to justify termination. The Landlords are therefore barred from seeking possession of the premises and this complaint must be dismissed.

13. SIXTH AFFIRMATIVE DEFENSE: Article 114 of the Massachusetts State Constitution prohibits discrimination against or the exclusion of disabled individuals solely by reason of his or her disability from

programs or activity within the Commonwealth. The Tenants have disabilities that are verified and this eviction is the result of a failure to accommodate these disabilities.

14. SEVENTH AFFIRMATIVE DEFENSE: The Landlords do not have good cause to evict the Tenants. The Landlords are therefore barred from seeking possession of the premises and this complaint must be dismissed.

15. EIGHTH AFFIRMATIVE DEFENSE: Landlords are seeking to terminate tenancy in retaliation after Tenants withheld rent for bad conditions on the premises, after Tenants reported these bad conditions to various local and state officials, after Tenants raised concerns about discrimination and other wrongs, and after Tenants engaged in tenant organizing activity. The Landlords are therefore barred from seeking possession of the premises and this complaint must be dismissed.

16. NINTH AFFIRMATIVE DEFENSE: Landlords have breached the warranty of habitability and violated the state sanitation code. The Landlords are therefore barred from seeking possession of the premises and this complaint must be dismissed.

17. TENTH AFFIRMATIVE DEFENSE: Landlords have breached the covenant of quiet enjoyment with Tenants. The Landlords are therefore barred from seeking possession of the premises and this complaint must be dismissed.

18. ELEVENTH AFFIRMATIVE DEFENSE: Landlords have not properly brought the case or served process. Therefore this complaint must be dismissed.

19. TWEFTH AFFIRMATIVE DEFENSE: Landlords have not filed this action in the proper venue and the amounts being sought by Landlords are likely to amount to more than the District court limit of $25,000. Therefore this complaint must be dismissed.

20. THIRTEENTH AFFIRMATIVE DEFENSE: The Landlords have breached material terms of the rental agreement and violated other laws related to the tenancy including the security deposit law and the law of the covenant of "quiet enjoyment" of the apartment. The Landlords are therefore barred from seeking possession of the premises and this complaint must be dismissed.

21. FOURTEENTH AFFIRMATIVE DEFENSE: Tenants reasonably relied upon relied on landlord's conduct and representations in failing to tender rent.

22. FIFTEENTH AFFIRMATIVE DEFENSE: The court lacks subject matter jurisdiction.

23. SIXTEENTH AFFIRMATIVE DEFENSE: Landlords have waived their rights due waiver, laches, estoppels and unclean hands. The Landlords have waited a year to bring this eviction suit and this long delay in asserting the right or claim has prejudiced the Defendants i.e. as a sort of "legal ambush." Tenants have lost evidence, witnesses, and a fair chance to defend themselves after the passage of time from the date acts occurred. Defendants have incurred disadvantages because for a long time they relied on the fact that no breach occurred or no lawsuit would be started. Thus the case should be dismissed in the interests of justice.

---

*Defense*
**Tenancy Not Properly Terminated and Case Not Properly Brought**
(Mass. Gen. Laws, c. 186, §§11-13, 17 )

---

24.     Defendants re-allege and incorporate all paragraphs above as if fully set forth herein.

25. The landlord did not terminate our tenancy properly  and case not properly brought as follows:

a. **The Notice to Quit for unit 3413 is defective because it included late fees.**

    i. Defendants are tenants in rental housing owned by RAR2 Jefferson at Dedham Station and managed by Greystar Management Services LP ("Landlord" or "Plaintiff"). The parties had a lease agreement, according to which Defendants were responsible for payment of $2390 per month.

    ii. Plaintiff's termination notice is fatally defective for failing to comply with the Massachusetts statutes. Since the notice is in fact insufficient, this deprives the Court of jurisdiction over this eviction action. The notice is insufficient because it contained a demand for late fees in addition to rent, including late fees that were not yet due. All rent due does not include late fees. This failure is sufficient to find that the notice was ineffective and, therefore, insufficient as far as being the basis of eviction action.

    iii. A Defendant's motion to dismiss should be granted if a plaintiff would not be entitled to relief from a defendant under any set of facts that could be proven in support of the plaintiff's complaint.

    iv. Actions for eviction that are due to nonpayment of rent are strictly regulated by statute. Proper termination for nonpayment of rent which requires a written notice that legally required or sufficient information and that does not violate the law or is otherwise illegal.

    v. In considering the sufficiency of a termination notice, a critically important factor is whether the statute has been complied with and not whether the tenant has been misled by the notice given.

    vi. Because service of a valid and proper notice to quit is a condition precedent to maintaining a trespass and ejectment action, plaintiff failed to properly invoke the jurisdiction of the court i.e. that tenancy is not terminated without proper notice, regardless of landlord's intention.

    vii. Also, Tenants are not liable for late fees where tenants properly withheld rent.

    viii. A proper Notice to Quit is a condition precedent to an action for eviction. When less than all the requisite elements of a cause of action exist when the complaint is filed, the complaint must be dismissed without leave to amend. *Rolling Oaks Homeowner's Assn. v. Dade County,* 492 So. 2d 686 (Fla. 3d DCA 1986).

    ix. Therefore, this case should be dismissed because the court's subject matter jurisdiction was not invoked properly. Therefore, the notice did not provide an adequate basis for initiating an eviction action. This holding is in agreement with previous termination-of-tenancy cases that have required strict compliance with notice requirements.

    x. Defendant's Motion to Dismiss should be granted and Plaintiff's Complaint should be dismissed with prejudice and without leave to amend.

b. **The Notice to Quit for unit 3413 is defective because it includes issues that predate the parties' current lease and tenancy. In support thereof, the defendants states as follows:**

    i. Plaintiff never terminated the tenancy and thus may not proceed with a summary process action under G.L. c. 239 §1 and G.L. c. 186 §11.

    ii. The parties executed one prior term lease that expired on September 14, 2014.

    iii. The parties' current term lease was automatically renewed thereafter.

    iv. The plaintiff/landlord's notice to quit dated December 23, 2014, states that defendants were being evicted for non-payment of rent for months in the prior term.

    v. The plaintiff's notice to quit refers to issues that predate the current tenancy.

vi. Where, as here, the plaintiff/landlord is relying on incidents arising from a prior tenancy or lease with the defendant/Tenant, these cannot serve as the basis for recovery of possession in a summary process action. See Nyack Plaza v. Parker, 18 Misc.3d 126(A), 856 N.Y.S.2d 25 (Table), 2007 WL 4355300 (N.Y. Sup. App. Term); CMJ Management Co. v. Paris, Boston Housing Court No. 96-SP-03148 (Winik, J., November 22, 1996) (incidents occurred prior to most recent lease renewal); Commonwealth-Babcock Associates v. Kibbi, Boston Housing Court No. 96-SP-01741 (Winik, J., April 26, 1996) (claim for rent due under a prior lease must be pursued in a separate contract action); Weld Park Apts v. Jones, Boston Housing Court No. 12-SP-4325 (Winik, F.J., Dec. 5, 2012) (same); Grant Manor, LP c/o Cornu Mgt. v. Gerena, Boston Housing Court No. 04-SP-02581 (Nasif, J., December 23, 2004) (claim for rent due under previous occupancy cannot be a basis for claim for possession under new lease). See also Montgomery Gateway East I v. Herrera, 261 N.J. Super. 235, 241, 618 A.2d 865, 867 (1992) (new or renewal lease operates as waiver of right to dispossess for past defaults); State Farm Fire & Casualty Co. v. Firmstone, 9 A.D.2d 812, 780 N.Y.S.2d 820 (N.Y. Supreme Ct., App. Div., 3 rd Dept., 2004); Felton v. Strong, 37 Ill.App.58 (Ill. App. 1st Div. 1890).

vii. The plaintiff/landlord is confined to the grounds assigned in its notice to quit. U.S.P.R. 2(d). See Roseman v. Day, 345 Mass. 93, 185 N.E.2d 650, 654 (1962); Strycharski v. Spillane, 320 Mass. 382, 69 N.E.2d 589, 591 (1946); and Tuttle v. Bean, 54 Mass. (13 Metc.) 275 (1847) cited in Flaschner Judicial Institute, Residential Summary Process Bench Book (1991). See also Pine Grove Village, Inc. v. Cardullo, 2001 Mass. App. Div. 234, 235, 2001 Mass. App. Div. LEXIS 84 (incumbent upon owner to establish that tenant committed those violations of the terms of the lease specifically identified and alleged in the notice to quit).

viii. WHEREFORE, this action must be dismissed or the Court is without jurisdiction to entertain this summary process action

**c. The Notice to Quit for unit 3413 is defective because it contains confusing language regarding when the Tenants should deliver the premises and how much time they had to cure.**

i. There is an overshadowing in the notice to quit that contained the 14 day notice to quit as well as the 30 day FDCPA "Miranda warning".

ii. Even if the FDCPA statutory notices are given, a violation of the FDCPA may still occur if additionally language in the notice is found to have "overshadowed" or contradicted by other language in the collection letter. The Second Circuit Court of Appeals has stated "[w]hen a notice contains language that 'overshadows or contradicts' other language informing the consumer of her rights, it violates the Act." In Russell v. Equifax, 74 F.3d 30, 34 (2nd Cir. 1996), the court found that despite the proper statutory notices, a violation of the FCDPA occurred when the debt collector added the following language to the letter "If you do not dispute this claim (see reverse side) and wish to pay it within the next 10 days we will not post this collection to your file." Therefore, all that a plaintiff needs to show is a contradiction between the required notices and other language in the letter.

iii. We were thus presented with two different and conflicting statements. If we believed the message printed on the bottom of the notice, we would understand, as the FDCPA intends us to, that we had 30 days to decide whether to contest the claim. But, if we

        believed what was printed on the top of the notice, we would fear that unless we decided not to dispute the claim and to pay it within 14 days, the alleged debt owed would result in legal action and eviction.

iv.    Any notice sent by the debt collector (which demands payment before the expiration of the 30 day validation period) constitutes an overshadowing violation. Accordingly, to prevent overshadowing, a debt collector should not include any language in the original letter which implies a consumer take action prior to the 30 day validation period.

v.    See Jacobson v. Healthcare Fin. Servs, Inc., 516 F.3d 85 (2nd Cir. 2008). See McMillan v. Collection Prof'ls, Inc., 455 F.3d 754, 759 n. 5 (7th Cir. 2006) (stating "a debt collector can violation § 1692g by contradicting the required information or by 'overshadowing' it" and "a letter can be confusing when it overshadows the necessary language, when it contradicts the required language or when it fails to explain an apparent contradiction").

vi.    The notice to quit should not contain confusing language.

vii.    Our notice to quit does contain confusing language.

viii.    A notice to quit, under this statute, is a distinct act upon which important rights and consequences are made to depend. It must, therefore, be sufficient and perfect of itself without reference to any subsequent proceedings. It is not made to depend upon them for its validity, but they upon it. In order for the plaintiffs to sustain the validity of the notice, in this case, they would have to make the sufficiency of a notice to quit to depend not upon its own intrinsic validity, but upon the proceedings which are to follow it. Such a construction would defeat the main object in requiring a notice to be given to the tenant, for he would then be left to wait for the commencement of the summary proceedings, in order to ascertain the object of his lessor in giving him the notice.

ix.    The term, "notice to quit," has a clear, well defined and settled meaning in the law. When it is used in a statute, it is to be taken and understood in its legal and technical sense, with all the qualities and incidents which the law regards as essential to it, unless it is qualified by express enactment. Merchants Bank v. Cook, 4 Pick. 411 ; Rev. Sts. c. 2, § 6, cl. 1. Among the indispensable requisites at common law of a notice to quit, it is clearly established, that it must indicate to the tenant, with sufficient certainty, that he is to quit the premises at a certain fixed period, and if any mistake is made in designating the time at which he is required to leave, the notice will be fatally defective. If the tenant is required to quit at too early a day, the notice will be unavailing. So, too, in cases where by stipulation between the parties to a lease a certain notice has been agreed on for the purpose of determining a lease, it is clearly settled that a mistake in naming the time when the tenant is required to quit, renders the notice ineffectual. 2 Archb. N. P. 397; Oakapple v. Copous, 4 T. R. 361; Doe v. Lea, 11 East, 312; Johnstone v. Hudlestone, 4 B. & C. 922; Doe v. Green, 9 Ad. & El. 058; Cadby v. Martinez, 11 Ad. & El. 720; Hanchet v. Whitney, 1 Verm. 311; Anderson v. Prindle, 23 Wend. 616; Baker v. Adams, 5 Cush. 99 .

x.    The notice given to the tenant is defective in stating amount of time that the tenant was required to quit the premises, in a confusing manner. We have a right to insist on the notice required by law, and to treat as a nullity the one given to us, because it was irregular, and not in conformity to the requirements of the statute. Plaintiffs have

therefore failed to give the tenants a legal notice to quit, and thus cannot maintain their complaint.

    xi. WHEREFORE, this action must be dismissed or the Court is without jurisdiction to entertain this summary process action

**d. The Notice to Quit for unit 3413 was not submitted to the court along with the Summons and Complaint upon the filing of the case and therefore the case was not properly brought/filed.**

    i. The Uniform Summary Process Rules have been designated as Trial Court Rule I, effective September 1, 1980. Subparts (d)(1) and (2) of rule 2 read as follows: "(d) Entry of Action. Summary process actions shall be entered by filing with the clerk of the court in which the action is to be heard the following documents: "(1) the original of the properly completed form of Summary Process Complaint and Summons, a copy of which has been served on the defendant, with return of service recorded thereon; "(2) a copy of any applicable notices(s) of termination of the defendant's tenancy of the premises upon which the plaintiff(s) relies where such notice is required by law and any proof of delivery of such notice upon which the plaintiff(s) plans to rely at trial . ."

    ii. Therefore the simultaneous filing of the notice together with the complaint is required by the rule.

    iii. Because the landlord ran afoul of Uniform Summary Process Rule 2(d)(2) by failing to file with the clerk on the entry day "a copy of [the] applicable notice of termination [notice to quit] of the defendant's tenancy," the summary process action should be dismissed.

**e. The Summons and Complaint for unit 2216 is defective and/or was not properly served because it has a wrong address.**

    i. Plaintiff's Summons and Complaint are fatally defective for failing to comply with the Massachusetts statutes. Since the Summons and Complaint are in fact insufficient, this deprives the Court of jurisdiction over this eviction action. The Summons and Complaint is insufficient because it contained a non-existent wrong address. This failure is sufficient to find that the notice was ineffective and, therefore, insufficient as far as the basis of eviction action.

    ii. A Defendant's motion to dismiss should be granted if a plaintiff would not be entitled to relief from a defendant under any set of facts that could be proven in support of the plaintiff's complaint.

    iii. Actions for eviction are strictly regulated by statute. Proper termination of a tenancy requires a written notice that has legally required or sufficient information and that does not violate the law or is otherwise illegal.

    iv. In considering the sufficiency of a Summons and Complaint, a critically important factor is whether the statute has been complied with and not whether the tenant has been misled by the notice given.

    v. Because service of a valid and proper Summons and Complaint is a condition precedent to maintaining a trespass and ejectment action, plaintiff failed to properly invoke the jurisdiction of the court i.e. that tenancy is not properly brought without proper Summons and Complaint, regardless of landlord's intention.

    vi. A proper Summons and Complaint is a condition precedent to an action for eviction. When less than all the requisite elements of a cause of action exist when the complaint is filed, the

complaint must be dismissed without leave to amend. *Rolling Oaks Homeowner's Assn. v. Dade County,* 492 So. 2d 686 (Fla. 3d DCA 1986).

vii. Therefore, this case should be dismissed because the court's subject matter jurisdiction was not invoked properly. Therefore, the Summons and Complaint did not provide an adequate basis for initiating an eviction action. This holding is in agreement with previous cases that have required strict compliance with Summons and Complaint requirements.

viii. Defendant's Motion to Dismiss should be granted and Plaintiff's Complaint should be dismissed with prejudice and without leave to amend.

**f. The Notice to Quit for unit 2216 was not submitted to the court along with the Summons and Complaint upon the filing of the case and therefore the case was not properly brought/filed.**

i. The Uniform Summary Process Rules have been designated as Trial Court Rule I, effective September 1, 1980. Subparts (d)(1) and (2) of rule 2 read as follows: "(d) Entry of Action. Summary process actions shall be entered by filing with the clerk of the court in which the action is to be heard the following documents: "(1) the original of the properly completed form of Summary Process Complaint and Summons, a copy of which has been served on the defendant, with return of service recorded thereon; "(2) a copy of any applicable notices(s) of termination of the defendant's tenancy of the premises upon which the plaintiff(s) relies where such notice is required by law and any proof of delivery of such notice upon which the plaintiff(s) plans to rely at trial . . . ."

ii. Therefore the simultaneous filing of the notice together with the complaint is required by the rule.

iii. Because the landlord ran afoul of Uniform Summary Process Rule 2(d)(2) by failing to file with the clerk on the entry day "a copy of [the] applicable notice of termination [notice to quit] of the defendant's tenancy," the summary process action should be dismissed.

**g. The tenancy for unit 2216 was specifically renewed by oral agreement and thus requires a new notice to quit, which has not been served. Therefore the case was not properly brought/filed.**

26. Even if our tenancy was terminated for 3413 or 2216, a new tenancy has been created by our landlord's conduct.

27. The landlord does not have a superior right to possession and/or does not have standing to bring this action.

28. The landlord's case should be dismissed because the Landlords have not filed this action in the proper venue and the amounts being sought by Landlords amount to more than the District court limit of $25,000. Therefore this complaint must be dismissed.

29. The Complaint of Landlord should be dismissed in favor of a prior pending action between the same parties in Norfolk Superior Court, or to transfer and consolidate this action with the Norfolk Superior Court action as follows:

a. **This Action Should be Dismissed Because the First-Filed Rule Clearly Favors The Norfolk Superior Court Action.**

Massachusetts Rule of Civil Procedure 42(a) provides that when "*actions involving a common question of law or fact are pending before the Court, in the same county or different counties," the Court "may order all the actions consolidated; and it may make such orders concerning the proceedings therein as may tend to avoid unnecessary costs or delay*." Mass.R.Civ.Pro. 42(a).

Under the "first-filed rule," the first-filed complaint is generally preferred. Kleinerman v. Luxtron Corp., 107 F.Supp. 2d 122, 124 (D.Mass. 2000); Holmes Group v. Hamilton Beach/Proctor Silex, 249 F.Supp. 2d 12, 15-16 (D. Mass. 2002). Application of this principle clearly favors Norfolk Superior Court as the proper venue for this case.

In addition, Massachusetts Rule of Civil Procedure 12(b)(9) provides as follows:

> Every defense, in law or fact, to a claim for relief in any pleading… shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion:…(9) Pendency of a prior action in a court of the Commonwealth. Mass.R.Civ.Pro. 12(b)(9).

"A dismissal under 12(b)(9) may be appropriate if the parties and issues are identical to those in the prior pending action. See, Smith & Zobel, Rules Practice §12.15.1 (1974 & Supp. 1992)." Harvard Community Health Plan, Inc. v. Zack, 35 Mass. App. Ct. 649, 652 (1992)(additional citations omitted); see also, Conant v. Kantrovitz, 29 Mass. App. Ct. 998, 999 (1990).

This Rule provides additional authority for dismissal of this action based on the pendency of the Norfolk Superior Court Action.

i. **Competing Actions**
   a. The Tenants filed first in Norfolk Superior Court. The Tenants filed the Norfolk Superior Court Complaint on Monday, January 5, 2015. It is the Tenants' understanding that this Dedham District Court action was filed on January 19, 2015 on a later date. The parties to this case are: Landlord Greystar Management Services, LP; Tenants Andre Bisasor and Natalie Anderson. The parties to the Norfolk Superior Court Action are: Landlords Andre Bisasor and Natalie Anderson and Tenants Greystar Management Services LP; RAR2 Jefferson at Dedham Station-MA inc. All of the parties to this action are parties to the Norfolk Superior Court Action.

   b. Consequently, as the first-filed action, the Norfolk Superior Court Action should be the venue for the parties' dispute, and this action dismissed or transferred.

   c. The Landlord's choice factor looks to the choice of Landlord in the first-filed action, (see, Holmes Group, 249 F.Supp. 2d at 19) so this factor favors the Norfolk Superior Court Action. The strong presumption in favor of the first-filed Landlord's choice clearly favors dismissal of this case, in favor of the Norfolk Superior Court Action.

ii. **The Tenants do not Consent to the Dedham District Court Venue**
   a. The Tenants do not agree to this case being filed in or remaining in the Dedham District Court. On this basis, the Tenants request that this action be dismissed, or transferred to Norfolk Superior Court for consolidation, under the authority of Superior Court Administrative Directive No. 03-1.
   b. The Tenants would strongly object to transfer of the prior first filed Norfolk Superior Court action to Dedham District Court, for the reasons contained throughout this Motion.

      **iii.** **There is an improper amount of damages as set forth in the District Court action as set forth in G. L. c. 218, §19.**
- a. Landlords have set forth amounts requested as $22,260.78. This is based on monthly rent of $2390, monthly late fees of $75, monthly water/sewer charges of an average of $40 over a nine month period.
- b. Since this action was filed in the month of February and has continued into other months, then another slate of charges will accrue in the amount of $2505, has now made the new minimum total to be claimed by Landlord as $30,000, which is well over the $25,000 minimum for District Court actions.
- c. On this basis, the Tenants request that this action be dismissed, or transferred to Norfolk Superior Court for consolidation. Furthermore Tenants counterclaim damages will also exceed $25,000 in amounts over $150,000.

      **iv.** **Tenants need the full discovery process, including depositions, to properly bring and try this case.**
- a. If this Dedham district court action is allowed, then Tenants will be prevented from the full discovery process that would be accorded in the already previously-filed Norfolk Superior Court action.

  b. **Conclusion:** For all of the foregoing reasons, venue is appropriate in Norfolk Superior Court. This Dedham District Court action should be dismissed or transferred there for consolidation.

30. **The Tenants have disabilities that are verified and this eviction is the result of a failure to accommodate these disabilities**

a. Article 114 of the Massachusetts State Constitution prohibits discrimination against or the exclusion of Disabled individuals solely by reason of his or her disability from programs or activity within the Commonwealth.

b. The Landlord promises its tenants that it will provide a reasonable accommodation to resolve allege violations of tenancy if such violations were the result of any such disability.

c. The defendants are disabled and any minor or major violations of the Lease Agreement are the result of their disabilities.

d. Defendants cannot move back to its original unit 3413 because of their disabilities even-though Landlord is trying to force them to move back to their defective unit.

e. Defendants have requested a permanent alternative unit to move to, so as to accommodate Defendants disabilities. Landlord has refused and this has brought about Landlord's eviction. If Landlord simply accommodated Defendants disabilities, there would be no cause for eviction.

31. **This eviction is in retaliation for raising concerns about bad conditions and about discrimination.**
- a. Landlords are seeking to terminate tenancy in retaliation after Tenants withheld rent for bad conditions on the premises, after Tenants reported these bad conditions to various local and state officials, after Tenants raised concerns about discrimination and other wrongs, and after Tenants engaged in tenant organizing activity. This complaint should be dismissed.

*Defense and Counterclaim*
**Retaliation**
(Mass. Gen. Laws c. 239, §2A; c. 186, §18)

32. Defendants re-allege and incorporate all paragraphs above as if fully set forth herein.

33. This defense and counterclaim applies where tenancy is terminated for nonpayment of rent for unit 3413 or without fault for unit 2216.

34. The landlord is trying to evict us and/or retaliate against us because:
    a. We withheld rent because of bad conditions, and/or told the landlord about bad conditions.
    b. We reported bad conditions in writing to the landlord.
    c. We reported bad conditions orally and/or in writing to a public agency.
    d. We took part in a tenants' meeting or organization.
    e. We brought a case/claim against the landlord.
    f. We reserved my right to seek a refund and/or abatement of rent

35. This defense entitles me to possession. Where this is raised as a counterclaim, this entitles me to one to three times the rent or my actual damages, whichever is greater. We are entitled to a presumption of retaliation because the landlord took action against us within 6 months of any of the above.

36. As a direct and proximate result of Landlord's retaliation, tenant has suffered damages.

37. Tenant is entitled to possession and one to three times the rent or actual damages, whichever is greater.

38. Tenant is entitled to a presumption of retaliation because the landlord took action against tenant within 6 months of the tenant's withholding of rent and/or making complaint about bad conditions and discrimination as follows:

    a. In 2012, an attempt was made to evict us and cancel our lease immediately after we reported bad conditions of our apartment to the Town of Dedham. When we fought back, we were then charged a $300 rent increase. This again was immediately after we reported our bad conditions of our apartment to the Town of Dedham. This is a prima facie case of retaliation (notwithstanding the more recent and even current attempts at retaliatory eviction and other adverse actions taken against me). Other examples of retaliation are also provided below under the unfair and deceptive acts section though not an exhaustive list.

    b. In 2014, subsequent to our complaints to the Town of Dedham and various State agencies regarding the above and other matters, we were and have been subjected to multiple attempts at retaliation by Jefferson. Jefferson has expressed anger on several occasions that we made these complaints. After raising certain of our concerns, particularly those related to discrimination as well as the bad conditions among other things, we were told that we should consider going to live somewhere else. Since we raised these concerns, there was also a substantial change in how we were treated by Jefferson including but not limited to cold shoulders, unwelcoming/angry attitudes, being ignored in the front office, having certain

maintenance requests for our alternative unit delayed, refusal by property managers to meet with us in the front office and handing us off to only deal with leasing staff, being subjected to defamatory comments made to other tenants and external parties about us, disclosures to third parties about our rent situation which is against FDCPA laws, shutting off utilities in our alternative unit more than once, harassing actions including attempts to enter our unit without us present, retaliatory rent increases, threats of eviction and actual attempts at eviction, etc, and even most recently, the reneging of promises including refusal to offer settlement because of retaliation and other bad faith actions as well as bad faith denial of reasonable accommodations requests. I could go on (please see attached 93A demand letter). The upper management of Greystar and RREEF has allowed his retaliation to occur and have failed to act to prevent retaliation from occurring, even-though several attempts were made to appeal to upper management and the board of directors for intervention. This failure to act impugns the entire organization from top to bottom and invites a cause for punitive damages. These actions and inactions have been outrageous and reckless and society has an interest in rooting out willful and illegal retaliation in fair housing matters.

39. After raising concerns, Tenants were told that they should consider going to live somewhere else. There was also a substantial change in how Tenants were treated by Landlord including but not limited to:

a. Ms. Donahue abruptly left the meeting on May 6, 2014 while being visibly upset after meeting with Tenants on May 6 after Tenants brought complaints to her attention in person. During that meeting Ms. Donahue agreed to show Tenants the temp unit available (after we raised concerns about being previously denied a tour of the temp unit being offered to Tenants) but then after Tenant brought complaints to her attention in person including racial discrimination and the attendant emotional distress, all of a sudden for no real or apparent reason that she canceled a tour with Tenant of the temp unit (after huddling with Ms. McNeely). Ms. Donahue in fact started to the exit the office without saying goodbye to Tenants and it was only after Tenant Anderson gazed at her in amazement that she was leaving without saying goodbye that she stopped her exit, turned back to say a stilted goodbye.

b. Ms. McNeely has essentially avoided meeting with Tenants in person after Tenants raised concerns about how Tenants were being treated. In fact, all of a sudden, Ms. McNeely seemed to find new reasons to not be the person to meet with Tenants, including that she is leaving the office early or that she will not be in the office or otherwise all of sudden dispatching Mark to meet with Tenants ever since May 7 and 8, 2014. It seems evident that Ms. McNeely has wanted to limit her interaction with Tenants in person.

c. Also, Operations Manager Chris Esmond has avoided contact with Tenants in the office, not acknowledging or addressing us (i.e. not saying hello, while doing so with other tenants) or assisting Tenants when Tenants goes to the office while saying hello and assisting other tenants. It seemed evident that Mr. Esmond did not want to interact with Tenants in person particularly as it relates to the day of the May 7, 2014 meeting.

d. There was also an attempt to evict Tenants again two days after Tenant brought these complaints to Landlords attention in person in a meeting on May 6, 2014.

e. Landlords engaged in bad faith actions that led Tenants to believe Landlords were working on compensation and rent abatement while at the same time they were instead trying to evict Tenants and then later denied any compensation or rent abatement when Landlords said they were working on it.

104

f.   Notwithstanding promises to settle and resolve these issues but yet failing to follow through on these promises, Landlords have threatened and continue to threaten to evict Tenants including issuing a number of notices to quit to Tenant sand threatening court action every so often.

g.   Landlords have also shut-off or cause to shut-off utilities in alternative unit that Landlords agreed to pay for. Landlords have created roadblocks to Tenants operating or getting customer service for utilities by blocking Landlords from speaking about the account. Landlords have, in this and other ways, made it uncomfortable for Tenants to remain in alternative unit 2216.

h.   Landlords have allowed the bed problem, the couch problem and other problems to remain unaddressed in alternative unit 2216.

i.   On a prior occasion, in March of 2012, there was an attempt to evict Tenants after Tenants reported bad conditions to the Town of Dedham. Landlords filed a malicious and frivolous summary process action in Dedham District Court, even-though Landlord knew that Tenants had been paying rent or that there was an agreement by prior management to accept rent at a certain time of the month each month.

j.   This summary process was dismissed because Landlord eventually had to acknowledge payment before the entry date but nonetheless the eviction action is still noted on Tenant's record, causing tremendous damage and resulting in possible future blacklisting by other landlords based on modern tenant screening methods that will likely identify the dismissed and unwarranted eviction action.

k.   Tenants have paid rent every month for several years without incident since the inception of tenancy in July 2008.

l.   In September of 2012, rents were increased by $300 after Tenant reported bad conditions to the Town of Dedham.

m.   Upper management of Greystar have allowed his retaliation to occur and have failed to act to prevent retaliation from occurring, even-though several attempts were made to appeal to upper management and the board of directors for intervention. This failure to act impugns the entire organization from top to bottom and invites a cause for punitive damages. Landlords' actions and inactions have therefore been exhibited outrageous and reckless conduct. Society has an interest in rooting out willful and illegal retaliation in fair housing matters and the Landlords are likely to continue such repugnant behavior without a finding for punitive damages.

n.   Plaintiffs, through the acts and omissions described above, *inter alia,* retaliated against Defendants for exercising rights protected by both federal and state law.

o.   Plaintiffs, through the acts and omissions described above, inter alia, aided, abetted, incited, compelled and/or coerced others to retaliate unlawfully against Defendants, or attempted to do so, in violation of both federal and state law.

p.   As a direct and proximate result of Plaintiffs' retaliation, Defendants has suffered damages.

q.   Defendants are entitled to a presumption of retaliation because Plaintiffs took action against Defendants with 6 months of Defendants' asserting his legal rights.

r.   As a result of Plaintiffs' retaliatory conduct, Defendants have suffered and will continue to suffer damages including, but not limited to, financial and other losses, pain and suffering, and emotional distress.

105

---

*Defense and Counterclaim*
**Discrimination (Race and Disability)**
(Mass. Gen. Laws c. 239; Mass. Gen. Laws c. 151B; Federal Fair Housing Act; Americans With Disabilities Act; and/or Section 504 of the Rehabilitation Act)

---

40. Defendants re-allege and incorporate all paragraphs above as if fully set forth herein.

41. This defense and counterclaim applies where tenancy is terminated for nonpayment of rent for unit 3413 and without fault for unit 2216. Our landlords have discriminated against us based on: Race and Disability

42. We have physical disabilities and the landlord has failed to make reasonable accommodation(s) for the disabilities.

43. We have physical disabilities and we are requesting reasonable accommodation(s).

## *DISCRIMINATION & HARASSMENT BASED ON DISABILITY*

44. Jefferson has refused to allow us to move from our unit permanently even though we have asked for several months and even though we produced medical documentation of basis for this request. Instead Jefferson has conditioned a move upon payment of all back rent for an apartment that was uninhabitable and that we did not live in (at least for the time period when the elevator was broken i.e. for 6 months and more, due to the structural and other problems with unit 3413). Even assuming arguendo that rent was not waived which it was, or that the warranty of habitability did not apply, which is does, the fact that Jefferson wants to charge us full rent for our original unit two bedroom apartment when we were in an alternative unit one bedroom apartment for several months, defies all bounds of reason, logic and fairness. To condition our move to another unit upon paying all back rent without settlement is tantamount to extortion. Jefferson is placing us in a position where in order to get relief for our disabilities and medical conditions we must give up our rights regarding the issues of settlement and simply pay all back rent, no questions asked; otherwise we are stuck in the defective unit unable to move permanently. Yet they don't want to have a structural evaluation of our original unit in order to do a permanent and proper fix to the long-time problems of cracking etc. This is the heights of unfairness and abuse of power.

45. Landlord has engaged in the Denial of Reasonable Accommodation/Disability Discrimination as follows:

    a. The reappearing of old cracks and the development of new cracks will subject the apartment to entry of insects and bugs which have plagued the apartment in the past. By allowing the problems to continue, Landlords have and are interfering with Tenant's right to quiet enjoyment of the unit.

    b. Increased exposure to insects and bugs will endanger the health, safety and wellbeing of Tenant's wife due to her sensitive skin allergy condition.

    c. Increased exposure to dust and debris from cracking, chipping and separations/holes in the ceiling and walls of the apartment and the continual need to have the apartment plastered, re-plastered,

repainted and undergo construction work will endanger the health, safety and wellbeing of Tenant's wife due to her breathing allergy/asthmatic condition. By allowing this situation to continue, Landlords have and are interfering with Tenant's right to quiet enjoyment of the unit and have discriminated against Tenant based on her disabilities.

d.   The Building Commissioner of Dedham told Tenant Anderson that she should not remain in the apartment prior to/during construction repair work for the cracks because of her asthma condition.

e.   Therefore a temporary cosmetic cover up of the cracks will directly impact the ability of Tenant Anderson to enjoy the dwelling as it will pose a threat to her health, safety and wellbeing.

f.   If Landlord is allowed to cosmetically cover up the cracks while denying access to a structural engineer's evaluation, it will cause irreparable harm to Tenant and his wife.

g.   By failing to secure a structural evaluation, Landlord has therefore failed to accommodate the disabilities of Tenant Anderson.

h.   Tenants have explicitly asked Landlords to make a reasonable accommodation of Tenant Anderson's disabilities by securing the structural evaluation and permanently fixing the cracks. Landlords have repeatedly refused.

i.   Tenants have repeatedly asked for a transfer to a permanent alternative unit as a reasonable accommodation for Tenant Anderson's disabilities. Landlords have repeatedly refused.

j.   Tenants have been harmed by these actions and will suffer irreparable harm. If Landlords do a cosmetic cover-up of the cracks while refusing to do a proper structural evaluation of the cracks in the apartment, this will cause substantial damage to Tenants as this will deprive Tenants the right and opportunity to have an engineer evaluate the problems in the apartment and this could substantially prejudice their rights. Tenants have the right to appeal to the State to make a final ruling on this matter. The Board of Building Regulations is the highest governing authority of the State that has purview and oversight over these matters. Tenant Bisasor was told by the Massachusetts Department of Public Safety (MDPS) that he has the right to file a hearing before the Board of Building Regulations, as the MDPS has declared that our unit should not be excluded from the structural evaluation. Tenant Bisasor initiated the State Board of Appeals process.

k.   Tenants has contacted Landlords on several occasions (including in the months of November and December of 2014 as well as most recently on January 2 and January 5 of 2015) to request reasonable accommodations and to resolve these issues but to no avail.

l.   Landlords continue to threaten and harass Tenants, by attempting to enter Tenants' unit in a non-peaceable manner, over Tenants' objection, spurring on a physical confrontation between Landlord and Tenants at Tenants' door. This has caused much emotional distress for Tenants. This is also a breach of the lease.

46.  Landlords have therefore violated Massachusetts disability laws (G.L. 151B) and has discriminated against Tenants based on their disabilities.

47.  Plaintiffs, through the acts and omissions described above, *inter alia*, has aided, abetted, incited, compelled and/or coerced others into discriminating unlawfully against Defendants because of his wife's disability, or attempted to do so, in violation of both federal and state law.

48.  As a result of Plaintiffs' discriminatory conduct, Defendants has suffered and continues to suffer damages including, but not limited to, financial and other losses, pain and suffering, and emotional distress.

### RACE DISCRIMINATION IN VIOLATION OF THE FAIR HOUSING ACT OF 1968, (42 U.S.C. § 3601, ET. SEQ. ) AND IN VIOLATION OF CIVIL RIGHTS ACT OF 1866, (42 U.S.C. §§ 1981 AND 1982)

### RACIAL DISCRIMINATION PROBLEMS

49. Defendants re-allege and incorporate all paragraphs above as if fully set forth herein.

50. We are black tenants and we are one of the few black families that still live in this apartment complex. We have lived here since 2008 and have paid rent every month until the elevators broke down where we could not traverse over 80 stairs/four floors on the top floor due to our medical conditions. We were denied reasonable accommodation by Jefferson while at the same time Jefferson was offering accommodations to white tenants. We have several tenants willing to testify that they were told the opposite of what we were told thereby proving not only a denial of reasonable accommodation pursuant to our medical disabilities but also racial discrimination (i.e. we as black tenants were not deserving of relief from our pain and harm due to the broken elevators but other non-black tenants were so deserving as determined by Jefferson management). The explanation later offered by management was that they did not take our medical issues seriously because we look healthy and don't have a walker or wheelchair. The explanation later changed to the idea that they did not know that they could offer accommodations to us. These changing explanations further demonstrate pretext and the intent to discriminate. To compound the problem, Jefferson management tried to cover up the problem instead of holding wrongdoers accountable. Further, what ensued next was a series of attempts to manipulate us, deceive us and trick us and bait and switch us. It was only after going to the Town of Dedham to inquire about these issues did we find out that Jefferson management already told town officials that Jefferson offered hotel accommodations to any tenant that needs it and that they announced this to all tenants. The Town of Dedham building commissioner was shocked that this in fact had not occurred because he and other town officials were led to believe otherwise and were placated as a result. Jefferson finally reversed course and moved us to a temporary unit on a lower floor in another building on the property. After about month or so, of having to traverse stairs, our medical conditions were worsened and exacerbated.

51. When we finally were displaced to a temporary unit, we were given sub-par, cheap, inadequate furniture which caused injury to our back and neck. We have pleaded with Jefferson to address the furniture problem but they have only given excuses or otherwise lied about the matter. For example, they never addressed the sunken couch problem that causes pain to us when using it, and have refused to replace the shaky unstable bed which have caused the onset of back and neck injuries for which we have had to seek medical treatment and incurred thousands of dollars worth of medical bills. When we asked for assistance with moving our furniture we were rebuffed and when we agreed to have our bed moved by them, we were told that if they damaged our bed they would not pay for it and thus refused to move our own bed from our original apartment. When they finally promised to replace the bed from a local vendor, they took forever to do so until they ran out the clock for almost 6 months and they just plain refused to replace the bed even-though they previously promised to do so. Recently, they lied in a recent email saying they already replaced the whole bed and that they thought the matter was resolved, which is a lie and the email evidence proves this is a lie.

52. The Dedham Building Commissioner told Tenant Anderson to stay in the temporary unit until the structural cracks are fixed because of her medical issues. Jefferson has not fixed the problems with the cracks in our original unit because they want to avoid doing a structural evaluation of our unit in order to determine why it is cracking so much.

53. In addition, when the issue of accommodation was finally addressed, Jefferson management sought to steer US to a particular unit. They did this in several ways by placing pressure tactics on us and making us think that it would take much longer to get other Units ready. They also told us no other units were available when in fact many other units were available. We were steered to the worst unit on a floor

with mostly blacks. We have statistical evidence of this. We also later found out that certain other available units were given to white couples. After doing some tenant organizing work, we found out that we were charged $300 to $400 more in rent than white tenants for comparable units and that this was true for other black tenants we spoke to. Also, Jefferson was willing to negotiate with white tenants but unwilling to negotiate with black tenants.

54. Jefferson has discriminated against us in other ways as summarized and described below. Jefferson has engaged in racial discrimination and denial of reasonable accommodation as follows:

a. **Denial of Reasonable Accommodation & Racial Discrimination:**

    i. We reside on the top floor and both of us have documented medical conditions that make it difficult to traverse 4 long flights of stairs multiple times a day each day.

    ii. On at least two separate occasions in April, we (as black tenants) were denied access to reasonable accommodations for our medical conditions while at or around the same time, other white tenants were offered accommodations for their medical conditions.

    iii. We believe this was due to discrimination based on race since management was put on notice at least twice that we needed accommodations and we were denied or told that no accommodations were available.

    iv. It was only after Tenant Anderson complained to the Town of Dedham that Jefferson reversed course and offered us accommodations.

    v. Yet even the offer of accommodations was replete with changing conditions and terms, making it difficult to know what was really being offered.

    vi. NB: It is without dispute that Jefferson told us that there were no accommodations available at the same time that they offered other white tenants accommodations due to the broken elevators.

b. **Illegal Racial Steering & Discrimination**

    i. We were discriminated against by Jefferson management in steering us to certain specific alternative units, while lying to us about the availability of other vacant units.

    ii. The alternative unit that we were steered to is located on a certain wing/floor of building 2, comprised almost entirely by minorities/blacks.

    iii. This unit is literally surrounded by black tenants on every side and the rest of the wing is largely comprised of non-white tenants.

    iv. At or around the same time that we were being steered to this alternative unit, there was another unit (a larger more comparable unit to our original unit in building 3) that was available on the opposite wing on the other side of that same building 2 that we were not told about, and later a white couple was given that unit, though we were denied housing relative to that same other unit.

    v. Jefferson has thus made certain rental units unavailable to us.

c. **Discriminatory and Disparate Treatment Based on Race in Rents for Comparable Units**

    i. Jefferson has also engaged in discriminatory rents in charging different rents to black and white tenants.

    ii. Jefferson has charged "unsubsidized" black tenants more in rent (in some cases several hundred dollars more) for the same type or category of unit than they charge white tenants. Jefferson has also allowed more concessions in rent for white tenants than for such black tenants.

    iii. Jefferson substantially has raised rents for black tenants when it comes time for lease renewal and refuse to engage in negotiation in order to keep black tenants as residents, to the dismay of black tenants, while at the same time, Jefferson show substantial

leeway in negotiating lease renewals with white tenants to the satisfaction of white tenants, in order to keep white tenants as residents.

    iv.  **Here is an example of the Landlord charging disparate rents to me versus other tenants who happen to be white.**

> Date: Sun, Jul 27, 2014 at 12:02 PM
> Subject: Re: Initial Contact-Update / Tenants' Group For Jefferson-Dedham Residents
> To: Jefferson-Dedham Tenant <  jeffersondedhamtenant@gmail.com >
>
> So our initial rent was $2027 per month, which was great but the huge increase was just too much. We sent a formal notice of intent to vacate and the same day they came down $350 from the original price, but we had already committed to another place. We didn't really have too many other qualms
>
> Sent from my iPhone

This is an email from a white tenant who was in a comparable unit to our unit. I can provide original clean copies of emails upon request. This email shows that we were charged $300 more in rent that this white tenant for the same unit   (our rent for the same time period was $2320).  This email   also shows significant concessions made to this tenant when it came time for lease renewal i.e. a $350 decrease in rent concession, in order to keep them as tenants. This kind of concession has never been offered to us for the same comparable unit. This establishes a prima facie case of racial discrimination which I have been screaming to you all and telling you all that this is going on. I have other evidence from other white tenants and black tenants that show that this is a pattern of discrimination going on.

**d. Disparate treatment based on race in charging of application fees.**
    i.  We were charged application fees for moving in, when the immediate white couple before us that was in our unit was not charged application fees.
    j.  This is a prima facie case of discrimination based on race. Why would it ever be acceptable to charge me application fees but not charge white tenants similarly situated the same application fees?

**e. Hostile Environment for Black Tenants and Predatory/Discriminatory Rent Increases and/or Constructive Eviction Attempts:**

    i.  On information and belief, Jefferson has been engaging in attempts to evict black tenants i.e. targeted evictions of blacks and a pattern of discrimination in trying to evict black tenants, who have to get lawyers and spend time and money fighting eviction.
    ii.  There has been a pattern of mistreatment and hostile treatment of minorities/other minorities mistreated.
    iii.  Jefferson has expressed frustration or allowed other white tenants to express frustration over certain black tenants using the pool.
    iv.  This has had the effect of causing some black tenants to not feel welcome in the pool area.
    v.  Jefferson has told certain black tenants that they are not welcome to attend the board of elevators hearing in July 2014, even-though Jefferson knew that the Board of Elevator meeting is open to the general public.

vi.   Jefferson has had a number of complaints lodged by minority tenants against them, especially as it relates to how they are being treated by management.

vii.   Jefferson is using high rent increase to get people of color out of the property.

viii.   There have been systemic attempts at constructive eviction by imposing significant rent increases.

ix.   Jefferson has in other ways allowed or facilitated systemic patterns of racial discrimination to take place as follows:

    a.   they have engaged in a gentrification pattern of discrimination.

    b.   There are attempts to remove as many black tenants as possible by engaging in severely high rent increases.

    c.   There has been a concerted effort to target black tenants for eviction i.e. systemic discrimination to target blacks to move out.

    d.   Jefferson has also allowed or engaged in systemic racial discrimination at the upper management level of the corporation.

    e.   Blacks are conspicuously missing from the ranks of board of directors, top executives, senior managing directors, regional directors, regional property or property managers.

    f.   The only positions that blacks are allowed to have are largely lower-level positions either as maintenance or janitorial staff or otherwise leasing staff.

    g.   On information and belief, this utter lack of diversity filters down into the culture of the organization and affects how black tenants are treated.

vi.   [NB: Please note that gentrification is a problem in housing in the US. Even if not pursued consciously there is still a disparate impact on black minority tenants. It destroys lives and uproots familial and social structures. Care needs to be taken to ensure that the Landlord is not employing a gentrification strategy. Black tenants that have been here for several years should not be exposed to $1000 increases in rent, with the clear inevitable logical result that they will be evicted. Jefferson has raised our rents by almost $1000 and they have issued us as well as other black tenant rent increases in the $300 or more range. Then, they turn right around and evict. This is unfair to black tenants who already are the most vulnerable social-economic group in the US.]

55.     Defendants' unit is a dwelling as defined by 42 U.S.C. § 3602 (b). Landlords own the property that Defendants rent the dwelling.

56.     Defendants are African-American and are members of a protected class under 42 U.S.C. § 8 3604 (a), (b) and (d).

57.   Landlord has discriminated against Tenant because of their race and conspired to interfere with Tenants civil rights to equal access to housing and housing opportunities.

58.   They have discriminated against Tenants because of their race, in violation of the Fair Housing Act of 1968, 42 U.S.C. § 3601, et. seq., and in violation of the Civil Rights Act of 1866, 42 U.S.C. §§ 1981 and 1982 a have acted intentionally, willfully, and with reckless disregard for Tenants' federally protected civil rights.

59.   As a result of the Landlords' actions, Tenants have suffered and are continuing to suffer great harm and injury, including but not limited to economic loss, humiliation, embarrassment, emotional distress, mental anguish, stress, depression, and the deprivation of the right to housing on an equal basis with other persons regardless of race.

60.   Because Landlords have acted intentionally, willfully, and with reckless disregard for Tenant's civil rights, as a result, Tenant is entitled to actual and punitive damages in an amount to be determined at trial.

111

61.     Plaintiffs' actions constitute a pattern of repeated harassment and indirect threats to Defendants which were designed and committed to interfere with Defendants' civil rights.

62.     Plaintiffs' actions interfered with Defendants' civil rights to equal housing and equal housing opportunities without discrimination.

63.     Plaintiffs, through the acts and omissions described above, *inter alia*, has aided, abetted, incited, compelled and/or coerced others into discriminating unlawfully against Defendants because of his race, or attempted to do so, in violation of both federal and state law.

64.     As a result of Plaintiffs' discriminatory conduct, Defendants has suffered and continues to suffer damages including, but not limited to, financial and other losses, pain and suffering, and emotional distress.

65.     Plaintiffs have acted intentionally, willfully, and with reckless disregard for Defendants' civil rights, and as a result, Defendants is entitled to actual and punitive damages in an amount to be determined at trial.

---

### *Defense and Counter Claim*
**Breach of Warranty of Habitability/Bad Conditions in My Home, Breach of Contract and Other Claims**
(Mass. Gen. Laws c. 239, §8A; c. 93A; and/or Implied Warranty of Habitability)

---

66.  Defendants re-allege and incorporate all paragraphs above as if fully set forth herein.

67.  We have a defense because of past or present problems in or around our home that the landlord knew or should have known about, including but not limited to the following:
   a.   Defective ceilings, walls, or floors
   b.   Defective windows and doors
   c.   Insects and other pests
   d.   Non-working dishwasher
   e.   Water entry/flooding
   f.   Problems with heat
   g.   Defective locks or security problems
   h.   Mold/moldy Smell

68.  The landlord knew or should have known about the bad conditions because:
   a.   We told the landlord orally.
   b.   We told the landlord in writing.
   c.   The landlord was notified by the local Board of Health and Building Department.
   d.   All or some of the conditions existed when we moved in.
   e.   All or some of the conditions existed when the landlord purchased the property.

69.  As a counterclaim, we are entitled to damages for the reduced value of our home, calculated as the difference between: (a) the full market rental value of our apartment in good condition, and (b) the reduced value of our apartment in its bad condition. We are also entitled to damages for any other losses, injuries, or expenses resulting from bad conditions.

70.  Over the past 7 years, tenants have paid approximately $140,000 in rent. Total amount to be discounted for breach of warranty of habitability/bad conditions is approximately $30,000 based on conservative assumptions. Total amount to be discounted based on broken elevator and structural problems in 2014 and therefore having to be displaced from May 2014 until April 2014 (12 months) is approx. 10,000.

Therefore based on bad conditions alone, tenants are entitled to $40,000. This is not taking into account other problems such as problems with heat, lock/security problems, and water entry/flooding.

## EXCURSUS ON STRUCTURAL PROBLEMS

71. Another key issue relates to the structural problems with the property.

72. There are significant signs of structural stress in our apartment unit including cracks, door jamming, window jamming, bungling in the floor/carpet, water-leaks during inclement weather, and other problems. These are major signs of structural problems. When we brought these issues to the attention of management, they have refused to do a structural evaluation of our unit. Instead they resorted to deception and subterfuge to avoid having an independent structural evaluation of our unit by a certified expert. It puzzled me for a long time as to why Jefferson would go to such lengths to avoid doing a simple structural evaluation of our unit. But after reading the SEC filing disclosures, it made sense…there is a powerful financial incentive that transcends the cost of simply fixing the structural issues (which by itself requires significant financial outlay) but it also goes to the heart of the investment value of the portfolio properties which could result in millions of dollars worth of loss. It could also trigger legal action from REIT investors. This suggests that there is a powerful incentive to avoid finding a structural problem with the bank's portfolio properties because if there is a material structural event, then this could cause a re-pricing of the value of the property and could result in significant losses for investors in the REIT.

73. Inotherwords, it is likely that the investment portfolio of the RREEF trust/REIT would not only suffer the cost of having to dig beneath the road and concrete to address the structural problem but any devaluation of property due to the declaration of a structural problem would potentially cost the REIT millions in terms of the ripple effect in the portfolio holdings. These asset managers/property managers have a built-in incentive to lie about there being a structural problem because that is a multimillion dollar problem. Unfortunately, the REIT has a responsibility to ensure public safety and public trust. It cannot sacrifice tenant safety for profits, as this is unethical greed/profiteering similar to companies that don't want to clean up the toxic waste it produces that put communities at risk.

74. So we have asked for almost 8 months for an investigation into this structural problem. We also asked for an independent evaluation by a new firm and that they don't signal that they want a certain result but make it abundantly clear that they want the unvarnished truth about the structural issues and nothing but the truth. We requested that the engineering firm, Simpson Gumpertz and Heger ("Simpson"), be excluded and a new independent firm should be brought in because Simpson has lied on behalf of Jefferson in the past and we have video-tape evidence to prove it. Simpson has skirted the truth to please its unethical client, and this, we believe, has been done at the behest of Jefferson (i.e. Think about how Andersen consulting did what its client wanted and how that led to the Enron debacle). Simpson knows that Jefferson does not want to have a structural problem. Jefferson fought tooth and nail to avoid a finding that would require the elevator replaced, when the State found that there was cracking in the pit wall concrete of the elevator shaft and thereby condemned the elevator due to a concern for catastrophic failure.

75. The State gave the directive to Jefferson to replace the elevators but Jefferson made appeal after appeal to avoid doing so and engaged Simpson to testify at an appeals hearing in order to persuade the State that there was no structural problem with the building that would require a replacement of the elevators and to persuade the State to allow them to make certain patch up repairs instead (by the way, even to this day, the elevator is still making bumping behaviors and making strange noises and we are concerned that the elevator might not be fully safe but that is another story that I will leave alone for now). Presumably this was to avoid paying the heavy cost involved with having to install 3 new elevators in at least two buildings. Simpson lied to the board of elevators on July 22, 2014 telling them they were no other cracks anywhere in the building and that if they had found any signs of cracking or stress in the building, they would change their recommendation and testimony. Jefferson stood there

and allowed Simpson to lie under oath to the board of elevators. It is unbelievable that Simpson did not know about the cracks in units throughout the building because Jefferson has known about them since 2008. Furthermore, there is no way an honest engineer could testify under oath that it found no signs of cracks or stress anywhere else in the building when it either did not do an inspection of the rest of the building or it did so and found the many cracks that are pervasive in the common areas on each floor of the building. I have all of this on videotape for you to review. Simpson is therefore compromised.

76. Furthermore, Jefferson used deception to avoid following the directive by the Town of Dedham to do a structural evaluation of our unit. Jefferson lied to us about the dates that the engineers would come to evaluate our unit, thereby causing our unit to not be evaluated but instead only the common areas. We have email records that prove this deception and manipulation by Jefferson to utterly avoid evaluating our unit. Simpson thus made a report without our unit and, as you might guess, they found no structural problems, even though Simpson knew that our unit was required to be evaluated and even though Simpson knew that our unit had pervasive cracking and signs of stress pursuant to our complaints to the Town and to Jefferson.

### *MORE ON BREACH OF IMPLIED WARRANTY OF HABITABILITY*

77. Defendants and Plaintiffs were parties to leases whereby Plaintiffs provided dwelling to Defendants in exchange for Defendants' payment of rent.

78. There is an implied warranty of habitability and fitness for intended use in all residential leases.

79. Plaintiffs have engaged in a breach of the warranty of habitability and the sanitation code, including but not limited to the following:

    a. This includes the broken elevator situation whereby the elevator in Building 3 of the complex was broken or in need of repair for approx. nine months. The broken elevator in building 3 violated the provision of the state sanitation code that calls for proper maintenance of exits and of elements vital to the use of the property. Since the elevator is necessary to the exit of the building particularly for those (like the Defendants) that have medical conditions that make it difficult to traverse stairs from the fourth/top floor, then this constituted a violation of the state sanitation code. The Town of Dedham confirmed this by issuing Plaintiffs a directive to make alternative accommodations for tenants, especially for those who have medical or other conditions that make it difficult to traverse several flights of stairs.

    b. The lack of proper maintenance of Defendants' apartment 3413 as it relates to the recurring cracks in the ceiling of the bedroom and the kitchen and throughout the apartment, which is susceptible to insect penetration. These recurring cracks in the ceiling appear to be related to the same structural problems in Building 3 that caused the issues with the elevator. These recurring ceiling cracks have not been fixed despite repeated requests and despite several visits by maintenance staff persons who have not made these repairs. Also, in the past, the Dedham Board of Health issued a finding of a breach as it relates to this very issue and has previously ordered that this be fixed. The Town of Dedham has found that this is a violation of the state sanitation code.

80. The conditions described above breached the implied warranty of habitability and fitness for intended use.

81. On or about April 2014, the elevators in Defendants' apartment complex stopped working. The Massachusetts Department of Public Safety cited the complex because of cracks in the pit floor concrete to/of the elevators.

82.     Defendants have leg/feet problems that make going up and down the stairs difficult and painful, exacerbating/worsening his medical condition.

83.     Defendants knew about the elevator problem because the Plaintiffs informed them in writing and were notified by the Department of Public Safety.

84.     Plaintiffs have also engaged in Breach of Warranty of Habitability and Violation of State Sanitation Code as follows:

a.     Plaintiffs have known about cracks in Defendants' apartment since around 2008. These cracks have expanded and gotten worse over time.

b.     These cracks are widespread, extensive and pervasive. There are cracks of all types and sizes. There are diagonal cracks, vertical cracks, and horizontal cracks. There are long cracks, short cracks, and multiple cracks in the same area as well as throughout the apartment. There are cracks in the ceiling and on the walls on the window areas, on the lower part of the walls, on the upper part of the walls, on the wall area on/over the kitchen counter, over the kitchen sink, over the AC unit, over doors, next to closet spaces, under windows and above windows. There are also cracks in every room and on almost every wall in the apartment. There are over 20 cracks in the apartment. The apartment is clearly in a deteriorating condition and it is continually breaking with new cracks appearing every few months including loose debris of chips or pieces of the ceiling falling on Defendants' bed, in the kitchen and elsewhere in the apartment.  Also, the doors in the apartment are or have been jamming and are difficult to close or open. Several windows are or have been jamming and are difficult to open or close. There is also buckling/bunching in the carpet/floor and there is displacement of the kitchen tiles, which indicates further signs of stress in the floor as well. This is clear evidence that the entire apartment is under significant stress and structural siege. These are the hallmarks of a structural safety and integrity problem which any reasonable person would be or should be concerned about.

c.     Plaintiffs have sought to hide the existence of these cracks in Defendants' unit (and throughout the building) from Massachusetts Department of Public Safety/State  officials  and have presented inaccurate and misleading information to the State regarding the existence of cracks in the building (saying there were none) during a Board of Elevators meeting in July 2014. These misrepresentations were made to the State in order to get approval on a variance request to avoid the costs of replacing the broken elevators that were condemned by the State  in April 2014 because of concerns by the State about catastrophic failure and because of cracking and stress in the building shaft and foundations for the elevator.

d.     Plaintiffs have refused to fix these cracks in Defendants' unit since 2008 or 2009 until 2012 until Defendants was forced to contact the Town of Dedham in 2012.  The Town of Dedham issued a citation against Plaintiffs in summer of 2012. Plaintiffs attempted a cosmetic cover-up repair in summer of 2012 but did not provide a permanent or adequate repair. Cracks reappeared shortly thereafter. Plaintiffs have been aware of the continual problems with these cracks.

e.     Again in July of 2013 and February of 2014, Defendants had formally apprised Plaintiffs of the persistence of these cracks and continued to request repairs on several occasions but Plaintiffs have refused or neglected to make repairs.

f.     In October and November 2014, the Town of Dedham issued new citations for these cracks. On information and belief, in or around December 2014, the Town of Dedham ordered Plaintiffs to conduct a structural evaluation (as it relates to the cracks, etc) of the building 3, including Defendants' unit, by a certified expert.

g.      Plaintiffs deceived Defendants regarding the dates that such a structural evaluation would take place in order to exclude Defendants' unit from the structural evaluation.

h.      Defendants have since been requesting that the unit be included in the structural evaluation. Plaintiffs have refused to do so, claiming that they changed their mind and that it is not needed.

i.      Defendants have asked the Massachusetts Department of Public Health and the Massachusetts Department of Public Safety for guidance and these State bodies have stated that Defendants' unit should not be excluded from the structural evaluation.  The Massachusetts Department of Public Safety also told Defendants that Defendants should file an administrative action/request a formal administrative hearing with the State Board of Building Regulations to also review and rule on the matter.

j.      Defendants have apprised Plaintiffs of the position of Massachusetts Department of Public Health and the Massachusetts Department of Public Safety and of Defendants intent to seek administrative hearing on the matter.

k.      Plaintiffs have still refused to have Defendants' unit structurally evaluated.

l.      One of the Defendants has medical conditions that render the unit a health hazard. Plaintiffs have been aware of these medical conditions but have refused reasonable accommodations for this Defendant.

m.      By failing to provide a structural evaluation of Defendants' unit, Plaintiffs have failed to ascertain the causes and the exact nature of the widespread and extensive cracks in Defendants' unit.

n.      By failing to ascertain the exact nature of the cracks in the unit, Plaintiffs are not able to determine what needs to be done to permanently and adequately repair the cracks.

o.      Upon information and belief, Plaintiffs plan to enact a temporary cosmetic cover-up of the cracks. Plaintiffs made a similar temporary patch-up job in 2012 which re-cracked shortly thereafter. Plaintiffs have recently refused, though asked to do so on several occasions, to inform Defendants of what it will do to permanently/adequately fix the cracks.

p.      Plaintiffs has gone to great lengths to deceive Defendants regarding its intention to fix the cracks including lying about the reasons why it failed to fix the cracks on previous occasions when Defendants provided access for maintenance repairs and lying about the dates on which structural engineers would do a structural evaluation in order to create the impression that Defendants denied access for the engineer's inspection. Defendants provided access for inspection/evaluation by the engineers on December 5, December 12, December 18 and December 19 of 2014 but Plaintiffs have repeatedly refused to provide the engineers to conduct the evaluation. As a result of the above, among other things, Plaintiffs have engaged in unfair and deceptive practices.

q.      Plaintiffs are determined to exclude Defendants' unit from being structurally evaluated in order to avoid a finding that Defendants' unit is structurally deficient and to avoid the costs involved with providing a permanent, long-term and adequate repair of the problems with the apartment. Plaintiffs are determined to provide only a temporary, superficial, cosmetic cover-up of the problems. By doing a temporary cover-up of the cracks and not addressing the true underlying problems causing the cracks, the cracks will reappear, continue to expand and get worse. This is a violation of the state building code, the state sanitation code and the warranty of habitability.

85.     Defendants have been injured by Plaintiffs' breach of implied warranty of habitability and fitness for intended use in an amount to be proven at trial.

86.     Defendants is also entitled to total or partial abatement of past and future rent, declaratory relief, injunctive relief, and attorney's fees as a result of Plaintiffs' breach of the implied warranty of habitability and fitness for intended use.

87.     Defendants are entitled to damages for any other losses, injuries, or expenses resulting from bad conditions.

88.     Defendants is entitled to statutory damages for each violation or actual damages and doubled or trebled because Plaintiffs conduct was willful and knowing, whichever is greater.

---

*Defense & Counterclaim*
**Breach of Quiet Enjoyment (Interference with Utilities/Use of Home)**
(Mass. Gen. Laws c. 239, §8A; c. 186, §14; and/or c. 93A)

---

89. The landlord did the following:
    a.  Did not provide adequate heat.
    b.  Did not pay for utilities that were the landlord's responsibility and allowed the shut off of our utilities.
    c.  Allowed bad conditions to exist in our apartment.
    d.  Entered my apartment without my permission.
    e.  Interfered with my right to enjoy my home
    f.  On information and belief, we have been billed for water that goes to other people's apartments or common areas.

90. We hereby incorporate the breach of warranty of habitability section herein.

91. This defense and counterclaim entitles me to damages under G.L. c. 186, §14, and/or c. 93A. .

92. This defense and counterclaim entitles us to three times the rent or my actual damages, whichever is greater

## MORE ON BREACH OF COVENANT OF QUIET ENJOYMENT

93.     Defendants hereby re-allege and incorporate by reference the foregoing paragraphs of the Complaint as if fully stated herein.

94.     Defendants' tenancy carried with it an implied covenant of quiet enjoyment and peaceable possession of the unit during the terms of the lease.

95.     Plaintiffs breached Defendants' right to quiet enjoyment and possession of the unit by attempting to harass, bully, intimidate and threaten Defendants.

96.     Plaintiffs have engaged in breach of the covenant of quiet enjoyment including but not limited to the following:

a. There is a breach of quiet enjoyment given that Defendants has not had the use of an elevator for over 10 months. This has caused tremendous hardship and inconvenience. It has also resulted in the aggravation of Defendants' medical conditions and disability.

b. Defendants has not had the proper use of the property since April 17, 2014 as it relates to the elevator and has suffered a breach of the covenant of quiet enjoyment due to the inconvenience, the aggravation of his medical conditions, the impact on daily living, the distress associated with the attendant hardship, etc.

c. The failure to properly communicate with tenants and giving conflicting information to the Town of Dedham, to Defendants and to the tenants, as it relates to the elevator situation and the availability of alternative accommodations, also constitutes a breach of quiet enjoyment and a breach of the covenant of good faith and fair dealing.

d. Defendants has been uprooted from his apartment and displaced for 10 months.

e. Defendants have also suffered loss of use of certain apartment features and tenancy benefits both with apt 3413 and the alternative unit apt 2216.

f. Plaintiffs have also shut-off or cause to shut-off utilities in alternative unit that Plaintiffs agreed to pay for.

g. In addition to the inconvenience experienced as it related to being displaced, Defendants also experienced other inconveniences, hardships, difficulties related to the situation.

97. Here are examples of breach of quiet enjoyment for unit 3413:
    a. Incident 1 - Broken Elevators
        i. Tenant entitled to 3 months rent (automatic statutory damages)
    b. Incident 2 - Invasion of Privacy & Eavesdropping
        i. Tenant entitled to 3 months rent (automatic statutory damages)
    c. Incident 3 (June 2013) - Trespass
        i. Tenant entitled to 3 months rent (automatic statutory damages)
    d. Incident 4 (July 2014) - Trespass and stolen property
        i. Tenant entitled to 3 months rent (automatic statutory damages)
    e. Engaging in disruptive or unreasonable conduct / Intentional intimidation or harassment of tenant
        i. Tenant entitled to 3 months rent (automatic statutory damages)
    f. Water breach and flooding/failure to replace carpet/& tenant displacement
        i. Tenant entitled to 3 months rent (automatic statutory damages)
    g. Emotional distress caused by landlord's miscalculation and attempt to evict tenant in 2012
        i. Tenant entitled to 3 months rent (automatic statutory damages)

98. Here are examples of breach of quiet enjoyment for unit 2216:
    a. Utilities Shutoff 1
        a. Tenant entitled to 3 months rent (automatic statutory damages)
    b. Utilities Shutoff 2
        a. Tenant entitled to 3 months rent (automatic statutory damages)
    c. Utilities Shutoff 3
        a. Tenant entitled to 3 months rent (automatic statutory damages)
    d. Intentionally restricting or removing services
        a. Tenant entitled to 3 months rent (automatic statutory damages)
    e. Bed & Couch /Refusal to Repair Toilet
        a. Tenant entitled to 3 months rent (automatic statutory damages)

99.     Here are other examples of breach of quiet enjoyment due to the Breach of Warranty of Habitability including:

    a.  Defective Dishwasher
    b.  Pervasive Cracks and Other Structural Problems in Unit 3413 and Building 3
    c.  Insects/Pests
    d.  Mold/Moldy Smell/ Noxious Odors
    e.  Heating problem in bedroom
    f.  Defective windows and doors
    g.  Defective water heater and water safety issues
    h.  And other problems outlined previously under Breach of Warranty of Habitability

100.    Plaintiffs have acted intentionally, willfully, and with reckless disregard for Defendants' rights and privileges under the covenant of quite enjoyment.

101.    As a result, Defendants is entitled to damages.

---

### *Defense*
### Equity & Justice | Tenant Should Not Lose His/Her Apartment (Avoidance of Forfeiture)

102.    Defendants hereby re-allege and incorporate by reference the foregoing paragraphs as if fully stated herein.

103. Based on principles of equity and fairness, it is unfair to evict us

---

### *Defense*
### Landlord Owes Us More Than I Owe Them

104. Defendants hereby re-allege and incorporate by reference the foregoing paragraphs as if fully stated herein.

105. Based on the fact that the Landlord owes us more than we owe them, it is unfair to evict us

---

### RELIEF SOUGHT PERTAINING TO POSSESSION

---

### The Landlord Should Allow Us to Stay in Our Home
Mass. Gen. Laws c. 239, §8A (5th para.)

106. Defendants hereby re-allege and incorporate by reference the foregoing paragraphs as if fully stated herein.

107. The money owed to me on the counterclaims listed below is greater than the amount of rent owed, thereby entitling me to keep possession of my home. This applies to both my nonpayment and no-fault eviction cases.

108. We request that a determination on how much we owe for purposes of cure. If we owe the landlord more rent than they owes us for our counterclaims, we claim our right to keep possession of our home by paying this amount within a reasonable time upon receiving notice of the amount due.

---

### The Landlord Should Make Repairs
Mass. Gen. Laws c. 239, §8A (4th para.), and/or c. 111, §127I 73.

109. Defendants hereby re-allege and incorporate by reference the foregoing paragraphs as if fully stated herein.

110. We request that the landlord correct the defective conditions in my home.

---

### The Landlord Should Make Reasonable Accommodations
(Federal Fair Housing Act; Americans With Disabilities Act; Section 504 and/or Mass. Gen. Laws c. 151B)

111. Defendants hereby re-allege and incorporate by reference the foregoing paragraphs as if fully stated herein.

112. We have a physical disability and we request that the landlord make reasonable accommodation(s) for the disability, including, but not limited to, stopping or postponing the eviction and/or allowing us to remain in our home.

## COUNTERCLAIMS FOR DAMAGES

*Counter Claim*
**Violation of the Security Deposit Law**
(Mass. Gen. Laws c. 239, §8A; c. 186, §15B; and/or c. 93A)

113.    Defendants hereby re-allege and incorporate by reference the foregoing paragraphs of the Complaint as if fully stated herein.

114.    Respondent Jefferson entered the units of Defendants and removed possessions without authority or consent, in violation of M.G.L ch. 186 #15B

115. This also includes not only the mishandling of security deposits (not providing statements, not applying interest, not placing in separate bank accounts, etc) but also includes the charging of illegal amenity fees and the charging of illegal application fees.

116. Last year, a class action lawsuit was brought against Jefferson for violation of these laws on behalf of a class of former tenants.

117. The case was settled for approximately in or near the hundreds of thousands range.

118. We are part of a class of current tenants for violation of these same laws, for which liability has already been established.

119. Tenant paid a security deposit of $300 to the landlord.

120. On information and belief, landlord violated the security deposit law by: a) Not putting the security deposit in a separate Massachusetts bank account; b) Not providing the required disclosures and information to the tenant as and when required by the security deposit law; c) Not paying or deducting from tenant's rent yearly interest as and when required by the security deposit law.

121. Landlord has also charged illegal fees for application fees and an amenity fee.

122. Tenant was charged $100 for application fees and $99 for amenity fees, which are against the law.

123. Tenant is entitled to damages due to landlord's violation of the security deposit law.

124. Landlords failed or refused to deposit security deposit belonging to Defendants in a separate, interest-bearing account in a bank located within the Commonwealth of Massachusetts under such terms as will place such deposit beyond claim of creditors of the lessor and as will provide for its transfer to a subsequent owner of said property, all in violation of M.G.L. ch. 186 #15B.

125. Respondent failed or refused to provide security deposit and interest accrued at the rate of five percent per year or such lesser amount of interest as was received from the bank where deposit was held, all in violation of M.G.L. ch. 186 #15B.

126. Plaintiffs Landlord violated security deposit law and mishandled security deposit.

127. Plaintiffs did not place the funds in a proper account, did not provide statements about the account, and did not pay interest yearly.

128. Defendants are therefore entitled to an award of damages in an amount equal to three times the amount of such security deposit plus interest at rate of five percent from date when such payment became due, together with court costs and reasonable attorneys' fees, pursuant to M.G.L. ch. 186 #15B (7).

---

*Counter Claim*
**Violation of the Sub-Meter Law**
(Mass. Gen. Laws c. 186, §22; and/or c. 93A)

---

129. Defendants hereby re-allege and incorporate by reference the foregoing paragraphs as if fully stated herein.

130. The landlords required tenants to pay for water in violation of G.L. c. 186, §22.

131. Landlords have failed to or refused to provide access to Tenants' water sub-meter as required by statute.

132. Tenant is entitled to damages due to landlord's violation of G.L. c. 186, § 22.

---

*Counter Claim*
**Unjust Enrichment**

---

133. Defendants hereby re-allege and incorporate by reference the foregoing paragraphs as if fully stated herein.

134. Landlords have been unjustly enriched by rent increases to Tenant and other Jefferson tenants, as well as by overpayment of water/sewage service.

135. They have sought to transfer risk from itself to tenants while planning to reimburse themselves or gain monetary compensation from insurance and/or litigation with contractors.

136. They have sought to benefit from charging full price for units that tenants are not able to use.

137. They have benefitted from incorrect water metering, rent increases, and discriminatory/disparate rents, etc.

138. By its wrongful acts and omissions, Landlords have been unjustly enriched at Tenant's expense, and conversely Tenant has been unjustly deprived.

139. Accordingly, Tenant is entitled to damages against Landlords in the amount of any profits earned by Landlords due to rent increases on apartments during the period of the breach of warranty of habitability, and in the amount of any profits earned by Landlords that are the result of overpayment caused by Landlords breach of warranty of habitability.

---

## *Counter Claim*
## Negligence (Personal Injury)

---

140. Defendants hereby re-allege and incorporate by reference the foregoing paragraphs as if fully stated herein.

141. Landlords have engaged in negligence as it relates to Tenants nd have caused them personal injury.

   a. Landlords have not exercised reasonable care in the use and maintenance of the property so that Tenant was not injured. Tenant was injured because of the Landlord's negligence in not providing proper bedding and seating in good condition in an alternative unit.

   b. Landlords have engaged in negligence in choosing to build such a huge property on marshland without ensuring that adequate foundation was developed deep enough to prevent movement and sinking of the building.

   c. Landlords have engaged in negligence in failing to ensure that the elevator structure was properly constructed.

   d. Landlords at the very least engaged in negligent misrepresentation in telling Tenants that no alternative accommodation were available in April 2014, which resulted in Tenant Bisasor having to traverse 4 flights of stairs daily, and causing injury to his leg/feet pursuant to his disability.

   e. Tenants reside on the top floor of building 3 and both Tenants have medical conditions that make it difficult to traverse 4 long flights of stairs multiple times a day each day.

   f. Tenants both have had their medical conditions exacerbated, aggravated and worsened due to the elevator situation.

   g. Tenant can hardly run or exercise now due to the pain that has developed in his feet/lower leg.

   **h.** Tenants have also experienced pain and suffering as a result of back pain, neck pain, foot/leg pain due to defective bed and couch provided by Landlords in temporary unit 2216.

   i. **Landlords negligence have** caused Tenant physical/bodily harm related to Tenant's foot and leg as well as back & neck injuries and pain as well as emotional distress including insomnia, anxiety, stress and headaches, due to Landlord's negligent and reckless actions.

142. Landlords owed a duty to Tenant to maintain the premises in a safe and reasonable manner without causing harm or personal injury to Tenant.

143. Landlords by or through its agents, servants, and/or employees, breached this duty of care when it negligently and carelessly caused injury to Tenants.

144. As a direct and proximate result of the negligence of Landlords, Tenant suffered personal injury and bodily harm.

145. Landlords' failure to exercise care caused Tenant to suffer in mind and body, and to suffer increased risk of bodily harm, mental anguish and emotional distress.

146. As a result, Tenant has incurred costs to treat injuries.

147. Tenant has made complaints to landlords about back & neck pain shortly after the time of the beginning of the use of the inadequate furniture.

148. There are emails showing continued complaints to landlord, emails showing refusal of Landlord to change the bed and furniture, and emails showing denial of reasonable accommodation requests by landlord.

149. Tenant has also made reports to doctor/healthcare providers about back & neck pain shortly after the time of the beginning of the use of the inadequate furniture.

150. Tenants had no previous complaints about back & neck pain to their doctors nowhere in their medical history.

151. Besides tenants' testimony of the onset of back & neck pain, there is also evidence of injury based on treatment by a physical therapist as well as doctors evaluation and even doctors' letters requesting reasonable accommodations for and on behalf of tenants.

152. Tenants also have tens of thousands of medical bills which are also evidence of injury.

153. Tenants have also had to take medication for treatment of injury and for pain.

154. Tenants have also suffered further injury in terms of loss of consortium, pain in buttocks and legs, feet/foot pain as well as other harm from body pain, soreness, fatigue, insomnia and aggravated or worsened conditions including asthma.

155. Tenants have also incurred additional expenses including out of pocket expenses for gas, parking, medication, bedding accessories and lost time from work.

156. Tenants are seeking compensation for pain & suffering, compensation for out of pocket costs, compensation for future treatment, and compensation for future pain & suffering.

---

### *Counter Claim*
### Emotional Damages (Intentional Emotional Distress)

---

157. Defendants hereby re-allege and incorporate by reference the foregoing paragraphs as if fully stated herein.

158. Landlords caused or created emotional distress for Tenants.

159. Landlords negligently and intentionally inflicted emotional distress on Tenants when as a direct and proximate result of the carelessness and negligence of Landlord, Tenants was caused to suffer severe emotional distress, as the result of which a reasonable person in his position would have suffered similar emotional distress under the circumstances.

160. Landlords knew that discriminating/retaliating/threatening/harassing Tenants would cause emotional distress.

161. Tenants have sustained damages as a result of Landlords intentional infliction of emotional distress on them.

---

### Counter Claim
### Violations of Fair Debt Collection Practices Act and Massachusetts Consumer Debt Collection Act

---

162.     Defendants hereby re-allege and incorporate by reference the foregoing paragraphs of the Complaint as if fully stated herein.

163.     Defendants are "consumers" as the term is defined by the Fair Debt Collection Practices Act (FDCPA) and by the Massachusetts Consumer Debt Collection Act (MCDPA).

164.     The foregoing acts and omissions of the Plaintiffs constitute numerous and multiple violations of the FDCPA/MCDPA, including every one of the above-cited provisions.

165. On October 16, 2014, Ms. Ashton sent me and my wife communications in an attempt to collect a debt on behalf of Jefferson. She failed to advise to provide the required notice under Federal law that states she must disclose certain rights to me pursuant to FDCPA. By failing to do so, that is automatically is entitles me to statutory damages per incident per person plus attorney fees.

166. There are at least two or three other instances where   Ms. Ashton sent me formal communications in an attempt to collect a debt but failed to provide the required FDCPA disclosures.

167. On December 23, 2014. She finally includes the FDCPA notice in her communications to me and my wife but she still failed to allow the required 30 days for me to dispute the debt before initiating legal action. She initiated eviction on January 12, 2015 even though she was required to wait until at least January 23, 2015 before she initiated further action. This entitles me again to statutory damages per incident per person plus attorney fees.

168. When I finally provided a request for debt validation on January 21, 2015, she failed to provide all of the documentation requested that would prove the validity of the debt and the exact amounts of the debt. This entitles me again to statutory damages per incident per person plus attorney fees.

169. When I brought these issues to Ms. Ashton's attention asking her to comply with the FDCPA, she rebuffed me telling me a lie that these things don't apply and that I misunderstood the law. Later she reversed course and tried to cover her tracks after I continued to put pressure on her to comply with the FDCPA, thereby implicitly showing that I in fact read the law correctly. The FDCPA prohibits unfair, deceptive acts and false statements and misrepresentations by a debt collector when dealing with consumers. By making these false misrepresentations, Ms. Ashton sough to mislead me regarding my

rights and thus violated the FDCPA. This entitles me again to statutory damages per incident per person plus attorney fees.

170. I have asked Ms. Ashton to not communicate with me on several occasions in the past.

    a. Under the FDCPA, I have a right to request that attorney debt collectors do not communicate with me.

    b. Since I was not represented by counsel, I felt that my communicating with a debt collector attorney would put me at a disadvantage.

    c. This is also something I found to be of concern in the Massachusetts rules of professional conduct for lawyers.

    d. So I insisted that I communicate with Jefferson management only but Ms. Ashton insisted that she communicate with me and eventually forced me to have to communicate with her.

    e. This is a violation of the FDCPA and it entitles me again to statutory damages per incident per person plus attorney fees.

171. Ms. Ashton has refused to provide information regarding the service details by her process server Mathew Lupica for service claimed to have been effected on January 12, 2015, even though she promised she would do so.

    a. Instead she has reneged on her promise, thereby misrepresenting herself and misleading me regarding the same.

    b. Undoubtedly she uncovered unfavorable information regarding the fact that I had challenged the service return as a false return and this goes to the heart of perjury or suborning perjury by Jefferson and this is likely why she misled me and made false promises to me.

    c. Either way, this is a violation of the FDCPA and it entitles me again to statutory damages per incident per person plus attorney fees.

172. Ms. Ashton knowingly gave me selective and edited documentation regarding the bills that form the basis for proving debt validity.

    a. When I ask for the excluded bills, she remains silent on the matter. This shows willful deception.

    b. This is a violation of the FDCPA and it entitles me again to statutory damages per incident per person plus attorney fees.

173. We will be seeking to hold Deutsche Bank accountable for the actions of Donna Ashton and the FDCPA laws provide that we can collect damage awards against any purported debt that they seek to collect.

    a. By having Donna Ashton as the debt collector, she has already created at least $16,000 or more worth of statutory damages automatically collectible by us against the landlord as original creditor (without even getting into the statutory or other damages based on the numerous other claims that we have against Jefferson and the bank directly).

174. Landlord hired a debt collector to serve a 14-day notice to quit on Tenants and advised Tenants of its FDCPA rights including having 30 days with which to dispute the debt.

    a. The Landlord is required to give Tenants 30days to dispute the debt under FDCPA.

    b. By filing this eviction action before the 30 days expired, the Landlord did not give Tenants the time provided by law.

c. Therefore, the Landlord started this case before the required time by law expired.

d. The Notice to Quit was also thus unclear and/or misleading because it gave two dates with which Tenants should comply; one was 14days and the other was 30 days and thus obscuring Tenants' rights.

e. Landlord has failed to comply with the 30 day requirement of the FDCPA to allow for dispute of debt and has not provided proper verification of the debt though requested several times by Tenants and as required by the FDCPA.

175. Landlords have violated the FDCPA/MCDPA by engaging in false or misleading representations in connection with the collection of debts as follows:
   a. The FDCPA/MCDPA prohibits debt collectors from using any false, deceptive, or misleading representation or means in connection with the collection of any debt.
   b. In numerous instances, in connection with the collection of debts, Landlords, directly or indirectly, have used false, deceptive, or misleading representations or means.
   c. Landlords' representations constitute false, deceptive, or misleading representations or means, in violation of the FDCPA/MCDPA.

176. Landlords have violated the FDCPA/MCDPA by engaging unlawful third-party communications in connection with the collection of debts as follows:
   a. The FDCPA/MCDPA governs communications in connection with a debt generally. It prohibits communications about a debt with any person other than the consumer, except with the permission of the consumer.
   b. Landlords, directly or indirectly, have communicated about a debt with persons other than the consumer, without the permission of the consumer.
   c. These acts constitute violations of the FDCPA/MCDPA.

177. Landlords have violated the FDCPA/MCDPA by engaging in unlawful failure to cease communications in connection with the collection of debts as follows:
   a. The FDCPA/MCDPA specifically prohibits communication with a consumer with respect to a debt if the consumer has notified the debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer except to advise the consumer that the debt collector's further efforts are being terminated, to notify the consumer that the debt collector or creditor may invoke specified remedies which are ordinarily invoked by such debt collector or creditor, or to notify the consumer that the debt collector or creditor intends to invoke a specified remedy.
   b. Landlords, directly or indirectly, have communicated with consumers with respect to a debt after the consumers have notified Landlords in writing that the consumers wish Landlords to cease further communication.
   c. Such communications are not made to advise the consumers that Landlords' further efforts were being terminated, to notify the consumers that Landlords or creditors may invoke specified remedies which are ordinarily invoked, or to notify the consumers that Landlords or creditors intended to invoke a specified remedy.

178. Landlords have violated the FDCPA/MCDPA by engaging in annoying, abusive, or harassing communications and actions in connection with the collection of debts as follows:
   a. The FDCPA/MCDPA prohibits debt collectors from engaging in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt.
   b. Landlords, directly or indirectly, have engaged in conduct the natural consequence of which is to harass, oppress, or abuse persons.

    c. The Landlords' conduct violated the FDCPA/MCDPA in that Landlords engaged in behavior the natural consequence of which was to harass, oppress, or abuse the Tenant in connection with the collection of a debt.

179. Landlord did not comply with the request for validation of debt:

    a. Landlord refused to address the issue of the rent waiver at least for the months that the elevators were down which are 6 months or more.
        i. The unit 3413 was uninhabitable at least for the times that the elevator was down which is why it became absolutely necessary for tenants to be displaced.
        ii. Landlord then agreed to have tenants sign a lease for $0 rent for unit 2216, thereby waiving rent.
        iii. If Landlord wanted to charge rent, they should have charged us rent for unit 2216, but they did not.
        iv. There is no way they could expect to charge rent for a unit that tenants were not living in and that was uninhabitable.
        v. Moreover, the unit was/is uninhabitable because of tenant's disabilities for which reasonable accommodation is needed, and for which Landlord has failed to provide.
        vi. All of this creates the basis for a rent waiver and/or right to withhold rent.
        vii. Additionally, Landlord previously agreed specifically to waive rent both orally and in writing.
        viii. This was the agreement (and Landlord cannot now change its mind and renege on that agreement).

    b. Landlord has failed to verify or correct computations in the documents it provided that are contradictory as follows:
        i. The bills for months August through December 2014 are missing.
        ii. That is at least 5 months of bills that are missing.
        iii. This is highly suspicious and tenants would like to see all of the bills that were previously generated and sent to tenants including for months August through December 2014.
        iv. Also, there are discrepancies with Landlord's numbers.
        v. There are also errors with a very high charge for water during the months of May, June and July 2014 when tenants were not living in unit 3413.

    c. Tenant has requested but Landlord has refused to show the original water commission bills for water usage for unit (from April 2014 until present), and not only the bills prepared by Greystar.

180. Plaintiffs continue to violate the FDCPA/MCDPA in other ways, in connection with the collection of debts such as:

    a. Failing to provide validation of debt
    b. Collecting an amount other than rent
    c. Other prohibited communications
    d. Commencing lawsuit prior to the time allowed for validation of debt
    e. Conspiring to submit a false return in court
    f. Including prohibited language on envelope sent to Tenants
    g. Misrepresenting that Debt Collector was complying with FDCPA when it was not
    h. Telling third parties about the debt (i.e. rent being owed and eviction situation)
    i. Failing to provide mini-miranda warning in October 15 letter From Donna Ashton
    j. Bringing lawsuit without debt validation
    k. Harassing tenants at tenant's door, provoking physical confrontation and abusive conduct

181.     The Defendants has suffered and continues to suffer actual damages as a result of the Plaintiffs' unlawful conduct.

182.     As a direct consequence of the Plaintiffs' acts, practices and conduct, the Defendants suffered and continue to suffer from humiliation, anxiety, emotional distress, fear, frustration and embarrassment.

---

### Counter Claim
### Violation of the Consumer Protection Law
(Mass. Gen. Laws c. 239, §8A, and/or c. 93A)

---

183.     Defendants hereby re-allege and incorporate by reference the foregoing paragraphs of the Complaint as if fully stated herein.

184.     Plaintiffs are engaged in trade and commerce as defined by Massachusetts General Laws, Chapter 93A.

185.     The foregoing actions and inactions of Plaintiffs constitutes unfair and deceptive acts and practices as defined by, and in violation of Massachusetts General Laws, Chapter 93A.

186. Therefore the landlord is subject to G.L. c. 93A, and each of the acts stated in this brief was unfair and/or deceptive.

187. The landlord charged us late fees before our rent was thirty days late.

188. The landlord charged a rent amount that we never agreed to pay.

189. There are unlawful terms in our lease.

190. Therefore, under G.L. c. 93A, we are entitled to statutory damages for each violation, or actual damages (doubled or trebled because the landlord's conduct was willful and knowing), whichever is greater.

191. The landlord is subject to G.L. c. 93A as landlord is engaged in trade and commerce in the Commonwealth of Massachusetts.

192. Landlord's actions and omissions as described above constitute unfair and deceptive acts or practices made unlawful under c. 93A § 2. Pursuant to G.L. c. 93A, tenant is entitled to statutory damages or actual damages for each violation, doubled or trebled because the landlord's conduct was willful and knowing.

193. Landlords, in breaching Tenants' right to quiet enjoyment, attempting to wrongfully evict Tenants from their unit, and discriminating against Tenants in access to housing, engaged in unfair and deceptive trade practices.

194. Landlords' trespass to real property and trespass to personal property are unfair and deceptive trade practices.

195. Landlords Landlord has engaged in actions that have resulted in the unnecessary delay of the repair of the elevator in order to save money:

a)     On information and belief, Landlords Landlord refused to follow the recommendations of the Massachusetts Department of Public Safety (MDPS) who directed the Landlords Landlord to replace the elevator rather than simply repair it.  Instead of complying with the directives from the State, Landlord has insisted on utilizing appeal processes to try to avoid implementing the MDPS recommendations. There is a news report on CBS that states that MDPS is concerned about a catastrophic failure of the elevators and that their recommendation to replace the elevator is borne out of that concern.

b)     Landlord has prioritized saving money at the expense of considering what is best for tenants.  Their refusal to follow the State's directives is due to a desire to save money at the expense of the utmost safety of the tenants. Their attempt to make legal challenges to the state's recommendation has only caused more delays in fixing the elevators. Therefore the Landlord is at fault for the continued delays in the restoration of the elevator service. If the Landlord had simply complied with the state's recommendation, the elevator would have been restored much earlier than 10 months that it took to make all final repairs to the elevators.

c)     On June 10, 2014, the local CBS news channel ran a story, including video footage, that featured Jefferson at Dedham Station and that quoted State inspectors as saying:  "they are concerned about a "catastrophic failure" of an elevator at a Dedham complex".

196. Landlords, at least partially, are at fault or responsible For The Broken Elevator:

a.   On information and belief, Jefferson apartment management/ownership is responsible for the problem with the elevator.

b.   Even if management provides proof in writing (either by the contractors or the engineers or by an insurance company) stating that the problem is in no way was caused by something that management/ownership did or did not do at any time either in the original construction or in subsequent maintenance/upkeep, then Jefferson apartment/management is at least to some extent still responsible for the cause of the broken elevators.

c.   Jefferson had knowledge of the expansive and pervasive nature of the problem with the elevators including the structural and foundational problems with the building and the shaft, and as such management was at least partly responsible for decisions that led to the problem with the elevators, including decisions by management to cut corners or save money to detriment of the building safety.

d.   Even if some of this was done by the previous ownership (JPI), their liability for such actions would be transferred to Landlords and it would still be the responsibility of current management/ownership to assume such liability.

e.   Notwithstanding the fact that Landlords' insurance will likely reimburse them for their own contribution to any negligence or other intentional acts, Landlords still wrongly attempted to transfer the risk or liability costs to tenants by forcing tenants to go uncompensated for the non-working elevators.

197. Landlords have engaged in intentional misrepresentation including but not limited to the following:

a.   Landlords induced Tenant to enter into an agreement whereby Landlords promised that Tenant would not suffer regular rent increases ad that if there was a rent increase, it would be

on average about $50 but never more than $100 in rent increases. However, since then, Landlords have increased Tenant's rent by several hundred dollars on several occasions.

b. Landlords also induced Tenant to take a certain alternative unit while denying that other apartments were available. Landlords also lied to Tenant that no accommodations were available.

c. Landlords also lied to the Town of Dedham in stating that they communicated availability of accommodations to the tenants, when they did not.

d. Landlords also lied about the reason that the operations manager, Chris Esmond, denied reasonable accommodations to Tenant and his wife.

198. Landlords have engaged in active concealment including but not limited to the following:

a. Landlords had a duty to disclose the availability of alternative accommodations but yet took active steps to conceal the fact that such alternative accommodations were available. They first took passive steps to conceal the availability of these alternative accommodations by not telling tenants by email or letter that such accommodations were available, even-though they on the other hand had told town officials that they had offered such accommodations to all tenants. They actively concealed this same information by telling Tenant that nothing was available even-though Tenant called management to specifically ask.

b. Landlords had a duty to disclose all of the apartment units that were available in the complex. Landlords took steps to actively conceal the availability of certain apartment locations for either temporary or permanent move. There were several other apartments, including more desirable units, that were vacant but that were never disclosed to Tenant.

199. Landlords have engaged in misrepresentation and deception including but not limited to the following:

a. Landlords have engaged in other unfair and deceptive practices that have caused Tenant harm including making misrepresentations about the availability of accommodations, discrimination and retaliation, telling the city one thing while telling Tenant and other tenants another thing, changing and withdrawing offers and terms related to offer for alternative accommodations, not providing full and complete information requested in the process of determining which unit to move to, and being evasive about the terms of the alternative accommodations, etc.

b. Landlords make offers and then rescind offers to drag out time. If the details of the offer are unclear, and Tenant want to take time to iron out details, Landlords try to hold it against Tenant that Tenant didn't take the offer immediately

c. Landlords have engaged in lies, deception and unethical tactics including psychological manipulation. They try to create skewed email records by twisting what was discussed in person. They lied to the Town officials; They lied to the Tenant; They lied to other tenants.

d. They refused to assist with Tenant's move; first they offered hotel option then withdrew the hotel offer, then put it back on the table in limited manner. First they offered utilities then they withdrew them, then they offered it back, then they downgraded them to the minimum. They put up roadblocks to Tenant taking the offer such as telling Tenant a doctor's note was required, then leading Tenant to believe it wasn't really required, then telling Tenant again that it is required. They keep changing their positions so that it is hard to know what to rely on. They resist putting things in writing and prefer to discuss verbally off the record so that they can change their stories and later deny what they told Tenant.

e.  Landlords have engaged in deception and deceptive acts. To the extent that such acts may be otherwise lawful, these acts are nevertheless unfair or oppressive acts. Landlords have engaged in lies and misrepresentation including: lying by omission, deception by fine print, false advertising, dishonest communication/activity and non-transparency with the tenants. Landlords have made misrepresentations to the Town of Dedham, to the Tenant and to other tenants and have engaged in "bait and switch" tactics regarding offer for alternative housing and pull back on offer in retaliation, etc.

f.  Landlords engaged in dragging things out in order to avoid paying costs to replace elevator, creating undue hardship, inconvenience and damages to Tenant.

g.  Landlords engaged in delaying tactics on a number of critical issues relating to Tenant in order to wait until elevators were finally fixed after ten months of waiting by Tenant, creating undue hardship, inconvenience and damages to Tenant.

h.  Landlords have engaged in violations of the State Building Code and State Sanitary Code.

i.  Landlords have refused to show Tenant his tenant file.

j.  Landlords' failed or refused to assist Tenant with moving.

k.  Landlords continually engaged in changing offers, rescinding offer to cover light and water; rescinding offer to stay at hotel for the long haul, making implied threats and forcing us to move; signaling that we are unwelcome at the office.

l.  Landlords have engaged in hostile, negative, uncooperative, antagonistic and unhelpful attitude towards Tenant in retaliation.

m.  Landlords have refused, in bad faith, to offer or provide rent abatement to Tenant, though initially leading Tenant to believe that they would.

n.  Landlords have attempted to retaliate by threatening or attempting to evict Tenant and by raising his rent by upwards of $300, after Tenant made complaints to the Town of Dedham, etc, about bad conditions.

o.  Landlords refused to let Tenant know units available and Landlords refused to show vacant available units to Tenant. Landlords denied alternative housing to Tenant. Landlords lied about the reason that operations mgr denied accommodations to Tenant. Landlords refused to make reasonable accommodation for disabilities. Landlords refused to do air testing for mold as a reasonable accommodation; and refused to provide hypo-allergenic filters for AC unit.

p.  Landlords have failed or refused to address suspicious water metering problems and have refused to show water sub-meter to Tenant though Tenant has requested this many times and though the Town of Dedham has instructed them to do so.

q.  Landlords have trespassed upon Tenant's apartment, entering unit without permission. Landlords have insisted on not tagging Tenant' unit correctly in the system as "appointment only". Landlords have also made misrepresentations about their computer key system to the police as well as to Tenant.

r.  Landlords refused to make timely, or adequate repairs including of dishwasher and cracks in ceilings/walls.

132

s.  Landlords have improper handled Tenant's security deposit and have done the same for other tenants.

t.  Landlords have engaged in unequal treatment of tenants in violation of the equal protection of laws.

u.  Landlords have lied to tenants telling them they are not welcome to attend public meetings.

v.  Landlords have required that Tenant signs invalid and illegal clauses in his lease

w.  Landlords have refused to provide answers in writing or to document representations and offers made by them to Tenant.

x.  Landlords knowingly caused Tenant emotional distress by falsely attempting to evict Tenant or otherwise retaliating against Tenant.

y.  Landlords failed to inform all residents of the opportunity available for alternative housing.

z.  Landlords gave in to adamant request of other tenants to not go to hotel; but refused Tenant's adamant request to go to hotel.

aa.  Landlords have failed to investigate and root out unfair practices, discrimination, retaliation, which if done, would ensure ethical and honest management.

bb.  Landlords have engaged in "steering" Tenant away from the best apartments.

cc.  Unjust enrichment to themselves through insurance, and forcing us to bear the brunt of the cost.

dd.  Landlords have engaged in unfair debt collection practices.

ee.  Tenant has suffered harm, including emotional distress, and loss of time for work and out-of-pocket and other costs such as attorney's fees.  Tenant is also entitled to money damages including statutory damages or actual damages for each violation, with amounts doubled or trebled, since Landlords knew or should have known her acts were unfair or deceptive.

200. Other deceptive acts by Landlord:

a)  **Lying or causing other to lie to the State board of elevators.** I have stated previously that both Simpson and Jefferson misled the board of elevators in telling them under oath that there were no cracks anywhere else in the buildings.

b)  L**ying about the reason for not fixing the cracks on November 24, 2014.** Prior to that there were several other dates for which they had access to our apartment to fix the cracks but failed to fix the cracks. This is undeniable.

c)  **Lying about replacing the bed**. I have emails that show that we were waiting on Jefferson to replace the bed including frame and headboard. After much pushing, they dropped off a mattress but the mattress was no better than the prior one but more importantly, the shaky unstable dysfunction bed frame and headboard were never replaced. When we insisted and pushed, Laura Donahue came to my apartment to inspect along with a maintenance person and they both determined that the bed needed to be replaced because it was o shaky, unstable and uneven. The email records show that Laura promised me that she would ask the local vendor

to replace the entire bed. But this was never done. There is no way around this. The email record is 100% clear. Even to this day, when I ask again and about the bed and couch to be replaced, Jefferson either outright ignores me, or lies and says the matter was already resolved or just simply flat-out refuses to do it, denying me my right to reasonable accommodations even-though I have shown medical documentation that this is a medical necessity.

d) **Shutting off utilities in my apartment**. Jefferson either caused or allowed our utilities to be shutoff twice in our alternative unit due to non-payment. This is undeniable. For this to occur twice is inexcusable and shows an attempt to make us feel uncomfortable in our home and it shows retaliation as these events occurred just after we asserted certain rights.

e) **Lying to a police officer as it relates to a breach to my apartment**. I have direct proof that Sara McNeely lied to the police when she told him that no one entered my apartment and referenced a secure key log system. Yet when I asked to see the key logs that same day, she told me that she did not have access to the key log reports as yet because they take time to generate and therefore she had not yet seen the key log reports.

f) **Lying to town officials**. I have direct proof that Jefferson management lied to town officials in or around April 2014 in telling them that all tenants were made aware that there were alternative housing accommodations available at a local hotel to any tenant that needed it. Jefferson emails and hand-delivered notices about the elevators in April 2014 did not in any way communicate that housing accommodations were available to tenants. The record here is very clear despite attempts to stretch the imagination to make words appear that do not exist in these communications.

g) **Jefferson has reneged on promises to waive or abate rent**. I have emails that show this intent. This is undeniable. However, Jefferson has reneged on these promises in retaliation for making reports to government officials.

h) Failure to reply to 93A within statutory deadline and before structural report was even ready

i) Refusal to offer a reasonable settlement

j) Lying about sending the 93A response on time by mail and by email in order to deceived us about Plaintiff's meeting statutory deadline.

k) There are about 48 incidents of Plaintiffs charging late fee before 30 days required by the lease

201. Landlords have placed illegal clauses into the lease contract. There are waivers in Tenant contract/lease that violate Massachusetts law, etc., including but not limited to the following:

a. Paragraph 18 states it is prohibited to engage in: "**injuring our reputation by making bad faith allegations against us to others or violating any Federal, state, or local law, or ordinance**." Landlords are attempting to intimidate tenants into waiving their right to make complaints to the government about the Landlords. This clause therefore violates the intent of public policy.

b. Paragraph 30 states that Tenant will be in default if: "**(7) you or any guest or occupant engages in any of the prohibited conduct described in Paragraph 18; or (8) you or any occupant, in bad faith, makes an invalid complaint to an official or employee of a utility company or the government**." Landlords are attempting to intimidate tenants into waiving their right to make complaints to the government about the Landlords. This clause therefore violates the intent of public policy.

   c.   Paragraph 31 states: "**In the event that you commence any litigation against us, and you fail to obtain judgment in your favor, you agree to reimburse us for any and all attorney fees and costs that we incur in relation to the defense of such action.**" Landlords are attempting to intimidate tenants into waiving their right to commence litigation in order to enforce legal rights. This clause therefore violates the intent of public policy.

   d.   Landlords have also used another provision that: *"WAIVER OF JURY TRIAL. To minimize legal expenses and, to the extent allowed by law, you and we agree that a trial of any lawsuit based on statute common law, and/or related to this Lease Contract shall be to a judge and not a jury."* Landlords are attempting to intimidate tenants into waiving their right to commence litigation in order to enforce legal rights. This clause therefore violates the intent of public policy.

   e.   Paragraph 23 states: *"CONDITION OF THE PREMISES AND ALTERATIONS. You accept the apartment, fixtures, and furniture as is, except for conditions materially affecting the health or safety of ordinary persons."* Landlords are attempting to trick tenants into waiving their right to make complaints about defective conditions. This clause therefore violates the intent of public policy. This construction is a clear and calculated effort to mislead tenants and it suggests to tenants that their signatures on the lease constitute a waiver of their right to habitable housing and represents "an unabashed attempt to annul or render less meaningful" rights guaranteed by the State sanitary code and the warranty of habitability.

   f.   The SPECIAL PROVISIONS section states: "**If you become a month to month resident you agree to pay the prevailing market rent, as specified by Jefferson at Dedham Station, for your unit plus the then prevailing month to month premium for each month that you remain as a month to month resident.**" Landlords are attempting to collect an illegal fee by charging an open-ended blank check month to month premium. This clause therefore violates the intent of public policy.

   g.   The provisions in the lease possess "a tendency to deceive", based on the effect which it might reasonably be expected to have upon the general public.

202. Landlord Jefferson conduct alleged herein in making false and misleading representations to Tenant constitutes unfair and deceptive practices within the meaning of Mass. Gen. L. ch. 93A, ##2 and 9. Landlord's actions, statements and omissions alleged herein were committed willfully and knowingly.

203.    Plaintiffs failed to provide an executed copy of the lease/rental agreement within 30 days of Defendants' signing of it (940 CMR 3.17 (3))

204.    Plaintiffs have failed to include into the lease the following:

   a.   The names, addresses, and telephone numbers of the owners and other persons who are responsible for the care, maintenance, and repair of the property;

   b.   The name, address, and telephone number of the person authorized to receive notices of violations of law and to accept notice of a lawsuit on behalf of the owner.

205. As a result of the unfair and deceptive acts or practices alleged herein, Tenant sustained injury.

206. Tenants have sent more than one written communications to Landlords describing, in one form or other, the unfair acts or practices described above and the injuries suffered as well as demanding relief or that action is taken to remedy the situation by Landlords.

207. Landlords have refused to make reasonable offers of relief to Tenants

208. This refusal to grant relief was done in bad faith with knowledge or reason to know that the acts of Landlords violated Massachusetts Laws.

209.　　In consequence of Plaintiffs unfair and deceptive acts, Defendants has suffered and will continue to suffer damages including, but not limited to, financial and other losses, pain and suffering, and emotional distress.

210.　　Plaintiffs have acted intentionally, willfully, and with reckless disregard for Defendants' rights and for the established public policy in the state, and are immoral, unethical, and unscrupulous, and as a result, Defendants have suffered damages.

211. Tenants are entitled to an award of treble damages incurred in connection with this action pursuant to Massachusetts General Laws 93A.

---

## Counterclaim
### Abuse of Process under Color of Law by Constable as Agent for Greystar / Civil Conspiracy

---

212. Defendants hereby re-allege and incorporate by reference the foregoing paragraphs as if fully stated herein.

213. Landlord engaged in a conspiracy, along with its process server Mr. Lupica, to submit a false return of service to the court.

214. Landlord knew that did not its process server deliver any summons to tenants' door on January 12, 2015.

---

## Counterclaim
### Breach of Contract

---

215. Defendants hereby re-allege and incorporate by reference the foregoing paragraphs of the Complaint as if fully stated herein.

216.　　Plaintiffs entered into a lease with and have made representations and promises to Defendants, which created a contract with Defendants.

217.　　Defendants relied on the terms and conditions of the lease, and these representations and promises of Plaintiffs in seeking to become associated with Plaintiffs and later in seeking to avail themselves of all of the benefits, access, resources and protections available to them as promised by Plaintiffs.

218.　　Plaintiffs breached this contract by refusing to adhere to the lease terms, by treating Defendants in an unfair, deceptive and disparate/discriminatory manner and by retaliating against Defendants when they raised concerns about such treatment.

219.　　Defendants signed a lease that guaranteed the use of the apartment unit 3413 on the fourth floor of Building 3 of the Jefferson at Dedham Station apartment complex.

220.    Defendants have not had the use of this apartment for several months as he has been displaced to either a hotel or to a smaller alternative unit due to a broken elevator.

221.    Plaintiffs are contractually obligated to provide working dishwasher in Defendants' apartment. Dishwasher has been inoperable since 2009. Dishwasher is still not operable and has been inoperable for almost 7 years. Defendants have advised Plaintiffs of the problem both in writing and orally but Plaintiffs have failed to make timely and adequate repairs. Plaintiffs' failure to provide to make timely and adequate repairs constitutes a breach of contract.

222.    Amenities in the Jefferson at Dedham Station apartment complex include a business center with conference room. Plaintiffs have marketed and advertised this amenity in its effort to attract tenants. Defendants use this conference room and business center frequently and this was one of the reasons Defendants selected the apartment complex. The Conference room in the business center was turned into a "lounge" and the conference table and conference furniture was removed from the room and replaced with easy chairs and coffee table. Plaintiffs continue to market the conference room facilities on its website, and other advertising for the facility. Plaintiffs' failure to provide a conference room in its business center constitutes a breach of contract.

223.    As a result of Plaintiffs' breach, Defendants has suffered the loss of use of certain apartment features and tenancy benefits related to apartment unit 3413, including but not limited to the following:

  **Apt 3413 (Original Unit) on Fourth/Top Floor:**
1. Inoperable dishwasher
2. Multiple cracks in walls and ceilings
3. Bugs and Insects coming through cracks in walls and ceiling
4. Doors jamming or not opening/closing properly
5. Windows jamming or not opening/closing properly
6. Displaced tiling in the kitchen
7. Un-cleaned carpet for over 7 years while other tenants have received yearly carpet cleaning
8. Untested/moldy air quality
9. Shower rods and nozzle broken or not functional
10. Screens worn and in bad condition
11. Broken latch on Front Door
12. Water dripping on common hallway carpet in front of unit Front Door resulting in damp/moldy carpet in front of apt door.
13. AC-heat in second bedroom not working properly; room is always colder during winter
14. Front door sealant in need of replacing
15. Noxious odors
16. Continual smell of marijuana protruding into Defendants' unit from other nearby units
17. Garbage disposal not working
18. And many other issues/conditions that are outlined elsewhere

Defendants have had to live with many of these conditions for several years.

224.    In order to effectuate the displacement, Plaintiffs had Defendants sign a lease for the smaller alternative unit, located at 2000 Presidents Way Unit # 2216, Dedham, MA 02026. This lease was to cover periods for which bad conditions existed relative to apartment unit 3413 including broken elevators.

225.    However, Plaintiffs have also provided bad conditions in the alternative unit 2216. Defendants were provided with subpar conditions in the alternative unit 2216 including, for example, a non-functional bed that caused bodily injury/pain and sleepless nights and a couch that was sunken and caused further bodily injury and pain. Plaintiffs have also shut-off or cause to shut-off utilities in alternative unit that Plaintiffs agreed to pay for. Plaintiffs have also not been responsive to its 48 hr guarantee to do repairs in alternative unit.

226.     Defendants suffered loss of access to home-based office in apt 3413 for which no accommodations have been made though requested, including assistance with moving. Defendants were rebuffed and have suffered losses as a result.

227.     Defendants have suffered the loss of space & size of apartment. Defendants were displaced to a smaller one bedroom/one bath unit versus the larger two bedroom/two bath unit (with higher end features/floor plan) that Defendants were displaced from. Plaintiffs first refused to provide rent adjustment; then later refused to follow through on promises of a rent adjustment.

228.     Plaintiffs have failed to provide reasonable accommodation for the medical situations pertaining to Defendants in failing to provide assistance with moving to the alternative unit.

229.     The lease agreements between Defendants and Plaintiffs require Plaintiffs to, among other things, do the following:

a.     Plaintiffs promised in paragraph 3 of the lease that: *"Unless the landlord serves a notice of non-renewal at least 60 days prior to the expiration of the initial term, OR the tenant serves a notice to vacate at least sixty (60) days prior to the expiration of the initial term, this Lease Contract will automatically renew on (check one):"* Plaintiffs failed to serve Defendants with a notice of non-renewal at 60 days prior to the expiration of the term, even-though they had the intention to not renew Defendants' lease term. Plaintiffs also have a pattern and practice of not giving the requisite 60-day notice in order to create unfair leverage to force high rent increases.

b.     Plaintiffs agreed in paragraph 6 of the lease that "*you must not withhold or offset rent unless authorized by statute.*" Yet when Defendants withheld rent as authorized by statute, Plaintiffs refused to follow the lease by threatening eviction among other things.

c.     Plaintiffs promised in paragraph 4 of the least that: "*If we request the last month's rent from you along with the security deposit, we will comply with the requirements of G.L. c. 186 § 15B (2).*" Plaintiffs did not comply with this provision nor the requirements of G.L. c. 186 § 15B and therefore did breach the lease.

d.     Plaintiffs promised in paragraph 7 of the lease that: *"If water/sewer utilities are sub-metered for the apartment, we will attach an addendum to this Lease Contract in compliance with state agency rules or city ordinance."* Plaintiffs have failed to follow state agency rules or city ordinances related to water sub-metering.

e.     Plaintiffs promised in paragraph 8 of the lease that: *"SUBJECT TO APPLICABLE LAW, THE LANDLORD WILL PROVIDE INSURANCE FOR UP TO $750 IN BENEFITS TO COVER THE ACTUAL COSTS OF RELOCATION OF THE TENANT IF DISPLACED…"* When elevators became inoperable and Defendants became displaced, Plaintiffs refused to cover any cost of relocation.

f.     Plaintiffs promise in paragraph 29 of the lease that: "*RESPONSIBILITIES OF OWNER. Subject to Chapter 410.000 of the Sanitary Code, we'll act with customary diligence to: (1) keep common areas reasonably clean, subject to paragraph 23; (2) maintain building fixtures, furniture, hot water, heating and A/C equipment; (3) comply with applicable federal, state, and local laws regarding safety, sanitation, and fair housing; and (4) make all legally required repairs..*" Plaintiffs did not comply with this provision and therefore did breach the lease.

g.     Plaintiffs breached the lease when it required that Defendants no longer could enjoy a functioning elevator to reach the top floor of the apartment complex. It changed the terms of

the leasing arrangement by effectively requiring that Defendants move to another lesser apartment that was smaller in size with less amenities and non-functioning furnishings.

h.   Plaintiffs agreed that Defendants could conduct lawful business at home but then displaced Defendants from his home office, causing damages.

i.   Plaintiffs promised to provide insurance for missing item missing from Defendants' home while displaced due to elevators but refused to follow through on that promise.

j.   Plaintiffs promised to meet with Defendants for resolution to address outstanding issues but refused to follow through for a variety of reasons.

k.   When Defendants have tried to get certain promises or representations in writing, Plaintiffs have in the past refused to do so, though mandated by the lease (i.e. the lease states that things must be in writing to be valid and that oral representations are not). Plaintiffs typically endeavor to keep such things to verbal conversations in order to allow them to change their minds at a later point in time and deny ever making certain promises. This has caused much harm to Defendants as a result of Plaintiffs actions.

230. Defendants are entitled to damages for the reduced value of their apartment, calculated as the difference between: a) the full market rental value of the apartment in the leased condition, and (b) the reduced value of the apartment due to inoperable dishwasher since around 2009, long-standing cracks holes and separations in the apartment (since 2008), and the insects that gain entry through them, AC-heat in second bedroom not working properly; front door sealant in need of replacing; persistent noxious odors and c) the reduced value of the premises without a usable conference room in the business center as well as non-working elevator and non-working equipment/electronics in fitness center for several months at a time, and the widespread cracking in the common areas in the building and its exterior, etc.

231.   Defendants have been injured by Plaintiffs' breach of the lease agreement.

232.   Plaintiff has been injured by Defendants' breach of the lease agreement in an amount to be proven at trial.

233.   As a result of those actions, Defendants have suffered and will continue to suffer damages including, but not limited to, financial and other losses, pain and suffering, and emotional distress.

234.   Defendants are also entitled to total or partial abatement of past and future rent, declaratory relief, injunctive relief, and attorney's fees.

---

## *Counterclaim*
## Trespass To Real Property

---

235.   Defendants hereby re-allege and incorporate by reference the foregoing paragraphs of the Complaint as if fully stated herein.

236.   Upon becoming tenants, Defendants had the exclusive right of possession of his unit.

237.   Subsequent to Defendants becoming tenants, Plaintiffs entered Defendants' unit without the Defendants' authorization.

238.    After entering Defendants' unit without authorization, Plaintiffs attempted to cosmetically cover- up cracks in the ceiling and walls and then denied doing so.

239.    After Defendants discovered that Plaintiffs entered Defendants' unit without authorization, and brought it to the attention of the Plaintiffs, Plaintiffs issued a ban that prohibited Defendants from speaking with Maintenance staff persons about the matter.

240.    Defendants has warned Plaintiffs several times about not entering his apartment without permission or without his being present, but Plaintiffs refuses to comply.

241.    Plaintiffs have even entered Defendants' unit (without permission) while Defendants' wife was naked, causing tremendous fear, distress and shock to Defendants and Defendants' wife.

242.    Other tenants have made complaints about Plaintiffs also trespassing upon their units.

243.     Plaintiffs have thus engaged in invasion of privacy, illegal entry and harassment.

244.    The Plaintiffs have abused their right to reasonable access by entering Defendants' apartment without giving Defendants prior notice and without obtaining Defendants' consent. Plaintiffs have entered unannounced upon Defendants' wife while she was home alone and naked in the bathroom, causing tremendous distress. Plaintiffs have entered the apartment without permission. Defendants have been forced to file police reports about these issues including item missing from the apartment. Plaintiffs have had a pattern of doing the same thing to other tenants who also have made complaints and/or filed police reports against Plaintiffs.

245.    Defendants have been living in fear of continued illegal entry/trespass and have been forced to spend money on a camera security system to try to alleviate some of these fears.

246.    Plaintiffs have lied to the police and have resorted to protecting its maintenance staff from questions about the incident including issuing a ban prohibiting Defendants from speaking with maintenance staff even when maintenance staff is conducting a repair in the unit with Defendants present.

247.    Most recently, after these police reports have been filed, Plaintiffs have resorted to harassment of Defendants with continual threats to enter apartment without obtaining Defendants' consent, causing tremendous distress.

248.    Plaintiffs have acted intentionally, willfully, and with reckless disregard for Defendants' rights to exclusive possession of this unit, and, as a result, Defendants' are entitled to actual and punitive damages.

---

### *Counterclaim*
### Trespass To Personal Property

---

249.    Defendants hereby re-allege and incorporate by reference the foregoing paragraphs of the Complaint as if fully stated herein.

250.    On information and belief, Plaintiffs entered Defendants' unit without authorization, and removed property belonging to Defendants.

251.    Plaintiffs have acted intentionally, willfully, and with reckless disregard for Defendants' rights to exclusive possession of their personal property. As a result, Defendants' are entitled to damages.

---

*Counterclaim*
**Breach of Implied Covenant of Good Faith & Fair Dealing**

---

252.     Defendants hereby re-allege and incorporate by reference the foregoing paragraphs of the Complaint as if fully stated herein.

253.     By entering into lease agreements with Defendants, Plaintiffs undertook a duty of good faith and fair dealing in its contractual relationship with the Defendants.

254.     Plaintiffs owed to Defendants a duty of utmost good faith and fair dealing and thereby were obligated to consider the welfare of Defendants, refrain from acting for purely selfish motives or private gain, and desist from destroying or injuring the right of the Defendants to receive the fruits of the contract.

255.     Plaintiffs have engaged in a breach of covenant of good faith and fair dealing as follows:

      a.   By making false and misleading representations to Defendants, Plaintiffs breached its duty of good faith and fair dealing to the Defendants.

      b.   By lying to Defendants and to tenants about the availability of accommodations.

      c.   As parties to the lease contract, Plaintiffs failed to deal with Defendants honestly, fairly, and in good faith, and has interfered with Defendants' right to receive the benefits of the lease contract. There has been an attempt to claim the benefit of a technical excuse for breaching the contract (i.e. that the elevator is only amenity and not part of the overall agreement to lease an apartment on the fourth floor/top floor).  There was a general understanding between the parties that there would be a working elevator when Defendants signed the agreement to lease that apartment. It was on the website, it was in advertisements all of over the internet that a working elevator was a feature of the luxury living. Nowhere in the contract does it say that the elevator is an amenity.

      d.   Plaintiffs have a contractual obligation to maintain the property including common areas which includes the elevator and the exits. Plaintiffs are trying to use specific contractual terms in isolation in order to refuse to perform their contractual obligations, despite the general circumstances and understandings between the parties.

256.     Through its actions and inactions, Plaintiffs breached its duty of good faith and fair dealing to Defendants, intentionally engaged in wrongful conduct, and did knowingly injure or otherwise harm Defendants' rights and interests.

257.     As a result, Defendants has suffered damages.

---

*Counterclaim*
**Misrepresentation**

---

258.    Defendants re-allege and incorporate all paragraphs above as if fully set forth herein.

259.    Plaintiffs made misrepresentations to Defendants about the terms of the lease, which Defendants relied upon to their detriment.

260.    Plaintiffs made these misrepresentations in order to induce Defendants to enter into a lease arrangement and make Jefferson at Dedham Station their home.

261.    Plaintiffs' misrepresentations did induce Defendants to enter into contract and have suffered damages as a result.

262.    By enticing Defendants to enter into lease arrangements, Plaintiffs' practices have caused them harm.

263.    Accordingly, Defendants is entitled to damages and equitable remedies for Plaintiffs' misrepresentations.

---

## *Counterclaim*

## Violation of Massachusetts Civil Rights Act

---

264. Defendants hereby re-allege and incorporate by reference the foregoing paragraphs as if fully stated herein.

265. By threats, intimidation and coercion, defendants have interfered and attempted to interfere with Defendants' rights, causing them harm, all as proscribed by G.L. c. 12 §§11H, 11I.

266. The foregoing actions and inactions of Plaintiffs constitute a violation of Massachusetts Civil Rights Act.

267. In consequence of Plaintiffs' actions, Defendants have suffered and will continue to suffer damages including, but not limited to, financial losses, pain and suffering, and emotional distress.

---

## *Counterclaim*

## Civil Conspiracy

---

268. Defendants hereby re-allege and incorporate by reference the foregoing paragraphs as if fully stated herein.

269. Plaintiffs, acting in concert in furtherance of their scheme, committed unlawful acts and encouraged and enabled one another to do so to the injury of Defendants.

270. Plaintiffs knew that their acts and the acts of each other were violative of Defendants' rights.

271. In consequence of Plaintiffs' actions, Defendants have suffered and will continue to suffer damages including, but not limited to, financial losses, pain and suffering, and emotional distress.

---

*Counterclaim*
### Interference With Contractual Relations
(Laura Donahue, Chris Esmond, Kathleen Leito, Sarah McNeely)

272. Defendants hereby re-allege and incorporate by reference the foregoing paragraphs as if fully stated herein.

273. Defendants possessed a contractual relation with Landlord RAR2 Jefferson at Dedham Station MA-Inc.

274. Plaintiffs Laura Donahue, Chris Esmond, Kathleen Leito, Sarah McNeely have intentionally interfered with this contractual relationship with  Landlord RAR2 Jefferson at Dedham Station MA-Inc. through improper motives or means

275. As a result of Plaintiffs Laura Donahue, Chris Esmond, Kathleen Leito, Sarah McNeely misconduct, Defendants' contractual relations may be irretrievably damaged. Defendants have suffered and will continue to suffer substantial and irreparable harm.

276. By its above described conduct, *inter alia,* Plaintiffs has knowingly, improperly, and malevolently, and without lawful justification, intentionally and tortuously interfered with Defendants' actual and potential advantageous relations.

277. As a result of his intentional interference, Defendants have suffered and continues to suffer damages, including but not limited to financial loss, pain and suffering, and emotional distress.

---

### RELIEF SOUGHT PERTAINING TO COUNTERCLAIMS FOR DAMAGES

---

278. On all counterclaims and defenses, we should retain possession of our apartment.

279. On all counterclaims and defenses, we should receive money damages, costs, attorney's fees (where applicable), and such other relief as is just and proper.

---

### Request for a Jury Trial
(Part I, Article XV of the Mass. Constitution; USPR 8; and Mass. Gen. Laws c. 218, §19B)

280. Defendants claim their right to a trial by jury.

---

**WHEREFORE,** Tenants requests the following:

1. On all claims and defenses, award Tenants continued possession of their apartment and dismiss the plaintiffs' claim for possession.

2. Order the Landlords to provide the Tenants with their request for a reasonable accommodation;

2. On all claims and defenses, award Tenants money damages, costs, attorney's fees
(where applicable), and such other relief as is just and proper.

3) Enter a judgment in Tenants' favor on all counts of this answer and counterclaims as follows:

    a) Award Tenants damages in an amount to be determined at trial, plus his reasonable attorney fees and the costs of (and any interest associated with) this action.

    b) Enter a Preliminary Injunction, enjoining the Landlords to:

        i. Provide a water leakage evaluation for Tenants' unit.

        ii. Cease and desist from entering Tenants' apartment without first giving Tenants proper notice and obtaining Tenants' prior consent, except in case of a true bon a fide emergency.

        iii. Cease and desist from harassing Tenants with threats of entering Tenants' apartment without giving Tenants' prior notice and without obtaining Tenants' consent.

        iv. Preserve records, including electronic records, and evidence, as doing so would place no significant burden on them.

        v. Provide an alternative unit as a reasonable accommodation for Tenants, if a structural engineer finds that Tenants' unit will continue to be subject to continual and frequent cracking and thus cannot be permanently fixed.

        vi. Cease and desist from discrimination against blacks and Latinos.

        vii. Cease and desist from racial steering and to always post all available units on their public online system.

    c) Enter judgment against the Landlords in the form of a permanent injunction enjoining the Landlords from the conduct described herein.

    d) Treble such amount as provided by M.G.L. ch. 93A, #9(3) and/or M.G.L. ch. 186, # 15B(7);

    e) Order Landlords to pay compensatory damages to Tenants.

    f) Abate the past and future rent of Plaintiff.

    g) Award multiple damages to Tenants pursuant to M.G.L c. 93A

    h) Issue a declaratory judgment stating that Landlords have breached the warranty of habitability and the terms of the lease agreement.

    i) Grant all injunctive relief necessary to bring Landlords into compliance with their contractual obligations as described above.

    j) Grant such other declaratory and injunctive relief as may be appropriate.

    k) Award the Tenants punitive damages; and,

    l) Award Tenants such other relief as the Court deems just and proper.

144

**DEFENDANTS REQUEST A TRIAL BY JURY ON ALL MATTERS SO TRIABLE.**

Respectfully Submitted,

_____/s/_____

**DEFENDANT ANDRE BISASOR**
3000 Presidents Way #3413
Dedham, MA 02026
781-492-5675

_____/s/_____

**DEFENDANT NATALIE ANDERSON**
3000 Presidents Way #3413
Dedham, MA 02026
617-710-7093

Dated:  May 11, 2015

**CERTIFICATE OF SERVICE**

I, Andre Bisasor, hereby certify that on this 11th day of May, 2015, I served a copy of the foregoing to the Plaintiff and to Plaintiff's counsel.

Subscribed under penalties of perjury.

/s/

_____

Andre Bisasor
3000 Presidents Way #3413
Dedham, MA 02026
781-492-5675

**CERTIFICATE OF SERVICE**

I, Natalie Anderson, hereby certify that on this 11th day of May, 2015, I served a copy of the foregoing to the Plaintiff and to Plaintiff's counsel.

Subscribed under penalties of perjury.

/s/

_____

Natalie Anderson
3000 Presidents Way #3413
Dedham, MA 02026
781-492-5675

## 1554SU000026 Greystar Management Services, L.P. As officer of or agent for Owner RAR2 Jefferson at Dedham Station MA, Inc. v. Bisasor, Andre

| | | | |
|---|---|---|---|
| **Case Type** | Summary Process | **Case Status** | Disposed - Statistical Purposes |
| **Status Date:** | 05/27/2015 | **File Date** | 02/11/2015 |
| **Case Judge:** | | **DCM Track:** | |
| **Next Event:** | | | |

**Property Address**
3000 President's Way #3413
Dedham MA 02026

---

**All Information** | **Party** | **Judgment** | **Event** | **Docket** | **Disposition**

### Party Information

**Greystar Management Services, L.P.** - Plaintiff

| Alias | Attorney/Bar Code | Phone Number |
|---|---|---|
| | Ashton, Esq., Donna M. (634984) | |

More Party Information

**Bisasor, Andre** - Defendant

| Alias | Attorney/Bar Code | Phone Number |
|---|---|---|
| | | |

More Party Information

**Anderson, Natalie** - Defendant

| Alias | Attorney/Bar Code | Phone Number |
|---|---|---|
| | | |

More Party Information

### Judgments

| Date | Type | Method | For | Against |
|---|---|---|---|---|
| 05/27/2015 | Judgment for Plaintiff for Possession and Rent | , after default | Greystar Management Services, L.P. | Anderson, Natalie |
| 05/27/2015 | Judgment for Plaintiff on Counterclaim | , after defendant(s) failed to appear | Greystar Management Services, L.P. | Anderson, Natalie |

### Events

| Date | Session | Location | Type | Result |
|---|---|---|---|---|
| 02/19/2015 10:00 AM | Summary Process Session | | Bench Trial (CV) | Event Continued |
| 04/09/2015 10:00 AM | Summary Process Session | | Bench Trial (CV) | Event Continued |
| 05/04/2015 03:00 PM | Summary Process Session | | Motion Hearing (CV) | Held |
| 05/07/2015 10:00 AM | Summary Process Session | | Bench Trial (CV) | Event Continued |
| 05/13/2015 02:15 PM | Summary Process Session | | Ex Parte Hearing | Held |
| 05/14/2015 10:00 AM | Summary Process Session | | Bench Trial (CV) | Event Continued |
| 05/21/2015 02:00 PM | Summary Process Session | | Status Review | Event Continued |

| 05/26/2015 09:00 AM | Summary Process Session | Status Review | Event Continued |
| 05/28/2015 09:00 AM | Dedham Civil Jury Session | Jury Trial (CV) | Not Held But Event Resolved |
| 06/08/2015 09:00 AM | Summary Process Session | Status Review | Held |
| 07/02/2015 10:00 AM | Summary Process Session | Motion Hearing (CV) | Held |
| 08/07/2015 04:25 PM | Summary Process Session | Motion Hearing (CV) | Held |

## Docket Information

| Docket Date | Docket Text | Amount | File Ref Nbr. |
|---|---|---|---|
| 02/11/2015 | Complaint filed | | 2 |
| 02/13/2015 | Appearance filed<br>On this date Wed Feb 11 00:00:00 EST 2015 Ashton, Esq., Donna M. added for Greystar Management Services, L.P. | | 1 |
| 02/13/2015 | Civil Filing Fee Surcharge due. Receipt: 39226 Date: 02/13/2015 | $0.00 | |
| 02/13/2015 | Summary Process Filing Fee due. Receipt: 39226 Date: 02/13/2015 | $0.00 | |
| 02/13/2015 | Event Scheduled<br>Event: Bench Trial (CV)<br>Date: 02/19/2015  Time: 10:00 AM<br>Result: Event Continued | | |
| 02/19/2015 | Event Scheduled<br>Event: Bench Trial (CV)<br>Date: 04/09/2015  Time: 10:00 AM<br>Result: Event Continued | | |
| 02/19/2015 | Event Resulted<br>The following event: Bench Trial (CV) scheduled for 02/19/2015 10:00 AM has been resulted as follows:<br>Result: Event Continued<br>Reason: Both Parties Request<br>Appeared: | | |
| 04/07/2015 | Event Resulted<br>The following event: Bench Trial (CV) scheduled for 04/09/2015 10:00 AM has been resulted as follows:<br>Result: Event Continued<br>Appeared: | | |
| 04/07/2015 | Event Scheduled<br>Event: Bench Trial (CV)<br>Date: 05/07/2015  Time: 10:00 AM<br>Result: Event Continued<br>Result: Event Continued | | |
| 04/10/2015 | Event Resulted<br>The following event: Bench Trial (CV) scheduled for 05/07/2015 10:00 AM has been resulted as follows:<br>Result: Event Continued<br>Appeared: | | |
| 05/04/2015 | Motion for continuance (Mass.R.Civ.P.40[b]) filed by Andre Bisasor, Natalie Anderson. | | 3 |
| 05/04/2015 | Event Scheduled<br>Event: Motion Hearing (CV)<br>Date: 05/04/2015  Time: 03:00 PM | | |
| 05/04/2015 | Event Resulted<br>The following event: Bench Trial (CV) scheduled for 05/07/2015 10:00 AM has been resulted as follows:<br>Result: Event Continued<br>Appeared: | | |
| 05/04/2015 | Event Resulted<br>The following event: Motion Hearing (CV) scheduled for 05/04/2015 03:00 PM has been resulted as | | |

| | | |
|---|---|---|
| | follows:<br>Result: Held<br>Reason: Plaintiff's counsel not present<br>Appeared: | |
| 05/04/2015 | Motion to continue allowed Hon. Michael J Pomarole | |
| 05/04/2015 | No further continuances. * | |
| 05/07/2015 | Event Scheduled<br>Event: Bench Trial (CV)<br>Date: 05/14/2015  Time: 10:00 AM<br>05/04/2015- After hearing, Andre Bisasor and Natalie Anderson's Motion for Continuance<br>(Mass.R.Civ.P.40[b]) is ALLOWED. No further continuances.<br><br>(Honorable Michael J. Pomarole)<br>Result: Held | |
| 05/07/2015 | Event Scheduled<br>Event: Motion Hearing (CV)<br>Date: 05/04/2015  Time: 03:00 PM<br>Result: Held | |
| 05/11/2015 | Answer filed by Andre Bisasor, Natalie Anderson. | 4 |
| 05/11/2015 | Counterclaim filed by Andre Bisasor, Natalie Anderson against Greystar Management Services, L.P. As officer of or agent for Owner RAR2 Jefferson at Dedham Station MA, Inc. (Uniform Summary Process Rule 5)). | 5 |
| 05/11/2015 | Jury trial claim on all issues endorsed upon pleading by Andre Bisasor, Natalie Anderson (Uniform Summary Process Rule 8). | 6 |
| 05/11/2015 | Motion to transfer or consolidate filed by Andre Bisasor, Natalie Anderson. | 7 |
| 05/11/2015 | Motion to dismiss filed by Andre Bisasor, Natalie Anderson. | 8 |
| 05/11/2015 | Interrogatories directed to Greystar Management Services, L.P. As officer of or agent for Owner RAR2 Jefferson at Dedham Station MA, Inc. filed by Andre Bisasor, Natalie Anderson; trial automatically continued until 05/28/2015 (Uniform Summary Process Rule 7(b)). | 9 |
| 05/11/2015 | Request for production of document(s) directed to Greystar Management Services, L.P. As officer of or agent for Owner RAR2 Jefferson at Dedham Station MA, Inc. filed by Andre Bisasor, Natalie Anderson; trial automatically continued until 05/28/2015 (Uniform Summary Process Rule 7(b)). | 10 |
| 05/13/2015 | Emergency Motion for Clarification filed by Andre Bisasor and Natalie Anderson. | |
| 05/13/2015 | Event Resulted<br>The following event: Ex Parte Hearing scheduled for 05/13/2015 02:15 PM has been resulted as follows:<br>Result: Held<br>Reason: Plaintiff's counsel not present<br>NO ACTION TAKEN ON Emergency Motion for Clarification filed by Andre Bisasor and Natalie Anderson. | |
| 05/14/2015 | Motion for leave of Court to file requests for discovery filed by Greystar Management Services, L.P. As officer of or agent for Owner RAR2 Jefferson at Dedham Station MA, Inc.. | 11 |
| 05/14/2015 | Motion to amend summary process summons and complaint filed by Greystar Management Services, L.P. As officer of or agent for Owner RAR2 Jefferson at Dedham Station MA, Inc.. | 12 |
| 05/14/2015 | Motion to strike portions of Defendans answer and counterclaim [MASS R CIV P 8(e)] and dismiss [MASS R CIV P 12(b)(1) and 12(b)(6) filed by Greystar Management Services, L.P. As officer of or agent for Owner RAR2 Jefferson at Dedham Station MA, Inc.. | 13 |
| 05/14/2015 | Motion for protective order filed by Greystar Management Services, L.P. As officer of or agent for Owner RAR2 Jefferson at Dedham Station MA, Inc.. | 14 |
| 05/14/2015 | Motion for reconsideration filed by Andre Bisasor, Natalie Anderson. | 15 |
| 05/14/2015 | Motion to compel discovery and for a continuance filed by Andre Bisasor, Natalie Anderson. | 16 |
| 05/14/2015 | Motion to allow counsel to represent defendants filed by Andre Bisasor, Natalie Anderson. | 17 |
| 05/14/2015 | Motion to add parties filed by Andre Bisasor, Natalie Anderson. | 18 |
| 05/14/2015 | Motion for leave of Court to file requests for discovery allowed Hon. Thomas L Finigan | |
| 05/14/2015 | Event Resulted | |

| | The following event: Bench Trial (CV) scheduled for 05/14/2015 10:00 AM has been resulted as follows:<br>Result: Event Continued<br>Appeared: | |
|---|---|---|
| 05/14/2015 | Termination notice filed (Uniform Summary Process Rule 2). | 19 |
| 05/14/2015 | Motion to consolidate summary process filed by Andre Bisasor, Natalie Anderson. | 25 |
| 05/19/2015 | Event Scheduled<br>Event: Ex Parte Hearing<br>Date: 05/13/2015 Time: 02:15 PM<br>Result: Held | |
| 05/19/2015 | Event Scheduled<br>Event: Jury Trial (CV)<br>Date: 05/28/2015 Time: 09:00 AM<br>Result: Not Held But Event Resolved | |
| 05/20/2015 | Notice concerning next court event, to wit - 05/21/2015 02:00 PM Status Review-- sent to parties.<br>05/14/2015- After motion hearing, Greystar Management Services, L.P.'s Motion for Leave of Court to File Requests for Discovery is ALLOWED.<br><br>(Honorable Thomas Finigan) | |
| 05/21/2015 | Event Resulted<br>The following event: Status Review scheduled for 05/21/2015 02:00 PM has been resulted as follows:<br>Result: Event Continued<br>Appeared: | |
| 05/21/2015 | Motion for leave of Court to file a motion for protective order filed by Andre Bisasor, Natalie Anderson. | 23 |
| 05/21/2015 | Motion for leave of Court to review plaintiff's response to defendants discovery requests filed by Andre Bisasor, Natalie Anderson. | 24 |
| 05/26/2015 | Event Resulted<br>The following event: Status Review scheduled for 05/26/2015 09:00 AM has been resulted as follows:<br>Result: Held<br>Reason: Defendant Not Present<br>Appeared: | |
| 05/26/2015 | Affidavit and Request for Continuance Due to Illness faxed by Andre Bisasor and Natalie Anderson. | |
| 05/26/2015 | Request for Continuance Due to Illness denied. | |
| 05/26/2015 | Motion to amend account annex to reflect 13 months, $ 31,070.00 made in open court by Greystar Management Services, L.P. As officer of or agent for Owner RAR2 Jefferson at Dedham Station MA, Inc. and allowed. | |
| 05/26/2015 | Military affidavit filed as to whether Andre Bisasor, Natalie Anderson is in military service (Servicemembers Civil Relief Act, P.L. 108-189 §201, 50 U.S.C. App. §421). | 22 |
| 05/26/2015 | Default entered against Andre Bisasor, Natalie Anderson (Uniform Summary Process Rule 10(a)). | |
| 05/27/2015 | Judgment Entered:<br>Judgment for Plaintiff for Possession and Rent , after default<br>Ziemian, Hon. Robert P<br>Judgment For: Greystar Management Services, L.P.<br>Judgment Against: Bisasor, Andre / Anderson, Natalie<br>Terms of Judgment:<br>Interest Begins: 02/11/2015 Jdgmnt Date: 05/27/2015<br>Interest Rate: .12<br>Daily Interest Rate: .000329<br>Damages:<br>Damage Amt: 31070.00 Filing Fees: 195.00<br>Costs Pd to Court: 5.00<br>Other Costs: 80.00<br>Judgment Total: 32,423.31<br>Execution entered on 08/07/2015 | |
| 05/27/2015 | Judgment Entered:<br>Judgment for Plaintiff on Counterclaim , after defendant(s) failed to appear<br>Ziemian, Hon. Robert P<br>Judgment For: Greystar Management Services, L.P. As officer of or agent for Owner RAR2 Jefferson at Dedham Station MA, Inc.<br>Judgment Against: Bisasor, Andre / Anderson, Natalie | |

150

| | Terms of Judgment:<br>Jdgmnt Date: 05/27/2015 | |
|---|---|---|
| 05/27/2015 | Notice concerning next court event, to wit - 06/08/2015 09:00 AM Status Review-- sent to parties.<br>05/26/2015- After hearing, Andre Bisasor and Natalie Anderson's Request for Continuance Due to Illness is DENIED, defendant's failed to appear. Greystar Management Services, L.P.'s Motion to Amend Account Annex to Reflect 13 months, $ 31,070.00. Greystar Management Services, L.P. As officer of or agent for Owner RAR2 Jefferson at Dedham Station MA, Inc. is ALLOWED. Jury Trial scheduled for 05/28/2015 is CANCELLED.<br><br>(Honorable Robert P. Ziemian) | |
| 06/08/2015 | Motion  for attorney's fees filed by Greystar Management Services, L.P. As officer of or agent for Owner RAR2 Jefferson at Dedham Station MA, Inc.. | 26 |
| 06/08/2015 | Motion  for reconsideration of defendants' affidavit and request for continuance due to illness filed by Andre Bisasor, Natalie Anderson. | 27 |
| 06/08/2015 | Motion  to remove the default and vacate the default judgment; and or/motion for relief of judgment, pusuant to M.R.C.P. Rule 55,59, and/or 60 filed by Andre Bisasor, Natalie Anderson.<br>EMERGENCY | 28 |
| 06/08/2015 | Affidavit supporting facts for motion to remove default and vacate judgment; and/or motion for relief from judgment, pursuant M.R.C.P. Rule 55,59 and /or 60 [Related to apartment conditions and violations] filed by Andre Bisasor and Natalie Anderson. | |
| 06/08/2015 | Affidavit supporting facts for motion to remove default and vacate judgment; and/or motion for relief from judgment, pursuant M.R.C.P. rule 55,59 and/or 60 [Related to procedural case history and medical situation]  filed by Andre Bisasor and Natalie Anderson. | |
| 06/08/2015 | Notice of Appeal  filed by Andre Bisasor and Natalie Anderson. | |
| 06/08/2015 | Motion  to waive appeal bond and other costs- Apartment 3413 filed by Andre Bisasor, Natalie Anderson. | 29 |
| 06/08/2015 | Motion  to set the appeal bond hearing filed by Andre Bisasor, Natalie Anderson. | 30 |
| 06/08/2015 | Emergency Motion to stay issuance of execution pending the outcome of defendants motion to remove default and vacate judgment and/or motion for relief from judgment as well as pending outcome of defendants' appeal  filed by Andre Bisasor and Natalie Anderson. | |
| 06/08/2015 | Emergency Motion to defer decision on appeal bond until after defendants motion to remove dafault and vacate judgment and/or motion for relief from judgment is heard  filed by Andre Bisasor and Natalie Anderson. | |
| 06/08/2015 | Attachment 1: Summary of Non-Frivolous Defenses  filed by Andre Bisasor and Natalie Anderson.<br>Attachments Exhibit D- Dedham Board of health citation (Nov 2014)  filed by Andre Bisasor and Natalie Anderson.<br>Case Law and Authorities for motions to remove default judgment  filed by Andre Bisasor and Natalie Anderson. | |
| 06/08/2015 | Motion  package cover letter for unit 3413 filed by Andre Bisasor, Natalie Anderson. | 31 |
| 06/08/2015 | Hospital documents  filed by Andre Bisasor. | |
| 06/08/2015 | Motion  to waive appeal bond and other costs- apartment 3413 denied. | |
| 06/08/2015 | Motion  for recusal of Judge Robert Ziemian filed by Andre Bisasor, Natalie Anderson. | 32 |
| 06/08/2015 | Motion  for recusal of Judge Robert Ziemian denied. | |
| 06/08/2015 | For the entry of a civil appeal in the appellate division of the district court department | $0.00 |
| 06/08/2015 | Indigency affidavit and request for waiver, substitution or payment by the Commonwealth of fees/costs filed by Andre Bisasor, Natalie Anderson (G.L. c.261 §27B). | 33 |
| 06/08/2015 | Indigency request for waiver, substitution or payment by the Commonwealth of fees/costs entered on 06/08/2015 allowed (G.L. c.261 §27B). | |
| 06/08/2015 | Event Resulted<br>The following event: Status Review scheduled for 06/08/2015 09:00 AM has been resulted as follows:<br>Result: Held<br>Appeared: | |
| 06/08/2015 | Cassette or CD copy request received from Andre Bisasor (Dist Ct Special Rule 211(A)(5)(c)). | |
| 06/08/2015 | Tape Cassette Recordings of Proceedings plus postage per ninety minutes MGL 262 section 4b | $0.00 |

| | |
|---|---|
| 06/09/2015 | Order; 06/08/2015- After hearing, Andre Bisasor and Natalie Anderson's Motion to Waive Appeal Bond and Other Costs- Apartment 3413 is DENIED. Court finds that defendants have no reasonable chance of prevailing. 1) Defendants admit in open court they have NOT held "with held rent" in separate amounts. 2) failure to provide required discovery is an indication of their (failure) and have no reasonable chance of prevailing in this case. Appeal Bond is set at $32,000.00 for both cases 15-54-SU-026 and 15-54-SU-028. Andre Bisasor and Natalie Anderson's Motion for Recusal of Judge Robert Ziemian is DENIED.parties notified. |
| 06/15/2015 | Certificate of service for plaintiffs motion for attorneys fees filed. |
| 06/15/2015 | Request for review of orders relating to the appeal bond- Apartments 3413 filed by ANDRE BISASOR AND NATALIE ANDERSON |
| 06/15/2015 | Memoranda in support of request for review of orders relating to the appeal bond filed by ANDRE BISASOR AND NATALIE ANDERSON |
| 06/15/2015 | Attachment: Summary of Defenses for Possession filed by ANDRE BISASOR AND NATALIE ANDERSON |
| 06/15/2015 | Second request to markup motion hearing and affidavit /opposition to plaintiff counsel's letter (dated June 11,2015) to Judge Ziemian filed by ANDRE BISASOR AND NATALIE ANDERSON |
| 06/19/2015 | Notice of Appeal - Reconsideration filed by Andre Bisasor and Natalie Anderson |
| 06/19/2015 | Notice of Appeal - Recusal filed by Andre Bisasor and Natalie Anderson |
| 06/24/2015 | ORDER CONCERNING THE FILING OF PAPERS<br>As of today's date, no other fillings are allowed in the above refrenced cases without express permission of the court. |
| 06/24/2015 | Notice sent to parties.<br>A Notce to the Parties was generated and sent to:<br>Plaintiff: Donna M. Ashton, Esq.<br>Defendant: Andre Bisasor<br>Defendant: Natalie Anderson |
| 06/29/2015 | Event Scheduled<br>Event: Motion Hearing (CV)<br>Date: 07/02/2015 Time: 10:00 AM<br>ALL PARTIES NOTIFIED BY A CALL FROM THE DEDHAM DISTRICT COURT<br>Result: Held |
| 06/29/2015 | SUMMARY PROCESS APPEAL BOND REVIEW sent to APPELLATE DIVISION |
| 07/02/2015 | Event Resulted<br>The following event: Motion Hearing (CV) scheduled for 07/02/2015 10:00 AM has been resulted as follows:<br>Result: Held<br>Reason: Defendant Not Present<br>Appeared: |
| 07/02/2015 | Order; At the call of the list, Court declines to have hearing on pending motions as Defendants, Andre Bisasor and Natalie Anderson are not present and will rule on the papers. Plaintiff, Greystar Management Services, L.P. requests permission to file a Motion to Dismiss Defendants, Andre Bisasor and Natalie Anderson Appeal Notices filed on June 19, 2015 as Untimely. Request is Allowed. parties notified. |
| 07/02/2015 | Memorandum of Decision Concerning Entry of Default Judgment; parties notified |
| 07/06/2015 | Notice sent to parties.<br>A Notce to the Parties was generated and sent to:<br>Plaintiff: Donna M. Ashton, Esq.<br>Defendant: Andre Bisasor<br>Defendant: Natalie Anderson |
| 07/08/2015 | Notice of appeal to Appellate Division on record of proceedings filed by Andre Bisasor, Natalie Anderson (G.L. c.231 §108; Dist./Mun.Cts. R.A.D.A. 8C(b)).<br>HANDED TO COURTHOUSE EMPLOYEE OUTSIDE OF THE COURTHOUSE ON 07/08/2015 | 34 |
| 07/23/2015 | Designation for Transcription filed by Andre Bisasor and Natalie Anderson. |
| 07/23/2015 | Order of Designation for Transcription to Transcriber filed by Appellants |
| 07/29/2015 | 6 Transcript received from court reporter (Dist./Mun.Cts. R.A.D.A. 8C(d) or Mass. R.A.P. 8(b)(1)); parties notified.<br><br>May 4, 2015 | 35 |

|  | May 13, 2015<br>May 14, 2015<br>May 21, 2015<br>May 26, 2015<br>June 8, 2015 | |
|---|---|---|
| 07/29/2015 | Appellate Division decision received; trial judge notified (Dist./Mun.Cts. R.A.D.A. 28).<br><br>Decision and Order<br>(1) The defendants' motion to continue hearing is denied. (2) The defendants' motion for rehearing is denied. (3) The trial court's order of June 8, 2015, setting an appeal bond for cases in the amount of $32,000.00, is affirmed. (4) The defendants shall also post a bond in the trial court in the amount of $4,780.00, representing two months' rent. (5) The defendants are further ordered to make monthly use and occupancy payments to the plaintiff in the amount of $2,390.00, commencing August 1, 2015, and during pendency of the appeal. | 36 |
| 08/04/2015 | Notice sent to parties.<br>A Notce to the Parties was generated and sent to:<br>Plaintiff:  Donna M. Ashton, Esq.<br>Defendant:  Andre Bisasor<br>Defendant:  Natalie Anderson<br><br>07/29/2015- Receipt of 6 Transcripts in Trial Court - Rule 8C(f) | |
| 08/07/2015 | Execution Issued:<br>Execution on Possession of a Dwelling<br>Judgment Debtor: Bisasor, Andre / Anderson, Natalie<br>Judgment Creditor: Greystar Management Services, L.P. As officer of or agent for Owner RAR2 Jefferson at Dedham Station MA, Inc.<br>Terms of Execution:<br>EXON Issuance Date:  08/07/2015<br>Judgment Total: 32,423.31<br>Post Judgment Int. Rate:  .12          Post Judgment Int. Total:  768.04<br>Execution Subtotal:  33,191.35<br>Execution Total:  33,191.35 | |
| 08/07/2015 | Execution Issued:<br>Execution on Money Judgment<br>Judgment Debtor: Bisasor, Andre<br>Judgment Creditor: Greystar Management Services, L.P. As officer of or agent for Owner RAR2 Jefferson at Dedham Station MA, Inc.<br>Terms of Execution:<br>EXON Issuance Date:  08/07/2015<br>Judgment Total: 32,423.31<br>Post Judgment Int. Rate:  .12          Post Judgment Int. Total:  768.04<br>Execution Subtotal:  33,191.35<br>Execution Total:  33,191.35 | |
| 08/07/2015 | Execution Issued:<br>Execution on Money Judgment<br>Judgment Debtor: Anderson, Natalie<br>Judgment Creditor: Greystar Management Services, L.P. As officer of or agent for Owner RAR2 Jefferson at Dedham Station MA, Inc.<br>Terms of Execution:<br>EXON Issuance Date:  08/07/2015<br>Judgment Total: 32,423.31<br>Post Judgment Int. Rate:  .12          Post Judgment Int. Total:  768.04<br>Execution Subtotal:  33,191.35<br>Execution Total:  33,191.35 | |
| 08/07/2015 | Motion to stay execution (Mass.R.Civ.P. 62)  filed by Andre Bisasor, Natalie Anderson. | 37 |
| 08/07/2015 | Event Resulted<br>The following event: Motion Hearing (CV) scheduled for 08/07/2015 04:25 PM has been resulted as follows:<br>Result: Held<br>Reason: Plaintiff's counsel not present. Court did not contact the Plaintiff's Counsel in a timely matter prior to the Defendants Motion to Stay Execution as the Defendant arrived at 4:23 p.m for a hearing.<br>Appeared: ANDRE BISASOR ONLY<br><br>Applies To: Bisasor, Andre (Defendant) | |
| 08/07/2015 | Notice of Appeal (made to the Appeals Court of the dismissal of Defendants Appeal in the District Court | |

| | | |
|---|---|---|
| | and the Denial of the Waiver of the Appeal Bond in the Appellate Division of the District Court filed by ANDRE BISASOR and NATALIE ANDERSON (4:22) | |
| 08/10/2015 | Event Scheduled<br>Event: Motion Hearing (CV)<br>Date: 08/07/2015 Time: 04:25 PM<br>Result: Held | |
| 08/10/2015 | Opposition filed by Greystar Management Services, L.P. As officer of or agent for Owner RAR2 Jefferson at Dedham Station MA, Inc. to Motion to stay execution that was filed on 08/07/2015.<br>WITH COURT'S PERMISSION, PLAINTIFF'S COUNSEL TO FAX OPPOSITION. | 38 |
| 08/10/2015 | Order; 08/10/2015(08/07/2015)- After motion hearing, Andre Bisasor and Natalie Anderson's Emergency Motion to Stay the Levy of the Execution for possession and damages (Mass.R.Civ.P. 62) is DENIED, defendant, Andre Bisasor appearing only and Greystar Management Services, L.P. and Natalie Anderson not appearing.parties notified. | |
| 08/14/2015 | Appeals Court<br>No. 2015-J-0306<br><br>Notice of Docket Entry<br>ORDER: Levy on the Execution on the judgment for possession is hereby stayed pending further order of this Court or a single justice thereof. The Matter shall be heard on Friday, August 14, 2015 at 2P.M. in courtroom 4. (Katzman, J.)<br>*Notice/Attest/Ziemian, J. | |
| 08/19/2015 | APPEALS COURT Single Justice<br>No. 2015-J-0306<br>Dated 08/17/2015<br>ORDER: The defendants filed a motion seeking to stay levy on the execution on the judgment for possession of two apartments in a building managed by the plaintiff. This Court briefly stayed levy on the execution and scheduled a hearing on the defendants' motion. After review of the parties' submissions and a hearing, the defendants' motion for a stay pending their appeal is DENIED. To obtain a stay pending resolution of their appeal, the defendants would have to demonstrate, inter alia, a likelihood of success on the merits of their appeal. See Packaging Industries Group, Inc. v. Cheney, 380 Mass. 609 (1980). The defendants have failed to do so here. The defendants pending appeal is from the dismissal of their appeal occasioned by their failure to pay the required appeals bond. While such an appeal is properly brought before a panel of this Court, see Erickson v. Somers, 446 Mass. 1015 (2006), the defendants have not shown that their appeal, though procedurally correct, is likely to be successful. To succeed the defendants would have to demonstrate, at a minimum, that they have a nonfrivolous defense to the default. Following review of the defendants' submission and the District Court docket, the court cannot discern any indication that the District Court judge abused his discretion when he entered the default. Accordingly, the motion is denied. The stay currently in place shall expire at the end of the day on August 27, 2015. The plaintiff may levy on the execution on Friday, August 28, 2015 without the need for any further notice to the defendants. (Katzmann, J.). *Notice/Attest/Ziemian, J. Footnote 1. Natalie Anderson | |
| 08/19/2015 | Return of service on NOTICE TO PARTIES 08/04/2015 Natalie Anderson; First class mail returned UNDELIVERED:unabletoforw | 39 |
| 08/20/2015 | Tape Cassette Recordings of Proceedings plus postage per ninety minutes MGL 262 section 4b Receipt: 44792 Date: 08/20/2015 | $0.00 |
| 08/20/2015 | Cassette or CD copy request received from Andre Bisasor (Dist Ct Special Rule 211(A)(5)(c)). | |
| 08/21/2015 | Notice sent to parties.<br>A Notce to the Parties was generated and sent to:<br>Plaintiff:  Donna M. Ashton, Esq.<br>Defendant:  Andre Bisasor<br>Defendant:  Natalie Anderson<br><br>Notice of the Assembly of the Record on Appeal for Summary Process Case Single Justice Appeal Re. Appeal Bond G.l.c. 239, Sec. 5. | |
| 08/21/2015 | CD copy made; requester notified (Dist Ct Special Rule 211(A)(5)). | |
| 09/08/2015 | Appeals Court Clerk's Office<br>No. 2015-P-1193<br><br>Notice of Entry<br>In accordance with Massachusetts Rule of Appellate Procedure 10(a)(3), please note that the above-references case was entered in this Court on August 31, 2015.<br><br>Dated: September 2, 2015 | |

| 09/08/2015 | Supreme Judicial Court<br>No. SJ-2015-0347<br><br>In accordance with the Rules of Appellate Procedure, Nos.9(d) and (10(a) and (b), the enclosed copy of the Notice of Appeal and the Notice of Assembly of the Record on Appeal in the above-entitled case are hereby mailed to you. |
|---|---|
| 09/08/2015 | Supreme Judicial Court<br>No. SJ-2015-0347<br><br>Notice of Entry Docket<br>You are hereby notified that on August 27, 2015, the following was entered on the docket of the above referenced case:<br><br>JUDGMENT:...."it is ORDERED that the emergency petition pursuant to G.L.c. 211§ 3, shall be, and hereby is, DENIED." (Duffly, J.)<br><br>Judgment is filed. |
| 09/08/2015 | Supreme Judicial Court<br>No. SJ-2015-0347<br><br>Notice of Entry Docket<br>You are hereby notified that on August 27, 2015, the following was entered on the docket of the above referenced case:<br><br>MOTION To Stay execution Pending Appeal To The Full Bench of The SJC filed by Andre Bisasor and Natalie Anderson. (8/27/2015: "Per the within, Motion is DENIED WITHOUT HEARING" (Duffly, J.)). |
| 09/08/2015 | Supreme Judicial Court<br>No. SJ-2015-0347<br><br>NOTICE OF ASSEMBLY OF THE RECORD ON APPEAL<br><br>In accordance with the Rules of Appellate Procedure, Rule 9 (d), notice this day has been sent to the Clerk of the Supreme Judicial Court for the Commonwelath, along with two (2) certified copies of the docket entries. The record has been fully assembled in the office of the Clerk of the Supreme Judicial Court for Suffolk County.<br><br>COPY OF Notice of Appeal filed. |

## Case Disposition

| Disposition | Date |
|---|---|
| Pending | |

# Apartment Lease Contract

**NATIONAL APARTMENT ASSOCIATION**

Date of Lease Contract: **August 22, 2013**
(when this Lease Contract is filled out)

*This is a binding contract. Read carefully before signing.*

| Moving In -- General Information |
|---|

1. **PARTIES.** This Lease Contract is between *you*, the resident(s) *(list all people signing the Lease Contract):*
**Andre Bisasor, Natalie Anderson**

and *us*, the owner:
**RAR2 Jefferson at Dedham Station Ma. Inc**
**dba Jefferson at Dedham Station**

*(name of apartment community or title holder).* You've agreed to rent Apartment No. **3413** , at **3000 Presidents Way #3413** *(street address)* in **Dedham** *(city),* Massachusetts, **02026** *(zip code)* for use as a private residence only. The terms "you" and "your" refer to all residents listed above. The terms "we", "us", and "our" refer to the owner listed above (or any of the owner's successors in interest or assigns). Written notice to or from our managers constitutes notice to or from us. If anyone else has guaranteed performance of this Lease Contract, a separate Lease Contract Guaranty for each guarantor is attached.

2. **OCCUPANTS.** The apartment will be occupied only by you and *(list all other occupants who are under 18 and not required to sign the Lease):*

No one else may occupy the apartment. Persons not listed above must not stay in the apartment for more than **14** consecutive days without our prior written consent, and no more than twice that many days in any one month. *If the previous space isn't filled in, two days per month is the limit.*

3. **LEASE TERM.** The initial term of the Lease Contract begins on the **26th** day of **September** , **2013** *(year),* and ends at midnight the **14th** day of **September** , **2014** a.v.B *(year).* Unless the landlord serves a notice of non-renewal at least ~~thirty~~ **Sixty** ~~(30)~~ days prior to the expiration of the initial term, OR the tenant serves a notice to vacate at least sixty (60) days prior to the expiration of the initial term, this Lease Contract will automatically renew on *(check one):*

☐ a month-to-month basis ("Extended Term"), terminable upon thirty (30) days written notice as required by paragraph 34. The monthly rental rate for any Extended Term will be the market rate (at the time of the applicable extension) for a comparable apartment in the development plus a month-to-month premium of __25.00__ .

☐ successive terms of _____ months ("Extended Term"), unless the landlord serves a notice of non-renewal at least thirty (30) days prior to the expiration of any successive term, OR the tenant serves a notice to vacate at least sixty (60) days prior to the expiration of any successive term. The monthly rental rate for the Extended Term will be the market rate (at the time of the applicable extension) for a comparable apartment in the development plus a month-to-month premium of _____.

4. **SECURITY DEPOSIT.** Unless modified by addenda, the total security deposit at the time of execution of this Lease Contract for all residents in the apartment is $ __0.00__ , due on or before the date this Lease Contract is signed. If we request the last month's rent from you along with the security deposit, we will comply with the requirements of G.L. c. 186 § 15B (2). See paragraphs 58 and 39 for security deposit return information.

5. **KEYS AND FURNITURE.** You will be provided **2** apartment key(s), **2** mailbox key(s), and **2** other access devices for __FOB__ . Your apartment will be *[check one]:* ☐ furnished or ☒ unfurnished.

6. **RENT AND CHARGES.** Unless modified by addenda, you will pay $ **2390.00** per month for rent, payable in advance and without demand:

☒ at the on-site manager's office, or
☒ at our online payment site, or
☒ at __Rent Drop Box__

Prorated rent of $ __398.33__ is due for the remainder of the first month, on _____ *(year).* Otherwise, you *must pay your rent on or before the 1st day of each month (due date)* with no grace period. Cash is unacceptable without our prior written permission. You must not withhold or offset rent unless authorized by statute. We may, at our option, require at any time that you pay all rent and other sums in cash, certified or cashier's check, money order, or one monthly check rather

than multiple checks. If you don't pay all rent on or before 30 days after the first of the month, you'll pay an initial late charge of $ __75.00__ plus a late charge of $ __0.00__ per day after date until paid in full. Daily late charges will not exceed 15 days for any single month's rent. You'll also pay a charge of $ __75.00__ for each returned check or rejected electronic payment, plus initial and daily late charges from due date until we receive acceptable payment. If you don't pay rent on time, you'll be delinquent and all remedies under this Lease Contract will be authorized. We'll also have all other remedies for such violation. Notwithstanding any memo or reference on payments remitted by you, we may, but are not required to, apply payments by you to the most outstanding amount(s) due on your resident ledger.

7. **UTILITIES.** We'll pay for the following items, if checked:

☒ gas ☐ electricity ☐ master antenna
☒ trash ☐ cable TV ☐ other _____
☒ heat ☐ water

You'll pay for all other utilities, related deposits, and any charges, fees, or services on such utilities. However, we will pay for all utilities we are required to pay for under Massachusetts law, unless this Lease Contract provides otherwise. You must not allow utilities to be disconnected for any reason--including disconnection for not paying your bills--until the lease term or renewal period ends. Cable channels that are provided may be changed during the Lease Contract term if the change applies to all residents. Utilities may only be used for normal household purposes and must not be wasted. If your electricity is ever interrupted, you must use only battery-powered lighting. If water/sewer utilities are sub-metered for the apartment, we will attach an addendum to this Lease Contract in compliance with state agency rules or city ordinance.

8. **INSURANCE.** We do not maintain insurance to cover your personal property or personal injury. We are not responsible to any resident, guest, or occupant for damage or loss of personal property from (including but not limited to) fire, smoke, rain, flood, water and pipe leaks, hail, ice, snow, lightning, wind, explosions, earthquake, interruption of utilities, theft, hurricane, negligence of other residents, occupants, or invited/uninvited guests or vandalism unless due to owner's omission, fault, negligence, or misconduct.

We urge you to get your own insurance for losses to your personal property or injuries due to theft, fire, water damage, pipe leaks and the like.

Additionally, you are *[check one]* ☒ required to purchase personal liability insurance ☐ not required to purchase personal liability insurance. If no box is checked, personal liability insurance is not required. If required, failure to maintain personal liability insurance is an incurable breach of this Lease Contract and may result in the termination of tenancy and eviction and/or any other remedies as provided by this Lease Contract or state law. If you are required to purchase personal liability insurance you must provide evidence of coverage at lease inception, and must confirm an active policy upon request by owner at any time during the term of the Lease. SUBJECT TO APPLICABLE LAW, THE LANDLORD WILL PROVIDE INSURANCE FOR UP TO $750 IN BENEFITS TO COVER THE ACTUAL COSTS OF RELOCATION OF THE TENANT IF DISPLACED BY FIRE OR DAMAGE RESULTING FROM FIRE.

9. **SECURITY DEVICES. What We Must Provide.** Massachusetts law requires that we must provide at no cost to you when occupancy begins: (1) an operating locking device on your door; and, (2) an operating locking device on every openable exterior window. Keyed locks will be re-keyed after the prior resident moves out. The rekeying will be done either before you move in or within 7 days after you move in. You may not duplicate any keys provided to you, and shall not provide or transfer your keys to anyone without management's prior written consent.

You may at any time ask us to: (1) install one keyed deadbolt lock on an exterior door if it does not have one; (2) install a bar on a sliding glass door if it does not have one; and (3) change or rekey locks or latches. We will comply with those requests, but you may be required to pay for them.

**What You Are Now Requesting.** You now request the following to be installed at your expense (if not already installed).

☐ keyed deadbolt lock ☐ doorviewer
☐ keyless deadbolt ☐ sliding door pinlock
☐ sliding door bar

**Payment.** We will pay for missing devices that are required by statute. You will pay for: (1) re-keying that you request (except when we failed to rekey after the previous resident moved out); and (2) repairs or replacements due to misuse or damage by you or your family, occupants, or guests. You must pay immediately after the work is done.

10. **SPECIAL PROVISIONS.** The following special provisions and any addenda or written rules furnished to you at or before signing become a part of this Lease Contract and will supersede any conflicting provisions of this printed Lease Contract form.

**See special provisions on the last page**

_____
_____
_____
_____

See any additional special provisions.

11. **EARLY MOVE-OUT; RELETTING CHARGE.** You'll be liable to us for a reletting charge of $ **2320.00** (not to exceed 100% of the highest monthly rent during the Lease Contract term subject to our duty to mitigate pursuant to paragraph 30 of this Lease) if you:

(1) fail to give written move-out notice as required in paragraphs 21 or 34; or

(2) move out without paying rent in full for the entire Lease Contract term or renewal period; or

(3) move out at our demand because of your default; or

(4) are judicially evicted.

_The reletting charge is not a cancellation fee and does not release you from your obligations under this Lease Contract. The reletting charge cannot be withheld from your security deposit._

**Not a Release.** The re-letting charge is not a Lease Contract cancellation fee or buyout fee. It is a liquidated amount covering only part of our damages; that is, our time, effort, and expense in finding and processing a replacement. These damages are uncertain and difficult to ascertain-particularly those relating to inconvenience, paperwork, advertising, showing apartments, utilities for showing, checking prospects, office overhead, marketing costs, and locator-service fees. You agree that the re-letting charge is a reasonable estimate of such damages and that the charge is due whether or not our re-letting attempts succeed. If no amount is stipulated, you must pay our actual re-letting costs so far as they can be determined. The re-letting charge does not release you from continued liability for: future or past-due rent; charges for damages in excess of normal wear and tear, or unreturned keys; or other sums due.

12. **DAMAGES AND REIMBURSEMENT.** You must promptly reimburse for loss for, damage, government fines, or cost of repairs or service in the apartment community due to a violation of the Lease Contract or rules, improper use, negligence, or intentional conduct by you or your invitees, guests or occupants **unless it is caused by our omission, fault, negligence or misconduct. Unless caused by our fault, omission, misconduct or negligence, we're not liable for-and you must pay for-repairs, replacement costs, and damage to the following if**

occurring during the Lease Contract term or renewal period: **(1)** damage to doors, windows, or screens caused by you, your guests and/or invitees; **(2)** damage from windows or doors left open; and **(3)** damage from wastewater stoppages caused by improper objects in lines exclusively serving your apartment. We may require payment at any time. including advance payment of repairs for which you're liable. Delay in demanding sums you owe is not a waiver.

13. **RENT INCREASES AND LEASE CONTRACT CHANGES.** No rent increases or Lease Contract changes are allowed before the initial Lease Contract term ends, except for changes allowed by any special provisions in paragraph 10, by a written addendum or amendment signed by you and us, or by reasonable changes of apartment rules allowed under paragraph 16.

14. **DELAY OF OCCUPANCY.** If occupancy is or will be delayed for construction, repairs, cleaning, or a previous resident's holding over, we're not responsible for the delay unless it is due to our omission, fault negligence, misconduct or any other reason outside of our reasonable control. The Lease Contract will remain in force subject to: (1) abatement of rent on a daily basis during delay; and (2) your right to terminate as set forth below. Termination notice must be in writing. After termination, you are entitled only to refund of deposit(s) and any rent paid. Rent abatement or Lease Contract termination does not apply if delay is for cleaning or repairs that don't prevent you from occupying the apartment.

If there is a delay and we haven't given notice of delay as set forth immediately below, you may terminate up to the date when the apartment is ready for occupancy, but not later.

(1) If we give written notice to any of you before the initial term as set forth in Paragraph 3--and the notice states that occupancy has been delayed because of construction or a previous resident's holding over, and that the apartment will be ready on a specific date--you may terminate the Lease Contract within 3 days of your receiving the notice, but not later.

(2) If we give written notice to any of you before the initial term as set forth in Paragraph 3 and the notice states that construction delay is expected and that the apartment will be ready for you to occupy on a specific date, you may terminate the Lease Contract within 7 days after any of you receives written notice, but not later. The readiness date is considered the new initial term as set forth in Paragraph 3 for all purposes. This new date may not be moved to an earlier date unless we and you agree in writing.

15. **DISCLOSURE RIGHTS.** If someone requests information on you or your rental history for law-enforcement, governmental, or business purposes, we may provide it.

---

### While You're Living in the Apartment

16. **COMMUNITY POLICIES OR RULES.** You and all guests and occupants must comply with any written apartment rules and community policies, including instructions for care of our property. Our rules are considered part of this Lease Contract. We may make reasonable changes to written rules, effective immediately, if they are distributed and applicable to all units in the apartment community and do not change dollar amounts on page 1 of this Lease Contract.

17. **LIMITATIONS ON CONDUCT.** The apartment and other areas reserved for your private use must be kept clean. Trash must be disposed of at least weekly in appropriate receptacles in accordance with local ordinances. Passageways may be used only for entry or exit. Any swimming pools, saunas, spas, tanning beds, exercise rooms, storerooms, laundry rooms, and similar areas must be used with care in accordance with apartment rules and posted signs. Glass containers are prohibited in or near pools and all common areas. You, your occupants, or guests may not anywhere in the apartment community: use candles or use kerosene lamps without our prior written approval; cook on balconies or outside; or solicit business or contributions. Conducting any kind of business (including child care services) in your apartment or in the apartment community is prohibited-except that any lawful business conducted "at home" by computer, mail, or telephone is permissible if customers, clients, patients, or other business associates do not come to your apartment for business purposes and we assent in writing to the proposed business operation. We may regulate: (1) the use of patios, balconies, and porches; (2) the conduct of furniture movers and delivery persons; and (3) recreational activities in common areas.

We may exclude from the apartment community guests or others who, in our judgment, have been violating the law, violating this Lease Contract or any apartment rules, or disturbing other residents, neighbors, visitors, or owner representatives. We may also exclude from any outside area or common area a person who refuses to show photo identification or refuses to identify himself or herself as a resident, occupant, or guest of a specific resident in the community.

You agree to notify us if you or any occupants are convicted of any felony, or misdemeanor involving a controlled substance, violence to another person or destruction of property. You also agree to notify us if you or any occupant registers as a sex offender in any state. Informing us of criminal convictions or sex offender registry does not waive our right to evict you.

18. **PROHIBITED CONDUCT.** You and your occupants or guests may not engage in the following activities: behaving in a loud or obnoxious manner; disturbing or threatening the rights, comfort, health, safety, or convenience of others (including our agents and employees) in or near the apartment community; disrupting our business operations; manufacturing, delivering, possessing with intent to deliver, or otherwise possessing a controlled substance or drug paraphernalia; engaging in or threatening violence; possessing a weapon prohibited by state law; discharging a firearm in the apartment community; displaying or possessing a gun, knife, or other weapon in the common area in a way that may alarm others; storing anything in closets having gas appliances; tampering with utilities or telecommunications; bringing hazardous materials into the apartment community; or injuring our reputation by making bad faith allegations against us to others or violating any Federal, state, or local law, or ordinance.

19. **PARKING.** We may regulate the time, manner, and place of parking all cars, trucks, motorcycles, bicycles, boats, trailers, and recreational vehicles. Motorcycles or motorized bikes may not be parked inside an apartment unit or on sidewalks, under stairwells, or in handicapped parking areas. We may have unauthorized or illegally parked vehicles towed as allowed by state statute. A vehicle is unauthorized or illegally parked in the apartment community if it:

(1) has a flat tire or other condition rendering it inoperable; or
(2) is on jacks, blocks or has wheel(s) missing; or
(3) has no current license or no current inspection sticker; or
(4) takes up more than one parking space; or
(5) belongs to a resident or occupant who has surrendered or abandoned the apartment; or
(6) is parked in a marked handicap space without the legally required handicap insignia; or
(7) is parked in a space marked for manager, staff, or guest at the office; or
(8) blocks another vehicle from exiting; or
(9) is parked in a fire lane or designated "no parking" area; or
(10) is parked in a space marked for other resident(s) or unit(s); or
(11) is parked on the grass, sidewalk, or patio; or
(12) blocks garbage trucks from access to a dumpster; or
(13) is not moved from any area in the development, authorized or unauthorized, following written notice by management that said vehicle must be moved for snow removal and/or other requisite purpose in our sole discretion.

Andre Bisasor, Natalie Anderson (N)(A) a.b.

© 2013, National Apartment Association, Inc. - 5/2013, Massachusetts

08222013124204MA06012450

Page 2 of 6

157

**20. RELEASE OF RESIDENT.** Unless allowed by ...s Lease Contract or Massachusetts law, you won't be released from this Lease Contract for any reason-including but not limited to voluntary or involuntary school withdrawal or transfer, voluntary or involuntary job transfer, marriage, separation, divorce, reconciliation, loss of co-residents, loss of employment, bad health, or death.

**21. MILITARY PERSONNEL CLAUSE.** You may terminate the Lease Contract if you enlist or are drafted or commissioned and on active duty in the U.S. Armed Forces. You also may terminate the Lease Contract if:

(1) you are (i) a member of the U.S. Armed Forces or reserves on active duty or (ii) a member of the National Guard called to active duty for more than 30 days in response to a national emergency declared by the President; and

(2) you (i) receive orders for permanent change-of-station, (ii) receive orders to deploy with a military unit or as an individual in support of a military operation for 90 days or more, or (iii) are relieved or released from active duty.

After you deliver to us your written termination notice, the Lease Contract will be terminated under this military clause 30 days after the date on which your next rental payment is due. You must furnish us a copy of your military orders, such as permanent change-of-station orders, call-up orders, or deployment orders or written notification from your commanding officer. Military permission for base housing does not constitute change-of-station order. After you move out, we'll return your security deposit, less lawful deductions. For the purposes of this Lease Contract, orders described in (2) above will only release the resident who qualifies under (1) and (2) above and receives the orders during the Lease Contract term and such resident's spouse or legal dependents living in the resident's household. A co-resident who is not your spouse or dependent cannot terminate under this military clause. Unless you state otherwise in paragraph 10, you represent when signing this Lease Contract that: (1) you do not already have deployment or change-of-station orders; (2) you will not be retiring from the military during the Lease Contract term, and (3) the term of your enlistment or obligation will not end before the Lease Contract term ends. Even if you are entitled to terminate this Lease Contract under this paragraph, liquidated damages for making a false representation of the above will be the amount of unpaid rent for the remainder of the lease term when and if you move out, less rents from others received in mitigation under paragraph 30. You must immediately notify us if you are called to active duty or receive deployment or permanent change-of-station orders.

**22. RESIDENT SAFETY AND PROPERTY LOSS.** You and all occupants and guests must exercise due care for your own and others' safety and security, especially in the use of smoke detectors and carbon monoxide detectors, keyed deadbolt locks, keyless bolting devices, window latches, and other safety or security devices. You agree to make every effort to follow the Security Guidelines in this Lease Contract.

**Smoke Detectors and Carbon Monoxide Detectors.** We'll furnish smoke detectors and carbon monoxide detectors as required by statute, and we'll test them and provide working batteries when you first take possession. After that, you must pay for and replace batteries as needed, unless the law provides otherwise. We may replace dead or missing batteries at your expense, without prior notice to you. You must immediately report smoke detector and/or carbon monoxide detector malfunctions to us. Neither you nor others may disable smoke detectors and/or carbon monoxide detectors. If you damage or disable the smoke detector and/or carbon monoxide detector or remove a battery without replacing it with a working battery, you may be liable to us for actual damages and attorney's fees. If you disable or damage the smoke detector and/or carbon monoxide detector, or fail to replace a dead battery or report malfunctions to us, you will be liable to us and others for any loss, damage, or fines from fire, smoke, or water.

**Casualty Loss.** We're not liable to any resident, guest, or occupant for damage or loss of personal property from any cause, including but not limited to: fire, smoke, rain, flood, water and pipe leaks, hail, ice, snow, lightning, wind, explosions, interruption of utilities, theft, or vandalism unless due to our omission, fault, negligence or misconduct. Unless we instruct otherwise, you must--for 24 hours a day during freezing weather--(1) keep the apartment heated to at least 50 degrees; (2) keep cabinet and closet doors open; and (3) drip hot and cold water faucets. You'll be liable for damage to our and others' property if damage is caused by broken water pipes due to your violating these requirements. If you ask our representatives to perform services not contemplated in this Lease Contract, you will indemnify us and hold us harmless from all liability for these services.

**Crime or Emergency.** Dial 911 or immediately call local medical emergency, fire, or police personnel in case of accident, fire, smoke, suspected criminal activity, or other emergency involving imminent harm. You should then contact our representative. You won't treat any of our security measures as an express or implied warranty of security, or as a guarantee against crime or of reduced risk of crime. Unless otherwise provided by law, we're not liable to you or any guests or occupants for injury, damage, or loss to person or property caused by criminal conduct of other persons, including theft, burglary, assault, vandalism, or other crimes. We're not obliged to furnish security personnel, security lighting, security gates or fences, or other forms of security unless required by applicable law. We're not responsible for obtaining criminal-history checks on any residents, occupants, guests, or contractors in the apartment community. If you or any occupant or

You also must furnish us with the law-enforcement agency's incident report number upon request.

**23. CONDITION OF THE PREMISES AND ALTERATIONS.** You accept the apartment, fixtures, and furniture as is, except for conditions materially affecting the health or safety of ordinary persons. You will be given an Apartment Condition Statement on or before move-in. Within 15 days after move-in, you must sign and note on the form all defects or damage and return it to our representative. Otherwise, everything will be considered to be in a clean, safe, and good working condition.

You must use customary diligence in maintaining the apartment and not damaging or littering the common areas. Unless authorized by statute or by us in writing, you must not perform any repairs, painting, wallpapering, carpeting, electrical changes, or otherwise alter our property. No holes or stickers are allowed inside or outside the apartment. But we'll permit a reasonable number of small nail holes for hanging pictures on sheetrock walls and in grooves of wood-paneled walls, unless our rules state otherwise. No water furniture, washing machines, additional phone or TV-cable outlets, alarm systems, or lock changes, additions, or rekeying is permitted unless statutorily allowed or we've consented in writing. You may install a satellite dish or antenna provided you sign our satellite dish or antenna lease addendum which complies with reasonable restrictions allowed by federal law. You agree not to alter, damage, or remove our property, including alarm systems, smoke alarm systems, smoke detectors and carbon monoxide detectors, furniture, telephone and cable TV wiring, screens, locks, and security devices. When you move in, we'll supply light bulbs for fixtures we furnish, including exterior fixtures operated from inside the apartment; after that, you'll replace them at your expense with bulbs of the same type and wattage. Your improvements to the apartment (whether or not we consent) become ours unless we agree otherwise in writing.

**24. REQUESTS, REPAIRS, AND MALFUNCTIONS.** IF YOU OR ANY OCCUPANT NEEDS TO SEND A NOTICE OR REQUEST--FOR EXAMPLE, FOR REPAIRS, INSTALLATIONS, SERVICES, OR SECURITY-RELATED MATTERS--IT MUST BE SIGNED AND IN WRITING TO OUR DESIGNATED REPRESENTATIVE (except in case of fire, smoke, gas, explosion, overflowing sewage, uncontrollable running water, electrical shorts, or crime in progress). Our written notes on your oral request do not constitute a written request from you.

Our complying with or responding to any oral request regarding security or non-security matters doesn't waive the strict requirement for written notices under this Lease Contract. You must promptly notify us in writing of: water leaks; mold; electrical problems; malfunctioning lights; broken or missing locks or latches; the presence of bugs, insects, vermin, or other pests; and other conditions that pose a hazard to property, health, or safety. We may change or install utility lines or equipment serving the apartment if the work is done reasonably without substantially increasing your utility costs. We may turn off equipment and interrupt utilities as needed to avoid property damage or to perform work. If utilities malfunction or are damaged by fire, water, or similar cause, you must notify our representative immediately. Air conditioning problems are normally not emergencies. If air conditioning or other equipment malfunctions, you must notify our representative as soon as possible on a business day. We'll act with customary diligence to make repairs and reconnections. Rent will not abate in whole or in part, except as allowed by state law.

If fire or catastrophic damage totally destroys the apartment, or repair is beyond reason we may terminate this Lease Contract within a reasonable time by giving you written notice. If the Lease Contract is so terminated, we'll refund prorated rent and all deposits, less lawful deductions.

**25. ANIMALS.** No animals (including mammals, reptiles, birds, fish, rodents, and insects) are allowed, even temporarily, anywhere in the apartment or apartment community unless we've so authorized in writing. If we allow an animal, you must sign a separate animal addendum, which may require additional rents, fees or other charges. You must remove an illegal animal within 24 hours of notice from us, or you will be considered in default of this Lease Contract. We will authorize a support animal for a disabled (handicapped) person. We may require a written statement from a qualified professional verifying the need for the support animal. You must not feed stray or wild animals.

If you or any guest or occupant violates animal restrictions (with or without your knowledge), you'll be subject to charges, damages, eviction, and other remedies provided in this Lease Contract. If an animal has been in the apartment at any time during your term of occupancy (with or without our consent), we'll charge you for defleaing, deodorizing, and shampooing. Initial and daily animal-violation charges and animal-removal charges are liquidated damages for our time, inconvenience, and overhead (except for attorney's fees and litigation costs) in enforcing animal restrictions and rules. We may remove an unauthorized animal by following the procedures of paragraph 30.

**26. WHEN WE MAY ENTER.** If you or any guest or occupant is present, then repairers, servicers, contractors, our representatives, or other persons listed in (2) below may peacefully enter the apartment at reasonable times and not with less than 24 hours notice for the purposes listed in (2) below. If nobody is in the apartment, then such persons may enter peacefully and at reasonable times and not with less than 24 hours notice by duplicate or master key (or by breaking a window or other means when necessary) if:

Andre Bisasor, Natalie Anderson *(initials)* a.b.

© 2013, National Apartment Association, Inc. - 5/2013, Massachusetts

0822201312425MA06012450

Page 3 of 6

(1) written notice of the entry is left in a conspicuous place in the apartment immediately after the entry; *and*

(2) entry is for: inspecting the apartment, making repairs or showing apartment to prospective residents (after move-out or vacate notice has been given), purchasers or mortgage lenders (or their agents), or verifying compliance with this Lease Contract.

**27. MULTIPLE RESIDENTS OR OCCUPANTS.** Each resident is jointly and severally liable for all Lease Contract obligations. If you or any guest or occupant violates the Lease Contract or rules, all residents are considered to have violated the Lease Contract. Our requests and notices (including sale notices) to any resident of your apartment constitute notice to all residents and occupants. Notices and requests from any resident or occupant (including notices of Lease Contract termination, repair requests, and entry permissions) constitute notice from all residents. In eviction suits, each resident hereby appoints all other residents of your apartment as an agent authorized to receive notices and service of process. Security deposit refunds may be by one check jointly payable to all residents; the check and any deduction itemizations may be mailed to one resident only.

SUBLETTING. Replacing a resident, subletting, or assignment is allowed only when we consent in writing. If departing or remaining residents find a replacement resident acceptable to us before moving out and we consent in writing to the replacement, subletting, or assignment, then:

(1) a reletting charge *will not* be due;

(2) an administrative (paperwork) and/or transfer fee *will* be due, and a rekeying fee *will* be due if rekeying is requested or required; and

(3) you *will* remain liable for all Lease Contract obligations for the rest of the original Lease Contract term.

**Procedures for Replacement.** If we approve a replacement resident, then, at our option: (1) the replacement resident must sign this Lease Contract with or without an increase in the total security deposit; or (2) the remaining and replacement residents must sign an entirely new Lease Contract. The departing resident will no longer have a right to occupancy, but will remain liable for the remainder of the original Lease Contract term unless we agree otherwise in writing-even if a new Lease Contract is signed.

## Responsibilities of Owner and Resident

**29. RESPONSIBILITIES OF OWNER.** Subject to Chapter 410.000 of the Sanitary Code, we'll act with customary diligence to:

(1) keep common areas reasonably clean, subject to paragraph 23;

(2) maintain building fixtures, furniture, hot water, heating and A/C equipment;

(3) comply with applicable federal, state, and local laws regarding safety, sanitation, and fair housing; and

(4) make all legally required repairs, subject to your obligation to pay for damages for which you are liable.

**30. DEFAULT BY RESIDENT.** You'll be in default if you or any guest or occupant violates any terms of this Lease Contract including but not limited to the following violations: (1) you don't pay rent or other amounts that you owe when due; (2) you or any guest or occupant violates the apartment rules, or fire, safety, health, or criminal laws, regardless of whether or where arrest or conviction occurs; (3) you abandon the apartment; (4) you give incorrect or false answers in a rental application; (5) you or any occupant is arrested, convicted, or given deferred adjudication for a felony offense involving actual or potential physical harm to a person, or involving possession, manufacture, or delivery of a controlled substance, marijuana, or drug paraphernalia as defined by Massachusetts law; (6) any illegal drugs or paraphernalia are found in your apartment; (7) you or any guest or occupant engages in any of the prohibited conduct described in Paragraph 18; or (8) you or any occupant, in bad faith, makes an invalid complaint to an official or employee of a utility company or the government.

**Eviction.** *If you default, we may end your right of occupancy by giving you a 14 day written notice to vacate in the event that the default is due to your non-payment of rent, or a 7 day written notice to vacate in the event that the default is due to any other provision of this Lease.* Notice may be by: (1) regular mail; (2) personal delivery to any resident; (3) personal delivery at the apartment to any occupant over 16 years old; (4) sliding the notice under the main entry door and into the apartment; or (5) by any other service available under Massachusetts law. Termination of your possession rights or subsequent reletting doesn't release you from liability for future rent or other Lease Contract obligations. After giving notice to vacate or filing an eviction suit, we may still accept use and

occupancy fees or other sums due; the filing or acceptance doesn't waive or diminish our right of eviction, or any other contractual or statutory right. If your one (1) year lease has expired, we reserve the right to evict you even if we continue to accept sums for use and occupancy only.

**Holdover.** You or any occupant, invitee, or guest must not hold over beyond the date contained in your move-out notice or our notice to vacate (or beyond a different move-out date agreed to by the parties in writing). If a holdover occurs, then (1) the use and occupancy monthly rate during the holdover period will be increased by 25% over the then-existing market rent, without notice; (2) you will be liable to us for all use and occupancy fees for the full term of the previously signed Lease Contract of a new resident who cannot occupy because of the holdover–subject to the landlord's duty to re-let or mitigate; and (3) at our option we may extend the Lease Contract term for up to one month by delivering written notice to you or your apartment while you continue to hold over.

**Other Remedies.** We may report unpaid amounts to credit agencies. If you default and move out early, you will pay us any amounts stated to be rental discounts in paragraph 10, concessions provided in any concession addendum attached to this lease, in addition to any other sums due. Upon your default, we have all legal remedies, including, but not limited to, Lease Contract termination, pursuit of an eviction, and reimbursement for any and all attorney's fees and/or litigation costs/expenses. Late charges are liquidated damages for our time, inconvenience, and overhead in collecting late rent (but are not for attorney's fees and litigation costs). Any and all amounts which remain unpaid for thirty (30) days from the date due shall bear interest at 18% per year, unless it exceeds the maximum rate permitted by law, in which event interest shall accrue at the highest amount permitted by law. You shall be responsible for any and all attorney's fees, expenses, or other costs incurred by the Landlord to enforce any provision of this Lease whether related to your conduct, or the conduct of your household member(s), guest(s) and/or invitee(s).

**Mitigation of Damages.** If you move out early, you'll be subject to paragraph 11 and all other remedies. We'll exercise customary diligence to relet and minimize damages. We'll credit all subsequent rent that we actually receive from subsequent residents against your liability for any sums due including all reletting costs.

## General Clauses

**31. MISCELLANEOUS.** *Neither we nor any of our representatives have made any oral promises, representations, or agreements. This Lease Contract is the entire agreement between you and us. Our representatives (including management personnel, employees, and agents) have no authority to waive, amend, or terminate this Lease Contract or any part of it, unless in writing, and no authority to make promises, representations, or agreements that impose security duties or other obligations on us or our representatives unless in writing.* No action or omission of our representative will be considered a waiver of any subsequent violation, default, or time or place of performance. Our not enforcing or belatedly enforcing written-notice requirements, rental due dates, acceleration, liens, or other rights isn't a waiver under any circumstances. Written notice to or from our managers constitutes notice to or from us. Any person giving a notice under this Lease Contract should retain a copy of the memo, letter, or fax that was given. Fax signatures are binding. All notices must be signed.

Exercising one remedy won't constitute an election or waiver of other remedies. All remedies are cumulative. No employee, agent, or management company is personally liable for any of our contractual, statutory, or other obligations merely by virtue of acting on our behalf. This Lease Contract binds subsequent owners. Neither an invalid clause nor the omission of initials on any page invalidates this Lease Contract. All notices and documents may be in English and, at our option, in any language that you read or speak. All provisions regarding our non-liability and non-duty apply to our employees, agents, and management companies. This Lease Contract is subordinate or superior to existing and future recorded mortgages, at lender's option. All Lease Contract obligations must be performed in the county where the

apartment is located. In the event that you commence any litigation against us, and you fail to obtain judgment in your favor, you agree to reimburse us for any and all attorney fees and costs that we incur in relation to the defense of such action.

Cable channels that are provided may be changed during the Lease Contract term if the change applies to all residents. Utilities may be used only for normal household purposes and must not be wasted. If your electricity is ever interrupted, you must use only battery-operated lighting.

All discretionary rights reserved for us within this Lease Contract or any accompanying addenda are at our sole and absolute discretion.

**Obligation to Remove Personal Property Upon Vacating.** Resident shall remove any and all personal property from the apartment upon vacating and/or relinquishing possession of same. In the event that the Resident vacates the premises leaving any personal property therein, same may be deemed abandoned/trash, and may be discarded by the landlord at the Resident's expense. Cost for removal shall be in addition to any and all other sums due to the landlord pursuant to the Lease.

**32. PAYMENTS.** At our option and without notice, we may apply money received (other than utility payments subject to governmental regulations) first to any of your obligations, then to current rent–regardless of notations on checks or money orders and regardless of when the obligations arose. All sums other than rent are due upon our demand. After the due date, we do not have to accept the rent or any other payments.

08222013124206MA06012450

33. **SECURITY GUIDELINES.** We'd like to give you some important safety guidelines. We recommend that you follow these guidelines and use common sense in practicing safe conduct. Inform all other occupants in your dwelling, including any children you may have, about these guidelines.

**PERSONAL SECURITY--WHILE INSIDE YOUR APARTMENT**

1. Lock your doors and windows--even while you're inside.

2. Engage the keyless deadbolts on all doors while you're inside.

3. When answering the door, see who is there by looking through a window or peephole. If you don't know the person, first talk with him or her without opening the door. *Don't open the door if you have any doubts.*

4. If children (who are old enough to take care of themselves) are left alone in your apartment, tell them to use the keyless deadbolt and refuse to let anyone inside while you are gone--regardless of whether the person is a stranger or an apartment maintenance or management employee.

5. Don't put your name,address, or phone number on your key ring.

6. If you're concerned because you've lost your key or because someone you distrust has a key, ask the management to rekey the locks.

7. Dial 911 for emergencies. If the 911 number does not operate in your area, keep phone numbers handy for the police, fire, and emergency medical services. If an emergency arises, call the appropriate governmental authorities first, then call the management.

8. Check your smoke detector monthly to make sure it is working properly and the batteries are still okay.

9. Check your doorlocks, window latches, and other devices regularly to be sure they are working properly.

10. If your doors or windows are unsecure due to break-ins or malfunctioning locks or latches, stay with friends or neighbors until the problem is fixed.

11. Immediately report to management--in writing, dated and signed--any needed repairs of locks, latches, doors, windows, smoke detectors, and alarm systems.

12. Immediately report to management--in writing, dated and signed--any malfunction of other safety devices outside your apartment, such as broken gate locks, burned-out lights in stairwells and parking lots, blocked passages, broken railings, etc.

13. Close curtains, blinds, and window shades at night.

14. Mark or engrave your driver's license number or other identification on valuable personal property.

**PERSONAL SECURITY--WHILE OUTSIDE YOUR APARTMENT**

15. Lock your doors while you're gone. Lock any doorhandle lock, keyed deadbolt lock, sliding door pin lock, sliding door handle latch, and sliding door bar that you have.

16. Leave a radio or TV playing softly while you're gone.

17. Close and latch your windows while you're gone, particularly when you're on vacation.

18. Tell your roommate or spouse where you're going and when you'll be back.

19. Don't walk alone at night. Don't allow your family to do so.

20. Don't hide a key under the doormat or a nearby flowerpot. These are the first places a burglar will look.

21. Don't give entry keys, codes or electronic gate cards to anyone.

22. Use lamp timers when you go out in the evening or go away on vacation. They can be purchased at most hardware stores.

23. Let the manager and your friends know if you'll be gone for an extended time. Ask your neighbors to watch your apartment since the management cannot assume that responsibility.

24. While on vacation, temporarily stop your newspaper and mail delivery, or have your mail and newspaper picked up daily by a friend.

25. Carry your door key in your hand, whether it is daylight or dark, when walking to your entry door. You are more vulnerable when looking for your keys at the door.

**PERSONAL SECURITY--WHILE USING YOUR CAR**

26. Lock your car doors while driving. Lock your car doors and roll up the windows when leaving your car parked.

27. Don't leave exposed items in your car, such as cassette tapes, wrapped packages, briefcases, or purses.

28. Don't leave your keys in the car.

29. Carry your key ring in your hand whenever you are walking to your car--whether it is daylight or dark and whether you are at home, school, work, or on vacation.

30. Always park in a well-lighted area. If possible, try to park your car in an off-street parking area rather than on the street.

31. Check the backseat before getting into your car.

32. Be careful when stopping at gas stations or automatic-teller machines at night--or anytime when you suspect danger.

**PERSONAL SECURITY AWARENESS**

*No security system is failsafe. Even the best system can't prevent crime. Always act as if security systems don't exist since they are subject to malfunction, tampering, and human error. We disclaim any express or implied warranties of security. The best safety measures are the ones you perform as a matter of common sense and habit.*

## When Moving Out

34. **MOVE-OUT NOTICE.** Before moving out, you must give our representative advance written move-out notice as provided below. Your move-out notice will not release you from liability for the full term of the Lease Contract or renewal term. You will still be liable for the entire Lease Contract term if you move out early (paragraph 20) except under the military clause (paragraph 21). YOUR MOVE-OUT NOTICE MUST COMPLY WITH EACH OF THE FOLLOWING:

- We must receive advance written notice of your move-out date. The advance notice must be at least the number of days of notice required in paragraph 3. Oral move-out notice will not be accepted and will not terminate your Lease Contract.

- Your move-out notice must not terminate the Lease Contract sooner than the end of the Lease Contract term or renewal period.

YOUR NOTICE IS NOT ACCEPTABLE IF IT DOES NOT COMPLY WITH ALL OF THE ABOVE. Please use our written move-out form. You must obtain from our representative written acknowledgment that we received your move-out notice.

35. **MOVE-OUT PROCEDURES.** The move-out date can't be changed unless we and you both agree in writing. You won't move out before the Lease Contract terms or renewal period ends unless you continue to pay rent until the conclusion of the lease term or the apartment is relet, which ever occurs first. Early move-out may result in reletting charges under paragraphs 11 and 30. You may not apply any security deposit to rent without the landlord's written consent. You won't stay beyond the date you are supposed to move out. All residents, guests, and occupants must abandon the apartment before the 30-day period for deposit refund begins. You must give us, in writing, each resident's forwarding address.

36. **CLEANING.** You must thoroughly clean the apartment, including doors, windows, furniture, bathrooms, kitchen appliances, patios, balconies, garages, carports, and storage rooms. You must follow move-out cleaning instructions if they have been provided. If you don't clean adequately, you'll be liable for reasonable cleaning charges.

37. **MOVE-OUT INSPECTION.** You should meet with our representative for a move-out inspection. Our representative has no authority to bind or limit us regarding deductions for repairs, damages, or charges. Any statements or estimates by us or our representative are subject to our correction, modification, or disapproval before final refunding or accounting.

38. **SECURITY DEPOSIT DEDUCTIONS AND OTHER CHARGES.** You'll be liable for the following charges, if applicable: unpaid rent; repairs or damages caused by negligence, carelessness, accident, or abuse, including stickers, scratches, tears, burns, stains, or unapproved holes; replacement cost of our property that was in or attached to the apartment and is missing; replacing missing smoke-detector batteries; unreturned keys; missing or burned-out light bulbs; removing unauthorized security devices or alarm systems and agreed reletting charges, or as otherwise authorized by law. Your security deposit will be handled pursuant to MGL ch. 186 sec 15B, however we reserve the right to pursue any damages that exceed the amount of the security deposit due to your acts or those of your occupants or guests under applicable law (whether a security deposit is held or not).

39. **DEPOSIT RETURN, SURRENDER, AND ABANDONMENT.** We'll mail you your security deposit refund (less lawful deductions) and an itemized accounting of any deductions to the extent required by statute no later than 30 days after surrender or abandonment, unless statutes provide otherwise.

Andre Bisasor, Natalie Anderson

© 2013, National Apartment Association, Inc. - 5/2013, Massachusetts

08222013124207MA06012450

**40. ORIGINALS AND ATTACHMENTS.** This Lease Contract has been executed in multiple originals, each with original signatures-one for you and one or more for us. Our rules and community policies, if any, will be attached to the Lease Contract and given to you at signing. When an IApartment Condition Statement is completed, both you and we should retain a copy. The items checked below are attached to this Lease Contract and are binding even if not initialed or signed.

☒ Animal Addendum
☒ Apartment Condition Statement
☒ Mold Addendum
☒ Enclosed Garage, Carport, or Storage Unit Addendum,
☒ Community Policies Addendum
☐ Lease Contract Guaranty ( _____ guaranties, if more than one)
☐ Notice of Intent to Move Out Form
☒ Parking Permit or Sticker (quantity: _____ )
☒ Satellite Dish or Antenna Addendum
☒ Asbestos Addendum (if asbestos is present)
☒ Lead Hazard Information and Disclosure Addendum (federal)
☒ Utility Addendum
☒ Remote Control, Card, or Code Access Gate Addendum,
☒ Lease Contract Buy-Out Agreement
☐ Intrusion Alarm Addendum
☒ Other _____ **Water/Sewer Addendum** _____
☐ Other _____

Name and address of locator service (if applicable)

_____
_____
_____

You are legally bound by this document. Please read it carefully.

Before submitting a rental application or signing a Lease Contract, you may take a copy of these documents to review and/or consult an attorney.

Additional provisions or changes may be made in the Lease Contract if agreed to in writing by all parties.

In no event shall any of the provisions of this Lease indemnify, release, or otherwise excuse us from liability arising out of any mistake, fault, negligence or other misconduct of the landlord.

Resident or Residents (all sign below)

_Natlie Anled_
_Andre Bisasor_
_____
_____

RAR = Jefferson at Dedham Station-MA, Inc
dba Jefferson at Dedham Station
By Greystar Management Services, L.P.,

Owner or Owner's Representative Delaware limited partnership of owner

_____
Authorized Signer
Manager: Greystar Management Services, L.P.,
Address and phone number of owner's representative for notice purposes

1000 President's Way

Dedham, MA 02026

(781) 320-1370

Date form is filled out (same as on top of page 1) _____ 08/22/2013

SPECIAL PROVISIONS (CONTINUED FROM PAGE 2). If you become a month to month resident you agree to pay the prevailing market rent, as specified by Jefferson at Dedham Station, for your unit plus the the then prevailing month to month premium for each month that you remain as a month to month resident. NOTICE OF ACTIVITY AND USE LIMITATIONS: This lease incorporates by reference the Notice of Activity and Use ("AUL") registered at the Norfolk County Land Court, as Document No. 1,116,347, as it may be amended from time to time. The AUL, and a summary of the AUL, are on file and available for review in the Property manager's office. The AUL allows all normal multifamily residential ses, and provides that any remaining impacted soil will remain undisturbed under buildings, asphalt and landscaping.

_____
_____
_____
_____
_____
_____
_____

**Jefferson at Dedham Station**
Andre Bisasor, Natalie Anderson _NA .b._

© 2013, National Apartment Association, Inc.

08222013124208MA06012450



161

LEASE CONTRACT BUY-OUT AGREEMENT

NATIONAL APARTMENT ASSOCIATION

1. **Dwelling Unit Description.** Unit No. __3413__,
   __3000 Presidents Way #3413__ (street address)
   in __Dedham__ (city),
   Massachusetts, __02026__ (zip code).

2. **Lease Contract Description.**
   Lease Contract date: __August 22, 2013__
   Owner's name: __RAR2 Jefferson at Dedham__
   __Station Ma. Inc dba Jefferson at Dedham__
   __Station__

   Residents (list all residents): __Andre Bisasor,__
   __Natalie Anderson__

3. The purpose of this Buy-Out Agreement is to provide you the opportunity to buy out the Lease Contract prior to the end of the lease term, subject to the terms and conditions contained herein. In order to buy out early, your notice must be signed by all residents listed in paragraph 1 of the Lease Contract and you must comply with all provisions of this Buy-Out Agreement.

4. **Buy-Out Procedures.** You may buy out the Lease Contract prior to the end of the lease term and cut off all liability for paying rent for the remainder of the lease term *if all of the following occur:*

   (a) you give us written notice of buy-out at least __30__ days prior to the new termination date (i.e., your new move-out date), which (check one) ❏ must be the last day of a month or ☒ may be during a month;

   (b) you specify the new termination date in the notice, i.e., the date by which you'll move out;

   (c) you are not in default under the Lease Contract on the date you give us the notice of buy-out;

   (d) you are not in default under the Lease Contract on the new termination date (move-out date);

   (e) you move out on or before the new termination date and do not hold over;

   (f) you pay us a buy-out fee (consideration) of $ __2320.00__ ;

   (g) you pay us the amount of any concessions you received when signing the Lease Contract; and

   (h) you comply with any special provisions in paragraph 9 below.

5. **When payable.** The buy-out fee in paragraph 4(f) is due and payable no later than __3__ days after you give us your buy-out notice. The total dollar amount of any concessions regarding rent or other monetary lease obligations for the entire lease term is $ __0.00__ and is due payable on the same day as the buy-out fee, subject to any special provisions in paragraph 9 regarding the amount, calculation method, or payment date.

6. **Showing unit to prospective residents.** After you give us notice of buy-out, the Lease Contract gives us the right to begin showing your unit to prospective residents and telling them it will be available immediately after your new termination date.

7. **Compliance essential.** Our deposit of all amounts due under paragraphs 4(f) and 4(g) constitutes our approval of the new termination date stated in your notice of buy-out. If you fail to comply with any of the procedures or requirements in this agreement after we deposit such monies, your buy-out right and this agreement will be voided automatically and the lease will continue without buy-out and any deposits as provided herein will be applied to any and all outstanding charges on your resident ledger. Then, if you move out early, you are subject to all lease remedies, including re-letting fees and liability for all rents for the remainder of the original lease term.

8. **Miscellaneous.** If moving out by the new termination date becomes a problem for you, contact us. An extension may be possible if we have not already relet the dwelling unit to a successor resident. We and any successor residents who may be leasing your unit will be relying on your moving out on or before the new termination date. Therefore, you may not hold over beyond such date without our written consent—even if it means you have to make plans for temporary lodging elsewhere. "Default" as used in paragraphs 4(c) and 4(d) of this agreement means default as defined in the Lease Contract. You will continue to be liable for any damages and any sums accruing and unpaid prior to the new termination date.

9. **Special provisions.** Your right of buy-out (check one) ❏ is or ☒ is not limited to a particular fact situation. If limited, buy-out may be exercised only if you comply with Paragraph 4 herein **AND** you comply with all of the below additional provisions. Any special provisions below will supercede any conflicting provision of this printed agreement. Any false statements or documents presented to us regarding buy-out will automatically void your right to buy-out of the Lease Contract. The special provisions are:

   _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____

**Resident or Residents**
*(All residents must sign)*

*Natalie Anderson* (signature)

*andre bisasor* (signature)

_____

_____

**Owner or Owner's Representative**
*(signs below)*

*C. Emmett* (signature)

**Date of Lease Contract**

__August 22, 2013__

Copyright 2013, National Apartment Association, Inc. - 5/2013, Massachusetts

Andre Bisasor, Natalie Anderson

**LEASE ADDENDUM FOR**
**ENCLOSED GARAGE, CARPORT, OR STORAGE UNIT**

NATIONAL APARTMENT ASSOCIATION.

1. **Dwelling Unit Description.** Unit. No. __3413__ ,
   __3000 Presidents Way #3413__ (street address)
   in __Dedham__ (city),
   Massachusetts, __02026__ (zip code).

2. **Lease Contract Description.**
   Lease Contract date: __August 22, 2013__
   Owner's name: __RAR2 Jefferson at Dedham__
   __Station Ma. Inc dba Jefferson at Dedham__
   __Station__

   Residents (list all residents): __Andre Bisasor,__
   __Natalie Anderson__

3. **Garage, carport, or storage unit.** You are entitled to exclusive possession of: (check as applicable)
   - ☐ garage or carport attached to the dwelling;
   - ☐ garage space number(s) _____ ;
   - ☐ carport space number(s) _____ ; and/or
   - ☒ storage unit number(s) __64 & 66__
   The monthly rent in paragraph 6 of the Lease Contract covers both the dwelling and the checked area(s) above. All terms and conditions of the Lease Contract apply to the above areas unless modified by this addendum.

4. **Use restrictions.** Garage or carport may be used only for storage of operable motor vehicles unless otherwise stated in our rules or community policies. Storage units may be used only for storage of personal property. No one may sleep, cook, barbeque, or live in a garage, carport, or storage unit. Persons not listed as a resident or occupant in the lease may not use the areas covered by this addendum. No plants may be grown in such areas.

5. **No dangerous items.** Items that pose an environmental hazard or a risk to the safety or health of other residents, occupants, or neighbors or that violate any government regulation may not be stored may not be stored in any of the units defined in paragraph three above. Prohibited items include but are not limited to fuel (other than in a properly capped fuel tank of a vehicle or a closed briquette lighter fluid container), fireworks, rags, piles of paper, or other material that may create a fire or environmental hazard or any other items prohibited by Federal, State or Local laws or ordinances. We may remove from such areas, without prior notice, items that we believe might constitute a fire or environmental hazard or other violation of this paragraph. Because of carbon monoxide risks, you may not run the motor of a vehicle inside a garage unless the garage door is open to allow fumes to escape.

6. **No smoke, fire, or carbon monoxide detectors.** No smoke, fire, or carbon monoxide detectors will be furnished by us unless required by law.

7. **Garage door opener.** If an enclosed garage is furnished, you ☐ will ☐ will not be provided with a ☐ garage door opener and/or ☐ garage key. You will be responsible for maintenance of any garage door opener, including battery replacement. Transmitter frequency settings may not be changed on the garage door or opener without our prior written consent.

8. **Security.** Always remember to lock any door of a garage or storage unit and any door between a garage and the dwelling. When leaving, be sure to lock all keyed deadbolt locks.

9. **Insurance and loss/damage to your property.** Any area covered by this addendum is accepted by you "as is." You will maintain liability and comprehensive insurance coverage for any vehicle parked or stored. We will have no responsibility for loss or damage to vehicles or other property parked or stored in a garage, carport, or storage unit, whether caused by accident, fire, theft, water, vandalism, pests, mysterious disappearance, or otherwise except to the extent caused by our omission, fault, negligence, or misconduct. We are not responsible for pest control in such areas.

10. **Compliance.** We may periodically open and enter garages and storerooms to ensure compliance with this addendum. In that event, written notice of such opening and entry will be left inside the main entry door of your dwelling or inside the door between the garage and your dwelling.

11. **No lock changes, alterations, or improvements.** Without our prior written consent, locks on doors of garages and storage units may not be rekeyed, added, or changed, and improvements, alterations, or electrical extensions or changes to the interior or exterior of such areas are not allowed. You may not place nails, screws, bolts, or hooks into walls, ceilings, floors, or doors. Any damage not caused by us or our representatives to areas covered by this addendum will be paid for by you.

12. **Move-out and remedies.** Any items remaining in a garage, carport or storage unit after you have vacated the dwelling unit, and we have recovered possession of said dwelling unit, will be considered abandoned property and we may remove, sell or otherwise dispose of the property left in the abandoned or surrendered garage, carport or storage unit as we see fit.

13. **Special Provisions.** The following special provisions control over conflicting provisions of this printed form:
    __Carports rent for an additional $50 per__
    __month and can only be cancelled at the end__
    __of the lease term. Storage Unit Rent is an__
    __additional $35 per month. Storage can be__
    __cancelled at any time with thirty days'__
    __written notice.__

| Resident or Residents | Owner or Owner's Representative |
|---|---|
| [All residents must sign here] | [signs here] |
| Natalie Anderson (signature) | C. Emery (signature) |
| andre Bisasor (signature) | |

**Date of Lease Contract**
__August 22, 2013__

Copyright 2013, National Apartment Association, Inc. - 5/2013, Massachusetts

Andre Bisasor, Natalie Anderson (initials)

## LEASE ADDENDUM
### LIABILITY INSURANCE REQUIRED OF RESIDENT

**NAA**
NATIONAL
APARTMENT
ASSOCIATION.

1. **Dwelling Unit Description.** Unit. No. __3413__,
__3000 Presidents Way #3413__ (street address)
in __Dedham__ (city),
Massachusetts, __02026__ (zip code).

2. **Lease Contract Description.**
Lease Contract date: __August 22, 2013__
Owner's name: __RAR2 Jefferson at Dedham__
__Station Ma. Inc dba Jefferson at Dedham__
__Station__

Residents (list all residents): __Andre Bisasor,__
__Natalie Anderson__

3. **Acknowledgment Concerning Insurance or Damage Waiver.** You acknowledge that we do not maintain insurance to protect you against personal injury, loss or damage to your personal property or belongings, or to cover your own liability for injury, loss or damage you (or your occupants or guests) may cause others. You also acknowledge that by not maintaining your own policy of personal liability insurance, you may be responsible to others (including us) for the full cost of any injury, loss or damage caused by your actions or the actions of your occupants or guests. You understand that paragraph 8 of the Lease Contract requires you to maintain a liability insurance policy, which provides limits of liability to third parties in an amount not less than $ __100000.00__ per occurrence. You understand and agree to maintain at all times during the Term of the Lease Contract and any renewal periods a policy of personal liability insurance and personal property insurance satisfying the requirements listed below, at your sole expense.

4. **Required Policy.** You are required to purchase and maintain personal liability insurance covering you, your occupants and guests, for personal injury and property damage any of you cause to third parties (including damage to our property), in a minimum policy coverage amount of $ __100000.00__, from a carrier with an AM Best rating of A-VII or better, licensed to do business in Massachusetts. The carrier is required to provide notice to us within 30 days of any cancellation, non-renewal or material change in your coverage. We retain the right to hold you responsible for any loss in excess of your insurance coverage.

5. **We may provide you with information of an insurance program that we make available to residents, which provides you with an opportunity to buy renter's insurance from a preferred company. However, you are free to contract for the required insurance with a provider of your choosing.**

6. **Subrogation Allowed.** You and we agree that subrogation is allowed by all parties and that this agreement supersedes any language in the contrary in the Lease Contract.

7. **Your Insurance Coverage.** You have purchased the required personal liability insurance from the insurance company of your choosing listed below that is licensed to do business in this state, and have provided us with written proof of this insurance prior to the execution and commencement of the Lease Contract. You will provide additional proof of insurance in the future at our request.

Insurance Company: __eRenterPlan__

8. **Default.** Any default under the terms of this Addendum shall be deemed an immediate, material and incurable default under the terms of the Lease Contract, and we shall be entitled to exercise all rights and remedies under the law.

9. **Miscellaneous.** Except as specifically stated in this Addendum, all other terms and conditions of the Lease Contract shall remain unchanged. In the event of any conflict between the terms of this Addendum and the terms of the Lease Contract, the terms of this Addendum shall control.

10. **Special Provisions:** __SUBJECT TO APPLICABLE LAW,__
__THE LANDLORD WILL PROVIDE INSURANCE FOR UP__
__TO $750 IN BENEFITS TO COVER THE ACTUAL__
__COSTS OF RELOCATION OF THE TENANT IF__
__DISPLACED BY FIRE OR DAMAGE RESULTING FROM__
__FIRE.__

I have read, understand and agree to comply with the preceding provisions.

**Resident or Residents**
[All residents must sign here]

_Natalie Anderson_ (signature)
_Andre Bisasor_ (signature)

**Owner or Owner's Representative**
[signs here]

_C. Emery_ (signature)

**Date of Lease Contract**
__August 22, 2013__

© 2013, National Apartment Association, Inc. - 5/2013, Massachusetts

Andre Bisasor, Natalie Anderson (initials) a b

## Bed Bug Addendum



Date: **August 22, 2013**
(when this Addendum is filled out)

*Please note: It is our goal to maintain a quality living environment for our residents. To help achieve this goal, it is important to work together to minimize the potential for any bed bugs in your dwelling or surrounding dwellings. This addendum contains important information that outlines your responsibility and potential liability with regard to bed bugs.*

1. **DWELLING UNIT DESCRIPTION.**
Unit. No. __3413__ , __3000 Presidents Way__
__#3413__ (street address)
in __Dedham__
(city), Massachusetts, __02026__ (zip code).

2. **LEASE CONTRACT DESCRIPTION.**
Lease Contract date: __August 22, 2013__
Owner's name: RAR2 Jefferson at Dedham Station Ma. Inc dba Jefferson at Dedham Station

Residents (list all residents): **Andre Bisasor, Natalie Anderson**

3. **PURPOSE.** This Addendum modifies the Lease Contract and addresses situations related to bed bugs (*cimex lectularius*) which may be discovered infesting the dwelling or personal property in the dwelling. You understand that we relied on your representations to us in this Addendum. Nothing in this Addendum shall limit the requirements enumerated under the Lease Contract regarding reporting of insects, vermin or other pests, and/or your duty to prevent same in your unit.

4. **INSPECTION.** You agree that you: (Check one)
☒ have inspected the dwelling prior to move-in and that you did not observe any evidence of bed bugs or bed bug infestation; OR
☐ will inspect the dwelling within 48 hours after move-in/renewal and notify us of any bed bugs or bed bug infestation.

5. **INFESTATIONS.**

You agree that you have read all of the information on this addendum about bed bugs and:
(Check one)
☒ you are not aware of any infestation or presence of bed bugs in your current or previous apartments, home or dwelling. You agree that you are not aware of any bed bug infestation or presence in any of your furniture, clothing, personal property or possessions. You agree that you have not been subjected to conditions in which there was any bed bug infestation or presence. OR
☐ you agree that if you previously lived anywhere that had a bed bug infestation that all of your personal property (including furniture, clothing and other belongings) has been treated by a licensed pest control professional. You agree that such items are free of further infestation. If you disclose a previous experience of bed bug infestation, we can review documentation of the treatment and inspect your personal property and possessions to confirm the absence of bed bugs. You agree that any previous bed bug infestation which you may have experienced is disclosed here:

_____
_____
_____
_____

6. **ACCESS FOR INSPECTION AND PEST TREATMENT.** You must allow us and our pest control agents access to the dwelling at reasonable times to inspect for or treat bed bugs as allowed by law. You and your family members, occupants, guests, and invitees must cooperate and will not interfere with inspections or treatments. We have the right to select any licensed pest control professional to treat the dwelling and building. We can select the method of treating the dwelling, building and common areas for bed bugs. We can also inspect and treat adjacent or neighboring dwellings to the infestation even if those dwellings are not the source or cause of the known infestation. You are responsible for and must prepare your unit for treatment and follow all instructions provided by our licensed pest control firm regarding your own personal property, furniture, clothing and possessions treated according to accepted treatment methods established by a licensed pest control firm that we approve. You must do so at the time we treated the dwelling. If you fail to do so, you will be in default, and we will have the right to terminate your right of occupancy and exercise all rights and remedies under the Lease Contract. You agree not to treat the dwelling for a bed bug infestation on your own.

7. **NOTIFICATION.** You must promptly notify us:
- of any known or suspected bed bug infestation or presence in the dwelling, or in any of your clothing, furniture or personal property.
- of any recurring or unexplained bites, stings, irritations, or sores of the skin or body which you believe is caused by bed bugs, or by any condition or pest you believe is in the dwelling.
- if you discover any condition or evidence that might indicate the presence or infestation of bed bugs, or of any confirmation of bed bug presence by a licensed pest control professional or other authoritative source.

8. **COOPERATION.** If we confirm the presence or infestation of bed bugs, you must cooperate and coordinate with us and our pest control agents to treat and eliminate the bed bugs. You must follow all directions from us or our agents to clean and treat the dwelling and building that are infested. You must remove or destroy personal property that cannot be treated or cleaned as close as possible to the time we treated the dwelling. Any items you remove from the dwelling must be disposed of off-site and not in the property's trash receptacles. If we confirm the presence or infestation of bed bugs in your dwelling, we have the right to require you to temporarily vacate the dwelling and remove all furniture, clothing and personal belongings in order for us to perform pest control services. If you fail to cooperate with us, you will be in default, and we will have the right to terminate your right of occupancy and exercise all rights and remedies under the Lease Contract.

9. **RESPONSIBILITIES.** You may be required to pay all reasonable costs of cleaning and pest control treatments incurred by us to treat your dwelling unit for bed bugs. If we confirm the presence or infestation of bed bugs after you vacate your dwelling, you may be responsible for the cost of cleaning and pest control treatments. If we must move other residents in order to treat adjoining or neighboring dwellings to your dwelling unit, you may be liable for payment of any lost rental income and other expenses incurred by us to relocate the neighboring residents and to clean and perform pest control treatments to eradicate infestations in other dwellings.

10. **TRANSFERS.** If we allow you to transfer to another dwelling in the community because of the presence of bed bugs, you must have your personal property and possessions treated according to accepted treatment methods or procedures established by a licensed pest control professional. You must provide proof of such cleaning and treatment to our satisfaction prior to any transfers.

08222013124201MA06012450

Andre Bisasor, Natalie Anderson

Copyright 2013, National Apartment Association, Inc. - 5/2013, Massachusetts

Page 1 of 2

## BED BUGS - A Guide for Rental Housing Residents

Bed bugs, with a typical lifespan of 6 to 12 months are wingless, flat, broadly oval-shaped insects. Capable of reaching the size of an apple seed at full growth, bed bugs are distinguishable by their reddish-brown color, although after feeding on the blood of humans and warm-blooded animals--their sole food source--the bugs assume a distinctly blood-red hue until digestion is complete.

### Bed bugs don't discriminate
Bed bugs increased presence across the United States in recent decades can be attributed largely to a surge in international travel and trade. It's no surprise then that bed bugs have been found time and time again to have taken up residence in some of the fanciest hotels and apartment buildings in some of the nation's most expensive neighborhoods.

Nonetheless, false claims that associate bed bugs presence with poor hygiene and uncleanliness have caused rental housing residents, out of shame, to avoid notifying owners of their presence. This serves only to enable the spread of bed bugs.

While bed bugs are, by their very nature, more attracted to clutter, they're certainly not discouraged by cleanliness.

Bottom line: bed bugs know no social and economic bounds; claims to the contrary are false.

### Bed bugs don't transmit disease
There exists no scientific evidence that bed bugs carry disease. In fact, federal agencies tasked with addressing pest of public health concern, namely the U.S. Environmental Protection Agency and the Centers for Disease Control and Prevention, have refused to elevate bed bugs to the threat level posed by disease carrying pests. Again, claims associating bed bugs with disease are false.

### Identifying bed bugs
*Bed bugs can often be found in, around and between:*
- Bedding
- Bed frames
- Mattress seams
- Upholstered furniture, especially under cushions and along seams
- Around, behind and under wood furniture, especially along areas where drawers slide
- Curtains and draperies
- Along window and door frames
- Ceiling and wall junctions
- Crown moldings
- Behind and around wall hangings and loose wallpaper
- Between carpeting and walls (carpet can be pulled away from the wall and tack strip)
- Cracks and crevices in walls and floors
- Inside electronic devices, such as smoke and carbon monoxide detectors
- Because bed bugs leave some persons with itchy welts strikingly similar to those caused by fleas and

mosquitoes, the origination of such markings often go misdiagnosed. However, welts caused by bed bugs often times appear in succession and on exposed areas of skin, such as the face, neck and arms. In some cases, an individual may not experience any visible reaction resulting from direct contact with bed bugs.
- While bed bugs typically prefer to act at night, they often do not succeed in returning to their hiding spots without leaving traces of their presence through fecal markings of a red to dark brown color, visible on or near beds. Blood stains tend also to appear when the bugs have been squashed, usually by an unsuspecting host in their sleep. And, because they shed, it's not uncommon for skin casts to be left behind in areas typically frequented by bed bugs.

### Preventing bed bug encounters when traveling
Because humans serve as bed bugs' main mode of transportation, it is extremely important to be mindful of bed bugs when away from home. Experts agree that the spread of bed bugs across all regions of the United States is largely attributed to an increase in international travel and trade. Travelers are therefore encouraged to take a few minutes upon arriving to their temporary destination to thoroughly inspect their accommodations, so as to ensure that any uninvited guests are detected before the decision is made to unpack.

Because bed bugs can easily travel from one room to another, it is also recommended that travelers thoroughly inspect their luggage and belongings for bed bugs before departing for home.

### Bed bug do's and don'ts
- **Do not bring used furniture from unknown sources into your dwelling.** Countless bed bug infestations have stemmed directly from the introduction into a resident's unit of second-hand and abandoned furniture. Unless the determination can be made with absolute certainty that a piece of second-hand furniture is bed bug-free, residents should assume that the reason a seemingly nice looking leather couch, for example, is sitting curbside, waiting to be hauled off to the landfill, may very well be due to the fact that it's teeming with bed bugs.
- **Do address bed bug sightings immediately.** Rental housing residents who suspect the presence of bed bugs in their unit must immediately notify the owner.
- **Do not attempt to treat bed bug infestations.** Under no circumstance should you attempt to eradicate bed bugs. Health hazards associated with the misapplication of traditional and non-traditional, chemical-based insecticides and pesticides pose too great a risk to you and your neighbors.
- **Do comply with eradication protocol.** If the determination is made that your unit is indeed playing host to bed bugs, you must comply with the bed bug eradication protocol set forth by both your owner and their designated pest management company.

**You are legally bound by this document. Please read it carefully.**

| **Resident or Residents** | **Owner or Owner's Representative** |
|---|---|
| *(All residents must sign)* | *(Signs below)* |

Natalie Anderson

Andre Bisasor

**Date of Signing Addendum**

08222013124202MA06012450

Andre Bisasor, Natalie Anderson

Massachusetts/National Apartment Association Official Form 13-H, May, 2013
Copyright 2013, National Apartment Association, Inc.



166

## Apartment Lease Contract

Date of Lease Contract: _____ May 16, 2014 _____
(when this Lease Contract is filled out)

*This is a binding contract. Read carefully before signing.*

### Moving In – General Information

1. **PARTIES.** This Lease Contract is between *you*, the resident(s) *(list all people signing the Lease Contract):*

   **Andre Bisasor, Natalie Anderson**
   _____

   and *us*, the owner:
   **RAR2 Jefferson at Dedham Station Ma. Inc**
   **dba Jefferson at Dedham Station**

   *(name of apartment community or title holder).* You've agreed to rent Apartment No. __2216__ , at **2000 Presidents Way**
   *(street address)* in
   **Dedham** _____ *(city),* Massachusetts,
   **02026** *(zip code)* for use as a private residence only. The terms "you" and "your" refer to all residents listed above. The terms "we", "us", and "our" refer to the owner listed above (or any of owner's successors' in interest or assigns). Written notice to or from our managers constitutes notice to or from us. If anyone else has guaranteed performance of this Lease Contract, a separate Lease Contract Guaranty for each guarantor is attached.

2. **OCCUPANTS.** The apartment will be occupied only by you and *(list all other occupants who are under 18 and not required to sign the Lease):*
   _____
   _____
   _____
   _____

   No one else may occupy the apartment. Persons not listed above may not stay in the apartment for more than __14__ consecutive days without our prior written consent, and no more than twice that many days in any one month. *If the previous space isn't filled in, two days per month is the limit.*

3. **LEASE TERM.** The initial term of the Lease Contract begins on the __16th__ day of ____May____ , __2014__ *(year),* and ends at midnight the __31st__ day of ____May____ , __2014__ *(year).* Unless the landlord serves a notice of non-renewal at least thirty (30) days prior to the expiration of the initial term, OR the tenant serves a notice to vacate at least sixty (60) days prior to the expiration of the initial term, this Lease Contract will automatically renew on *(check one):*

   ☐ a month-to-month basis ("Extended Term"), terminable upon thirty (30) days written notice as required by paragraph 34. The monthly rental rate for any Extended Term will be the market rate (at the time of the applicable extension) for a comparable apartment in the development plus a month-to-month premium of __25.00__ .

   ☐ successive terms of _____ months ("Extended Term"), unless the landlord serves a notice of non-renewal at least thirty (30) days prior to the expiration of any successive term, OR the tenant serves a notice to vacate at least sixty (60) days prior to the expiration of any successive term. The monthly rental rate for the Extended Term will be the market rate (at the time of the applicable extension) for a comparable apartment in the development plus a month-to-month premium of _____ .

4. **SECURITY DEPOSIT.** Unless modified by addenda, the total security deposit at the time of execution of this Lease Contract for all residents in the apartment is $ __0.00__ , due on or before the date this Lease Contract is signed. If we request the last month's rent from you along with the security deposit, we will comply with the requirements of G.L. c. 186 § 15B (2). See paragraphs 38 and 39 for security deposit return information.

5. **KEYS AND FURNITURE.** You will be provided __2__ apartment key(s), __0__ mailbox key(s), and __0__ other access devices for __FOB__ . Your apartment will be *[check one]:* ☒ furnished or ☐ unfurnished.

6. **RENT AND CHARGES.** Unless modified by addenda, you will pay $ __0.00__ per month for rent, payable in advance and without demand:
   ☒ at the on-site manager's office, or
   ☒ at our online payment site, or
   ☒ at __Rent Drop Box__

   Prorated rent of $ __0.00__ is due for the remainder of the first month, on _____ *(date). Otherwise, you must pay your rent on or before the 1st day of each month (due date) with no grace period.* Cash is unacceptable without our prior written permission. You must not withhold or offset rent unless authorized by statute. We may, at our option, require at any time that you pay all rent and other sums in cash, certified or cashier's check, money order, or one monthly check rather

   than multiple checks. If you don't pay all rent on or before 30 days afterthe first of the month, you'll pay an initial late charge of $ __75.00__ plus a late charge of $ __0.00__ per day after date until paid in full. Daily late charges will not exceed 15 days for any single month's rent. You'll also pay a charge of $ __75.00__ for each returned check or rejected electronic payment, plus initial and daily late charges from due date until we receive acceptable payment. If you don't pay rent on time, you'll be delinquent and all remedies under this Lease Contract will be authorized. We'll also have all other remedies for such violation. Notwithstanding any memo or reference on payments remitted by you, we may, but are not required to, apply payments by you to the most outstanding amount(s) due on your resident ledger.

7. **UTILITIES.** We'll pay for the following items, if checked:
   ☒ gas        ☒ electricity      ☐ master antenna
   ☒ trash      ☒ cable TV         ☐ other _____
   ☒ heat       ☒ water

   You'll pay for all other utilities, related deposits, and any charges, fees, or services on such utilities. However, we will pay for all utilities we are required to pay for under Massachusetts law, unless this Lease Contract provides otherwise. You must not allow utilities to be disconnected for any reason—including disconnection for not paying your bills—until the lease term or renewal period ends. Cable channels that are provided may be changed during the Lease Contract term if the change applies to all residents. Utilities may only be used for normal household purposes and must not be wasted. If your electricity is ever interrupted, you must use only battery-powered lighting. If water/sewer utilities are sub-metered for the apartment, we will attach an addendum to this Lease Contract in compliance with state agency rules or city ordinance.

8. **INSURANCE.** We do not maintain insurance to cover your *personal property or personal injury.* We are not responsible to any resident, guest, or occupant for damage or loss of personal property from (including but not limited to) fire, smoke, rain, flood, water and pipe leaks, hail, ice, snow, lightning, wind, explosions, earthquake, interruption of utilities, theft, hurricane, negligence of other residents, occupants, or invited/uninvited guests or vandalism unless due to owner's omission, fault, negligence, or misconduct.

   We urge you to get your own insurance for losses to your personal property or injuries due to theft, fire, water damage, pipe leaks and the like.

   Additionally, you are *[check one]* ☒ required to purchase personal liability insurance ☐ not required to purchase personal liability insurance. If no box is checked, personal liability insurance is not required. If required, failure to maintain personal liability insurance is an incurable breach of this Lease Contract and may result in the termination of tenancy and eviction and/or any other remedies as provided by this Lease Contract or state law. If you are required to purchase personal liability insurance you must provide evidence of coverage at lease inception, and must confirm an active policy upon request by owner at any time during the term of the Lease. SUBJECT TO APPLICABLE LAW, THE LANDLORD WILL PROVIDE INSURANCE FOR UP TO $750 IN BENEFITS TO COVER THE ACTUAL COSTS OF RELOCATION OF THE TENANT IF DISPLACED BY FIRE OR DAMAGE RESULTING FROM FIRE.

9. **SECURITY DEVICES. What We Must Provide.** Massachusetts law requires that we must provide at no cost to you when occupancy begins: (1) an operating locking device on your door; and, (2) an operating locking device on every openable exterior window. Keyed locks will be re-keyed after the prior resident moves out. The rekeying will be done either before you move in or within 7 days after you move in. You may not duplicate any keys provided to you, and shall not provide or transfer your keys to anyone without management's prior written consent.

   You may at any time ask us to: (1) install one keyed deadbolt lock on an exterior door if it does not have one; (2) install a bar on a sliding glass door if it does not have one; and (3) change or rekey locks or latches. We will comply with those requests, but you may be required to pay for them.

   **What You Are Now Requesting.** You now request the following to be installed at your expense (if one is not already installed).
   ☐ keyed deadbolt lock       ☐ doorviewer
   ☐ keyless deadbolt          ☐ sliding door pinlock
   ☐ sliding door bar

   **Payment.** We will pay for missing devices that are required by statute. You will pay for: (1) re-keying that you request (except when we failed to rekey after the previous resident moved out); and (2) repairs or replacements due to misuse or damage by you or your family, occupants, or guests. You must pay immediately after the work is done.

0516201405 3501MA06012450
Andre Bisasor, Natalie Anderson *N.A* a.b.

© 2013, National Apartment Association, Inc. - 5/2013, Massachusetts

Page 1 of 6

10. **SPECIAL PROVISIONS.** The following special provisions and any addenda or written rules furnished to you at or before signing become a part of this Lease Contract and will supersede any conflicting provisions of this printed Lease Contract form.

**See special provisions on the last page**

_____
_____
_____
_____

See any additional special provisions.

11. **EARLY MOVE-OUT; RELETTING CHARGE.** You'll be liable to us for a reletting charge of $ 0.00 (not to exceed 100% of the highest monthly rent during the Lease Contract term subject to our duty to mitigate pursuant to paragraph 30 of this Lease) if you:

(1) fail to give written move-out notice as required in paragraphs 21 or 34; or
(2) move out without paying rent in full for the entire Lease Contract term or renewal period; or
(3) move out at our demand because of your default; or
(4) are judicially evicted.

_The reletting charge is not a cancellation fee and does not release you from your obligations under this Lease Contract. The reletting charge cannot be withheld from your security deposit._

**Not a Release.** The re-letting charge is not a Lease Contract cancellation fee or buyout fee. It is a liquidated amount covering only part of our damages; that is, our time, effort, and expense in finding and processing a replacement. These damages are uncertain and difficult to ascertain—particularly those relating to inconvenience, paperwork, advertising, showing apartments, utilities for showing, checking prospects, office overhead, marketing costs, and locator-service fees. You agree that the re-letting charge is a reasonable estimate of such damages and that the charge is due whether or not our re-letting attempts succeed. If no amount is stipulated, you must pay our actual re-letting costs so far as they can be determined. The re-letting charge does not release you from continued liability for: future or past-due rent; charges for damages in excess of normal wear and tear, or unreturned keys; or other sums due.

12. **DAMAGES AND REIMBURSEMENT.** You must promptly reimburse us for loss, damage, government fines, or cost of repairs or service in the apartment community due to a violation of the Lease Contract or rules, improper use, negligence, or intentional conduct by you or your invitees, guests or occupants **unless it is caused by our omission, fault, negligence or misconduct. Unless caused by our fault, omission, misconduct or negligence, we're not liable for and you must pay for repairs, replacement costs, and damage to the following if** occurring during the Lease Contract term or renewal period: (1) damage to doors, windows, or screens caused by you, your guests and/or invitees; (2) damage from windows or doors left open; and (3) damage from wastewater stoppages caused by improper objects in lines exclusively serving your apartment. We may require payment at any time, including advance payment of repairs for which you're liable. Delay in demanding sums you owe is not a waiver.

13. **RENT INCREASES AND LEASE CONTRACT CHANGES.** No rent increases or Lease Contract changes are allowed before the initial Lease Contract term ends, except for changes allowed by any special provisions in paragraph 10, by a written addendum or amendment signed by you and us, or by reasonable changes of apartment rules allowed under paragraph 16.

14. **DELAY OF OCCUPANCY.** If occupancy is or will be delayed for construction, repairs, cleaning, or a previous resident's holding over, we're not responsible for the delay unless it is due to our omission, fault negligence, misconduct or any other reason outside of our reasonable control. The Lease Contract will remain in force subject to: (1) abatement of rent on a daily basis during delay; and (2) your right to terminate as set forth below. Termination notice must be in writing. After termination, you are entitled only to refund of deposit(s) and any rent paid. Rent abatement or Lease Contract termination does not apply if delay is for cleaning or repairs that don't prevent you from occupying the apartment.

If there is a delay and we haven't given notice of delay as set forth immediately below, you may terminate up to the date when the apartment is ready for occupancy, but not later.

(1) If we give written notice to any of you before the initial term as set forth in Paragraph 3–and the notice states that occupancy has been delayed because of construction or a previous resident's holding over, and that the apartment will be ready on a specific date–you may terminate the Lease Contract within 3 days of your receiving the notice, but not later.

(2) If we give written notice to any of you before the initial term as set forth in Paragraph 3 and the notice states that construction delay is expected and that the apartment will be ready for you to occupy on a specific date, you may terminate the Lease Contract within 7 days after any of you receives written notice, but not later. The readiness date is considered the new initial term as set forth in Paragraph 3 for all purposes. This new date may not be moved to an earlier date unless we and you agree in writing.

15. **DISCLOSURE RIGHTS.** If someone requests information on you or your rental history for law-enforcement, governmental, or business purposes, we may provide it.

16. **COMMUNITY POLICIES OR RULES.** You and all guests and occupants must comply with any written apartment rules and community policies, including instructions for care of our property. Our rules are considered part of this Lease Contract. We may make reasonable changes to written rules, effective immediately, if they are distributed and applicable to all units in the apartment community and do not change dollar amounts on page 1 of this Lease Contract.

17. **LIMITATIONS ON CONDUCT.** The apartment and other areas reserved for your private use must be kept clean. Trash must be disposed of at least weekly in appropriate receptacles in accordance with local ordinances. Passageways may be used only for entry or exit. Any swimming pools, saunas, spas, tanning beds, exercise rooms, storerooms, laundry rooms, and similar areas must be used with care in accordance with apartment rules and posted signs. Glass containers are prohibited in or near pools and all common areas. You, your occupants, or guests may not anywhere in the apartment community: use candles or use kerosene lamps without our prior written approval; cook on balconies or outside; or solicit business or contributions. Conducting any kind of business (including child care services) in your apartment or in the apartment community is prohibited–except that any lawful business conducted "at home" by computer, mail, or telephone is permissible if customers, clients, patients, or other business associates do not come to your apartment for business purposes and we assent in writing to the proposed business operation. We may regulate: (1) the use of patios, balconies, and porches; (2) the conduct of furniture movers and delivery persons; and (3) recreational activities in common areas.

We may exclude from the apartment community guests or others who, in our judgment, have been violating the law, violating this Lease Contract or any apartment rules, or disturbing other residents, neighbors, visitors, or owner representatives. We may also exclude from any outside area or common area a person who refuses to show photo identification or refuses to identify himself or herself as a resident, occupant, or guest of a specific resident in the community.

You agree to notify us if you or any occupants are convicted of any felony, or misdemeanor involving a controlled substance, violence to another person or destruction of property. You also agree to notify us if you or any occupant registers as a sex offender in any state. Informing us of criminal convictions or sex offender registry does not waive our right to evict you.

18. **PROHIBITED CONDUCT.** You and your occupants or guests may not engage in the following activities: behaving in a loud or obnoxious manner; disturbing or threatening the rights, comfort, health, safety, or convenience of others (including our agents and employees) in or near the apartment community; disrupting our business operations; manufacturing, delivering, possessing with intent to deliver, or otherwise possessing a controlled substance or drug paraphernalia; engaging in or threatening violence; possessing a weapon prohibited by state law; discharging a firearm in the apartment community; displaying or possessing a gun, knife, or other weapon in the common area in a way that may alarm others; storing anything in closets having gas appliances; tampering with utilities or telecommunications; bringing hazardous materials into the apartment community; or injuring our reputation by making bad faith allegations against us to others or violating any Federal, state, or local law, or ordinance.

19. **PARKING.** We may regulate the time, manner, and place of parking all cars, trucks, motorcycles, bicycles, boats, trailers, and recreational vehicles. Motorcycles or motorized bikes may not be parked inside an apartment unit or on sidewalks, under stairwells, or in handicapped parking areas. We may have unauthorized or illegally parked vehicles towed as allowed by state statute. A vehicle is unauthorized or illegally parked in the apartment community if it:

(1) has a flat tire or other condition rendering it inoperable; or
(2) is on jacks, blocks or has wheel(s) missing; or
(3) has no current license or no current inspection sticker; or
(4) takes up more than one parking space; or
(5) belongs to a resident or occupant who has surrendered or abandoned the apartment; or
(6) is parked in a marked handicap space without the legally required handicap insignia; or
(7) is parked in a space marked for manager, staff, or guest at the office; or
(8) blocks another vehicle from exiting; or
(9) is parked in a fire lane or designated "no parking" area; or
(10) is parked in a space marked for other resident(s) or unit(s); or
(11) is parked on the grass, sidewalk, or patio; or
(12) blocks garbage trucks from access to a dumpster; or
(13) is not moved from any area in the development, authorized or unauthorized, following written notice by management that said vehicle must be moved for snow removal and/or other requisite purpose in our sole discretion.

05162014053502MA06012450

Andre Bisasor, Natalie Anderson _N.A._ b.

© 2013, National Apartment Association, Inc. - 5/2013, Massachusetts

**20. RELEASE OF RESIDENT.** Unless allowed by this Lease Contract, or Massachusetts law, you won't be released from this Lease Contract for any reason-including but not limited to voluntary or involuntary school withdrawal or transfer, voluntary or involuntary job transfer, marriage, separation, divorce, reconciliation, loss of co-residents, loss of employment, bad health, or death.

**21. MILITARY PERSONNEL CLAUSE.** You may terminate the Lease Contract if you enlist or are drafted or commissioned and on active duty in the U.S. Armed Forces. You also may terminate the Lease Contract if:

(1) you are (i) a member of the U.S. Armed Forces or reserves on active duty or (ii) a member of the National Guard called to active duty for more than 30 days in response to a national emergency declared by the President; *and*

(2) you (i) receive orders for permanent change-of-station, (ii) receive orders to deploy with a military unit or as an individual in support of a military operation for 90 days or more, *or* (iii) are relieved or released from active duty.

After you deliver to us your written termination notice, the Lease Contract will be terminated under this military clause 30 days after the date on which your next rental payment is due. You must furnish us a copy of your military orders, such as permanent change-of-station orders, call-up orders, or deployment orders or written notification from your commanding officer. Military permission for base housing does not constitute change-of-station order. After you move out, we'll return your security deposit, less lawful deductions. For the purposes of this Lease Contract, orders described in (2) above will only release the resident who qualifies under (1) and (2) above and receives the orders during the Lease Contract term and such resident's spouse or legal dependents living in the resident's household. A co-resident who is not your spouse or dependent cannot terminate under this military clause. Unless you state otherwise in paragraph 10, you represent when signing this Lease Contract that: (1) you do not already have deployment or change-of-station orders; (2) you will not be retiring from the military during the Lease Contract term; and (3) the term of your enlistment or obligation will not end before the Lease Contract term ends. Even if you are entitled to terminate this Lease Contract under this paragraph, liquidated damages for making a false representation of the above will be the amount of unpaid rent for the remainder of the lease term when and if you move out, less rents from others received in mitigation under paragraph 30. You must immediately notify us if you are called to active duty or receive deployment or permanent change-of-station orders.

**22. RESIDENT SAFETY AND PROPERTY LOSS.** You and all occupants and guests must exercise due care for your own and others' safety and security, especially in the use of smoke detectors and carbon monoxide detectors, keyed deadbolt locks, keyless bolting devices, window latches, and other safety or security devices. You agree to make every effort to follow the Security Guidelines in this Lease Contract.

**Smoke Detectors and Carbon Monoxide Detectors.** We'll furnish smoke detectors and carbon monoxide detectors as required by statute, and we'll test them and provide working batteries when you first take possession. After that, you must pay for and replace batteries as needed, unless the law provides otherwise. We may replace dead or missing batteries at your expense, without prior notice to you. You must immediately report smoke detector and/or carbon monoxide detector malfunctions to us. Neither you nor others may disable smoke detectors and/or carbon monoxide detectors. If you damage or disable the smoke detector and/or carbon monoxide detector or remove a battery without replacing it with a working battery, you may be liable to us for actual damages and attorney's fees. If you disable or damage the smoke detector and/or carbon monoxide detector, or fail to replace a dead battery or report malfunctions to us, you will be liable to us and others for any loss, damage, or fines from fire, smoke, or water.

**Casualty Loss.** We're not liable to any resident, guest, or occupant for damage or loss of personal property from any cause, including but not limited to: fire, smoke, rain, flood, water and pipe leaks, hail, ice, snow, lightning, wind, explosions, interruption of utilities, theft, or vandalism unless due to our omission, fault, negligence or misconduct. Unless we instruct otherwise, you must--for 24 hours a day during freezing weather--(1) keep the apartment heated to at least 50 degrees; (2) keep cabinet and closet doors open; and (3) drip hot and cold water faucets. You'll be liable for damage to our and others' property if damage is caused by broken water pipes due to your violating these requirements. If you ask our representatives to perform services not contemplated in this Lease Contract, you will indemnify us and hold us harmless from all liability for these services.

**Crime or Emergency.** Dial 911 or immediately call local medical emergency, fire, or police personnel in case of accident, fire, smoke, suspected criminal activity, or other emergency involving imminent harm. You should then contact our representative. You won't treat any of our security measures as an express or implied warranty of security, or as a guarantee against crime or of reduced risk of crime. Unless otherwise provided by law, we're not liable to you or any guests or occupants for injury, damage, or loss to person or property caused by criminal conduct of other persons, including theft, burglary, assault, vandalism, or other crimes. We're not obliged to furnish security personnel, security lighting, security gates or fences, or other forms of security unless required by applicable law. We're not responsible for obtaining criminal-history checks on any residents, occupants, guests, or contractors in the apartment community. If you or any occupant or

guest is affected by a crime, you must make a written report to our representative and to the appropriate local law-enforcement agency. You also must furnish us with the law-enforcement agency's incident report number upon request.

**23. CONDITION OF THE PREMISES AND ALTERATIONS.** You accept the apartment, fixtures, and furniture as is, except for conditions materially affecting the health or safety of ordinary persons. You will be given an Apartment Condition Statement on or before move-in. Within 15 days after move-in, you must sign and note on the form all defects or damage and return it to our representative. Otherwise, everything will be considered to be in a clean, safe, and good working condition.

You must use customary diligence in maintaining the apartment and not damaging or littering the common areas. Unless authorized by statute or by us in writing, you must not perform any repairs, painting, wallpapering, carpeting, electrical changes, or otherwise alter our property. No holes or stickers are allowed inside or outside the apartment. But we'll permit a reasonable number of small nail holes for hanging pictures on sheetrock walls and in grooves of wood-paneled walls, unless our rules state otherwise. No water furniture, washing

machines, additional phone or TV-cable outlets, alarm systems, or lock changes, additions, or rekeying is permitted unless statutorily allowed or we've consented in writing. You may install a satellite dish or antenna provided you sign our satellite dish or antenna lease addendum which complies with reasonable restrictions allowed by federal law. You agree not to alter, damage, or remove our property, including alarm systems, smoke alarm systems, smoke detectors and carbon monoxide detectors, furniture, telephone and cable TV wiring, screens, locks, and security devices. When you move in, we'll supply light bulbs for fixtures we furnish, including exterior fixtures operated from inside the apartment; after that, you'll replace them at your expense with bulbs of the same type and wattage. Your improvements to the apartment (whether or not we consent) become ours unless we agree otherwise in writing.

**24. REQUESTS, REPAIRS, AND MALFUNCTIONS.** IF YOU OR ANY OCCUPANT NEEDS TO SEND A NOTICE OR REQUEST--FOR EXAMPLE, FOR REPAIRS, INSTALLATIONS, SERVICES, OR SECURITY-RELATED MATTERS--IT MUST BE SIGNED AND IN WRITING TO OUR DESIGNATED REPRESENTATIVE (except in case of fire, smoke, gas, explosion, overflowing sewage, uncontrollable running water, electrical shorts, or crime in progress). Our written notes on your oral request do not constitute a written request from you.

Our complying with or responding to any oral request regarding security or non-security matters doesn't waive the strict requirement for written notices under this Lease Contract. You must promptly notify us in writing of: water leaks; mold; electrical problems; malfunctioning lights; broken or missing locks or latches; the presence of bugs, insects, vermin, or other pests; and other conditions that pose a hazard to property, health, or safety. We may change or install utility lines or equipment serving the apartment if the work is done reasonably without substantially increasing your utility costs. We may turn off equipment and interrupt utilities as needed to avoid property damage or to perform work. If utilities malfunction or are damaged by fire, water, or similar cause, you must notify our representative immediately. Air conditioning problems are normally not emergencies. If air conditioning or other equipment malfunctions, you must notify our representative as soon as possible on a business day. We'll act with customary diligence to make repairs and reconnections. Rent will not abate in whole or in part, except as allowed by state law.

If fire or catastrophic damage totally destroys the apartment, or repair is beyond reason we may terminate this Lease Contract within a reasonable time by giving you written notice. If the Lease Contract is so terminated, we'll refund prorated rent and all deposits, less lawful deductions.

**25. ANIMALS.** *No animals (including mammals, reptiles, birds, fish, rodents, and insects) are allowed, even temporarily, anywhere in the apartment or apartment community unless we've so authorized in writing.* If we allow an animal, you must sign a separate animal addendum, which may require additional rents, fees or other charges. You must remove an illegal animal within 24 hours of notice from us, or you will be considered in default of this Lease Contract. We will authorize a support animal for a disabled (handicapped) person. We may require a written statement from a qualified professional verifying the need for the support animal. You must not feed stray or wild animals.

If you or any guest or occupant violates animal restrictions (with or without your knowledge), you'll be subject to charges, damages, eviction, and other remedies provided in this Lease Contract. If an animal has been in the apartment at any time during your term of occupancy (with or without our consent), we'll charge you for defleaing, deodorizing, and shampooing. Initial and daily animal-violation charges and animal-removal charges are liquidated damages (for our time, inconvenience, and overhead (except for attorney's fees and litigation costs) in enforcing animal restrictions and rules. We may remove an unauthorized animal by following the procedures of paragraph 30.

**26. WHEN WE MAY ENTER.** If you or any guest or occupant is present, then repairers, servicers, contractors, our representatives, or other persons listed in (2) below may peacefully enter the apartment at reasonable times and not with less than 24 hours notice for the purposes listed in (2) below. If nobody is in the apartment, then such persons may enter peacefully and at reasonable times and not with less than 24 hours notice by duplicate or master key (or by breaking a window or other means when necessary) if:

0516201405350 MA06012450

(1) written notice of the entry is left in a conspicuous place in the apartment immediately after the entry; *and*

(2) entry is for: inspecting the apartment, making repairs or showing apartment to prospective residents (after move-out or vacate notice has been given), purchasers or mortgage lenders (or their agents), or verifying compliance with this Lease Contract.

27. **MULTIPLE RESIDENTS OR OCCUPANTS.** Each resident is jointly and severally liable for all Lease Contract obligations. If you or any guest or occupant violates the Lease Contract or rules, all residents are considered to have violated the Lease Contract. Our requests and notices (including sale notices) to any resident of your apartment constitute notice to all residents and occupants. Notices and requests from any resident or occupant (including notices of Lease Contract termination, repair requests, and entry permissions) constitute notice from all residents. In eviction suits, each resident hereby appoints all other residents of your apartment as an agent authorized to receive notices and service of process. Security deposit refunds may be by one check jointly payable to all residents; the check and any deduction itemizations may be mailed to one resident only.

28. **REPLACEMENTS AND SUBLETTING.** Replacing a resident, subletting, or assignment is allowed only when we consent in writing. If departing or remaining residents find a replacement resident acceptable to us before moving out and we consent in writing to the replacement, subletting, or assignment, then:

(1) a reletting charge *will not* be due;

(2) an administrative (paperwork) and/or transfer fee *will* be due, and a rekeying fee *will* be due if rekeying is requested or required; and

(3) you *will* remain liable for all Lease Contract obligations for the rest of the original Lease Contract term.

**Procedures for Replacement.** If we approve a replacement resident, then, at our option: (1) the replacement resident must sign this Lease Contract with or without an increase in the total security deposit; *or* (2) the remaining and replacement residents must sign an entirely new Lease Contract. The departing resident will no longer have a right to occupancy, but will remain liable for the remainder of the original Lease Contract term unless we agree otherwise in writing-even if a new Lease Contract is signed.

## Responsibilities of Owner and Resident

29. **RESPONSIBILITIES OF OWNER.** Subject to Chapter 410.000 of the Sanitary Code, we'll act with customary diligence to:

(1) keep common areas reasonably clean, subject to paragraph 23;

(2) maintain building fixtures, furniture, hot water, heating and A/C equipment;

(3) comply with applicable federal, state, and local laws regarding safety, sanitation, and fair housing; and

(4) make all legally required repairs, subject to your obligation to pay for damages for which you are liable.

30. **DEFAULT BY RESIDENT.** You'll be in default if you or any guest or occupant violates any terms of this Lease Contract including but not limited to the following violations: (1) you don't pay rent or other amounts that you owe when due; (2) you or any guest or occupant violates the apartment rules, or fire, safety, health, or criminal laws, regardless of whether or where arrest or conviction occurs; (3) you abandon the apartment; (4) you give incorrect or false answers in a rental application; (5) you or any occupant is arrested, convicted, or given deferred adjudication for a felony offense involving actual or potential physical harm to a person, or involving possession, manufacture, or delivery of a controlled substance, marijuana, or drug paraphernalia as defined by Massachusetts law; (6) any illegal drugs or paraphernalia are found in your apartment; (7) you or any guest or occupant engages in any of the prohibited conduct described in Paragraph 18; or (8) you or any occupant, in bad faith, makes an invalid complaint to an official or employee of a utility company or the government.

**Eviction.** *If you default, we may end your right of occupancy by giving you a 14 day written notice to vacate in the event that the default is due to your non-payment of rent, or a 7 day written notice to vacate in the event that the default is due to any other provision of this Lease.* Notice may be by: (1) regular mail; (2) personal delivery to any resident; (3) personal delivery at the apartment to any occupant over 16 years old; (4) sliding the notice under the main entry door and into the apartment; or (5) by any other service available under Massachusetts law. Termination of your possession rights or subsequent reletting doesn't release you from liability for future rent or other Lease Contract obligations. After giving notice to vacate or filing an eviction suit, we may still accept use and

occupancy fees or other sums due; the filing or acceptance doesn't waive or diminish our right of eviction, or any other contractual or statutory right. If your one (1) year lease has expired, we reserve the right to evict you even if we continue to accept sums for use and occupancy only.

**Holdover.** You or any occupant, invitee, or guest must not hold over beyond the date contained in your move-out notice or our notice to vacate (or beyond a different move-out date agreed to by the parties in writing). If a holdover occurs, then (1) you and the occupancy monthly rate during the holdover period will be increased by 25% over the then-existing market rent, without notice; (2) you will be liable to us for all use and occupancy fees for the full term of the previously signed Lease Contract of a new resident who cannot occupy because of the holdover--subject to the landlord's duty to re-let or mitigate; and (3) at our option we may extend the Lease Contract term for up to one month by delivering written notice to you or your apartment while you continue to hold over.

**Other Remedies.** We may report unpaid amounts to credit agencies. If you default and move out early, you will pay us any amounts stated to be rental discounts in paragraph 10, concessions provided in any concession addendum attached to this lease, in addition to any other sums due. Upon your default, we have all legal remedies, including, but not limited to, Lease Contract termination, pursuit of an eviction, and reimbursement for any and all attorney's fees and/or litigation costs/expenses. Late charges are liquidated damages for our time, inconvenience, and overhead in collecting late rent (but are not for attorney's fees and litigation costs). Any and all amounts which remain unpaid for thirty (30) days from the date due shall bear interest at 18% per year, unless it exceeds the maximum rate permitted by law, in which event interest shall accrue at the highest amount permitted by law. You shall be responsible for any and all attorney's fees, expenses, or other costs incurred by the Landlord to enforce any provision of this Lease whether related to your conduct, or the conduct of your household member(s), guest(s) and/or invitee(s).

**Mitigation of Damages.** If you move out early, you'll be subject to paragraph 11 and all other remedies. We'll exercise customary diligence to relet and minimize damages. We'll credit all subsequent rent that we actually receive from subsequent residents against your liability for any sums due including all reletting costs.

## General Clauses

31. **MISCELLANEOUS.** *Neither we nor any of our representatives have made any oral promises, representations, or agreements. This Lease Contract is the entire agreement between you and us. Our representatives (including management personnel, employees, and agents) have no authority to waive, amend, or terminate this Lease Contract or any part of it, unless in writing, and no authority to make promises, representations, or agreements that impose security duties or other obligations on us or our representatives unless in writing.* No action or omission of our representative will be considered a waiver of any subsequent violation, default, or time or place of performance. Our not enforcing or belatedly enforcing written-notice requirements, rental due dates, acceleration, liens, or other rights isn't a waiver under any circumstances. Written notice to or from our managers constitutes notice to or from us. Any person giving a notice under this Lease Contract should retain a copy of the memo, letter, or fax that was given. Fax signatures are binding. All notices must be signed.

Exercising one remedy won't constitute an election or waiver of other remedies. All remedies are cumulative. No employee, agent, or management company is personally liable for any of our contractual, statutory, or other obligations merely by virtue of acting on our behalf. This Lease Contract binds subsequent owners. Neither an invalid clause nor the omission of initials on any page invalidates this Lease Contract. All notices and documents may be in English and, at our option, in any language that you read or speak. All provisions regarding our non-liability and non-duty apply to our employees, agents, and management companies. This Lease Contract is subordinate or superior to existing and future recorded mortgages, at lender's option. All Lease Contract obligations must be performed in the county where the

apartment is located. In the event that you commence any litigation against us, and you fail to obtain judgment in your favor, you agree to reimburse us for any and all attorney fees and costs that we incur in relation to the defense of such action.

Cable channels that are provided may be changed during the Lease Contract term if the change applies to all residents. Utilities may be used only for normal household purposes and must not be wasted. If your electricity is ever interrupted, you must use only battery-operated lighting.

All discretionary rights reserved for us within this Lease Contract or any accompanying addenda are at our sole and absolute discretion.

**Obligation to Remove Personal Property Upon Vacating.** Resident shall remove any and all personal property from the apartment upon vacating and/or relinquishing possession of same. In the event that the Resident vacates the premises leaving any personal property therein, same may be deemed abandoned/trash, and may be discarded by the landlord at the Resident's expense. Cost for removal shall be in addition to any and all other sums due to the landlord pursuant to the Lease.

32. **PAYMENTS.** At our option and without notice, we may apply money received (other than utility payments subject to governmental regulations) first to any of your unpaid obligations, then to current rent-regardless of notations on checks or money orders and regardless of when the obligations arose. All sums other than rent are due upon our demand. After the due date, we do not have to accept the rent or any other payments.

0516201405350 4MA06012450

Andre Bisasor, Natalie Anderson ___ b.
© 2013, National Apartment Association, Inc. - 5/2013, Massachusetts

**33. SECURITY GUIDELINES.** We'd like to give you some important safety guidelines. We recommend that you follow these guidelines and use common sense in practicing safe conduct. Inform all other occupants in your dwelling, including any children you may have, about these guidelines.

**PERSONAL SECURITY--WHILE INSIDE YOUR APARTMENT**

1. Lock your doors and windows--even while you're inside.

2. Engage the keyless deadbolts on all doors while you're inside.

3. When answering the door, see who is there by looking through a window or peephole. If you don't know the person, first talk with him or her without opening the door. *Don't open the door if you have any doubts.*

4. If children (who are old enough to take care of themselves) are left alone in your apartment, tell them to use the keyless deadbolt and refuse to let anyone inside while you are gone--regardless of whether the person is a stranger or an apartment maintenance or management employee.

5. Don't put your name,address, or phone number on your key ring.

6. If you're concerned because you've lost your key or because someone you distrust has a key, ask the management to rekey the locks.

7. Dial 911 for emergencies. If the 911 number does not operate in your area, keep phone numbers handy for the police, fire, and emergency medical services. If an emergency arises, call the appropriate governmental authorities first, then call the management.

8. Check your smoke detector monthly to make sure it is working properly and the batteries are still okay.

9. Check your doorlocks, window latches, and other devices regularly to be sure they are working properly.

10. If your doors or windows are unsecure due to break-ins or malfunctioning locks or latches, stay with friends or neighbors until the problem is fixed.

11. Immediately report to management--in writing, dated and signed--any needed repairs of locks, latches, doors, windows, smoke detectors, and alarm systems.

12. Immediately report to management--in writing, dated and signed--any malfunction of other safety devices outside your apartment, such as broken gate locks, burned-out lights in stairwells and parking lots, blocked passages, broken railings, etc.

13. Close curtains, blinds, and window shades at night.

14. Mark or engrave your driver's license number or other identification on valuable personal property.

**PERSONAL SECURITY--WHILE OUTSIDE YOUR APARTMENT**

15. Lock your doors while you're gone. Lock any doorhandle lock, keyed deadbolt lock, sliding door pin lock, sliding door handle latch, and sliding door bar that you have.

16. Leave a radio or TV playing softly while you're gone.

17. Close and latch your windows while you're gone, particularly when you're on vacation.

18. Tell your roommate or spouse where you're going and when you'll be back.

19. Don't walk alone at night. Don't allow your family to do so.

20. Don't hide a key under the doormat or a nearby flowerpot. These are the first places a burglar will look.

21. Don't give entry keys, codes or electronic gate cards to anyone.

22. Use lamp timers when you go out in the evening or go away on vacation. They can be purchased at most hardware stores.

23. Let the manager and your friends know if you'll be gone for an extended time. Ask your neighbors to watch your apartment since the management cannot assume that responsibility.

24. While on vacation, temporarily stop your newspaper and mail delivery, or have your mail and newspaper picked up daily by a friend.

25. Carry your door key in your hand, whether it is daylight or dark, when walking to your entry door. You are more vulnerable when looking for your keys at the door.

**PERSONAL SECURITY--WHILE USING YOUR CAR**

26. Lock your car doors while driving. Lock your car doors and roll up the windows when leaving your car parked.

27. Don't leave exposed items in your car, such as cassette tapes, wrapped packages, briefcases, or purses.

28. Don't leave your keys in the car.

29. Carry your key ring in your hand whenever you are walking to your car--whether it is daylight or dark and whether you are at home, school, work, or on vacation.

30. Always park in a well-lighted area. If possible, try to park your car in an off-street parking area rather than on the street.

31. Check the backseat before getting into your car.

32. Be careful when stopping at gas stations or automatic-teller machines at night--or anytime when you suspect danger.

**PERSONAL SECURITY AWARENESS**

*No security system is failsafe. Even the best system can't prevent crime. Always act as if security systems don't exist since they are subject to malfunction, tampering, and human error. We disclaim any express or implied warranties of security. The best safety measures are the ones you perform as a matter of common sense and habit.*

**34. MOVE-OUT NOTICE.** <u>Before moving out, you must give our representative advance written move-out notice as provided below.</u> Your move-out notice will not release you from liability for the full term of the Lease Contract or renewal term. You will still be liable for the entire Lease Contract term if you move out early (paragraph 20) except under the military clause (paragraph 21). YOUR MOVE-OUT NOTICE MUST COMPLY WITH EACH OF THE FOLLOWING:

- <u>We must receive advance written notice of your move-out date.</u> The advance notice must be at least the number of days of notice required in paragraph 3. Oral move-out notice will not be accepted and will not terminate your Lease Contract.

- Your move-out notice must not terminate the Lease Contract sooner than the end of the Lease Contract term or renewal period.

YOUR NOTICE IS NOT ACCEPTABLE IF IT DOES NOT COMPLY WITH ALL OF THE ABOVE. Please use our written move-out form. You must obtain from our representative written acknowledgment that we received your move-out notice.

**35. MOVE-OUT PROCEDURES.** The move-out date can't be changed unless we and you both agree in writing. You won't move out before the Lease Contract terms or renewal period ends unless you continue to pay rent until the conclusion of the lease term or the apartment is relet, which ever occurs first. Early move-out may result in reletting charges under paragraphs 11 and 30. You may not apply any security deposit to rent without the landlord's written consent. You won't stay beyond the date you are supposed to move out. All residents, guests, and occupants must abandon the apartment before the 30-day period for deposit refund begins. You must give us, in writing, each resident's forwarding address.

**36. CLEANING.** You must thoroughly clean the apartment, including doors, windows, furniture, bathrooms, kitchen appliances, patios, balconies, garages, carports, and storage rooms. You must follow move-out cleaning instructions if they have been provided. If you don't clean adequately, you'll be liable for reasonable cleaning charges.

**37. MOVE-OUT INSPECTION.** You should meet with our representative for a move-out inspection. Our representative has no authority to bind or limit us regarding deductions for repairs, damages, or charges. Any statements or estimates by us or our representative are subject to our correction, modification, or disapproval before final refunding or accounting.

**38. SECURITY DEPOSIT DEDUCTIONS AND OTHER CHARGES.** You'll be liable for the following charges, if applicable: unpaid rent; repairs or damages caused by negligence, carelessness, accident, or abuse, including stickers, scratches, tears, burns, stains, or unapproved holes; replacement cost of our property that was in or attached to the apartment and is missing; replacing missing smoke-detector batteries; unreturned keys; missing or burned-out light bulbs; removing unauthorized security devices or alarm systems and agreed reletting charges, or as otherwise authorized by law. Your security deposit will be handled pursuant to MGL ch. 186 sec 15B, however we reserve the right to pursue any damages that exceed the amount of the security deposit due to your acts or those of your occupants or guests under applicable law (whether a security deposit is held or not).

**39. DEPOSIT RETURN, SURRENDER, AND ABANDONMENT.** We'll mail you your security deposit refund (less lawful deductions) and an itemized accounting of any deductions to the extent required by statute no later than 30 days after surrender or abandonment, unless statutes provide otherwise.

0516201405350 5MA06012450

Andre Bisasor, Natalie Anderson

© 2013, National Apartment Association, Inc. - 5/2013, Massachusetts

## Signatures, Originals and Attachments

**40. ORIGINALS AND ATTACHMENTS.** This Lease Contract has been executed in multiple originals, each with original signatures-one for you and one or more for us. Our rules and community policies, if any, will be attached to the Lease Contract and given to you at signing. When an IApartment Condition Statement is completed, both you and we should retain a copy. The items checked below are attached to this Lease Contract and are binding even if not initialed or signed.

- ☐ Animal Addendum
- ☒ Apartment Condition Statement
- ☐ Mold Addendum
- ☐ Enclosed Garage, Carport, or Storage Unit Addendum,
- ☐ Community Policies Addendum
- ☐ Lease Contract Guaranty (_____ guaranties, if more than one)
- ☐ Notice of Intent to Move Out Form
- ☐ Parking Permit or Sticker (quantity:_____ )
- ☐ Satellite Dish or Antenna Addendum
- ☐ Asbestos Addendum (if asbestos is present)
- ☐ Lead Hazard Information and Disclosure Addendum (federal)
- ☒ Utility Addendum
- ☐ Remote Control, Card, or Code Access Gate Addendum,
- ☐ Lease Contract Buy-Out Agreement
- ☐ Intrusion Alarm Addendum
- ☐ Other _____ **Water/Sewer Addendum** _____
- ☐ Other _____

**Name and address of locator service (if applicable)**

_____
_____
_____

---

You are legally bound by this document. Please read it carefully.

Before submitting a rental application or signing a Lease Contract, you may take a copy of these documents to review and/or consult an attorney.

Additional provisions or changes may be made in the Lease Contract if agreed to in writing by all parties.

In no event shall any of the provisions of this Lease indemnify, release, or otherwise excuse us from liability arising out of any mistake, fault, negligence or other misconduct of the landlord.

**Resident or Residents** (all sign below)

*Andre Bisaag*
*Natalie Anderson*

RAR - Jefferson at Dedham Station-MA, Inc
dba Jefferson at Dedham Station
By Greystar Management Services, LP
A Delaware limited partnership
Owner or Owner's Rep... *(signing as authorized agent for owner)*

Authorized Signer
Manager Greystar Management Services, L.P.,
a Delaware Limited Partnership
**Address and phone number of owner's representative for notice purposes**

**1000 President's Way**

**Dedham, MA 02026**

**(781) 320-1370**

Date form is filled out *(same as on top of page 1)* _____ **05/16/2014**

---

SPECIAL PROVISIONS (CONTINUED FROM PAGE 2). **If you become a month to month resident you agree to pay the prevailing market rent, as specified by Jefferson at Dedham Station, for your unit plus the then prevailing month to month premium for each month that you remain as a month to month resident. NOTICE OF ACTIVITY AND USE LIMITATIONS: This lease incorporates by reference the Notice of Activity and Use ("AUL") registered at the Norfolk County Land Court, as Document No. 1,116,347, as it may be amended from time to time. The AUL, and a summary of the AUL, are on file and available for review in the Property manager's office. The AUL allows all normal multifamily residential ses, and provides that any remaining impacted soil will remain undisturbed under buildings, asphalt and landscaping.**

By signing this temporary lease, *for 2216* we do not waive any rights
nor do we in any way agree that our lease for *3413*
is suspended or superceded.

_____
_____
_____
_____

---


172

## UTILITY ADDENDUM FOR WATER, SEWER, GAS, TRASH AND ELECTRIC SERVICE



**NATIONAL APARTMENT ASSOCIATION**

This Utility Addendum is incorporated into the Lease Contract (referred to in this addendum as "Lease Contract" or "Lease") dated **May 16, 2014** between **RAR2 Jefferson at Dedham Station Ma. Inc dba Jefferson at Dedham** ("We") and **Station**

**Andre Bisasor, Natalie Anderson** ("You") of Apt. No. **2216**
(street address) in
located at **2000 Presidents Way**
**Dedham, MA 02026** and is in addition to all terms and conditions in the Lease.

To the extent that the terms of this Utility Addendum conflict with those of the Lease, this Utility Addendum shall control.

1. Responsibility for payment of utilities will be as indicated below.
   a) **Water** service to your dwelling will be either:
      - ☐ paid by you; or
      - ☒ paid by us.
   b) **Sewer** service to your dwelling will be either:
      - ☐ paid by you; or
      - ☒ paid by us.
   c) **Gas** service to your dwelling will be paid by either:
      - ☐ paid by you; or
      - ☒ paid by us.
   d) **Trash** service to your dwelling will be either: (Landlord is responsible for units of 3 or more)
      - ☐ paid by you; or
      - ☒ paid by us.
   e) **Electric** service to your dwelling will be paid by either:
      - ☐ paid by you; or
      - ☒ paid by us.

2. When billed by us directly or through our billing company, you must pay utility bills within 30 days of the date when the utility bill is issued at the place indicated on your bill, or the payment will be late. If a payment is late, you will be responsible for a late fee in the amount of $ _____ . The late payment of a bill or failure to pay any utility bill is a material and substantial breach of the Lease and we will exercise all remedies available under the Lease, up to and including eviction for nonpayment.

3. You will be charged for the full period of time that you were living in, occupying, or responsible for payment of rent or utility charges on the dwelling. If you breach the Lease, you will be responsible for utility charges for the time period you were obligated to pay the charges under the Lease, subject to our mitigation of damages. In the event you fail to timely establish utility services, we may charge you for any utility service billed to us for your dwelling based on the sub-meter reading.

4. When you move out, you will receive a final bill.

5. We are not liable for any losses or damages you incur as a result of outages, interruptions, or fluctuations in utility services provided to the dwelling unless such loss or damage was the direct result of negligence, fault, misconduct or omissions by us or our employees. You release us from any and all such claims by a utility company or third party supplier and waive any claims for offset or reduction of rent or diminished rental value of the dwelling due to such outages, interruptions, or fluctuations not caused by us.

6. You agree not to tamper with, adjust, or disconnect any utility metering system or device. Violation of this provision is a material breach of your Lease and may subject you to eviction or other remedies available to us under your Lease and this Utility Addendum.

7. All charges for water and sewer service shall be considered part of your rent for purposes under MGL Chapter 186 and 239.

8. The following special provisions and any addenda or written rules furnished to you at or before signing will become a part of this Utility Addendum and will supersede any conflicting provisions of this printed Utility Addendum and/or the Lease Contract.

**Gas service is paid by owner. It is the responsibility of the lease holder to transfer electric service out of the property's name prior to the commencement of this lease agreement. The lease holder is responsible to ensure that electric service is not transferred back into the property's name during their occupancy. Failure to comply with this regulation will result in a $25 fee per occurence. Trash must be disposed of properly. No trash is to be set on curbs or outside of doors. For elimination of trash, the trash is to be taken directly to the trash receptacles located on the exterior of the property. If one trash compactor is out of order, the second compactor must be utilized. All boxes are to be broken down prior to disposal. Anyone improperly disposing of trash will be subject to a $25 fine per occurance.**

Resident Signature **Andre Bisasor**  Date **5/16/14**
Resident Signature **Natalie And**  Date **5/16/14**
Resident Signature _____  Date _____
Resident Signature _____  Date _____
Management _____  Date **5/16/14**

0516201405180TMA06012450
Andre Bisasor, Natalie Anderson

© 2013, National Apartment Association, Inc. - 5/2013, Massachusetts

Commonwealth of Massachusetts

## SUMMARY PROCESS (EVICTION) SUMMONS AND COMPLAINT

District Court ___ Department

Dedham ___ Division

☒ Residential

☐ Commercial

Docket No. 15-SUSU-028

(To be added by clerk's office )

Entry Date: February 9, 2015

Norfolk ___ ss

### NOTICE OF A COURT CASE TO EVICT YOU - PLEASE READ IT CAREFULLY

### ESTA ES UNA NOTIFICACION DE UN CASO EN CORTE PARA DESALOJARLE - FAVOR DE LEER EL MISMO CON CUIDADO

TO DEFENDANT(S)/TENANT(S)/OCCUPANT(S): Andre Bisasor and Natalie Anderson

ADDRESS: 3000 President's Way #2216 ___ CITY/TOWN: Dedham ___ ZIP: 02026

You are hereby summonsed to appear at a hearing before a Judge of the Court at the time and place listed below:

DAY: **Thursday** DATE: February 19, 2015 ___ TIME: **10:00 AM** COURT NAME: Dedham District Court

COURT ADDRESS: 631 High St. Dedham, MA 02026 ___ ROOM: Courtroom 1

to defend against the complaint of PLAINTIFF/LANDLORD/OWNER: ___

Greystar Management Services, L.P. as agent for owner RAR2 Jefferson at Dedham Station MA, Inc. ___ of

STREET ___ 1000 Presidents Way ___ CITY/TOWN: Dedham ___ ZIP: 02026

that you occupy the premises at ___ 3000 President's Way #2216, MA 02026 ___ .

being within the judicial district of this court, unlawfully and against the right of said Plaintiff/Landlord/Owner

because: ___ Failure to vacate pursuant to a lawful notice terminating tenancy.

and further, that $ ___ N/A ___ rent is owed according to the following account:

WITNESS:

**Mary Hogan Sullivan**

First or Chief Justice

Donna M Ashton

Printed Name of Plaintiff or Attorney

Signature of Plaintiff or Attorney

February 2, 2015

Date of Signature of Plaintiff or Attorney

BBO # 634984

**ACCOUNT ANNEXED** (itemize)

Ashton Law PC, 28 Church St. #10

Address of Plaintiff or Attorney

Winchester, MA 01890 (781) 756-6600

Telephone Number of Plaintiff or Attorney

**NOTICE TO EACH DEFENDANT/TENANT/OCCUPANT**: At the hearing on ___ February 19, 2015 you (or your attorney) must appear in person to present your defense. You (or your attorney) must also file a written answer to this complaint. An answer is your response stating the reason(s) why you should not be evicted and may, in residential cases, include any claims you have against the Landlord. (An Answer Form is available in the **clerk's office** whose telephone number is **781 329-4777 ext. 320**.) You must file (deliver or mail) the answer with the court clerk and serve (deliver or mail) a copy on the landlord (or landlord's attorney) at the address shown above. **The Answer must be received by the court clerk and received by the landlord (or the landlord's attorney) no later than Monday,** ___ February 16, 2015 ___ , which is the first Monday after the "entry date" listed above. The entry date is the day by which your landlord must file this complaint with the court clerk.

Page 1 of 2 Pages

CC: Andre Bisasor and Natalie Anderson
2000 President's Way #3413, Dedham, MA 02026
*Via Constable*

Commonwealth of Massachusetts

## SUMMARY PROCESS (EVICTION) SUMMONS AND COMPLAINT

District Court Department

Dedham _____ Division

Norfolk _____ ss

☒ Residential
☐ Commercial

Docket No. _____
(To be added by clerk's office )

Entry Date: _____ February 9, 2015 _____

### NOTICE OF A COURT CASE TO EVICT YOU - PLEASE READ IT CAREFULLY

### ESTA ES UNA NOTIFICACION DE UN CASO EN CORTE PARA DESALOJARLE - FAVOR DE LEER EL MISMO CON CUIDADO

TO DEFENDANT(S)/TENANT(S)/OCCUPANT(S): _Andre Bisasor and Natalie Anderson_

ADDRESS: _3000 President's Way #3413_ CITY/TOWN: _Dedham_ ZIP: _02026_

You are hereby summoned to appear at a hearing before a Judge of the Court at the time and place listed below:

DAY: **Thursday** DATE: February 19, 2015 TIME: 10:00 AM COURT NAME: _Dedham District Court_

COURT ADDRESS: 631 High St. Dedham, MA 02026 ROOM: Courtroom 1

to defend against the complaint of PLAINTIFF/LANDLORD/OWNER: _____

_Greystar Management Services, L.P. as agent for owner RAR2 Jefferson at Dedham Station MA, Inc._ of

STREET _1000 Presidents Way_ CITY/TOWN: _Dedham_ ZIP: _02026_

that you occupy the premises at _3000 President's Way #3413, MA 02026_

being within the judicial district of this court, unlawfully and against the right of said Plaintiff/Landlord/Owner

because: _Non-payment of rent_

_____

and further, that $ _24,650.78_ rent is owed according to the following account:

WITNESS:
**Mary Hogan Sullivan**

First or Chief Justice

Donna M Ashton
Printed Name of Plaintiff or Attorney

_[signature]_
Signature of Plaintiff or Attorney

February 2, 2015
Date of Signature of Plaintiff or Attorney

BBO # 634984

**ACCOUNT ANNEXED** (itemize)

See Exhibit A attached hereto

_____

_____

Ashton Law PC, 28 Church St. #10
Address of Plaintiff or Attorney

Winchester, MA 01890 (781) 756-6600
Telephone Number of Plaintiff or Attorney

---

**NOTICE TO EACH DEFENDANT/TENANT/OCCUPANT:** At the hearing on _February 19, 2015_ you (or your attorney) must appear in person to present your defense. You (or your attorney) must also file a written answer to this complaint. An answer is your response stating the reason(s) why you should not be evicted and may, in residential cases, include any claims you have against the Landlord. (An Answer Form is available in the clerk's office whose telephone number is _781-329-4777 ext.314/315_.) You must file (deliver or mail) the answer with the court clerk and serve (deliver or mail) a copy on the landlord (or landlord's attorney) at the address shown above. **The Answer must be received by the court clerk and received by the landlord (or the landlord's attorney) no later than Monday,** _February 16, 2015_, which is the first Monday after the "entry date" listed above. The entry date is the day by which your landlord must file this complaint with the court clerk.

---

**Page 1 of 2 Pages**

CC: Andre Bisasor and Natalie Anderson
2000 President's Way #2216, Dedham, MA 02026
*Via Constable*

# Inspection Form

**Dedham Board of Health 781-751-9220**

**SSC 105 CMR 410.000: Chapter II, Minimum Standards of Fitness for Human Habitation**

603

| Date 11-20-14 | Time | # Occupants | # Children < 6 Years |
|---|---|---|---|
| Address 3000 Presidents Way Unit # 3413 | | City/Town Dedham | |
| Occupant Name Natile Anderson | | Phone # 617-710-7093 | |
| Owner Name KARa Jefferson at Dedham | | Phone# | |
| Owner Address 1000 Presidents Way | | City/Town Dedham Zip Code 02026 | |
| # Dwelling/ Rooming Units in Dwelling | | # Stories 4 | Floor Level of Unit 4 |
| # Sleeping Rooms 2 | | # Habitable Rooms (.400) 4 | |
| Inspector Catherine Cardinale | | Title Health Director | |

**If violations are observed and checked, describe them fully on Page 3.**

| Area or Element | Type of Violation Use blank boxes for ones not listed | Possible Code Section(s) | ✓if Violation Observed | Responsible Party | |
|---|---|---|---|---|---|
| | | | | Owner | Occupant |
| **Exterior, Yard & Porch** | Locks — Lock · Dead Bolt / Gold · | 480 | X | X | |
| | Posting, ID, Exit signs/emergency lights | 481, 483, 484 | | | |
| | Handrails, steps, doors windows, roof | 500, 501, 503 | | | |
| | Rubbish—storage and collection | 600, 601 | | | |
| | Maintenance of Area | 602 | | | |
| | | | | | |
| **Common Areas & Entry** | Light, windows | 253, 254, 501 | | | |
| | Egress | 450, 451, 452 | | | |
| | Handrails | 503 | | | |
| | | | | | |
| **Interior Halls & Stairs** | Floors, walls ceilings | 500 | | | |
| | Hallways, railings, stairs | 503 | | | |
| | Light, windows | 253, 254, 501 | | | |
| | | | | | |
| **Bedroom 1** | Location (circle): Front Rear Middle    Left Middle Right | | | Floor Level of Unit | |
| | Ventilation | 280 | | | |
| | Ceiling height — cracks- nu Grippled | 401, 402 | X | X | |
| | Windows, screen — torn — | 501, 551 | | | |
| | Door - adjust closes | | | | |
| **Bedroom 2** | Location (circle): Front Rear Middle    Left Middle Right | | | Floor Level of Unit | |
| | Ventilation | 280 | | | |
| | Ceiling height — cracks | 401, 402 | X | X | |
| | Windows, screen | 501, 551 | | | |
| | Door - tight - Heat- Adequate | | X | X | |
| **Bathroom** | Toilet, sink, shower, tub, door  whistle noise | 150 | | | |
| | Smooth, impervious surfaces | 150 | | | |
| | Lights, outlets, ventilations - Bulbs out (2) | 251, 280 | | | |
| | Floors/walls - cracks | 504 | X | X | |
| | | | | | |
| **Kitchen** | Sink, stove, oven; good repair, impervious and smooth, space refrig Dishwasher- Drain - installation - counter | 100 | | X | |
| | Lights, outlets, ventilation, windows, screens | 251, 280, 501, 551 | | | |

Rev. 5-6-10

Page 1 of ___

| Area or Element | Type of Violation — Use blank boxes for ones not listed | Applicable Code Section(s) | ✓ if Violation Observed | Responsible Party | |
|---|---|---|---|---|---|
| | | | | Owner | Occupant |
| | | | | | |
| Kitchen, cont. | Ceiling height | 401, 402 | | | |
| | Floor | 504 | | | |
| | *HATES* | | X | X | |
| Living room and Dining Room | Lights, outlets, ventilation | 250, 280 | | | |
| | Ceiling height | 401, 402 | | | |
| | Windows/screens *2 windows tight need adjustment* | 501, 551 | | | |
| | | | | X | |
| Basement | Maintenance | 500 | | | |
| | Watertight | 500 | | | |
| | Lighting | 253 | | | |
| | | | | | |
| Water | Source (circle): Public   Private | | | | |
| | Must be potable | 180 | | | |
| | Quantity, pressure | 180 | | | |
| | Responsible for paying MGL ch 186 s 22, metering | 354 | | | |
| | | | | | |
| Hot Water | Fuel Type (circle): Natural Gas   Oil   Electric   Other | Temp.: | °f  Location taken: | | |
| | Quantity, pressure, 110 F min, 130 max | 190 | | | |
| | Venting  *could not access* | 202 | | | |
| Heating | Type (circle): Forced Hot Water   Forced Hot Air   Steam   Electric | | | | |
| | No portable units | 200 | | | |
| | "Habitable room and every room with toilet, shower, tub" | 201 | | | |
| | • 68 F 7 am to 11 pm, 64 F 11:01 pm to 6:59 am, except 6/15-9/15 | | | | |
| | • 78 F max in heating season/measure 5 feet wall, 5 feet floor | | | | |
| | Venting, metering | 202, 354, 355 | | | |
| | | | | | |
| Electrical | Type (circle): 110   220   Amp: | | | | |
| | Amperage, temporary wiring, metering | 250, 255, 256, 354 | | | |
| | | | | | |
| Drainage, Plumbing | Type (circle): Public   Private | | | | |
| | Sanitary drainage required and maintained | 300, 351 | | | |
| | | | | | |
| Smoke & CO Detectors | Required & operational | 482 | | | |
| Pests | Free of pests (rodents, skunks, cockroaches, insects) | 550 | | | |
| | Structural maintenance and elimination of harborage | 550 | | | |
| | *complaint of bugs - none at time* | | | | |
| Asbestos or Lead Paint | | 353, 502 | | | |
| Curtailment | | 620 | | | |
| Access | | 810 | | | |
| Other | | | | | |

| Referral: | ☐ Electric | ☐ Fire | ☐ Plumbing | ☑ Building | ☐ Other |
|---|---|---|---|---|---|
| This inspection report is signed and certified under the pains and penalties of perjury. | | | | | |
| **Inspector Signature** | | | | | |
| **Occupant or Occupant's Representative Signature** | | | | | |
| **Reinspection Date** | | | **Time** | | |

### Written description of any violation(s) checked above

Include Area or Element, code citation and a description of the condition(s) that constitute the violation. You may include remedies that would be an acceptable means of achieving compliance with 105 CMR 410.000.

NOTE: *indicates that this housing inspection **has** revealed conditions which may endanger or materially impair the health, safety, and well-being of any person(s) occupying the premises

| Area/Element, Code Citation and Description of Violation | Acceptable Remedies |
|---|---|
| Bugs- through cracks- Kitchen | |
| numerous- cracks → throughout / Settling? | |
| Ice maker- cleaned? filter change - odor? | |
| Vent screen- Above door- clean - Hallway exterior possible water leak | |
| Tighten bottom door seal-? | |
| - to see how water is metered. | |
| | |
| | |
| | |
| | |
| | |
| C/O Thompson Reuters Dept 207 P.O. Box 4900 Scottsdale, AZ 85261-4900 | |

Rev. 5-6-10

Page 3 of ___

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In Re: | ) |
| | ) |
| | ) |
| Andre Bisasor, | ) |
| | ) |
| Debtor | ) |

Chapter   13
Case No.  15-13369

## SUPPLEMENTAL FILING TO THE OBJECTION TO DEBTOR'S CERIFICATION PURSUANT TO 11 U.S.C. 362(*l*)(l)(A)
### *OR IN THE ALTERNATIVE*
GREYSTAR MANAGEMENT SERVICES LP AS AGENT FOR OWNER RAR2 JEFFERSON AT DEDHAM STATION MA INC. REQUEST FOR RELIEF FROM THE AUTOMATIC STAY REGARDING APARTMENT #3413 & #2216

TO THE HONORABLE JOAN N. FEENEY, BANKRUPTCY JUDGE FOR THE REFERENCED MATTER:

As a result of the hearing and subsequent order of September 17, 2015, Greystar Management Services LP as agent for Owner RAR2 Jefferson at Dedham Station MA Inc. ("Greystar"), submits the following additional support in response to the Court's inquiry as to the existence and status of the prepetition Judgments for possession in the State Courts.

### Procedural History

1. Both Judgments entered on May 27, 2015.

2. The Debtor requested an appeal of the District Court's entry of default judgments and denial of a motion to continue on June 8, 2015.

3. The Debtor requested a waiver of the Appeal Bond in the District Court which was denied, and the Appeal Bond was set at $32,000 on June 8, 2015.

4. The Debtor requested a review by the Appellate Division of the denial of the waiver of the Appeal Bond and amount of the Appeal Bond.

5. The Appellate Division reviewed the appeal bond, as permitted by MGL ch 239 sec 5 and increased the amount of the bond to reflect the additional two months of use of the apartment, as well as ordering use and occupancy to be paid during the pendency

1

179

of the appeal on July 2, 2015.  The *Decision and Order* of the Appellate Division issued on July 27, 2015.  **(Attached hereto as Exhibit A).**

6. Pursuant to MGL ch. 239 sec 5, the Debtor had 5 days from receipt of the notice of the order to pay the bond.  The Defendants failed to post the Bond within 5 business days after they acknowledged receipt of the Notice from the Appellate Division.

7. Pursuant to MGL ch 239 sec 5(h), the Defendants' Appeal in the District Court was dismissed and Executions issued on Friday, August 7, 2015. **(See Docket Attached hereto as Exhibit B).**

8. The Defendants were served with 48 Hours Business-Days Notice on Friday August 7, 2015 that the Levy on the Execution would take place on Wednesday August 12, 2015 at 9:00 a.m..

9. The Defendants appeared on August 7, 2015 at 4:25 p.m. in the District Court requesting an Emergency Motion to Stay the Levy of the Execution for Possession and Damages pursuant to MGL 239.  The Defendant did not specify under what section of chapter 239 he was requesting.  The Motion was denied on August 10, 2015.

10. The Debtor filed an Emergency Motion to Stay the Levy of Execution for Possession in the Appeals Court on August 11, 2015 in the late afternoon.  Judge Katzmann granted a brief stay to conduct a hearing on August 15, 2015.

11. A hearing was held before Judge Katzmann on August 15, 2015.  The Debtor requested and was granted the opportunity to supplement his filings on that day.  The Debtor supplemented his initial submission with over 450 additional pages, which included transcripts of the District Court proceedings.

12. Judge Katzmann's order denied the Debtor's appeal on the Motion to Levy but allowed additional time for the Debtor to move himself out of the unit until August 27, 2015.

13. The Debtor filed an emergency request for review to the Single Justice of the Supreme Judicial Court of Massachusetts regarding the Appeals Court denial of the stay on August 27, 2015 at approximately 12:30 p.m..

14. The Single Justice denied the Debtor's request at approximately 4:00 p.m. on August 27, 2015.

15. The Debtor filed the Petition at 4:51 p.m. on August 27, 2015.

2

<u>Argument</u>

As demonstrated by the procedural history, Debtor's filing of this Bankruptcy petition is nothing more than a final attempt to delay the levy on Greystar's Execution for Possession. The Debtor has failed to pay rent and or use and occupancy for 14 months, failed to post an appeal bond when ordered by the Court on May 27, 2015 and July 27, 2015 and now, at the eleventh hour, less than twenty four (24) hours before the scheduled levy, files a Bankruptcy petition.

Debtor's appeals in the District Court on the underlying Summary Process cases were dismissed on August 7, 2015, by operation of law for failing to pay the required appeal bond. MGL ch 239 sec 5(h) (District Court Dockets, Attached as **Exhibit B**). The Judgments for Possession are valid final judgments in both summary process cases.

> *Unif. Summ. Process R. Rule 13:   Executions <u>are not to issue</u> prior to the time limits imposed by applicable laws and the relevant provisions of Rules 60 and 62 of the Massachusetts Rules of Civil Procedure. (emphasis added).*

Had the Debtor retained any avenue of appeal of the District Court rulings, the Executions would not have been issued by the District Court, but rather would have been stayed by operation of the detailed provisions of MGL ch 239 sec 5. That statute intertwines the setting of an appeal bond (or waiver thereof) with the stay of the Execution pending a determination of that appeal. The Debtor has exhausted his claims under MGL ch. 239 sec. 5 because he failed to pay the appeal bond, and, therefore, his appeal was dismissed and the Executions properly issued. <u>In the Matter of an Appeal Bond</u>, 428 Mass 1013 (1998). The dismissal of an appeal based on the failure to pay an appeal bond which was set, and then further reviewed, is dictated by the statute. MGL ch 239 sec. 5, <u>PGR Management Company v. Credele</u> 427 Mass 636 (1998).

There is only one level of review of an appeal bond and/or waiver of appeal bond under

MGL ch. 239 sec. 5, which if tendered or waived affords a stay of the Execution. <u>Ford v.

Braman</u>, 30 Mass App Ct 968, 969 (1991). After the Appellate Division's review, if the Debtor

was still aggrieved of the Bond, he can bring forward an appeal on the limited bond issue, but at

no time either in the statute or in the cases is it contemplated that a further Stay of Execution for

Possession would be granted pending that full review; in fact the Supreme Judicial Court

contemplated the dismissal and refers to the procedure as "suffering the dismissal". <u>In the Matter

of an Appeal Bond</u>, 428 Mass 1013 (1998). The appeal of the denial of the waiver or amount of

the appeal bond is not an appeal of the merits of the underlying Judgment. After the dismissal

of the Appeal and issuance of the Execution, there is yet an additional avenue for requested relief

from the Execution of Possession, to which the Debtor availed himself. Pursuant to MGL ch 239

secs 9 & 10 a stay could have been granted by the District and then the appellate courts, but all

three motions for stay of the Execution were denied by the state court. The Massachusetts

Appeals Court explained its rationale for the denial of the stay because of the futility of the

Debtor's claim of an abuse of discretion by the District Court judge. **(Exhibit C).** The SJC

Single Justice likewise denied a stay of Execution. That left no impediment under state law to

executing on the Judgments. The Debtor's ability to keep filing papers in the appellate courts

does not detract from the finality of the Judgment for Possession.

> *Unif. Summ. Process R. Rule 12: Any judgment in a summary process action,
> <u>except a default judgment</u>, may be appealed by an aggrieved party in accordance
> with the provisions of the law. (emphasis added)*

4

The Debtor's claim regarding an appeal based on the denial of a motion to continue a hearing is moot. The default Judgment would not be disturbed upon appeal, as there is no right to appeal a default in a summary process action. Unif. Summ. Process R. Rule 12.[1]

The Debtor's final argument attempting to cast doubt on the "finality" of the Execution is that there is an outstanding Motion to Remove the Default unacted upon in the District Court. As evidenced by the Court's decision, this argument is also misplaced. The Motion was implicitly acted upon by Judge Ziemiann's ruling on July 2, 2015, which was after the filing of the Debtor's Motion and after the Debtor was afforded an additional hearing, which notably he failed to attend. That ruling, titled as "Memorandum of Decision Concerning Entry of Default Judgment" details the history and rationale for the entry of the Default and upholds the Default Judgments entered on both cases. Additionally, any relief from Judgment that the Debtor would seek is subject to Unif. Summ. Process R. 11, which directly refers to Mass Rules of Civil Pro. Rule 60. Rule 60(b) specifically states that "[a] motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation".

The statue does not require that the prepetition judgment for possession be "final." The Debtor himself believes the Judgment to fall under the 11 USC 362(b)(22), as he filed a certification pursuant to 11 USC 362(l) under the pains and penalties of perjury, in order to avail himself of the specific carve out of the Code. Debtor's citations to cases involving automatic de novo review of Judgments (In re Alberts) and appeals periods that have not lapsed (In re Nitzsky) are not determinative of this matter. It is important to note, that Greystar holds an

---

[1] Debtor relies on Tamber v. Desrochers 45 Mass App Ct 234 (1998) which is distinguishable. In Tamber the proposed appeal was after trial and the Appeals Court found that the basis for the denial of the appeal bond waiver lacked specificity as to its rationale, as there was no rationale provided. The case at bar is based on the Debtor's appeal of a default entered in the District Court, which is not an appealable issue in Summary Process pursuant to Unif. Summ. Process R. 12. Further the detailed Memorandum of Decision Concerning Entry of Default Judgment in the instant case, provides the required rationale for the entry of the default as noted by the Single Justice of the Appeals Court, which was lacking in Tamber.

Execution for Possession, which is issued 10 days post Judgment after appellate avenues are

exhausted. In the instant case there was a span of three (3) months for the Debtor to pursue his

state court remedies before the Execution issued, and at the eleventh hour, he filed the

bankruptcy petition. 11 USC 362(l) was added to the Code pursuant to the Bankruptcy Abuse

Prevention and Consumer Protection Act of 2005 (BAPCPA) to protect against the very type of

abuse that the Debtor has proposed here. In re Griggsby, 404 B.R. 83 (Bankr.S.D.N.Y. 2009)

**(Attached Exhibit D).**

"A state court judgment issued prior to the filing of a debtor's bankruptcy case is res

judicata in the bankruptcy case, and the debtor may not relitigate issues already decided in state

court." In re Griggsby at 91, citing In re Éclair Ltd., 255 BR 121, 133 n. 23

(Bankr.S.D.N.Y.2000). The normal rule is that even judgments subject to appeal are considered

final for purposes of res judicata, at least unless the review provides for a de novo trial.

Restatement of Judgments, 2d § 13. The issue of possession is well settled in this case and may

not be collaterally attacked in this Court. The state courts had the power, ability and opportunity

to stay the levy of the Execution of Possession, but the Debtor did not meet the requirements for

a stay, either in posting the bond, or requesting a stay post issuance of the Execution. Clearly the

BAPCPA was enacted to thwart individuals like this Debtor who is using the Code to prevent

lawful exercise of a State issued Execution for possession by petitioning the Bankruptcy Court.

6

**WHEREFORE**, Greystar respectfully requests that this Court sustain the objections to

the Debtor's Certification pursuant to 11 USC 362(l).

Respectfully submitted
Greystar Management Services LP
as agent for owner RAR2-Jefferson at
Dedham Station MA, Inc.
By its attorneys,
ASHTON LAW, P.C

Donna M. Ashton
BBO# 634984
28 Church Street, Suite 10
Winchester, Massachusetts 01890
(781) 756-6600
dma@ashton-law.com

Dated: September 18, 2015

## CERTIFICATE OF SERVICE

I, Donna M. Ashton, hereby certify that on this 18th day of September, 2015, copies of the foregoing:

SUPPLEMENTAL FILING TO THE OBJECTION TO DEBTOR'S CERIFICATION
PURSUANT TO 11 U.S.C. 362(*l*)(l)(A)
*OR IN THE ALTERNATIVE*
GREYSTAR MANAGEMENT SERVICES LP AS AGENT FOR OWNER RAR2 JEFFERSON
AT DEDHAM STATION MA INC. REQUEST FOR RELIEF FROM THE AUTOMATIC
STAY REGARDING APARTMENT #3413 & #2216

were served upon the following parties of interest by through the Court's CM/ECF system:

Trustee:

Carolyn Bankowski-13
Chapter 13 Trustee Boston
P.O Box 8250
Boston, MA 02114
cbankowski@ch13boston.com

Debtor through
Debtor's Counsel:

David G. Baker
236 Huntington Avenue #306
Boston, MA 02115
david@bostonbankruptcy.org

Assistant US Trustee:

John P. Fitzgerald
John. W. McCormack Post Office and Court House
5 Post Office Square, 10th Floor, Suite 1000
Boston, MA 02109-3945

Donna M. Ashton, Esq.

# EXHIBIT A

COPY

COMMONWEALTH OF MASSACHUSETTS
APPELLATE DIVISION OF THE DISTRICT COURT DEPARTMENT
SOUTHERN DISTRICT

NORFOLK, SS.                                          APPELLATE DIVISION

GREYSTAR MANAGEMENT SERVICES, L.P.,
AS OFFICER OF OR AGENT FOR OWNER RAR2 JEFFERSON
AT DEDHAM STATION MA, INC.
V. NATALIE ANDERSON AND ANDRE BISASOR
Appellate Division No. 15-ADMS-60010
Dedham Division No. 1554SU0026

GREYSTAR MANAGEMENT SERVICES, L.P.,
AS OFFICER OF OR AGENT FOR OWNER RAR2 JEFFERSON
AT DEDHAM STATION MA, INC.
V. NATALIE ANDERSON AND ANDRE BISASOR
Appellate Division No. 15-ADMS-60011
Dedham Division No. 1554SU0028

## DECISION AND ORDER

This summary process action came on to Appellate Division, Southern District, sitting in Fall River, on the defendants' G.L. c. 239, § 5 appeal of the trial court's June 8, 2015 order denying the defendants' motion for waiver of the appeal bond in each case and setting such bond in the amount of $32,000.00 for both cases.

Written and telephone notice was provided to the parties on July 1, 2015 of a hearing before this Division on July 8, 2015. On July 6, 2015, the defendants moved to continue the hearing, which the plaintiff opposed on July 7, 2015. The hearing went forward on July 8, 2015, and only the plaintiff's counsel appeared. Following the hearing, the defendants filed a motion for rehearing on July 9, 2015, and an affidavit in support of the motion on July 10, 2015.

The statutory requirements for waiver of a G.L. c. 239, § 5 bond are indigency of the appellant and a nonfrivolous defense to be presented on appeal. After hearing and upon review of the defendants' written submissions, we are persuaded that while the defendants are indigent, they have failed to raise a defense that is not frivolous. Accordingly,

> **It is hereby ORDERED that the Clerk of the Trial Court shall make the following entry on the dockets of the above captioned cases:**
>
> (1) The defendants' motion to continue hearing is denied. (2) The defendants' motion for rehearing is denied. (3) The trial court's order of June 8, 2015, setting an appeal bond for both cases in the amount of $32,000.00, is affirmed. (4) The defendants shall also post a bond in the trial court in the amount of $4,780.00, representing two months' rent. (5) The defendants are further ordered to make monthly use and occupancy payments to the plaintiff in the amount of $2,390.00, commencing August 1, 2015, and during the pendency of the appeal.

*Greystar Mgt. Servs., LLP et al. v. Anderson & Bisasor*
Nos. 15-ADMS-60010; 15-ADMS-60011
July 27, 2015
Page 2 of 2

**HON. CHRISTOPHER D. WELCH, Justice**
**HON. KEVIN J. FINNERTY, Justice**

**DATE: JULY 27, 2015**

This certifies that this is the Decision
& Order of the Appellate Division in
this matter. A True Copy, Attest:

Brien M. Cooper, Clerk

# EXHIBIT B

## 1554SU000026 Greystar Management Services, L.P. As officer of or agent for Owner RAR2 Jefferson at Dedham Station MA, Inc. v. Bisasor, Andre

**Case Type** Summary Process
**Status Date:** 05/27/2015
**Case Judge:**
**Next Event:**
**Property Address**
3000 President's Way #3413
Dedham MA 02026

**Case Status** Disposed - Statistical Purposes
**File Date** 02/11/2015
**DCM Track:**

| All Information | Party | Judgment | Event | Docket | Disposition |
|---|---|---|---|---|---|

### Party Information

**Greystar Management Services, L.P. - Plaintiff**

**Alias**

| Attorney/Bar Code | Phone Number |
|---|---|
| Ashton, Esq., Donna M. (634984) | |

More Party Information

**Bisasor, Andre - Defendant**

**Alias**

| Attorney/Bar Code | Phone Number |
|---|---|

More Party Information

**Anderson, Natalie - Defendant**

**Alias**

| Attorney/Bar Code | Phone Number |
|---|---|

More Party Information

### Judgments

| Date | Type | Method | For | Against |
|---|---|---|---|---|
| 05/27/2015 | Judgment for Plaintiff for Possession and Rent | , after default | Greystar Management Services, L.P. | Anderson, Natalie |
| 05/27/2015 | Judgment for Plaintiff on Counterclaim | , after defendant(s) failed to appear | Greystar Management Services, L.P. | Anderson, Natalie |

### Events

| Date | Session | Location | Type | Result |
|---|---|---|---|---|
| 02/19/2015 10:00 AM | Summary Process Session | | Bench Trial (CV) | Event Continued |
| 04/09/2015 10:00 AM | Summary Process Session | | Bench Trial (CV) | Event Continued |
| 05/04/2015 03:00 PM | Summary Process Session | | Motion Hearing (CV) | Held |
| 05/07/2015 10:00 AM | Summary Process Session | | Bench Trial (CV) | Event Continued |
| 05/13/2015 02:15 PM | Summary Process Session | | Ex Parte Hearing | Held |
| 05/14/2015 10:00 AM | Summary Process Session | | Bench Trial (CV) | Event Continued |

| Date | Session | Location | Type | Result |
|------|---------|----------|------|--------|
| 05/21/2015 02:00 PM | Summary Process Session | | Status Review | Event Continued |
| 05/26/2015 09:00 AM | Summary Process Session | | Status Review | Event Continued |
| 05/28/2015 09:00 AM | Dedham Civil Jury Session | | Jury Trial (CV) | Not Held But Event Resolved |
| 06/08/2015 09:00 AM | Summary Process Session | | Status Review | Held |
| 07/02/2015 10:00 AM | Summary Process Session | | Motion Hearing (CV) | Held |
| 08/07/2015 04:25 PM | Summary Process Session | | Motion Hearing (CV) | Held |

## Docket Information

| Docket Date | Docket Text | Amount | File Ref Nbr. |
|-------------|-------------|--------|---------------|
| 02/11/2015 | Complaint filed | | 2 |
| 02/13/2015 | Appearance filed<br>On this date Wed Feb 11 00:00:00 EST 2015 Ashton, Esq., Donna M. added for Greystar Management Services, L.P. | | 1 |
| 02/13/2015 | Civil Filing Fee Surcharge due. Receipt: 39226 Date: 02/13/2015 | $0.00 | |
| 02/13/2015 | Summary Process Filing Fee due. Receipt: 39226 Date: 02/13/2015 | $0.00 | |
| 02/13/2015 | Event Scheduled<br>Event: Bench Trial (CV)<br>Date: 02/19/2015  Time: 10:00 AM<br>Result: Event Continued | | |
| 02/19/2015 | Event Scheduled<br>Event: Bench Trial (CV)<br>Date: 04/09/2015  Time: 10:00 AM<br>Result: Event Continued | | |
| 02/19/2015 | Event Resulted<br>The following event: Bench Trial (CV) scheduled for 02/19/2015 10:00 AM has been resulted as follows:<br>Result: Event Continued<br>Reason: Both Parties Request<br>Appeared: | | |
| 04/07/2015 | Event Resulted<br>The following event: Bench Trial (CV) scheduled for 04/09/2015 10:00 AM has been resulted as follows:<br>Result: Event Continued<br>Appeared: | | |
| 04/07/2015 | Event Scheduled<br>Event: Bench Trial (CV)<br>Date: 05/07/2015  Time: 10:00 AM<br>Result: Event Continued<br>Result: Event Continued | | |
| 04/10/2015 | Event Resulted<br>The following event: Bench Trial (CV) scheduled for 05/07/2015 10:00 AM has been resulted as follows:<br>Result: Event Continued<br>Appeared: | | |
| 05/04/2015 | Motion for continuance (Mass.R.Civ.P.40[b])  filed by Andre Bisasor, Natalie Anderson. | | 3 |
| 05/04/2015 | Event Scheduled<br>Event: Motion Hearing (CV)<br>Date: 05/04/2015  Time: 03:00 PM | | |
| 05/04/2015 | Event Resulted<br>The following event: Bench Trial (CV) scheduled for 05/07/2015 10:00 AM has been resulted as | | |

| Docket Date | Docket Text | Amount | File Ref Nbr. |
|---|---|---|---|
| | follows:<br>Result: Event Continued<br>Appeared: | | |
| 05/04/2015 | Event Resulted<br>The following event: Motion Hearing (CV) scheduled for 05/04/2015 03:00 PM has been resulted as follows:<br>Result: Held<br>Reason: Plaintiff's counsel not present<br>Appeared: | | |
| 05/04/2015 | Motion to continue allowed Hon. Michael J Pomarole | | |
| 05/04/2015 | No further continuances. * | | |
| 05/07/2015 | Event Scheduled<br>Event: Bench Trial (CV)<br>Date: 05/14/2015  Time: 10:00 AM<br>05/04/2015- After hearing, Andre Bisasor and Natalie Anderson's Motion for Continuance (Mass.R.Civ.P.40[b]) is ALLOWED. No further continuances.<br><br>(Honorable Michael J. Pomarole)<br>Result: Held | | |
| 05/07/2015 | Event Scheduled<br>Event: Motion Hearing (CV)<br>Date: 05/04/2015  Time: 03:00 PM<br>Result: Held | | |
| 05/11/2015 | Answer filed by Andre Bisasor, Natalie Anderson. | | 4 |
| 05/11/2015 | Counterclaim filed by Andre Bisasor, Natalie Anderson against Greystar Management Services, L.P. As officer of or agent for Owner RAR2 Jefferson at Dedham Station MA, Inc. (Uniform Summary Process Rule 5)). | | 5 |
| 05/11/2015 | Jury trial claim on all issues endorsed upon pleading by Andre Bisasor, Natalie Anderson (Uniform Summary Process Rule 8). | | 6 |
| 05/11/2015 | Motion to transfer or consolidate filed by Andre Bisasor, Natalie Anderson. | | 7 |
| 05/11/2015 | Motion to dismiss filed by Andre Bisasor, Natalie Anderson. | | 8 |
| 05/11/2015 | Interrogatories directed to Greystar Management Services, L.P. As officer of or agent for Owner RAR2 Jefferson at Dedham Station MA, Inc. filed by Andre Bisasor, Natalie Anderson; trial automatically continued until 05/28/2015 (Uniform Summary Process Rule 7(b)). | | 9 |
| 05/11/2015 | Request for production of document(s) directed to Greystar Management Services, L.P. As officer of or agent for Owner RAR2 Jefferson at Dedham Station MA, Inc. filed by Andre Bisasor, Natalie Anderson; trial automatically continued until 05/28/2015 (Uniform Summary Process Rule 7(b)). | | 10 |
| 05/13/2015 | Emergency Motion for Clarification filed by Andre Bisasor and Natalie Anderson. | | |
| 05/13/2015 | Event Resulted<br>The following event: Ex Parte Hearing scheduled for 05/13/2015 02:15 PM has been resulted as follows:<br>Result: Held<br>Reason: Plaintiff's counsel not present<br>NO ACTION TAKEN ON Emergency Motion for Clarification filed by Andre Bisasor and Natalie Anderson. | | |
| 05/14/2015 | Motion for leave of Court to file requests for discovery filed by Greystar Management Services, L.P. As officer of or agent for Owner RAR2 Jefferson at Dedham Station MA, Inc.. | | 11 |
| 05/14/2015 | Motion to amend summary process summons and complaint filed by Greystar Management Services, L.P. As officer of or agent for Owner RAR2 Jefferson at Dedham Station MA, Inc.. | | 12 |
| 05/14/2015 | Motion to strike portions of Defendans answer and counterclaim [MASS R CIV P 8(e)] and dismiss [MASS R CIV P 12(b)(1) and 12(b)(6) filed by Greystar Management Services, L.P. As officer of or agent for Owner RAR2 Jefferson at Dedham Station MA, Inc.. | | 13 |
| 05/14/2015 | | | 14 |

| Docket Date | Docket Text | Amount | File Ref Nbr. |
|---|---|---|---|
| | Motion for protective order filed by Greystar Management Services, L.P. As officer of or agent for Owner RAR2 Jefferson at Dedham Station MA, Inc.. | | |
| 05/14/2015 | Motion for reconsideration filed by Andre Bisasor, Natalie Anderson. | | 15 |
| 05/14/2015 | Motion to compel discovery and for a continuance filed by Andre Bisasor, Natalie Anderson. | | 16 |
| 05/14/2015 | Motion to allow counsel to represent defendants filed by Andre Bisasor, Natalie Anderson. | | 17 |
| 05/14/2015 | Motion to add parties filed by Andre Bisasor, Natalie Anderson. | | 18 |
| 05/14/2015 | Motion for leave of Court to file requests for discovery allowed Hon. Thomas L Finigan | | |
| 05/14/2015 | Event Resulted<br>The following event: Bench Trial (CV) scheduled for 05/14/2015 10:00 AM has been resulted as follows:<br>Result: Event Continued<br>Appeared: | | |
| 05/14/2015 | Termination notice filed (Uniform Summary Process Rule 2). | | 19 |
| 05/14/2015 | Motion to consolidate summary process filed by Andre Bisasor, Natalie Anderson. | | 25 |
| 05/19/2015 | Event Scheduled<br>Event: Ex Parte Hearing<br>Date: 05/13/2015  Time: 02:15 PM<br>Result: Held | | |
| 05/19/2015 | Event Scheduled<br>Event: Jury Trial (CV)<br>Date: 05/28/2015  Time: 09:00 AM<br>Result: Not Held But Event Resolved | | |
| 05/20/2015 | Notice concerning next court event, to wit - 05/21/2015 02:00 PM Status Review-- sent to parties.<br>05/14/2015- After motion hearing, Greystar Management Services, L.P.'s Motion for Leave of Court to File Requests for Discovery is ALLOWED.<br><br>(Honorable Thomas Finigan) | | |
| 05/21/2015 | Event Resulted<br>The following event: Status Review scheduled for 05/21/2015 02:00 PM has been resulted as follows:<br>Result: Event Continued<br>Appeared: | | |
| 05/21/2015 | Motion for leave of Court to file a motion for protective order filed by Andre Bisasor, Natalie Anderson. | | 23 |
| 05/21/2015 | Motion for leave of Court to review plaintiff's response to defendants discovery requests filed by Andre Bisasor, Natalie Anderson. | | 24 |
| 05/26/2015 | Event Resulted<br>The following event: Status Review scheduled for 05/26/2015 09:00 AM has been resulted as follows:<br>Result: Held<br>Reason: Defendant Not Present<br>Appeared: | | |
| 05/26/2015 | Affidavit and Request for Continuance Due to Illness faxed by Andre Bisasor and Natalie Anderson. | | |
| 05/26/2015 | Request for Continuance Due to Illness denied. | | |
| 05/26/2015 | Motion to amend account annex to reflect 13 months, $ 31,070.00 made in open court by Greystar Management Services, L.P. As officer of or agent for Owner RAR2 Jefferson at Dedham Station MA, Inc. and allowed. | | |
| 05/26/2015 | Military affidavit filed as to whether Andre Bisasor, Natalie Anderson is in military service (Servicemembers Civil Relief Act, P.L. 108-189 §201, 50 U.S.C. App. §421). | | 22 |
| 05/26/2015 | Default entered against Andre Bisasor, Natalie Anderson (Uniform Summary Process Rule 10 (a)). | | |

| Docket Date | Docket Text | Amount | File Ref Nbr. |
|---|---|---|---|
| 05/27/2015 | Judgment Entered:<br>Judgment for Plaintiff for Possession and Rent   , after default<br>Ziemian, Hon. Robert P<br>Judgment For: Greystar Management Services, L.P.<br>Judgment Against: Bisasor, Andre / Anderson, Natalie<br>Terms of Judgment:<br>Interest Begins: 02/11/2015        Jdgmnt Date: 05/27/2015<br>Interest Rate: .12<br>Daily Interest Rate: .000329<br>Damages:<br>Damage Amt: 31070.00              Filing Fees: 195.00<br>Costs Pd to Court: 5.00<br>Other Costs: 80.00<br>Judgment Total: 32,423.31<br>Execution entered on 08/07/2015 | | |
| 05/27/2015 | Judgment Entered:<br>Judgment for Plaintiff on Counterclaim   , after defendant(s) failed to appear<br>Ziemian, Hon. Robert P<br>Judgment For: Greystar Management Services, L.P. As officer of or agent for Owner RAR2 Jefferson at Dedham Station MA, Inc.<br>Judgment Against: Bisasor, Andre / Anderson, Natalie<br>Terms of Judgment:<br>Jdgmnt Date: 05/27/2015 | | |
| 05/27/2015 | Notice concerning next court event, to wit - 06/08/2015 09:00 AM Status Review-- sent to parties.<br>05/26/2015- After hearing, Andre Bisasor and Natalie Anderson's Request for Continuance Due to Illness is DENIED, defendant's failed to appear. Greystar Management Services, L.P.'s Motion to Amend Account Annex to Reflect 13 months, $ 31,070.00. Greystar Management Services, L.P. As officer of or agent for Owner RAR2 Jefferson at Dedham Station MA, Inc. is ALLOWED. Jury Trial<br>scheduled for 05/28/2015 is CANCELLED.<br><br><br>(Honorable Robert P. Ziemian) | | |
| 06/08/2015 | Motion  for attorney's fees filed by Greystar Management Services, L.P. As officer of or agent for Owner RAR2 Jefferson at Dedham Station MA, Inc.. | | 26 |
| 06/08/2015 | Motion  for reconsideration of defendants' affidavit and request for continuance due to illness filed by Andre Bisasor, Natalie Anderson. | | 27 |
| 06/08/2015 | Motion  to remove the default and vacate the default judgment; and or/motion for relief of judgment, pusuant to M.R.C.P. Rule 55,59, and/or 60 filed by Andre Bisasor, Natalie Anderson. EMERGENCY | | 28 |
| 06/08/2015 | Affidavit supporting facts for motion to remove default and vacate judgment; and/or motion for relief from judgment, pursuant M.R.C.P. Rule 55,59 and /or 60 [Related to apartment conditions and violations] filed by Andre Bisasor and Natalie Anderson. | | |
| 06/08/2015 | Affidavit supporting facts for motion to remove default and vacate judgment; and/or motion for relief from judgment, pursuant M.R.C.P. rule 55,59 and/or 60 [Related to procedural case history and medical situation]  filed by Andre Bisasor and Natalie Anderson. | | |
| 06/08/2015 | Notice of Appeal  filed by Andre Bisasor and Natalie Anderson. | | |
| 06/08/2015 | Motion  to waive appeal bond and other costs- Apartment 3413 filed by Andre Bisasor, Natalie Anderson. | | 29 |
| 06/08/2015 | Motion  to set the appeal bond hearing filed by Andre Bisasor, Natalie Anderson. | | 30 |
| 06/08/2015 | Emergency Motion to stay issuance of execution pending the outcome of defendants motion to remove default and vacate judgment and/or motion for relief from judgment as well as pending outcome of defendants' appeal  filed by Andre Bisasor and Natalie Anderson. | | |
| 06/08/2015 | Emergency Motion to defer decision on appeal bond until after defendants motion to remove dafault and vacate judgment and/or motion for relief from judgment is heard  filed by Andre Bisasor and Natalie Anderson. | | |
| 06/08/2015 | | | |

| Docket Date | Docket Text | Amount | File Ref Nbr. |
|---|---|---|---|
| | Attachment 1: Summary of Non-Frivolous Defenses filed by Andre Bisasor and Natalie Anderson.<br>Attachments Exhibit D- Dedham Board of health citation (Nov 2014) filed by Andre Bisasor and Natalie Anderson.<br>Case Law and Authorities for motions to remove default judgment filed by Andre Bisasor and Natalie Anderson. | | |
| 06/08/2015 | Motion package cover letter for unit 3413 filed by Andre Bisasor, Natalie Anderson. | | 31 |
| 06/08/2015 | Hospital documents filed by Andre Bisasor. | | |
| 06/08/2015 | Motion to waive appeal bond and other costs- apartment 3413 denied. | | |
| 06/08/2015 | Motion for recusal of Judge Robert Ziemian filed by Andre Bisasor, Natalie Anderson. | | 32 |
| 06/08/2015 | Motion for recusal of Judge Robert Ziemian denied. | | |
| 06/08/2015 | For the entry of a civil appeal in the appellate division of the district court department | $0.00 | |
| 06/08/2015 | Indigency affidavit and request for waiver, substitution or payment by the Commonwealth of fees/costs filed by Andre Bisasor, Natalie Anderson (G.L. c.261 §27B). | | 33 |
| 06/08/2015 | Indigency request for waiver, substitution or payment by the Commonwealth of fees/costs entered on 06/08/2015 allowed (G.L. c.261 §27B). | | |
| 06/08/2015 | Event Resulted<br>The following event: Status Review scheduled for 06/08/2015 09:00 AM has been resulted as follows:<br>Result: Held<br>Appeared: | | |
| 06/08/2015 | Cassette or CD copy request received from Andre Bisasor (Dist Ct Special Rule 211(A)(5)(c)). | | |
| 06/08/2015 | Tape Cassette Recordings of Proceedings plus postage per ninety minutes MGL 262 section 4b | $0.00 | |
| 06/09/2015 | Order; 06/08/2015- After hearing, Andre Bisasor and Natalie Anderson's Motion to Waive Appeal Bond and Other Costs- Apartment 3413 is DENIED. Court finds that defendants have no reasonable chance of prevailing. 1) Defendants admit in open court they have NOT held "with held rent" in separate amounts. 2) failure to provide required discovery is an indication of their (failure) and have no reasonable chance of prevailing in this case. Appeal Bond is set at $32,000.00 for both cases 15-54-SU-026 and 15-54-SU-028. Andre Bisasor and Natalie Anderson's Motion for Recusal of Judge Robert Ziemian is DENIED.parties notified. | | |
| 06/15/2015 | Certificate of service for plaintiffs motion for attorneys fees filed. | | |
| 06/15/2015 | Request for review of orders relating to the appeal bond- Apartments 3413 filed by ANDRE BISASOR AND NATALIE ANDERSON | | |
| 06/15/2015 | Memoranda in support of request for review of orders relating to the appeal bond filed by ANDRE BISASOR AND NATALIE ANDERSON | | |
| 06/15/2015 | Attachment: Summary of Defenses for Possession filed by ANDRE BISASOR AND NATALIE ANDERSON | | |
| 06/15/2015 | Second request to markup motion hearing and affidavit /opposition to plaintiff counsel's letter (dated June 11,2015) to Judge Ziemian filed by ANDRE BISASOR AND NATALIE ANDERSON | | |
| 06/19/2015 | Notice of Appeal - Reconsideration filed by Andre Bisasor and Natalie Anderson | | |
| 06/19/2015 | Notice of Appeal - Recusal filed by Andre Bisasor and Natalie Anderson | | |
| 06/24/2015 | ORDER CONCERNING THE FILING OF PAPERS<br>As of today's date, no other fillings are allowed in the above refrenced cases without express permission of the court. | | |
| 06/24/2015 | Notice sent to parties.<br>A Notce to the Parties was generated and sent to:<br>Plaintiff: Donna M. Ashton, Esq.<br>Defendant: Andre Bisasor<br>Defendant: Natalie Anderson | | |
| 06/29/2015 | Event Scheduled<br>Event: Motion Hearing (CV)<br>Date: 07/02/2015 Time: 10:00 AM | | |

| Docket Date | Docket Text | Amount | File Ref Nbr. |
|---|---|---|---|
| | ALL PARTIES NOTIFIED BY A CALL FROM THE DEDHAM DISTRICT COURT<br>Result: Held | | |
| 06/29/2015 | SUMMARY PROCESS APPEAL BOND REVIEW sent to APPELLATE DIVISION | | |
| 07/02/2015 | Event Resulted<br>The following event: Motion Hearing (CV) scheduled for 07/02/2015 10:00 AM has been resulted as follows:<br>Result: Held<br>Reason: Defendant Not Present<br>Appeared: | | |
| 07/02/2015 | Order; At the call of the list, Court declines to have hearing on pending motions as Defendants, Andre Bisasor and Natalie Anderson are not present and will rule on the papers. Plaintiff, Greystar Management Services, L.P. requests permission to file a Motion to Dismiss Defendants, Andre Bisasor and Natalie Anderson Appeal Notices filed on June 19, 2015 as Untimely. Request is Allowed. parties notified. | | |
| 07/02/2015 | Memorandum of Decision Concerning Entry of Default Judgment; parties notified | | |
| 07/06/2015 | Notice sent to parties.<br>A Notce to the Parties was generated and sent to:<br>Plaintiff: Donna M. Ashton, Esq.<br>Defendant: Andre Bisasor<br>Defendant: Natalie Anderson | | |
| 07/08/2015 | Notice of appeal to Appellate Division on record of proceedings filed by Andre Bisasor, Natalie Anderson (G.L. c.231 §108; Dist./Mun.Cts. R.A.D.A. 8C(b)).<br>HANDED TO COURTHOUSE EMPLOYEE OUTSIDE OF THE COURTHOUSE ON 07/08/2015 | | 34 |
| 07/23/2015 | Designation for Transcription filed by Andre Bisasor and Natalie Anderson. | | |
| 07/23/2015 | Order of Designation for Transcription to Transcriber filed by Appellants | | |
| 07/29/2015 | 6 Transcript received from court reporter (Dist./Mun.Cts. R.A.D.A. 8C(d) or Mass. R.A.P. 8(b)(1)); parties notified.<br><br>May 4, 2015<br>May 13, 2015<br>May 14, 2015<br>May 21, 2015<br>May 26, 2015<br>June 8, 2015 | | 35 |
| 07/29/2015 | Appellate Division decision received; trial judge notified (Dist./Mun.Cts. R.A.D.A. 28).<br><br>Decision and Order<br>(1) The defendants' motion to continue hearing is denied. (2) The defendants' motion for rehearing is denied. (3) The trial court's order of June 8, 2015, setting an appeal bond for cases in the amount of $32,000.00, is affirmed. (4) The defendants shall also post a bond in the trial court in the amount of $4,780.00, representing two months' rent. (5) The defendants are further ordered to make monthly use and occupancy payments to the plaintiff in the amount of $2,390.00, commencing August 1, 2015, and during pendency of the appeal. | | 36 |
| 08/04/2015 | Notice sent to parties.<br>A Notce to the Parties was generated and sent to:<br>Plaintiff: Donna M. Ashton, Esq.<br>Defendant: Andre Bisasor<br>Defendant: Natalie Anderson<br><br>07/29/2015- Receipt of 6 Transcripts in Trial Court - Rule 8C(f) | | |
| 08/07/2015 | Execution Issued:<br>Execution on Possession of a Dwelling<br>Judgment Debtor: Bisasor, Andre / Anderson, Natalie<br>Judgment Creditor: Greystar Management Services, L.P. As officer of or agent for Owner RAR2 Jefferson at Dedham Station MA, Inc.<br>Terms of Execution:<br>EXON Issuance Date: 08/07/2015<br>Judgment Total: 32,423.31<br>Post Judgment Int. Rate: .12 Post Judgment Int. Total: 768.04 | | |

| Docket Date | Docket Text | Amount | File Ref Nbr. |
|---|---|---|---|
| | Execution Subtotal: 33,191.35<br>Execution Total: 33,191.35 | | |
| 08/07/2015 | Execution Issued:<br>Execution on Money Judgment<br>Judgment Debtor: Bisasor, Andre<br>Judgment Creditor: Greystar Management Services, L.P. As officer of or agent for Owner RAR2 Jefferson at Dedham Station MA, Inc.<br>Terms of Execution:<br>EXON Issuance Date: 08/07/2015<br>Judgment Total: 32,423.31<br>Post Judgment Int. Rate: .12      Post Judgment Int. Total: 768.04<br>Execution Subtotal: 33,191.35<br>Execution Total: 33,191.35 | | |
| 08/07/2015 | Execution Issued:<br>Execution on Money Judgment<br>Judgment Debtor: Anderson, Natalie<br>Judgment Creditor: Greystar Management Services, L.P. As officer of or agent for Owner RAR2 Jefferson at Dedham Station MA, Inc.<br>Terms of Execution:<br>EXON Issuance Date: 08/07/2015<br>Judgment Total: 32,423.31<br>Post Judgment Int. Rate: .12      Post Judgment Int. Total: 768.04<br>Execution Subtotal: 33,191.35<br>Execution Total: 33,191.35 | | |
| 08/07/2015 | Motion to stay execution (Mass.R.Civ.P. 62) filed by Andre Bisasor, Natalie Anderson. | | 37 |
| 08/07/2015 | Event Resulted<br>The following event: Motion Hearing (CV) scheduled for 08/07/2015 04:25 PM has been resulted as follows:<br>Result: Held<br>Reason: Plaintiff's counsel not present. Court did not contact the Plaintiff's Counsel in a timely matter prior to the Defendants Motion to Stay Execution as the Defendant arrived at 4:23 p.m for a hearing.<br>Appeared: ANDRE BISASOR ONLY<br><br>Applies To: Bisasor, Andre (Defendant) | | |
| 08/07/2015 | Notice of Appeal (made to the Appeals Court of the dismissal of Defendants Appeal in the District Court and the Denial of the Waiver of the Appeal Bond in the Appellate Division of the District Court filed by ANDRE BISASOR and NATALIE ANDERSON (4:22) | | |
| 08/10/2015 | Event Scheduled<br>Event: Motion Hearing (CV)<br>Date: 08/07/2015  Time: 04:25 PM<br>Result: Held | | |
| 08/10/2015 | Opposition filed by Greystar Management Services, L.P. As officer of or agent for Owner RAR2 Jefferson at Dedham Station MA, Inc. to Motion to stay execution that was filed on 08/07/2015. WITH COURT'S PERMISSION, PLAINTIFF'S COUNSEL TO FAX OPPOSITION. | | 38 |
| 08/10/2015 | Order; 08/10/2015(08/07/2015)- After motion hearing, Andre Bisasor and Natalie Anderson's Emergency Motion to Stay the Levy of the Execution for possession and damages (Mass.R.Civ.P. 62) is DENIED, defendant, Andre Bisasor appearing only and Greystar Management Services, L.P. and Natalie Anderson not appearing.parties notified. | | |
| 08/14/2015 | Appeals Court<br>No. 2015-J-0306<br><br>Notice of Docket Entry<br>ORDER: Levy on the Execution on the judgment for possession is hereby stayed pending further order of this Court or a single justice thereof. The Matter shall be heard on Friday, August 14, 2015 at 2P.M. in courtroom 4. (Katzman, J.)<br>*Notice/Attest/Ziemian, J. | | |
| 08/19/2015 | APPEALS COURT Single Justice<br>No. 2015-J-0306<br>Dated 08/17/2015 | | |

| Docket Date | Docket Text | Amount | File Ref Nbr. |
|---|---|---|---|
| | ORDER: The defendants filed a motion seeking to stay levy on the execution on the judgment for possession of two apartments in a building managed by the plaintiff. This Court briefly stayed levy on the execution and scheduled a hearing on the defendants' motion. After review of the parties' submissions and a hearing, the defendants' motion for a stay pending their appeal is DENIED. To obtain a stay pending resolution of their appeal, the defendants would have to demonstrate, inter alia, a likelihood of success on the merits of their appeal. See Packaging Industries Group, Inc. v. Cheney, 380 Mass. 609 (1980). The defendants have failed to do so here. The defendants pending appeal is from the dismissal of their appeal occasioned by their failure to pay the required appeals bond. While such an appeal is properly brought before a panel of this Court, see Erickson v. Somers, 446 Mass. 1015 (2006), the defendants have not shown that their appeal, though procedurally correct, is likely to be successful. To succeed the defendants would have to demonstrate, at a minimum, that they have a nonfrivolous defense to the default. Following review of the defendants' submission and the District Court docket, the court cannot discern any indication that the District Court judge abused his discretion when he entered the default. Accordingly, the motion is denied. The stay currently in place shall expire at the end of the day on August 27, 2015. The plaintiff may levy on the execution on Friday, August 28, 2015 without the need for any further notice to the defendants. (Katzmann, J.). *Notice/Attest/Ziemian, J. Footnote 1. Natalie Anderson | | |
| 08/19/2015 | Return of service on NOTICE TO PARTIES 08/04/2015 Natalie Anderson; First class mail returned UNDELIVERED:unabletoforw | | 39 |
| 08/20/2015 | Tape Cassette Recordings of Proceedings plus postage per ninety minutes MGL 262 section.4b Receipt: 44792 Date: 08/20/2015 | $0.00 | |
| 08/20/2015 | Cassette or CD copy request received from Andre Bisasor (Dist Ct Special Rule 211(A)(5)(c)). | | |
| 08/21/2015 | Notice sent to parties. A Notce to the Parties was generated and sent to: Plaintiff: Donna M. Ashton, Esq. Defendant: Andre Bisasor Defendant: Natalie Anderson

Notice of the Assembly of the Record on Appeal for Summary Process Case Single Justice Appeal Re. Appeal Bond G.l.c. 239, Sec. 5. | | |
| 08/21/2015 | CD copy made; requester notified (Dist Ct Special Rule 211(A)(5)). | | |
| 09/08/2015 | Appeals Court Clerk's Office No. 2015-P-1193

Notice of Entry In accordance with Massachusetts Rule of Appellate Procedure 10(a)(3), please note that the above-references case was entered in this Court on August 31, 2015.

Dated: September 2, 2015 | | |
| 09/08/2015 | Supreme Judicial Court No. SJ-2015-0347

In accordance with the Rules of Appellate Procedure, Nos.9(d) and (10(a) and (b), the enclosed copy of the Notice of Appeal and the Notice of Assembly of the Record on Appeal in the above-entitled case are hereby mailed to you. | | |
| 09/08/2015 | Supreme Judicial Court No. SJ-2015-0347

Notice of Entry Docket You are hereby notified that on August 27, 2015, the following was entered on the docket of the above referenced case:

JUDGMENT:....."it is ORDERED that the emergency petition pursuant to G.L.c. 211§ 3, shall be, and hereby is, DENIED." (Duffly, J.)

Judgment is filed. | | |
| 09/08/2015 | Supreme Judicial Court No. SJ-2015-0347

Notice of Entry Docket | | |

| Docket Date | Docket Text | Amount | File Ref Nbr. |
|---|---|---|---|
| | You are hereby notified that on August 27, 2015, the following was entered on the docket of the above referenced case: | | |
| | MOTION To Stay execution Pending Appeal To The Full Bench of The SJC filed by Andre Bisasor and Natalie Anderson. (8/27/2015: "Per the within, Motion is DENIED WITHOUT HEARING" (Duffly, J.)). | | |
| 09/08/2015 | Supreme Judicial Court No. SJ-2015-0347 | | |
| | NOTICE OF ASSEMBLY OF THE RECORD ON APPEAL | | |
| | In accordance with the Rules of Appellate Procedure, Rule 9 (d), notice this day has been sent to the Clerk of the Supreme Judicial Court for the Commonwelath, along with two (2) certified copies of the docket entries. The record has been fully assembled in the office of the Clerk of the Supreme Judicial Court for Suffolk County. | | |
| | COPY OF Notice of Appeal filed. | | |

## Case Disposition

| Disposition | Date |
|---|---|
| Pending | |

# 1554SU000028 Greystar Management Services, L.P. As officer of or agent for Owner RAR2 Jefferson at Dedham Station MA, Inc. v. Bisasor, Andre

| | | | |
|---|---|---|---|
| **Case Type** | Summary Process | **Case Status** | Disposed - Statistical Purposes |
| **Status Date:** | 05/27/2015 | **File Date** | 02/11/2015 |
| **Case Judge:** | | **DCM Track:** | |
| **Next Event:** | | | |

**Property Address**
2000 President's Way #2216
Dedham MA 02026

| All Information | Party | Judgment | Event | Docket | Disposition |
|---|---|---|---|---|---|

## Party Information

### Greystar Management Services, L.P. - Plaintiff

**Alias**

| Attorney/Bar Code | Phone Number |
|---|---|
| Ashton, Esq., Donna M. (634984) | |

More Party Information

### Bisasor, Andre - Defendant

**Alias**

| Attorney/Bar Code | Phone Number |
|---|---|

More Party Information

### Anderson, Natalie - Defendant

**Alias**

| Attorney/Bar Code | Phone Number |
|---|---|

More Party Information

## Judgments

| Date | Type | Method | For | Against |
|---|---|---|---|---|
| 05/27/2015 | Judgment for Plaintiff for Possession and Rent | , after default | Greystar Management Services, L.P. | Anderson, Natalie |
| 05/27/2015 | Judgment for Plaintiff on Counterclaim | , after defendant(s) failed to appear | Greystar Management Services, L.P. | Anderson, Natalie |

## Events

| Date | Session | Location | Type | Result |
|---|---|---|---|---|
| 02/19/2015 10:00 AM | Summary Process Session | | Bench Trial (CV) | Event Continued |
| 04/09/2015 10:00 AM | Summary Process Session | | Bench Trial (CV) | All Parties Failed to Appear, Event Not Held |
| 04/16/2015 10:00 AM | Summary Process Session | | Status Review | Event Continued |
| | Civil Session | | | Held |

| Date | Session | Location | Type | Result |
|------|---------|----------|------|--------|
| 05/04/2015 03:00 PM | | | Motion Hearing (CV) | |
| 05/07/2015 10:00 AM | Summary Process Session | | Bench Trial (CV) | Event Continued |
| 05/13/2015 02:15 PM | Summary Process Session | | Ex Parte Hearing | Held |
| 05/14/2015 10:00 AM | Summary Process Session | | Bench Trial (CV) | Event Continued |
| 05/21/2015 02:00 PM | Summary Process Session | | Status Review | Event Continued |
| 05/26/2015 09:00 AM | Summary Process Session | | Status Review | Held |
| 05/28/2015 09:00 AM | Dedham Civil Jury Session | | Jury Trial (CV) | Not Held But Event Resolved |
| 06/08/2015 09:00 AM | Summary Process Session | | Status Review | Held |
| 07/02/2015 10:00 AM | Summary Process Session | | Motion Hearing (CV) | Held |
| 08/07/2015 04:25 PM | Summary Process Session | | Motion Hearing (CV) | Held |

## Docket Information

| Docket Date | Docket Text | Amount | File Ref Nbr. |
|-------------|-------------|--------|---------------|
| 02/11/2015 | Complaint filed | | 2 |
| 02/13/2015 | Summary Process Filing Fee due. Receipt: 39241 Date: 02/13/2015 | $0.00 | |
| 02/13/2015 | Appearance filed<br>On this date Wed Feb 11 00:00:00 EST 2015 Ashton, Esq., Donna M. added for Greystar Management Services, L.P. | | 1 |
| 02/13/2015 | Civil Filing Fee Surcharge due. Receipt: 39241 Date: 02/13/2015 | $0.00 | |
| 02/13/2015 | Event Scheduled<br>Event: Bench Trial (CV)<br>Date: 02/19/2015  Time: 10:00 AM<br>Result: Event Continued | | |
| 02/19/2015 | Event Resulted<br>The following event: Bench Trial (CV) scheduled for 02/19/2015 10:00 AM has been resulted as follows:<br>Result: Event Continued<br>Reason: Both Parties Request<br>Appeared: | | |
| 02/19/2015 | Event Scheduled<br>Event: Bench Trial (CV)<br>Date: 04/09/2015  Time: 10:00 AM<br>Result: All Parties Failed to Appear, Event Not Held | | |
| 04/10/2015 | Joint Agreement to Continue filed | | |
| 04/13/2015 | Event Resulted<br>The following event: Status Review scheduled for 04/16/2015 10:00 AM has been resulted as follows:<br>Result: Event Continued<br>Reason: Request of all parties<br>Appeared: | | |

| Docket Date | Docket Text | Amount | File Ref Nbr. |
|---|---|---|---|
| 04/13/2015 | Event Scheduled<br>Event: Bench Trial (CV)<br>Date: 05/07/2015  Time: 10:00 AM<br>Result: Event Continued | | |
| 05/04/2015 | Motion for continuance (Mass.R.Civ.P.40[b]) filed by Andre Bisasor, Natalie Anderson. | | 3 |
| 05/04/2015 | Event Scheduled<br>Event: Motion Hearing (CV)<br>Date: 05/04/2015  Time: 03:00 PM<br>Result: Held | | |
| 05/04/2015 | Event Resulted<br>The following event: Motion Hearing (CV) scheduled for 05/04/2015 03:00 PM has been<br>resulted as follows:<br>Result: Held<br>Reason: Plaintiff's counsel not present<br>Appeared: | | |
| 05/04/2015 | Motion to continue allowed Hon. Michael J Pomarole | | |
| 05/04/2015 | No further continuances. * | | |
| 05/07/2015 | Event Resulted<br>The following event: Bench Trial (CV) scheduled for 05/07/2015 10:00 AM has been resulted as<br>follows:<br>Result: Event Continued<br>Appeared: | | |
| 05/07/2015 | Event Scheduled<br>Event: Bench Trial (CV)<br>Date: 05/14/2015  Time: 10:00 AM<br>05/04/2015- After hearing, Andre Bisasor and Natalie Anderson's Motion for Continuance<br>(Mass.R.Civ.P.40[b]) is ALLOWED. No further continuances.<br><br>(Honorable Michael J. Pomarole)<br>Result: Event Continued | | |
| 05/11/2015 | Answer filed by Andre Bisasor, Natalie Anderson. | | 4 |
| 05/11/2015 | Counterclaim filed by Andre Bisasor, Natalie Anderson against Greystar Management Services,<br>L.P. As officer of or agent for Owner RAR2 Jefferson at Dedham Station MA, Inc. (Uniform<br>Summary Process Rule 5)). | | 5 |
| 05/11/2015 | Jury trial claim on all issues endorsed upon pleading by Andre Bisasor, Natalie Anderson<br>(Uniform Summary Process Rule 8). | | 6 |
| 05/11/2015 | Interrogatories directed to Greystar Management Services, L.P. As officer of or agent for Owner<br>RAR2 Jefferson at Dedham Station MA, Inc. filed by Andre Bisasor, Natalie Anderson; trial<br>automatically continued until 05/28/2015 (Uniform Summary Process Rule 7(b)). | | 7 |
| 05/11/2015 | Request for production of document(s) directed to Greystar Management Services, L.P. As<br>officer of or agent for Owner RAR2 Jefferson at Dedham Station MA, Inc. filed by Andre<br>Bisasor, Natalie Anderson; trial automatically continued until 05/28/2015 (Uniform Summary<br>Process Rule 7(b)). | | 8 |
| 05/11/2015 | Motion to transfer or consolidate filed by Andre Bisasor, Natalie Anderson. | | 9 |
| 05/11/2015 | Motion to dismiss filed by Andre Bisasor, Natalie Anderson. | | 10 |
| 05/13/2015 | Emergency Motion for Clarification filed by Andre Bisasor and Natalie Anderson. | | |
| 05/13/2015 | Event Resulted<br>The following event: Ex Parte Hearing scheduled for 05/13/2015 02:15 PM has been resulted as<br>follows:<br>Result: Held<br>Reason: Plaintiff's counsel not present<br>NO ACTION TAKEN ON Emergency Motion for Clarification filed by Andre Bisasor and Natalie<br>Anderson. | | |
| 05/14/2015 | | | |

| Docket Date | Docket Text | Amount | File Ref Nbr. |
|---|---|---|---|
| | Event Resulted<br>The following event: Bench Trial (CV) scheduled for 05/14/2015 10:00 AM has been resulted as follows:<br>Result: Event Continued<br>Appeared: | | |
| 05/14/2015 | Motion for leave of Court to file requests for discovery filed by Greystar Management Services, L.P. As officer of or agent for Owner RAR2 Jefferson at Dedham Station MA, Inc.. | | 11 |
| 05/14/2015 | Motion to amend account annex filed by Greystar Management Services, L.P. As officer of or agent for Owner RAR2 Jefferson at Dedham Station MA, Inc.. | | 12 |
| 05/14/2015 | Motion of Plaintiff to strike portions of defendants answer and counterclaim [MASS R CIV P 8 (e)] and dismiss [MASS R CIV P 12(b)(1) and 12(b)(6)] filed by Greystar Management Services, L.P. As officer of or agent for Owner RAR2 Jefferson at Dedham Station MA, Inc.. | | 13 |
| 05/14/2015 | Motion for Order requiring defnednats to escrow use and occpancy payments filed by Greystar Management Services, L.P. As officer of or agent for Owner RAR2 Jefferson at Dedham Station MA, Inc.. | | 14 |
| 05/14/2015 | Motion to enter and inspect filed by Greystar Management Services, L.P. As officer of or agent for Owner RAR2 Jefferson at Dedham Station MA, Inc.. | | 15 |
| 05/14/2015 | Motion for protective order filed by Greystar Management Services, L.P. As officer of or agent for Owner RAR2 Jefferson at Dedham Station MA, Inc.. | | 16 |
| 05/14/2015 | Termination notice filed (Uniform Summary Process Rule 2). | | 17 |
| 05/14/2015 | Motion for leave of Court to file requests for discovery allowed Hon. Thomas L Finigan | | |
| 05/20/2015 | Event Scheduled<br>Event: Ex Parte Hearing<br>Date: 05/13/2015  Time: 02:15 PM<br>Result: Held | | |
| 05/20/2015 | Notice concerning next court event, to wit - 05/21/2015 02:00 PM Status Review-- sent to parties.<br>05/14/2015- After motion hearing, Greystar Management Services, L.P.'s Motion for Leave of Court to File Requests for Discovery is ALLOWED.<br><br>(Honorable Thomas Finigan) | | |
| 05/20/2015 | Event Scheduled<br>Event: Jury Trial (CV)<br>Date: 05/28/2015  Time: 09:00 AM<br>Result: Not Held But Event Resolved | | |
| 05/21/2015 | Event Resulted<br>The following event: Status Review scheduled for 05/21/2015 02:00 PM has been resulted as follows:<br>Result: Event Continued<br>Appeared: | | |
| 05/26/2015 | Event Resulted<br>The following event: Status Review scheduled for 05/26/2015 09:00 AM has been resulted as follows:<br>Result: Held<br>Reason: Defendant Not Present<br>Appeared: | | |
| 05/26/2015 | Event Resulted<br>The following event: Jury Trial (CV) scheduled for 05/28/2015 09:00 AM has been resulted as follows:<br>Result: Not Held But Event Resolved<br>Appeared: | | |
| 05/26/2015 | Affidavit and Request for Continuance Due To Illness filed by Andre Bisasor, Natalie Anderson. | | |
| 05/26/2015 | Motion to amend summary process summons and complaint filed by Greystar Management Services, L.P. As officer of or agent for Owner RAR2 Jefferson at Dedham Station MA, Inc.. | | 18 |
| 05/26/2015 | Request for Continuance Due To Illness denied. | | |

| Docket Date | Docket Text | Amount | File Ref Nbr. |
|---|---|---|---|
| 05/26/2015 | Motion to amend summary process summons and complaint allowed Hon. Robert P Ziemian | | |
| 05/26/2015 | Default entered against Andre Bisasor, Natalie Anderson (Uniform Summary Process Rule 10 (a)). | | |
| 05/26/2015 | Military affidavit filed as to whether Andre Bisasor, Natalie Anderson is in military service (Servicemembers Civil Relief Act, P.L. 108-189 §201, 50 U.S.C. App. §421). | | 19 |
| 05/27/2015 | Notice concerning next court event, to wit - 06/08/2015 09:00 AM Status Review-- sent to parties. 05/26/2015- After hearing, Andre Bisasor and Natalie Anderson's Request for Continuance Due to Illness is DENIED, defendants failed to appear. Greystar Management Services, L.P.'s Motion to Amend Summary Process Summons and Complaint is ALLOWED. Jury trial scheduled for 05/28/2015 is CANCELLED. (Honorable Robert P. Ziemian) | | |
| 05/27/2015 | Judgment Entered: Judgment for Plaintiff for Possession and Rent , after default Ziemian, Hon. Robert P Judgment For: Greystar Management Services, L.P. Judgment Against: Bisasor, Andre / Anderson, Natalie Terms of Judgment: Jdgmnt Date: 05/27/2015 Execution entered on 08/07/2015 | | |
| 05/27/2015 | Judgment Entered: Judgment for Plaintiff on Counterclaim , after defendant(s) failed to appear Ziemian, Hon. Robert P Judgment For: Greystar Management Services, L.P. As officer of or agent for Owner RAR2 Jefferson at Dedham Station MA, Inc. Judgment Against: Bisasor, Andre / Anderson, Natalie Terms of Judgment: Jdgmnt Date: 05/27/2015 | | |
| 06/08/2015 | Motion for attorney's fees filed by Greystar Management Services, L.P. As officer of or agent for Owner RAR2 Jefferson at Dedham Station MA, Inc.. | | 20 |
| 06/08/2015 | Motion for reconsideration of defendants' affidavit and request for continuance due to illness filed by Andre Bisasor, Natalie Anderson. | | 21 |
| 06/08/2015 | Emergency Motion to remove the default and vacate the default judgment; and or/motion for relief of judgment, pusuant to M.R.C.P. Rule 55,59, and/or 60 filed by Andre Bisasor, Natalie Anderson. | | |
| 06/08/2015 | Affidavit supporting facts for motion to remove default and vacate judgment; and/or motion for relief from judgment, pursuant M.R.C.P. Rule 55,59 and /or 60 [Related to apartment conditions and violations] filed by Andre Bisasor and Natalie Anderson. | | |
| 06/08/2015 | Affidavit supporting facts for motion to remove default and vacate judgment; and/or motion for relief from judgment, pursuant M.R.C.P. rule 55,59 and/or 60 [Related to procedural case history and medical situation] filed by Andre Bisasor and Natalie Anderson. | | |
| 06/08/2015 | Notice of Appeal filed by Andre Bisasor and Natalie Anderson. | | |
| 06/08/2015 | Motion to waive appeal bond and other costs- Apartment 2216 filed by Andre Bisasor, Natalie Anderson. | | 22 |
| 06/08/2015 | Motion to set the appeal bond hearing filed by Andre Bisasor, Natalie Anderson. | | 23 |
| 06/08/2015 | Emergency Motion to stay issuance of execution pending the outcome of defendants motion to remove default and vacate judgment and/or motion for relief from judgment as well as pending outcome of defendants' appeal filed by Andre Bisasor and Natalie Anderson. | | |
| 06/08/2015 | Emergency Motion to defer decision on appeal bond until after defendants motion to remove default and vacate judgment and/or motion for relief from judgment is heard filed by Andre Bisasor and Natalie Anderson. | | |
| 06/08/2015 | Attachment 1: Summary of Non-Frivolous Defenses filed by Andre Bisasor and Natalie Anderson. Attachments Exhibit D- Dedham Board of health citation (Nov 2014) filed by Andre Bisasor and Natalie Anderson. | | |

| Docket Date | Docket Text | Amount | File Ref Nbr. |
|---|---|---|---|
| | Case Law and Authorities for motions to remove default judgment filed by Andre Bisasor and Natalie Anderson. | | |
| 06/08/2015 | Motion package cover letter for unit 2216 filed by Andre Bisasor, Natalie Anderson. | | 24 |
| 06/08/2015 | Hospital documents filed by Andre Bisasor | | |
| 06/08/2015 | Motion to waive appeal bond and other costs- apartment 2216 denied. | | |
| 06/08/2015 | For the entry of a civil appeal in the appellate division of the district court department | $0.00 | |
| 06/08/2015 | Indigency affidavit and request for waiver, substitution or payment by the Commonwealth of fees/costs filed by Natalie Anderson, Andre Bisasor (G.L. c.261 §27B). | | 25 |
| 06/08/2015 | Indigency request for waiver, substitution or payment by the Commonwealth of fees/costs entered on 06/08/2015 allowed (G.L. c.261 §27B). | | |
| 06/08/2015 | Cassette or CD copy request received from Andre Bisasor (Dist Ct Special Rule 211(A)(5)(c)). | | |
| 06/08/2015 | Tape Cassette Recordings of Proceedings plus postage per ninety minutes MGL 262 section 4b | $0.00 | |
| 06/08/2015 | Event Resulted<br>The following event: Status Review scheduled for 06/08/2015 09:00 AM has been resulted as follows:<br>Result: Held<br>Appeared: | | |
| 06/10/2015 | Order; 06/08/2015- After hearing, Andre Bisasor and Natalie Anderson's Motion to Waive Appeal Bond and Other Costs- Apartment 2216 is DENIED. Court finds that defendants have no reasonable chance of prevailing. 1) Defendants admit in open court they have NOT held "with held rent" in separate amounts. 2) failure to provide required discovery is an indication of their (failure) and have no reasonable chance of prevailing in this case. Appeal Bond is set at $32,000.00 for both cases 15-54-SU-026 and 15-54-SU-028. parties notified. | | |
| 06/10/2015 | CD copy made; requester notified (Dist Ct Special Rule 211(A)(5)). | | |
| 06/15/2015 | Certificate of service for plaintiffs motion for attorneys fees filed. | | |
| 06/15/2015 | Request for review of orders relating to the appeal bond- Apartments 2216 filed by ANDRE BISASOR AND NATALIE ANDERSON | | |
| 06/15/2015 | Memoranda in support of request for review of orders relating to the appeal bond filed by ANDRE BISASOR AND NATALIE ANDERSON | | |
| 06/19/2015 | Notice of Appeal - Reconsideration filed by Andre Bisasor and Natalie Anderson | | |
| 06/19/2015 | Notice of Appeal - Recusal filed by Andre Bisasor and Natalie Anderson | | |
| 06/24/2015 | ORDER CONCERNING THE FILING OF PAPERS<br>As of today's date, no other fillings are allowed in the above refrenced cases without express permission of the court. | | |
| 06/24/2015 | Notice sent to parties.<br>A Notce to the Parties was generated and sent to:<br>Plaintiff: Donna M. Ashton, Esq.<br>Defendant: Andre Bisasor<br>Defendant: Natalie Anderson | | |
| 06/29/2015 | Event Scheduled<br>Event: Motion Hearing (CV)<br>Date: 07/02/2015 Time: 10:00 AM<br>ALL PARTIES NOTIFIED BY A CALL FROM THE DEDHAM DISTRICT COURT<br>Result: Held | | |
| 06/29/2015 | SUMMARY PROCESS APPEAL BOND REVIEW sent to APPELLATE DIVISION | | |
| 07/02/2015 | Event Resulted<br>The following event: Motion Hearing (CV) scheduled for 07/02/2015 10:00 AM has been resulted as follows:<br>Result: Held<br>Reason: Defendant Not Present<br>Appeared: | | |
| 07/02/2015 | | | |

| Docket Date | Docket Text | Amount | File Ref Nbr. |
|---|---|---|---|
| | Order; At the call of the list, Court declines to have hearing on pending motions as Defendants, Andre Bisasor and Natalie Anderson are not present and will rule on the papers. Plaintiff, Greystar Management Services, L.P. requests permission to file a Motion to Dismiss Defendants, Andre Bisasor and Natalie Anderson Appeal Notices filed on June 19, 2015 as Untimely. Request is Allowed. parties notified. | | |
| 07/02/2015 | Memorandum of Decision Concerning Entry of Default Judgment; parties notified | | |
| 07/06/2015 | Notice sent to parties. A Notice to the Parties was generated and sent to: Plaintiff: Donna M. Ashton, Esq. Defendant: Andre Bisasor Defendant: Natalie Anderson | | |
| 07/08/2015 | Notice of appeal to Appellate Division on record of proceedings filed by Andre Bisasor, Natalie Anderson (G.L. c.231 §108; Dist./Mun.Cts. R.A.D.A. 8C(b)). HANDED TO COURTHOUSE EMPLOYEE OUTSIDE OF THE COURTHOUSE ON 07/08/2015 | | 26 |
| 07/23/2015 | Designation for Transcription filed by Andre Bisasor and Natalie Anderson | | |
| 07/23/2015 | Order of Designation for Transcription to Transcriber filed by Appellants | | |
| 07/29/2015 | 6 Transcript received from court reporter (Dist./Mun.Cts. R.A.D.A. 8C(d) or Mass. R.A.P. 8(b)(1)); parties notified.<br><br>May 4, 2015<br>May 13, 2015<br>May 14, 2015<br>May 21, 2015<br>May 26, 2015<br>June 8, 2015 | | 27 |
| 07/29/2015 | Appellate Division decision received; trial judge notified (Dist./Mun.Cts. R.A.D.A. 28).<br><br>Decision and Order<br>(1) The defendants' motion to continue hearing is denied. (2) The defendants' motion for rehearing is denied. (3) The trial court's order of June 8, 2015, setting an appeal bond for cases in the amount of $32,000.00, is affirmed. (4) The defendants shall also post a bond in the trial court in the amount of $4,780.00, representing two months' rent. (5) The defendants are further ordered to make monthly use and occupancy payments to the plaintiff in the amount of $2,390.00, commencing August 1, 2015, and during pendency of the appeal. | | 28 |
| 07/29/2015 | Return of service on notice to parties Natalie Anderson; First class mail returned UNDELIVERED:unabletoforw | | 29 |
| 08/04/2015 | Notice sent to parties. A Notice to the Parties was generated and sent to: Plaintiff: Donna M. Ashton, Esq. Defendant: Andre Bisasor Defendant: Natalie Anderson | | |
| 08/07/2015 | Execution Issued: Execution on Possession of a Dwelling Judgment Debtor: Bisasor, Andre / Anderson, Natalie Judgment Creditor: Greystar Management Services, L.P. As officer of or agent for Owner RAR2 Jefferson at Dedham Station MA, Inc. Terms of Execution: EXON Issuance Date: 08/07/2015 Post Judgment Int. Rate: .12 Execution Total: .00 | | |
| 08/07/2015 | Emergency Motion to Stay the Levy of the Execution for Possession and Damages filed by Andre and Bisasor and Natalie Anderson. | | |
| 08/07/2015 | Event Resulted The following event: Motion Hearing (CV) scheduled for 08/07/2015 04:25 PM has been resulted as follows: Result: Held Reason: Plaintiff's counsel not present. Plaintiff's counsel not present. Court did not contact the Plaintiff's Counsel in a timely matter prior to the Defendants Motion to Stay Execution as the | | |

| Docket Date | Docket Text | Amount | File Ref Nbr. |
|---|---|---|---|
| | Defendant arrived at 4:23 p.m for a hearing.<br>Appeared: ANDRE BISASOR ONLY<br><br>Applies To: Bisasor, Andre (Defendant) | | |
| 08/07/2015 | Notice of Appeal (made to the Appeals Court of the dismissal of Defendants Appeal in the District Court and the Denial of the Waiver of the Appeal Bond in the Appellate Division of the District Court filed by ANDRE BISASOR and NATALIE ANDERSON (4:22) | | |
| 08/10/2015 | Event Scheduled<br>Event: Motion Hearing (CV)<br>Date: 08/07/2015  Time: 04:25 PM<br>Result: Held | | |
| 08/10/2015 | Opposition filed by Greystar Management Services, L.P. As officer of or agent for Owner RAR2 Jefferson at Dedham Station MA, Inc. to Motion to stay execution that was filed on 08/07/2015. WITH COURT'S PERSMISSION, PLAINITFF'S COUNSEL TO FAX OPPOSITION | 30 | |
| 08/10/2015 | Order; 08/10/2015(08/07/2015)- After motion hearing, Andre Bisasor and Natalie Anderson's Emergency Motion to Stay the Levy of the Execution for possession and damages (Mass.R.Civ.P. 62) is DENIED, defendant, Andre Bisasor appearing only and Greystar Management Services, L.P. and Natalie Anderson not appearing. parties notified. | | |
| 08/14/2015 | Appeals Court<br>No. 2015-J-0306<br><br>Notice of Docket Entry<br>ORDER: Levy on the Execution on the judgment for possession is hereby stayed pending further order of this Court or a single justice thereof. The Matter shall be heard on Friday, August 14, 2015 at 2P.M. in courtroom 4. (Katzman, J.)<br>*Notice/Attest/Ziemian, J. | | |
| 08/19/2015 | APPEALS COURT Single Justice<br>No. 2015-J-0306<br>Dated 08/17/2015<br>ORDER: The defendants filed a motion seeking to stay levy on the execution on the judgment for possession of two apartments in a building managed by the plaintiff. This Court briefly stayed levy on the execution and scheduled a hearing on the defendants' motion. After review of the parties' submissions and a hearing, the defendants' motion for a stay pending their appeal is DENIED. To obtain a stay pending resolution of their appeal, the defendants would have to demonstrate, inter alia, a likelihood of success on the merits of their appeal. See Packaging Industries Group, Inc. v. Cheney, 380 Mass. 609 (1980). The defendants have failed to do so here. The defendants pending appeal is from the dismissal of their appeal occasioned by their failure to pay the required appeals bond. While such an appeal is properly brought before a panel of this Court, see Erickson v. Somers, 446 Mass. 1015 (2006), the defendants have not shown that their appeal, though procedurally correct, is likely to be successful. To succeed the defendants would have to demonstrate, at a minimum, that they have a nonfrivolous defense to the default. Following review of the defendants' submission and the District Court docket, the court cannot discern any indication that the District Court judge abused his discretion when he entered the default. Accordingly, the motion is denied. The stay currently in place shall expire at the end of the day on August 27, 2015. The plaintiff may levy on the execution on Friday, August 28, 2015 without the need for any further notice to the defendants. (Katzmann, J.).<br>*Notice/Attest/Ziemian, J. Footnote 1. Natalie Anderson | | |
| 08/19/2015 | Return of service on NOTICE TO PARTIES 08/04/2015 Natalie Anderson; First class mail returned UNDELIVERED:unabletoforw | 31 | |
| 08/19/2015 | Return of service on NOTICE TO PARTIES 08/04/2015 Andre Bisasor; First class mail returned UNDELIVERED:unabletoforw | 32 | |
| 08/21/2015 | Notice sent to parties.<br>A Notce to the Parties was generated and sent to:<br>Plaintiff: Donna M. Ashton, Esq.<br>Defendant:  Andre Bisasor<br>Defendant:  Natalie Anderson<br><br>Notice of the Assembly of the Record on Appeal for Summary Process Case Single Justice Appeal Re. Appeal Bond G.l.c. 239, Sec. 5. | | |
| 09/08/2015 | | | |

| Docket Date | Docket Text | Amount | File Ref Nbr. |
|---|---|---|---|
| | Appeals Court Clerk's Office No. 2015-P-1194 | | |
| | Notice of Entry In accordance with Massachusetts Rule of Appellate Procedure 10(a)(3), please note that the above-references case was entered in this Court on August 31, 2015. | | |
| | Dated: September 2, 2015 | | |
| 09/08/2015 | Supreme Judicial Court No. SJ-2015-0347 | | |
| | In accordance with the Rules of Appellate Procedure, Nos.9(d) and (10(a) and (b), the enclosed copy of the Notice of Appeal and the Notice of Assembly of the Record on Appeal in the above-entitled case are hereby mailed to you. | | |
| 09/08/2015 | Supreme Judicial Court No. SJ-2015-0347 | | |
| | Notice of Entry Docket You are hereby notified that on August 27, 2015, the following was entered on the docket of the above referenced case: | | |
| | JUDGMENT:...."it is ORDERED that the emergency petition pursuant to G.L.c. 211§ 3, shall be, and hereby is, DENIED." (Duffly, J.) | | |
| | Judgment is filed. | | |
| 09/08/2015 | Supreme Judicial Court No. SJ-2015-0347 | | |
| | Notice of Entry Docket You are hereby notified that on August 27, 2015, the following was entered on the docket of the above referenced case: | | |
| | MOTION To Stay Execution Pending Appeal To The Full Bench of The SJC filed by Andre Bisasor and Natalie Anderson. (8/27/2015: "Per the within, Motion is DENIED WITHOUT HEARING" (Duffly, J.)). | | |
| 09/08/2015 | Supreme Judicial Court No. SJ-2015-0347 | | |
| | NOTICE OF ASSEMBLY OF THE RECORD ON APPEAL | | |
| | In accordance with the Rules of Appellate Procedure, Rule 9 (d), notice this day has been sent to the Clerk of the Supreme Judicial Court for the Commonwelath, along with two (2) certified copies of the docket entries. The record has been fully assembled in the office of the Clerk of the Supreme Judicial Court for Suffolk County. | | |
| | COPY OF Notice of Appeal filed. | | |

## Case Disposition

| Disposition | Date |
|---|---|
| Pending | |

# EXHIBIT C

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT CLERK'S OFFICE
John Adams Courthouse
One Pemberton Square, Suite 1200
Boston, Massachusetts 02108-1705
(617) 725-8106

August 17, 2015

Donna M. Ashton, Esquire
28 Church Street
Suite #10
Winchester, MA 01890

RE:   No. 2015-J-0306
      Lower Ct. No.: 1554SU000026 & 1554SU000028

      GREYSTAR MANAGEMENT SERVICE, LP
                    vs.
      ANDRE BISASOR & another [1]

                  NOTICE OF DOCKET ENTRY

      Please take note that on August 17, 2015, the following
entry was made on the docket of the above-referenced case:

ORDER: The defendants filed a motion seeking to stay levy on the
execution on the judgment for possession of two apartments in a
building managed by the plaintiff. This Court briefly stayed
levy on the execution and scheduled a hearing on the defendants'
motion. After review of the parties' submissions and a hearing,
the defendants' motion for a stay pending their appeal is DENIED.

To obtain a stay pending resolution of their appeal, the
defendants would have to demonstrate, inter alia, a likelihood
of success on the merits of their appeal. See Packaging
Industries Group, Inc. v. Cheney, 380 Mass. 609 (1980). The
defendants have failed to do so here. The defendants pending
appeal is from the dismissal of their appeal occasioned by their
failure to pay the required appeals bond. While such an appeal
is properly brought before a panel of this Court, see Erickson
v. Somers, 446 Mass. 1015 (2006), the defendants have not shown
that their appeal, though procedurally correct, is likely to be
successful. To succeed the defendants would have to demonstrate,
at a minimum, that they have a nonfrivolous defense to the
default. Following review of the defendants' submission and the
District Court docket, the court cannot discern any indication
that the District Court judge abused his discretion when he
entered the default. Accordingly, the motion is denied. The stay
currently in place shall expire at the end of the day on August

27, 2015. The plaintiff may levy on the execution on Friday,
August 28, 2015 without the need for any further notice to the
defendants. (Katzmann, J.). *Notice/Attest/Ziemian, J.

Footnote

1. Natalie Anderson

                              Very truly yours,

                              The Clerk's Office

Dated: August 17, 2015

To:  Donna M. Ashton, Esquire
Andre Bisasor
Natalie Anderson
Dedham District Court

# EXHIBIT D

404 B.R. 83
**In re Beverly C. GRIGGSBY, Debtor.**
No. 09-10796 (MG).
United States Bankruptcy Court, S.D. New York.
April 17, 2009.

Page 84

COPYRIGHT MATERIAL OMITTED

Page 85

Earl A. Rawlins, Esq., New York, NY, for Debtor.

Anthony J. Cornicello, Esq., Cornicello & Tendler, LLP, New York, NY, for 940 St. Nicholas, LLC.

**MEMORANDUM OPINION SUSTAINING OBJECTION TO NOTICE OF COMPLIANCE AND GRANTING LIFT-STAY MOTION**

**MARTIN GLENN, Bankruptcy Judge.**

940 St. Nicholas, LLC ("940 St. Nicholas" or "Landlord"), filed a Motion to Vacate the Automatic Stay in this case under chapter 13 ("Lift-Stay Motion") (ECF Doc. No. 13), to permit it to execute a warrant of eviction pursuant to a judgment of possession against the debtor, Beverly C. Griggsby ("Griggsby" or "Debtor"), in Civil Court on January 5, 2007, before this chapter 13 case was filed. The judgment of possession and warrant of eviction were based on so-called "Collyer Conditions" in Griggsby's residential apartment. The Landlord also filed an Objection to the Debtor's certification pursuant to 11 U.S.C. § 362(*l*)(1) ("Objection")(ECF Doc. No. 11). The Court heard argument on the Objection and the Lift Stay Motion on April 2, 2009. At the conclusion of the hearing, the Court ruled from the bench, sustaining the Objection and granting the Lift-Stay Motion. A written order was entered that same day lifting the automatic stay. (ECF Doc. No. 16.) In its bench ruling, the Court stated that because of the novel issues involved in this matter, a written Opinion would follow explaining the Court's reasoning. For the reasons explained below, the Court concludes that where a default giving rise to a prepetition judgment of possession could not be cured by the payment of money alone, the automatic stay under Bankruptcy Code § 362 does not operate as a stay of any eviction proceeding and the stay cannot be reinstated by the debtor under Bankruptcy Code § 362(*l*).

On April 10, 2009, Debtor filed an application by order to show cause seeking to reinstate the automatic stay. The supporting affidavits rehash the issues presented to the Court at the April 2, 2009 hearing. The application is really a request for reconsideration of the April 2, 2009 bench ruling and Order lifting the automatic stay entered on that day. However viewed, the application to reinstate the stay fails to advance grounds supporting any different result.

**BACKGROUND**

On February 21, 2009, Debtor filed a voluntary petition commencing a chapter

Page 86

13 bankruptcy case.[1] Prior to filing her bankruptcy case, Griggsby resided as a tenant in Apartment 51 in 940 St. Nicholas Avenue, New York, N.Y. (the "Apartment") pursuant to a rent-stabilized lease with the Landlord's predecessor. On or about June 22, 2006, 940 St. Nicholas served a notice of termination on Griggsby, alleging that she was responsible for excessive accumulated debris posing a health and fire risk ("Collyer Conditions").[2] The Landlord subsequently commenced a Collyer-type nuisance holdover proceeding in the Civil Court of the City of New York, County of New York ("Civil Court"), Index No. L & T 81890/06.

On January 5, 2007, after a hearing, the Civil Court entered an order (the "2007 Order") awarding a final judgment of possession to the


fastcase

Landlord. The judgment rested upon the presence of the Collyer Conditions and arrears owed by Griggsby in the amount of $4,640.24 for use and occupancy through January 5, 2007. The Order indicated that the Civil Court would issue a warrant of eviction forthwith but stayed the warrant's execution to permit Griggsby to cure the defaults by a January 16, 2007 deadline. Griggsby's appeal of the final judgment was dismissed for failure to perfect. On October 17, 2008, after a multi-day hearing, the Civil Court entered an Order (the "2008 Order"), finding that Griggsby had failed to cure the Collyer Conditions and authorizing 940 St. Nicholas to execute the warrant of eviction. The court's written opinion did not indicate whether Griggsby had cured the outstanding money arrears, but it is clear from the opinion that the Collyer Conditions were the basis for the court permitting Griggsby's eviction to go forward.[3] Griggsby failed to timely appeal the 2008 Order. The court issued the warrant of eviction on December 10, 2008. An eviction

Page 87

scheduled for February 23, 2009 was stayed as a result of Debtor's bankruptcy case.

As explained below, pursuant to Bankruptcy Code § 362(b)(22), the automatic stay would not apply as a bar to the Landlord's efforts to evict the Debtor because the state court judgment of possession was obtained before the Debtor filed her chapter 13 petition, *unless* the Debtor was able successfully to invoke § 362(*l*) by depositing 30 days' post-petition rent with the Clerk of the Court and by filing a certification required by § 362(*l*)(1). The Debtor timely deposited the funds and also filed a certification. On February 23, 2009, the Clerk entered a notice of Debtor's compliance and intent to cure the prepetition judgment of possession ("Compliance Notice") (ECF Doc. No. 7). On March 6, 2009, 940 St. Nicholas filed an Objection to Debtor's certification and refused to accept a tender of the deposit.

The Landlord argues that § 362(*l*) does not apply in this case because the outstanding

judgment of possession rests upon Debtor's non-monetary default—failing to cure the Collyer Conditions. The Landlord maintains that § 362(*l*) applies by its terms only to a curable monetary default that is present at the commencement of a debtor's bankruptcy case. Because the judgment of possession and warrant of eviction were based on non-monetary obligations, the argument goes, § 362(*l*) is not available to the Debtor. The Landlord further urges that even if § 362(*l*) did apply in this case, the Debtor's right to cure the Collyer Conditions expired upon entry of the 2008 Order.

The motion to lift the stay claims that the Landlord lacks adequate protection under § 362(d)(1) because the Collyer Conditions remain in the Apartment. The Landlord also contends that the Debtor's estate lacks a property interest in the Apartment within the meaning of Bankruptcy Code § 541 because, pursuant to § 749 of the New York Real Property Actions and Proceedings Law ("RPAPL"), the issuance of the warrant of eviction cut-off the Debtor's interest in the Apartment.

## DISCUSSION

### A. BAPCPA Limits Application of the Automatic Stay in Eviction Proceedings

Section 362(b)(22), added to the Bankruptcy Code in 2005 as part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), provides that the automatic stay pursuant to § 362(a)(3) does not apply to the "continuation of any eviction, unlawful detainer action, or similar proceeding by a lessor against a debtor involving residential property in which the debtor resides as a tenant under a lease or rental agreement and with respect to which the lessor has obtained before the date of the filing of the bankruptcy petition, a judgment for possession of such property against the debtor." 11 U.S.C. § 362(b)(22). Section 362(*l*) provides a limited exception to the strictures of § 362(b)(22). The automatic stay does apply for a 30-day period after the filing of the bankruptcy petition *if* the debtor files with the petition a certification under penalty of perjury that "under nonbankruptcy law

applicable in the jurisdiction, there are circumstances under which the debtor would be permitted to cure the entire monetary default that gave rise to the judgment of possession after that judgment of possession was entered." 11 U.S.C. § 362(*l*)(1)(A). A debtor must also deposit with the clerk of the court with the bankruptcy petition any rent that would become due during the 30-day period after the filing of the bankruptcy petition. 11 U.S.C. § 362(*l*)(1)(B). In order to extend the stay beyond the initial 30-day period,

Page 88

within that period the debtor must cure, "under nonbankruptcy law applicable in the jurisdiction, the entire monetary default that gave rise to the judgment under which possession is sought. ..." 11 U.S.C. § 362(*l*)(2).

In this case, the Debtor filed a certification and tendered rent for the 30-day period with her bankruptcy petition. The Landlord objected to the certification arguing that the § 362(*l*) procedure cannot be used to reinstate the automatic stay where the judgment of possession and warrant of eviction were issued because of a non-monetary default.

**B. Landlord's Objection to Debtor's Certification**

Section 362(*l*)(3) provides that "[i]f the lessor files an objection to any certification filed by the debtor ..., the court shall hold a hearing ... to determine if the certification filed by the debtor ... is true." 11 U.S.C. § 362(*l*)(3)(A). If the court sustains the objection, "subsection (b)(22) shall apply immediately and relief from the stay shall not be required to enable the lessor to complete the process to recover full possession of the property." 11 U.S.C. § 362(*l*)(3)(B)(i).

In this case, the Landlord not only filed its Objection but also filed the Lift-Stay Motion. Both the Objection and the Lift-Stay Motion were heard together on April 2, 2009. The Court entered an Order that day granting the Lift-Stay Motion. In light of that Order granting stay relief to the Landlord, it is unnecessary separately to

address whether the certification filed by the Debtor "is true." The outcome here depends upon an issue of law— whether complying with § 362(*l*) reinstates the automatic stay where the judgment of possession cannot be cured by payment of any monetary default—not upon a determination of "truth" of facts or conclusions set forth in a debtor's certification. The Landlord gets the same result—the ability to continue with eviction—whether the Objection is sustained or the Lift Stay Motion is granted.

**C. The Automatic Stay Could Not Be Reinstated Because of a Non-Monetary Default**

The Court concludes that § 362(*l*) does not apply where, as here, the prepetition judgment of possession and warrant of eviction are based upon a non-monetary default that cannot be cured by payment of money. Section 362(b)(22) makes the automatic stay inapplicable to eviction proceedings whatever the basis for the judgment of possession if the judgment was obtained before the bankruptcy petition was filed. Section 362(*l*) provides a mechanism to reinstate the stay if "there are circumstances under applicable nonbankruptcy law under which the debtor would be permitted *to cure the entire monetary default* that gave rise to the judgment of possession. ..." 11 U.S.C. § 362(*l*)(1)(A) (emphasis added). *See In re Alberts,* 381 B.R. 171, 177 (Bankr.W.D.Pa.2008) ("Section 362(*l*) of the Code operates as a safe harbor precluding the termination of the stay in instances where ... the judgment for possession was obtained as a result of monetary defaults of the debtor. ..."); *In re Williams,* 371 B.R. 102, 105-09 (Bankr. E.D.Pa.2007) (analyzing the statute and legislative history).

At issue in this case is whether the § 362(*l*) safe harbor is triggered if a prepetition judgment of possession rests in whole or in part upon a non-monetary default. Caselaw is silent on this question.[4] Section 362(*l*)'s statutory language

Page 89

fastcase

- 3 -

limits its applicability to cases in which state law would permit the debtor "to cure the entire monetary default that gave rise to the judgment for possession. ..." 11 U.S.C. § 362(*l*)(1)(A).

The legislative history does not specifically address the effect of the change made by BAPCPA in the event a judgment of possession was based solely on a non-monetary default, or where it was based on both monetary and non-monetary defaults. If the judgment of possession was based solely on a non-monetary default, there is no basis to argue from the language of the statute that the automatic stay can be reinstated under § 362(*l*). But what if the judgment of possession was based on mixed grounds, monetary and non-monetary? If nonbankruptcy law—in this case, New York law—would permit a debtor to cure monetary and non-monetary defaults, is the stay reinstated if the debtor takes the actions required to cure the monetary default only, or, for that matter, to cure all monetary and non-monetary defaults? The language of the Code does not provide clear answers to these questions. The legislative history also does not shed much light on the questions. As discussed in the next section of this Opinion, under New York law, there are circumstances under which a debtor would be permitted to cure both monetary and non-monetary defaults. But those are matters properly left for a state court to decide.

Section 311 of Public Law 109-8 added §§ 362(b)(22), 362(b)(23), 362(*l*) and 362(m) to the Bankruptcy Code. Sections 362(b)(22) and 362(*l*), as previously described, deal with the effect on the automatic stay of a judgment of possession obtained before a bankruptcy petition is filed. Sections 362(b)(23) and 362(m) deal with the effect on the stay of circumstances creating grounds for an eviction action to be filed or adjudicated that seeks possession of residential property "based on endangerment of such property or the illegal use of controlled substances on such property. ..." 11 U.S.C. § 362(b)(23); *see* 5 KEITH M. LUNDIN, CHAPTER 13 BANKRUPTCY § 431.1 (3d ed.2006). The legislative history discusses these provisions together. House Report No. 109-31 describes these changes in BAPCPA as follows:

Sec. 311. Automatic Stay. Section 311 of the Act amends section 362(b) of the Bankruptcy Code to except from the automatic stay a judgment of eviction with respect to a residential leasehold under certain circumstances. It is the intent of this provision to create an exception to the automatic stay of section 362(a)(3) to permit the recovery of possession by rental housing providers of their property in certain circumstances where a judgment for possession has been obtained against a debtor/resident before the filing of the petition for bankruptcy. ... It is also the intent of this section to permit eviction actions based on illegal use of controlled substances or endangering property in certain circumstances.

Section 311 gives tenants a reasonable amount of time after filing the petition to cure the default giving rise to the judgment for possession as long as there are circumstances in which applicable nonbankruptcy law allows a default to be cured after a judgment has been obtained.

Page 90

Where nonbankruptcy law applicable in the jurisdiction does not permit a tenant to cure a monetary default after the judgment for possession has been obtained, the automatic stay of section 362(a)(3) does not operate to limit action by a rental housing provider to proceed with, or a marshal, sheriff, or similar local officer to execute, the judgment for possession. Where the debtor claims that applicable law permits a tenant to cure after the judgment for possession has been obtained, the automatic stay operates only where the debtor files a certification with the bankruptcy petition asserting that applicable law permits such action and that the debtor or an adult dependent of the debtor has paid to the court all rent that will come due during the 30 days following the filing of the petition. If, within thirty days following the filing of the petition, the debtor or an adult dependent of the debtor certifies that the entire monetary default that gave rise to the judgment for possession has been cured, the automatic stay remains in effect. If a lessor has filed or wishes to file an eviction action based on the use of illegal controlled substances

fastcase

- 4 -

Case 15-13689 Doc 347 Filed 09/23/15 Entered 09/23/15 18:30:39 Desc Exhibit Document Page 6 of 291

In re Griggsby, 404 B.R. 83 (Bankr. S.D.N.Y., 2009)

or property endangerment, the section allows the lessor in certain cases to file a certification of such circumstance with the court and obtain an exception to the stay.

. ... This section does not provide any new right to either landlords or tenants relating to evictions or defenses to eviction under otherwise applicable law.

H.R.REP. NO. 109-31, pt. 1, at 74-75(2005) (hereinafter, "House Report No. 109-31"), U.S.Code Cong. & Admin.News 2005, pp. 88, 142-43; *see also In re Williams,* 371 B.R. at 109.

Congress provided in § 362(b)(22) that a prepetition judgment of possession obtained by a lessor for any reason keeps the stay from automatically being triggered by the filing of a bankruptcy petition. With respect to § 362(*l*), Congress's focus is clearly upon allowing the stay to be reinstated if state law permits a cure of a monetary default; no mention is made of a non-monetary default. Sections 362(b)(23) and 362(m) provide a means for a lessor to terminate the automatic stay based upon alleged drug use or "property endangerment." Sections 362(b)(23) and 362(m) presuppose that a lessor did not obtain a prepetition judgment of possession. "Property endangerment," as used in the statute, is undefined, but the term would seem to fit with seeking eviction based on Collyer Conditions. While Congress established a procedure to terminate the stay based on alleged property endangerment, it is illogical to suppose that Congress would enable a debtor to stay the effect of a judgment of possession by curing a monetary default and leaving unresolved any material non-monetary default that may also form a basis for the prepetition judgment of possession. If alleged property endangerment is the basis for seeking to lift the stay and the tenant contests the existence of the "situation giving rise to the lessor's certification," 11 U.S.C. § 362(m)(2), the court is required to hold a hearing with the debtor having the burden of proof that the "situation giving rise to the lessor's certification ... did not exist or was remedied." 11 U.S.C. § 362(m)(2)(D).[5] But where a

Page 91

prepetition judgment of possession is based on circumstances that meet the test of "property endangerment," the bankruptcy court is precluded from relitigating these issues. *In re Éclair Bakery Ltd.,* 255 B.R. 121, 133 n. 23 (Bankr.S.D.N.Y. 2000) ("A state court judgment issued prior to the filing of a debtor's bankruptcy case is *res judicata* in the bankruptcy case, and the debtor may not relitigate issues already decided by the state court.") (citations omitted). Accordingly, the Court concludes that § 362(m) does not apply if the lessor obtained a prepetition judgment based upon "property endangerment"; and § 362(*l*) does not apply if the prepetition judgment of possession is based in whole or in part on a material default that cannot be cured by the payment of money.

In this case, the judgment of possession issued by the Civil Court on January 5, 2007 rested upon the Collyer Conditions and past-due use and occupancy payments alike. However, the 2008 Order authorizing the landlord to execute the warrant did not indicate the presence of an outstanding monetary default. The Landlord argues, and the Debtor fails to dispute, that the 2008 Order was based solely upon the Debtor's failure to cure the Collyer Conditions. Accordingly, Section 362(*l*) does not apply in this case.[6]

**D. New York Law Permits the State Court to Vacate a Warrant of Eviction and Reinstate the Landlord-Tenant Relationship**

In New York, RPAPL § 749(3) governs the effect of a warrant issued pursuant to a judgment of possession. Section 749(3) provides as follows:

3. The issuing of a warrant for the removal of a tenant cancels the agreement under which the person removed held the premises, and annuls the relation of landlord and tenant, *but nothing contained herein shall deprive the court of the power to vacate such warrant for good cause shown prior to the execution thereof.* Petitioner may recover by action any sum of money which

was payable at the time when the special proceeding was commenced and the

Page 92

reasonable value of the use and occupation to the time when the warrant was issued, for any period of time with respect to which the agreement does not make any provision for payment of rent.

N.Y. REAL PROP. ACT. & PROC. L. § 749(3)(McKinney 2008) (emphasis added).

The issuance of a warrant of eviction severs the landlord-tenant relationship. But bankruptcy courts have long recognized a debtor's possessory interest in property—assuming the warrant has not been executed and the debtor remains in possession—as an equitable interest under Bankruptcy Code § 541 eligible for protection under the automatic stay. *48th Street Steakhouse, Inc. v. Rockefeller Group, Inc. (In re 48th Street Steakhouse)*, 835 F.2d 427, 430 (2d Cir.1987) ("Indeed, a mere possessory interest in real property, without any accompanying legal interest, is sufficient to trigger the protection of the automatic stay."). The automatic stay can protect this interest and prevent the execution of a warrant even after a warrant has been issued when state law may allow a debtor to cure the default before execution of the warrant. 11 U.S.C. § 362(*l*)(2). But the debtor must return to the state court for relief if the debtor wants the landlord-tenant relationship reinstated; the bankruptcy court cannot reinstate the landlord-tenant relationship. *See In re Marcano*, 288 B.R. 324, 338 (Bankr. S.D.N.Y.2003) ("Notwithstanding the issuance of a warrant, the tenant still retains 'an equitable interest in the property, and the potential to reinstate the landlord-tenant relationship.' The ... state court retains the ability to vacate the warrant and order a tenant reinstated at least until actual execution of the warrant. In appropriate cases, bankruptcy courts have continued the automatic stay of 362 in order to give the tenant an opportunity to seek an order from the state court vacating a warrant of eviction.") (citations omitted); *In re Éclair Bakery Ltd.*, 255 B.R. at 133 n. 23 ("The filing of a bankruptcy petition does not resurrect a lease,

and a bankruptcy court does not have the power to resurrect a lease which was terminated prior to the filing of a lessee's bankruptcy petition."); *332-4 West 47th Street Assoc., L.P. v. Muniz (In re Muniz)*, 1999 WL 182588, at *2 (S.D.N.Y.1999). This equitable interest in the property is eligible for protection under the automatic stay as long as vacatur of the judgment of possession is possible. *Id.; see also In re W.A.S. Food Service Corp.*, 49 B.R. 969, 973 (Bankr. S.D.N.Y.1985) ("Because the debtor is currently in possession of the premises, the automatic stay prohibits an eviction. This court is empowered to continue that stay, if the circumstances so require, to give the debtor a reasonable opportunity to re-negotiate with the landlord or to seek a vacatur of the warrant of eviction.") (citation omitted). A debtor may retain an equitable interest consisting of a right to reinstate the landlord-tenant relationship. *See Éclair Bakery*, 255 B.R. at 133-34 (explaining that such an interest is comparable to a redemption right); *In re Reinhardt*, 209 B.R. 183, 186-87 (Bankr. S.D.N.Y.1997) (finding that option to redeem the tenancy by payment in full constituted an interest of the estate protectable under § 362(a)). Such an interest may arise if, for example, a court issues a warrant of eviction but stays its execution to permit the tenant to cure before eviction. *See Éclair Bakery*, 255 B.R. at 133-34. RPAPL Section 749(3), which permits a court to vacate a warrant for good cause shown, recognizes this right.[7]

Page 93

Nothing in the 2005 amendments in BAPCPA alters recognition of this equitable interest as long as the debtor remains in possession and state law permits the state court to reinstate the landlord-tenant relationship. As stated in House Report No. 109-31, the addition made by BAPCPA "does not provide any new right to either landlords or tenants relating to evictions or defenses to eviction under otherwise applicable law." H.R.REP. No. 109-31, at 75, U.S.Code Cong. & Admin.News 2005, p. 143. Sections §§ 362(b)(22) and 362(*l*), however, provide additional protection to the landlord's interests before a debtor can reinstate the automatic stay if the landlord obtained a prepetition judgment of

fastcase

- 6 -

possession. As explained above, a debtor can only reinstate the stay if the prepetition judgment of possession can be cured by the payment of money and the debtor strictly complies with § 362(*l*). That is not the case here. Therefore, the automatic stay cannot be reinstated in this case.[8]

**E. Even if the Automatic Stay Could Be Reinstated, The Landlord Has Established Cause to Lift the Automatic Stay**

The Landlord argues that even if the automatic stay can be reinstated under Bankruptcy Code § 362(*l*), it should nevertheless be lifted for lack of adequate protection under § 362(d)(1). The prepetition issuance of a warrant may provide "cause" to terminate the automatic stay pursuant to § 362(d)(1). Section 362(d)(1) provides that a court may grant relief from the automatic stay for cause, including the lack of adequate protection of an interest in the property of the moving party. 11 U.S.C. § 362(d)(1).

*In re Éclair Bakery Ltd.,* 255 B.R. 121, is instructive. In *Éclair Bakery,* the landlord of the debtor, Éclair Bakery Ltd., had obtained three warrants of eviction against the bakery for rent nonpayment. In the course of three bankruptcy cases, the parties executed three stipulations to cure rent defaults. In each case, the bakery failed to cure and commenced a fresh chapter 11 case to prevent the landlord from executing the outstanding warrant. Interpreting RPAPL § 749(3), Judge Gerber found that the issuance of the warrants constituted cause to lift the stay. The key issue, Judge Gerber stated, was whether a good-faith basis to vacate a warrant was present. "Thus, where state court litigation under the escape valve provided under the second clause of RPAPL § 749(3) is pending, or the basis for good faith litigation is apparent ..., a continuation of stay protection, at least for a limited time, may be appropriate. By contrast, where state court litigation is not pending or in the cards, or where the debtor has failed to show any basis for a belief that

Page 94

the state court will grant relief, the prepetition termination of the landlord-tenant relationship will at least normally provide cause for relief from the stay." *Id.* at 136.

In this case, cause would exist to terminate the stay if it were reinstated under § 362(*l*)(1). Like the debtor bakery in *Éclair Bakery,* Debtor has failed to show grounds upon which the Civil Court would vacate the warrant of eviction. Debtor's appeal of the 2007 Order has been dismissed. (*See* Lift-Stay Motion, Exhibit F, ECF Doc. No. 13). Despite the passage of more than nine months from the original 2007 Order to the 2008 hearing regarding the continuation of the Collyer Conditions, the state court held that Griggsby failed to comply with the 2007 Order, resulting in the entry of the 2008 Order. Griggsby failed to timely appeal the Civil Court's 2008 Order permitting the landlord to execute the warrant based on Debtor's failure to cure the Collyer Conditions.[9] And rather than requesting the Civil Court to vacate the warrant before the scheduled February 23, 2009 eviction, Griggsby filed this chapter 13 case, with a bare-bones petition and no required schedules or supporting information. The Court is left with the firm conviction that this chapter 13 case was not filed in good faith, but rather for the purpose of thwarting the Landlord's efforts to evict her. The Debtor cannot collaterally attack the state court judgment in this court. *Éclair Bakery,* 255 B.R. at 133 n. 23. If Griggsby wants relief from the impending eviction, she will have to seek it from the state court. Therefore, cause would exist to lift the automatic stay under § 362(d)(1) if the Court had not otherwise concluded that the stay cannot be reinstated on the record here under § 362(*l*).

**CONCLUSION**

For reasons explained above, § 362(*l*) does not apply in this case. In any event, cause exists to lift the automatic stay even if it were reinstated. Accordingly, at the hearing on April 2, 2009, the Landlord's Objection to Debtor's certification pursuant to § 362(*l*) was SUSTAINED and Landlord's motion to lift the stay was GRANTED to permit the landlord to execute the warrant of eviction. The application to reinstate the

Case 1:15-cv-03689 Doc 44 Filed 09/23/15 Entered 09/23/15 18:39:39 Desc Exhibit Document Page 220 of 291

In re Griggsby, 404 B.R. 83 (Bankr. S.D.N.Y. 2009)

automatic stay, filed on April 10, 2009, is DENIED.

----------------

Notes:

1. The Debtor filed a bare-bones bankruptcy petition in this case. The Clerk's Office entered a Deficiency Notice on February 23, 2009, setting a deadline for filing missing schedules and information by March 9, 2009. (ECF Doc. No. 4.) None of the missing schedules and information has been filed. The Chapter 13 Trustee has filed a motion to dismiss the chapter 13 case for failure to timely file schedules, a statement of financial affairs, payment advices, and a plan. (ECF Doc. No. 14.) The motion to dismiss is scheduled for presentment on April 23, 2009.

2. Under New York law, the term "Collyer condition," alternately spelled "Collier condition," or "Collier-like condition," refers to an excessive accumulation of debris and clutter in a residential apartment that poses a safety, health, or fire hazard. *See Zipper v. Haroldon Court Condominium,* 39 A.D.3d 325, 835 N.Y.S.2d 43, 45 (1st Dep't 2007) (defining a Collyer condition as a "dangerous clutter[ing] with furnishings, boxes, and debris"); *Gazivoda v. Sherman,* 29 A.D.3d 458, 816 N.Y.S.2d 417, 418 (1st Dep't 2006) (agreeing that a Collyer condition and nuisance existed in an apartment "cluttered with papers, refuse and/or rubbish"); *5th & 106th St. Associates LP v. Rodriguez,* 2008 WL 4952451 at * 6 (N.Y.City Civ.Ct. Nov.20, 2008) (finding that accumulated clutter constituted a Collyer condition); *107-109 East 88th Street LLC v. Nowillo,* 2005 WL 1668400 at *3 (N.Y.City Civ.Ct. June 24, 2005) (finding that papers and wires left on a stove created a fire-hazard Collyer condition). The presence of a Collyer condition may constitute a violation of the New York City Housing Maintenance Code and may give rise to civil and criminal liability if left uncured. *See* NEW YORK CITY, N.Y., CODE § 27-2011 (2008) (owner's duty to clean interior shared space); § 27-2012 (owner's duty to clean interior of dwelling units); § 27-2115 (civil penalties); § 27-2118 (criminal penalties).

3. The court's thorough opinion details "the extreme and hazardous nuisance conditions pervading respondent's apartment." (*See* 2008 Order, Exh. G, Lift-Stay Motion, ECF Doc. No. 13.) Rejecting Griggsby's contention that she complied with the earlier order to clean up the apartment, the court "holds

to a moral certainty that petitioner [Landlord] proved respondent's [Griggsby's] noncompliance." (*See id.*)

4. At least one commentator (and judge) has argued that the statutory safe harbor should not be available to permit cure of a prepetition non-monetary default. *See* Alan M. Ahart, *The Inefficacy of the New Eviction Exceptions to the Automatic Stay,* 30 AM. BANK. L.J. 125, 132 (Winter 2006) ("If the *only* default that led to the prepetition judgment for possession was a monetary default and the debtor timely cures this default under applicable nonbankruptcy law, the lessor cannot proceed with the eviction regardless whether the debtor is protected by the bankruptcy automatic stay.") (emphasis in original).

5. As one commentator has recognized, § 362(m) may give rise to a contested matter regarding the extent of the property endangerment. *See* 5 KEITH M. LUNDIN, CHAPTER 13 BANKRUPTCY § 431.1, at 431-10 ("New § 362(b)(23) and (m) are likely to produce some fascinating hearings in bankruptcy courts. It is not uncommon for landlords to believe that Chapter 13 debtors are not taking proper care of their apartments or rental homes. ... [T]he debtor's denial and evidence of 'remedial' action will not be dull. Bankruptcy court findings that property is endangered or that illegal drug activity is present could be preclusive in subsequent state court litigation between the landlord and debtor.").

6. It is clear from the record that the state court's order authorizing execution of the warrant of eviction is based on Griggsby's failure over a long period of time to cure the very serious Collyer Conditions. While the Court need not resolve the issue here, in a case in which a judgment of possession appears to be based on both monetary and non-monetary defaults but the materiality of each default is not clear from the record, or if the state court judgment was obtained by default, the bankruptcy court may be empowered to enjoin continuation of eviction proceedings under Bankruptcy Code § 105 to permit the debtor expeditiously to seek clarification from the state court of the basis for the judgment, as this may clarify the debtor's right to extend the stay under § 362(*l*), while preserving property of the estate until the state court rules. On the record here, no such clarification is needed. Because of the tight deadlines under § 362(*l*), the debtor must timely file the required certifications and make all of the required cure payments to retain the possibility of obtaining additional stay relief. As explained in Section D *infra,* the bankruptcy court cannot in any event reinstate the landlord-tenant

relationship in New York once a warrant of eviction has issued—only the state court may do so. Thus, in cases in which the warrant of eviction has issued, stay relief from the bankruptcy court can only provide the debtor with a brief window to go back to state court, usually to request that the warrant of eviction be vacated. This Court's experience has shown that the Civil Court in New York City is willing to consider providing such relief on conditions for good cause shown.

7. As explained above, because the warrant of eviction has not been executed in this case, the Landlord's argument that the Debtor holds no property interest in the Apartment has no merit. At least as of the date of the hearing, the Debtor remained in possession of the Apartment, retaining an equitable interest and potentially being entitled to relief in state court under RPAPL § 749(3), even though she cannot reinstate the automatic stay under Bankruptcy Code § 362(*l*).

8. Often times, issues about curing monetary and non-monetary defaults, even if a prepetition judgment of possession has been obtained, are resolved by consent through conditional orders. But if a debtor is unable to reach agreement with a landlord involving a non-monetary default, the debtor's remedy must be sought in the state court that entered the prepetition judgment of possession. If a warrant of eviction has not been executed, relief may be available from the state court for good cause shown under RPAPL § 749(3).

9. The New York City Civil Court Act governs appeals to the Appellate Terms of the Supreme Court. *See* N.Y.C.P.L.R. § 5702 (McKinney 2009). Section 1703 of the Act incorporates Article 55 of the New York Civil Practice Laws and Rules ("CPLR"). *See* N.Y. City Civ. Courts Act § 1703 (McKinney 2009). In turn, Section 5513 of the CPLR provides that an appeal as of right must be taken within thirty days after the appealing party receives service of a copy of the judgment or order and written notice of its entry. N.Y.C.P.L.R. § 5513. In this case, a Notice of Entry of the 2008 Order was apparently mailed to the Debtor on October 29, 2008, a little more than five months to date. (*See* Exh. G, Lift-Stay Motion, ECF Doc. No. 13.)

---------------

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| IN RE:<br><br>    Andre Bisasor<br><br>    Debtor, | Chapter 13<br>Case No.: 15-13369 |

## DEBTOR'S AFFIDAVIT AND CLARIFICATION STATEMENT IN SUPPORT OF DEBTOR'S REPLY MEMORANDUM TO GREYSTAR'S SUPPLEMENTAL MEMORANDUM FOR GREYSTAR'S OBJECTION TO CERTIFICATION AND GREYSTAR'S MOTION FOR RELIEF FROM STAY

I, Andre Bisasor, the debtor, hereby certify that the below is true and accurate to the best of my knowledge. While I have tried to avoid legal argument, a proper explanation of my position requires that I explain my understanding of the legal concepts since prior to this bankruptcy case, I was representing myself. My bankruptcy attorney is not responsible for anything I say here.

## CORRECTED PROCEDURAL HISTORY

This procedural history corrects the errors, inaccuracies and misstatements made in Greystar's procedural history.

### A. GREYSTAR'S PRIOR DISMISSED CASE

1) In January 2015, Greystar served a summons and complaint on me with a date of January 12, 2015. Under the uniform rules of summary process, the entry date was automatically set for January 19, 2015, the answer date was automatically set for January 26, 2015 and the automatic trial date was set for January 29, 2015.

2) Greystar voluntarily dismissed that case on January 28, 2015.

223

3) This dismissal was due to the fact that there was a false return of service submitted to the district court and because me had evidence of the perjury on a home video camera system. [NB: This is operates as a res judicata defense because of the attempted fraud on the court and as a result, the case should be dismissed. This is only one example of why the debtor need a trial in district court and/or a full opportunity to present our defenses to the full bench of the Appeals Court in order to justice to be served here in this matter].

## B. GREYSTAR'S REFILED CASE

4) Greystar served another summons and complaint on me with a return date of February 2, 2015.

5) Under the Uniform Rules of Summary Process, the entry date was automatically set for February 9, 2015 and the trial date was automatically set for February 19, 2015 and the answer date was automatically set for February 17, 2015.

6) However Greystar filed the case in the district court on February 11, 2015 which was two days after it was due in district court [NB: This is also a defense as to why this case is procedurally defective and should have been dismissed and the Greystar should have been required to start over the process in proper manner].

## C. GREYSTAR'S PROPOSAL TO MEDIATE AND POSTPONE THE REFILED CASE

7) On February 16, 2015, Greystar's counsel approached me with a proposal to do mediation, given the number and type of counterclaims and defenses that we have. Greystar's counsel also proposed that we do a continuance in order to put everything on hold in order to see if the matter could be resolved outside of court.

2

224

8) Greystar's counsel represented to us and made promises to us that we would not be harmed or prejudiced in any way by agreeing to the mediation and to the continuance. This included the explicit promise and agreement that we would preserve all our rights to discovery and a jury trial as well as all rights pursuant to the uniform rules of summary process

9) Greystar's counsel drafted an agreement titled "JOINT AGREEMENT TO CONTINUE" and that stated as follows: "**Now come the Parties in the above captioned matter and request that this Honorable Court continue the trial date from February 19, 2015 to April 9, 2015 at 10:00 am. The Parties further agree that an Answer, if any, shall be served and filed with the Court no later than April 6, 2015. Both Parties reserve all other rights pursuant to the Uniform Rules of Summary Process and with respect to requesting a Jury Trial.**"

10) This agreement was signed and dated on February 17, 2015, the day that the Answer was due. It is evident that the joint motion was drafted by the Greystar's counsel and we were asked to sign on a line that said "assented to by me". This proves that we were not the ones asking for the continuance and that it was Greystar asking for this first continuance.

11) In addition, Greystar agreed in writing to the following reservation of rights by us as follows: "**I reserve my rights not only for jury trial and for my Answer but I also reserve my rights regarding discovery or my doing any motions that I have a right to do, or regarding preserving my rights to my counterclaims including the 93A demand. By agreeing to this mediation and continuance, I do not relinquish or give up any rights or grounds whatsoever or concede anything that would put me at a disadvantage because I agreed to do this mediation or continuance.**"

3

225

12) Also, on February 19, 2015, Greystar's counsel wrote an email to us confirming acceptance of the agreement by the court as follows: "**I have contacted the court and they have accepted my office's representations that the case is continued by Agreement.**"

13) All of these rights were reserved prior to their expiration date and representations were made to me by Greystar's counsel that all such rights were preserved and that the court agreed with this.

14) We later contacted the court clerk's office and they confirmed that the case was continued and the agreement was accepted and entered by the court.

15) On April 3, 2015, Greystar's attorney drafted another Joint Agreement To Continue and sent it for us to sign because the mediator had a scheduling issue that required the mediation to set a date of April 17, 2015, which was beyond the initial continuance date. This second Joint Agreement to Continue stated as follows:

"**Now come the Parties in the above captioned matter and request that this Honorable Court continue the trial date from April 9, 2015 to May 7, 2015 at 10:00 a.m.. The Parties further agree that an Answer, if any, shall be served and filed with the Court no later than May 4, 2015. Both Parties reserve all other rights pursuant to the Uniform Rules of Summary Process and with respect to requesting a Jury Trial.**"

16) This is the same agreement that was signed on February 17, 2015 with the same reservation of rights and with the same intent of the parties. It is evident that the joint motion was drafted by Greystar's counsel and we were asked to sign on a line that said

4

"assented to by me". This proves that we were not the ones asking for the continuance and that it was the Greystar asking for this second continuance.

17) After one-day mediation session on April 17, 2015 took place, the parties did not reach an agreement that day but agreed to continue the mediation because of the possibility of still being able to reach a resolution with the help of the mediator. This led to consideration of one last continuance. The Greystar's attorney drafted another Joint Agreement To Continue and sent it to us to sign on Monday May 4, 2015. It stated as follows: "**"Now come the Parties in the above captioned matter and request that this Honorable Court continue the trial date from May 7, 2015 to May 14, 2015 at 10:00 a.m.. The Parties further agree that an Answer, if any, shall be served and filed with the Court no later than May 11, 2015. Both Parties reserve all other rights pursuant to the Uniform Rules of Summary Process and with respect to requesting a Jury Trial."**

18) It is evident that this third joint motion was drafted by the Greystar's counsel and we were asked to sign on a line that said "assented to by me". This proves that we were not the ones asking for this continuance and that it was the Greystar asking for this third continuance.

## D. MY EMERGENCY EX PARTE HEARING BEFORE JUDGE POMAROLE

19) Even though the parties agreed to at least a one week continuance, we still wanted to ask the court for at least a little more time because the mediator was going to be travelling for ten days and would be kept offline for the most during that time. This was what was we brought before the Court on Monday May 4th in a special emergency ex parte hearing.

5

227

20) After explaining this to the Judge Pomarole, the judge said that these joint agreements to continue have gone on long enough and he would allow this last motion but no further continuances would be allowed. This was said in the context of the parties asking for continuances for purposes like doing mediation etc. This was not stated in the context of the overturning the procedures of the uniform rules of summary process.

# E. MY SUBMISSION OF A TIMELY ANSWER AND REQUEST FOR DISCOVERY AND JURY TRIAL AND OBSTACLES WITH CIVIL CLERK OFFICE

21) On May 11, 2015, I submitted an Answer with Counterclaims, and Discovery and Request for Jury Trial in accordance with the uniform rules of summary process.

22) Under the uniform rules of summary process, the civil clerk court personnel is required to automatically enter a new rescheduled trial date of two weeks from the trial date upon submission of a request for discovery by me.

23) However, in this case, the civil clerk office indicated that they did not know whether the judge's note that said "no further continuances" was meant to deprive me of the right to a jury trial or the right to discovery, or whether the judge's note simply indicated that the allowance of these joint agreements to continue among the parties or other voluntary requests for such continuances would now come to an end.

24) We asked the civil clerk court personnel and the clerk to check with the judge but they declined and said that we had to do a motion for clarification.

25) We explained to the court personnel the context of the judge's statement i.e. it was in the context of an ex parte motion for continuance requesting more time than the joint agreement for continuance because the parties agreed to mediate further but could not agree on the exact date. It was in that context that the judge said "no further

continuances" and not in the context of denying our right to a jury trial or to discovery, which was explicitly preserved in the motion documents that were allowed on May 4 as well as in the prior joint motions to continue that have been previously submitted and accepted by the court.

26) We explained further that to force us to do a trial on May 14, 2015 would have created a substantial and irreparable prejudice to us. This is especially so because we were led to believe that we would have had the automatic rescheduling on May 11 of the trial date on May 14 to be two weeks out to May 28, 2015. This is what the uniform rules explicitly state. We would not have been able to arrange witnesses and evidence in time for a May 14 trial date since we only found on May 11, 2015 that the clerk was not sure what the Judge meant by his note.

27) We also explained that we were not requesting a continuance in the normal sense of the word. We were asserting our right to discovery under the uniform rules of summary process and to a jury trial.

28) If we were denied these rights, this would mean that the promises and representations by the Greystar counsel and by the court personnel were being undone.

29) We specifically were told that by agreeing to the continuance to do mediation, we would not be giving up any rights including the right to discovery, the right to a jury trial as well as all rights contained in the uniform rules of process.

30) To do this would only benefit Greystar and would harm us. This would have been particularly egregious because it is Greystar that asked us to do the continuances in the first place and made promises contained in the joint agreements to continue that was accepted by the court.

7

229

31) If we lost the rights to uniform rules of summary process then the case must be dismissed in order to preserve the equities and for the rightful and fair administration of justice.

32) If the court intended to not allow discovery and jury trial as requested by me, then this would have had serious consequences that could not be easily remedied when the case is over, even on appeal, and would therefore carry a substantial risk of miscarriage of justice and this will be extremely prejudicial to the us as me, especially where our right to live and have a home is being threatened.

33) This would be clearly biased in favor of Greystar and against us. The rules of summary process were relied upon by parties to know how to plan and how to interact or negotiate with each other.

34) Greystar should not be allowed to benefit from its representations and promises that benefit only them when we relied upon them to our detriment. We also called the court and spoke with the clerk's office and they told us that these joint continuances were allowed and accepted by the court and that all our rights would be preserved.

35) If we had known that there was a chance that we could lose our right to discovery or a jury trial, we would not have agreed to a continuance or to mediation. It would also require that instead of relying upon agreements among the parties or upon representations made by the court personnel, we would have to go before the judge every time to confirm any basic procedural rule that is guaranteed in the rules of process. This would be burdensome outcome to the court and to the parties.

36) On Monday May 11, 2015, Magistrate Beth Cook took our Answer and request for discovery but told us that this is not a guarantee that we don't have to appear for trial on Thursday May 14, 2015. She was rude and disrespectful to us. She refused to speak with

8

230

the judge about the matter though we asked her to do so. She told us we had to come in
and go before the judge either on Tuesday May 12, 2015 or Wednesday May 13, 2015 to
get clarification. We told her that we did not have time to come into court all the time.
We are pro se, not lawyers, and that we have other obligations. She still refused to check
with the judge and literally snapped at us and was antagonistic in her attitude towards us
for no apparent reason. As we were leaving through the back door of the court, we
immediately observed Beth Cook laughing and chuckling in an unprofessional and
belittling manner as she spoke about us to other court staff behind our backs. It was
evident that she did not realize we would exit through the back door of the court where
we could observe and overhear her.

## F. MY MOTION FOR CLARIFICATION AND EMERGENCY EX PARTE HEARING BEFORE JUDGE MCGUINESS; MISTREATMENT BY JUDGE MCGUINESS

37) On Wednesday May 13, 2015, we submitted a motion for clarification to court staff
Patty. She told us that this motion would be acted upon on the papers and that no hearing
would be scheduled and that we would be notified by mail. We insisted that we needed to
know the answer before Thursday May 14, 2015 and so we needed to get an answer
today and that we would like to go before the judge today. Patty walked over to Beth
Cook office. Beth Cook emerged from her office and walked right past us without
acknowledging us or without being cordial. She exhibited a negative and dismissive
attitude towards us as she ignored our presence.

38) About 10minutes later, a phone call was received by Patty from apparently Beth Cook.
Patty then told us that a hearing had been scheduled right then in courtroom 3 upstairs,

9

231

39) We proceeded to courtroom 3. When we arrived at courtroom 3, it was empty with one court magistrate there who was editing or copying a court recording. After he was done, he left the room. Then Ms. Beth Cook appeared and took the place/seating of the motion hearing magistrate/clerk would normally sit. Shortly thereafter, two other court magistrates appeared but remained in the audience seating section of the courtroom as spectators only. There was no else in the room except for the bailiff. Then Judge McGuiness appeared.

40) Judge McGuiness denied our request to have the case automatically rescheduled for two weeks pursuant to the uniform rules of summary process.

41) He was rude, abrupt, and didn't allow us to finish speaking and walked-off the bench while we were in the middle of speaking. The bailiff escorted us out of the room, though no one was left in there and he followed us.

42) Afterwards, we made a complaint to th Magistrate that we feel as if we were mistreated by Judge McGuiness and by this court and that we feel as though we have been discriminated against because of race.

43) We asked the magistrate how to make a complaint because we wanted file a written one. He told us that he did not know how to do that

44) The magistrate told us that we should file a motion for reconsideration and come in the morning at the time for trial and see what happens.

# G. SHORT HEARING BEFORE JUDGE FINIGAN AND RESCHEDULING FOR THE PURPOSE OF TRANSFERRING THE CASE TO JUDGE ROBERT ZIEMIAN – THURSDAY MAY 14, 2015

45) On Thursday May 14, 2015, we (as well as Greystar) were present at court. Instead of
Judge McGuiness presiding as was stated on the docket, a new Judge, Thomas Finigan
appeared. This was the first official court hearing on this matter with both parties
present. This was the date that trial had been set and that all pre-trial motions were to be
heard including our motion to dismiss and motion to transfer.

46) I requested to have our Motion to Dismiss heard at that time.

47) However, Judge Finnigan preferred to have Judge Robert Ziemian hear the Motion to
Dismiss as well as the other motions that were before the court, so we were unable to
present our Motion to Dismiss at that time though we requested to do so several times. It
is also worthy of note that Greystar at that time requested a continuance for two weeks
because Greystar was not ready for trial or to argue against our Motion to Dismiss.

48) At a later time, we found out that the court clerk fabricated the court records by writing
that the trial was automatically rescheduled due to discovery filed by me, which was
false.

49) The only reason the trial dates was reset was because Greystar was not ready for trial and
wanted a two-week continuance.

## H. SHORT HEARING BEFORE JUDGE ZIEMIAN THAT HAD TO BE RESCHEDULED DUE TO COURT SCHEDULING PROBLEMS – THURSDAY MAY 21, 2015

50) On Thursday May 21, 2015, we were present at a hearing with Judge Ziemian. However,
Judge Ziemian did not have time to hear these motions (including our Motion to Dismiss)

11

because another criminal jury trial that scheduled that same day took longer than expected.

51) At that time Defendant Bisasor indicated to Judge Ziemian that he had begun to feel ill with a high fever, pain, weakness and light-headedness from earlier that morning/the night before and that though he struggled to still come to court at 2 pm, he had an appointment to see his doctor later that evening at 4:15pm to seek medical care for the onset of severe illness. [NB: Mr. Bisasor had called the court earlier in the morning to inform the court of his illness but was told that Judge Ziemian said that if he did not show up default would enter against him, so Mr. Bisasor sacrificed his health and well-being to force himself while in great pain and being severely ill to attend court in order to not suffer a default).

52) Judge Ziemian was unsympathetic to Mr. Bisasor's indications of being in pain and being severely ill. However, it is worthy of note that Judge Ziemian expressed sympathy for the illness of Greystar counsel's sick son which was offered by Greystar's counsel as a reason why she could not return to court on Friday morning of May 22, 2015 when Judge Ziemian attempted to reschedule the motion hearing for Friday morning.

53) Due to the unexpected delay in the criminal jury trial, Judge Zieman required that we stay present from 2pm until 4:30pm. Because of extra questions from the jury of that trial, Judge Ziemian had no time to get into the motions that were to be heard that afternoon from our case and he essentially ran out of time right before the close of the court at 4:30 pm. After an initial attempt to reset the motion hearing for Friday, he rescheduled the motion hearing to occur on Tuesday May 26, 2015 at 9 am with the pronouncement that it would go all day if needed.

54) As a result of this unexpected delay in the motion hearing and being kept by Judge
Ziemian until 4:30pm, Mr. Bisasor missed his appointment with his doctor at 4:15 pm
and was unable to receive medical care for another day.

## I. MEDICAL SITUATION OF MR. BISASOR

55) On May 22, 2015 Mr. Bisasor again sought medical care and was diagnosed as having a
virulent viral infection. The doctor expressed concern that he might develop pneumonia.
The Doctor ordered that Mr. Bisasor take the necessary recommended medication, keep
hydrated and get plenty of rest but, when he learned that Mr. Bisasor had commitments
regarding a court case, the Doctor also ordered that Mr. Bisasor should not be involved in
preparation for court or in going to court on Tuesday May 26, 2015 as this would be
potentially detrimental to his health and the Doctor provided medical documentation to
that effect (See Exhibit A).

56) However, although Mr. Bisasor was tremendously ill, he still tried to do some preparation
for the court case over the weekend, against his Doctor's advice.

57) Defendant Anderson, as caretaker for her husband Defendant Bisasor, also was exposed
to infection and, over the weekend, also began to develop symptoms of a viral infection.

## J. WORSENED MEDICAL CONDITION OF DEFENDANT BISASOR AND
## HOSPITALIZATION

58) On the morning of May 26, 2015 as he attempted to get ready for court, Mr. Bisasor
further developed symptoms of shortness of breath, chest pain, head pain and loss of
consciousness, and he collapsed to ground and passed out. He was taken to the hospital

and admitted into Hospital ER at approximately 8:45am on the morning of May 26, 2015. (See Exhibit B).

59) On May 28, Defendant Bisasor was discharged.

60) Defendant Bisasor was instructed to get rest and not resume work until the following week Monday. I was also instructed to do follow-up in order to ensure all outstanding medical issues were addressed on an outpatient basis.

61) Hence, Defendant Bisasor was too ill to appear in court on May 26, 2015.

62) Even if he was able to show up to court on the morning of May 26, he would have been unable to stay for a long period of time as contemplated by Judge Ziemian (i.e. "..we will go all day until we get it done") given his medical condition without seriously jeopardizing his health and well-being.

63) Because Defendant Anderson was exposed to his viral illness she began to develop symptoms of a viral illness as well on Tuesday May 26, 2015. At a later point in time, she was admitted to the hospital on Wednesday May 27, 2015.

64) However, on the morning of May 26, Defendant Anderson drove Defendant Bisasor to the hospital on May 26. As a spouse, she was a witness and proxy for Defendant Bisasor as Defendant Bisasor would be put under medication and subjected to several procedures.

65) Given the serious of Defendant Bisasor's illness, Defendant Anderson was unable to attend court at 9 am on Tuesday morning.

66) She was however diligent to contact the court and fax information and a request for continuance to the court prior to the time of the hearing at 9 am.

67) If requested, I can provide medical records from the Norwood Hospital. They will verify the testimony of 3 doctors (under oath with notary) that Defendant Bisasor was hospitalized from May 26 to May 28.

68) This is veritable proof that Mr. Bisasor was in fact hospitalized on the date of the hearing and continued to be hospitalized for two more days thereafter.

69) Mr. Bisasor therefore had good cause for missing the hearing as he was hospitalized for 3 days, including the date of the hearing. His failure to attend is not the result of negligence, carelessness or any similar inexcusable ground, but rather a medical condition and emergency that landed him in the hospital. He should have another opportunity to have his day in court, to hear his motions and if needed, have a fair and proper trial by a jury of his peers as he has previously requested and which is his right.

70) Our conduct regarding our failure to appear for a motion hearing was aberrational and not consistent with our conduct relating to the case as we showed up for every hearing/court date that was previously set and had requested on more than one occasion that we be given an opportunity to argue our motion to dismiss which could have disposed of the case altogether previously.

71) We were concerned that because of this medical emergency situation, Judge Ziemian might still enter default against us, which he did.

72) We should not have had to choose between our home (i.e. having a place to live) and our health/well-being. This is an impossible position to be put in for us to sacrifice our health and possibly our lives in order to be present at court status hearing.

73) Therefore we requested a continuance of a minimum of ten (10) days to allow me to recover from my illness so that we could be fully fit and competent to present our motions and our case.

74) As further grounds for this request for continuance due to illness, I asked that Judge Ziemian take into consideration that:

1. I had come to court twice now (on Thursday May 14, 2015 and on Thursday May 21, 2015) to present our motions but due to no fault of their own, those motions were not heard either by Judge Finigan or Judge Ziemian.

2. We have shown that we are interested in presenting and vigorously defending our case. We filed a timely Answer and Counterclaims with discovery and a request for Jury Trial along with a Motion to Dismiss and a Motion to Transfer and Consolidate on May 11, 2015. We presented meritorious defenses and counterclaims in their Answer and in their Motion to Dismiss.

3. We have shown no interest in giving up our rights or in not presenting our case.

4. Clearly were it not for the health issues referenced herein, we would have been present on the morning of May 26, 2015 to argue the motions that we have been trying get heard for two weeks straight but to no avail.

5. After two reschedulings of this motion hearing by the court, the fact that we were unable to attend the third scheduled motion hearing should not be held against us to the point of default.

6. If the court had heard my motion previously when we were ready to present our motions, then an impromptu last minute scheduling (on Thursday May 21, 2015) of a new motion hearing for Tuesday May 26, 2015 (the day after Memorial Day

16

on Monday May 25, 2015) would have been unnecessary. Given the court's own delay and need to reschedule due to its scheduling problems, we should have been given some latitude in being unable to meet the court's changing need for scheduling the motion hearing.

7. We were prepared to argue our motion to dismiss on two occasions. The court did not facilitated our motion to be heard. Moreover, our motion to dismiss is based largely on a challenge to the court's subject matter jurisdiction (based not on amount in controversy but on the defective Notice to Quit) which is critical to a lawful final judgment.

8. We requested that the court preserve our right to have their motion to dismiss to be heard and not enter default or default judgment but grant a continuance as requested and as justice so requires.

9. However, Judgment by Default was entered on May 26, 2015 and was docketed on May 27, 2015 by the District Court.

## BEGINNING OF POST-JUDGMENT DISTRICT COURT PROCEEDINGS

10. Judgment by Default was entered on May 26, 2015 and was docketed on May 27, 2015 by the District Court.

11. There are five judgments that were entered:

   a. Judgment by default on possession for 3413.

   b. Judgment by default on possession for 2216;

   c. Judgment by default on money damages for 3413;

   d. Judgment by default on dismissal of defendant's counterclaims on 3413.

17

239

e. Judgment by default on dismissal of defendant's counterclaims on 2216.

12. A status hearing was scheduled for June 8, 2015. This was requested by Greystar's counsel so that she could ask for execution to issue on that day.

13. Greystar's counsel filed a motion for attorney's fees. This was essentially a request to amend the judgment, which removed the finality of the judgment. This meant that execution should not have issued until the judgment was final.

14. We filed a motion to remove default and for relief from judgment that same day on June 8, 2015.

15. We filed a notice of appeal (regarding the denial of the motion to continue due to ill-health, the entry of default and the dismissal of our counterclaims) also that day. This triggered the customary first stage of appellate review, which was to the Appellate Division of the District Court. This appeal also triggered the an automatic stay during pendency of an appeal as mandated by MRCP 62. [NB: At this stage, an appeal cannot properly lodge before the Appeals court because the summary process action took place in a district court and not a housing court or superior court. In order to properly lodge before the appeals court, the appellate division of the district court must have already ruled on the underlying appeal].

16. Because we filed a notice of appeal, then the appeal bond requirements kicked in. For possession only, the bond is only $100. For rent damages, the bond would be for the amount of the judgment for rent (i.e. back rent) plus periodic payments of future rent as they become normally due going forward. Both of these bond requirements for possession and rent are important to maintaining the prosecution of the underlying appeal

18

240

on the default issues. Please note that if there was no rent damages awarded and the judgment was for possession only, then the only requirement for the appeal bond is $100.

17. We also filed a motion to set the appeal bond hearing date and we also filed a motion to waive the bond that same day, which was denied by Judge Ziemian, along with an Affidavit of Indigency.

18. This triggered the provisions of GL 239 s. 5, which grants an automatic stay for 6 days allowing us the chance to file an appeal (on the denial of the waiver of the bond) to the appellate division of the district court. We also submitted a notice of appeal for the denial of the waiver of the bond within the 6 days in a timely manner and so the appeal on the denial of waiver of the bond properly lodged before the appellate division of the district court. Based on GL 239 s. 5, this continued the automatic stay provisions of MRCP 62 until the bond is either waived by the reviewing court or paid pursuant to any orders issued by the reviewing court [i.e. based on the review of the denial of the bond waiver by the appellate division of the district court].

## APPEAL PROCESS IN THE APPELLATE DIVISION OF THE DISTRICT COURT

19. Appellate division of the district court denied the waiver of the appeal bond.

20. They ordered that we pay the bond of $32,000 plus $4980 plus monthly rent of $2390.

21. This meant that if we could not or did not pay the bond within 5 days of receiving notice of the bond order from the appellate division of the district court, then the underlying appeal on the default issues would be dismissed for failure to pay the bond. It would not be dismissed because the underlying appeal was without merit or because the appellate division made an adverse ruling on the merits. All this would mean is that the bond surety

19

protections for Greystar (that goes along with the prosecution of an appeal by a defendant) was not met. Hence the dismissal of the underlying appeal of the default issues is based on a technicality related to the bond and the bond only (i.e. failure to pay the bond). The appeal process that started in the appellate division of the district court would thus be cut short before it had a chance to go forward any further. There were no briefs with records or hearings on/adjudication of the underlying appeal on the default issues.

22. So the 5 days passed and we did not pay the bond, thus triggering the dismissal of our underlying appeal on the default issues, as outlined above.

## EXECUTION ISSUED ON AUGUST 7, 2015 AND MOTION TO STAY IN DISTRICT COURT DENIED

23. Consequently, execution issued on August 7, 2015.

24. That same day we filed a notice of appeal (to the appeals court) in the district court on the denial of the waiver of the appeal bond. This is the proper procedure to further challenge the bond order pursuant to the rulings by the Supreme Judicial Court.

25. We also submitted a motion to stay the levy on the execution in the district court in accordance with Massachusetts Appellate Procedure Rule 6.

26. The district court denied the motion to stay the levy on the execution on August 10, 2015.

## MOTION TO STAY IN THE APPEALS COURT

27. We therefore under MRAP 6 filed a motion to stay the levy on the execution in the Appeals Court on August 11, 2015 and thus matter properly lodged before the single

justice of the appeals court on the matter of the granting of a stay during the pendency of the appeal to the full bench of the appeals court.

28. The Motion to Stay is regarding the limited appeal bond issue. The stay is not regarding the underlying appeal on the default issues.

29. Therefore the standard of review should not be whether the district court judge abused his discretion in denying the motion to continue or to enter default. The standard of review is whether the district court judge abused his discretion in denying the waiver of the appeal bond and whether the appellate division of the district court erred as well in affirming the denial of the waiver of the appeal bond. This standard of review is tied directly to the criteria for the waiver of the appeal bond, namely whether we are indigent and have at least one non-frivolous defense. GL 239 makes absolutely clear that if the court finds that we are both indigent and have at least one non-frivolous defense, then the appeal bond must be waived. There is no discretion on the matter. Since both the district court and appellate division of the district court found that we are indigent, then the only matter left to review is whether we have at least one non-frivolous defense.

30. Given the volumes of documentation of evidence of our defenses, particularly the breach of warranty of habitability, and given the admissions of Greystar regarding the problems with the elevator resulting in our apartment becoming uninhabitable and the need to displace us from our main apartment for 9 months due to the elevator problem alone, it is without a shadow of a doubt that we have at least a non-frivolous defense of breach of warranty of habitability and breach of quiet enjoyment.

31. We therefore sought a stay from a single justice of the SJC based on the fact that the single justice of the appeals court applied the incorrect standard of review based on the

21

243

entry of default/denial of the motion to continue due to ill-health, and not based on whether the appeal bond should have been waived in the lower court.

32. If the court is basing its review on the entry of default/denial of the motion to continue due to ill-health, then (though we believe this not correct) then we still believe we would prevail on that issue as well (see attached memorandum on the errors of law by judge ziemian)

33. Furthermore, prior to the August 14, 2015 hearing, we asked the appeals court staff (i.e. Clerk Paul Tuttle) what the hearing was about, and we were told that it was about the appeal bond waiver and whether the stay should be maintained based on that issue. Thus, during the hearing on Friday August 14, 2015, we were thus taken by surprise by the indications by Judge Katzmann that this court was going to base its review of the motion to stay on the entry of default/denial of the motion to continue due to ill-health.

34. Also to the extent that the opposition motion by Greystar misdirected this court to believe that the underlying appeal issue was already adjudicated when it was not, then this is also a potential source of confusion and misdirection in this matter (i.e. Greystar's counsel opposition motion may have wrongly given this court the impression that the issue on appeal relates to Judge Ziemian's entry of default when it is in fact based on the denial of bond waiver. We believe that Greystar's counsel did this intentionally in an attempt to misdirect this court).

## MOTION TO STAY EXECUTION TO THE SINGLE JUSTICE OF THE SJC

35. On August 27, 2015, we filed a motion with a single justice of the Supreme Judicial Court seeking a stay from the Greystar levying on its execution for possession and rent.

The motion was denied by the same day by Justice Duffly without any explanation other than we were found not to have shown that we were entitled to relief under GL 211 s. 3.

## MOTION TO STAY EXECUTION TO THE FULL BENCH OF THE SJC

36. On August 27, 2015, we filed a motion to the full bench of the Supreme Judicial Court seeking a stay from the Greystar levying on its execution for possession and rent. The motion is still pending and is expected to be fully briefed and heard in about 30 days. The full bench of the SJC has the power to overrule the single justice of the SJC and provide relief under Gl. 211 s. 3 allowing a stay of execution during the pendency of the appeal to the full bench of the appeals court.

## APPEAL TAKEN BY THE FULL BENCH OF THE APPEALS COURT ON THE DISMISSAL OF THE UNDERLYING APPEAL IN THE APPELLATE DIVISION OF THE DISTRICT COURT DUE TO THE DENIAL OF THE WAIVER OF THE APPEAL BOND

37. If the appeals court finds in my favor, then the bond waiver will be allowed and the dismissal of my underlying appeal in the appellate division of the district court will be reversed. Once that occurs, my underlying appeal will resume and the appellate division of the district court will then rule on the merits of the underlying appeal for the first time.

38. The appellate division could then find in my favor on the issue of the denial of the continuance, the entry of default, the dismissal of my counterclaims and the reconsideration of the continuance and recusal of Judge Ziemian

23

245

## FACTS RELATED TO DEBTOR'S LEGAL ISSUES IN THE STATE COURTS

In further support of, and supplement to, the legal arguments made by my attorney, I would ask the court to take notice of the following points.

THE PENDING APPEALS

39. **Summary of the Process For Appeal of the Entry of Default and denial of continuance due to ill-health That occurred in the State Courts**

   f. Motion For Continuance → Motion for Continuance Denied→ Notice of appeal on the denial of the continuance → Appeal transferred to and entered in the Appellate Division of the District Court to be heard by three judge panel → Appeal never heard or briefed because of the below waiver of the bond issue interrupted the appeal process.

40. **Process Related To Appeal Bond Waiver.**

   g. Motion For Waiver Of The bond→Motion for waiver of bond denied on June 8, 2015 → tenants have 6 days in which to appeal the denial ( GL 239 s. 5) with accompanying automatic stay (pursuant to MRCP Rule 62 and MAP Rule 4)→ notice of appeal on the denial of the waiver of the bond entered on June 14, 2015→ appeal transferred to and entered in the Appellate Division of the District Court →bond hearing set to be heard by two judge panel only on the waiver of the bond issue (July 8, 2015)→ bond waiver was denied on July 27, 2015 → tenants have 5 days after

41. **Process Related To Stay of Execution.**

24

246

h. Entry of Notice of Appeal triggered stay pursuant to Rule 62→Request to review bond order triggered automatic stay until appeal bond is either waived or paid→ If appeal on bond waiver is not paid or waived, then tenant has 5 days to bond, if not paid then appeal of the default and continuance is dismissed→Motion To Stay→

## MOTION TO REMOVE DEFAULT WAS BROUGHT UNDER RULE 55 AND 59 AND/OR 60, WHICH TOLLS FINALITY OF JUDGMENT. THIS MOTION IS STILL PENDING.

42. On June 8, 2015, I filed a motion to vacate the rulings made on May 26, 2015 and entered on May 27, 2015. This motion was based on Rule 55, 59 and/or 60. Pursuant to Mass.R.App.P. 4, the filing of this post-trial motion operated to suspend the finality of the judgments. [NB: **Rule 59(e) Motion to Alter or Amend a Judgment.** "Notes to Rule 59(e) - as amended (1994) (third paragraph from end) A motion under Rule 59(e) (taken with only slight changes from Federal Rule 59(e)), authorizes the court to alter or amend a judgment provided the motion is served within 10 days of entry of judgment. Since such a motion affects **the finality of the judgment**, it tolls the time for taking an appeal from the judgment; the time does not begin to run again until after disposition of the motion…"

## JUDGMENT WAS NOT ENTERED PROPERLY AND IS VOID

43. Rule 54 (iii) "The clerk shall review the documents filed with the court. No judgment by default shall enter against any defendant where it appears from such review that the

25

summons was not properly completed, served or returned, that the complaint was not

properly completed or served, or that the other documents required to be filed with the

court pursuant to Rule 2(d) have not been filed." The judgment is not final because the

judgment should not have been entered without the filing of a proper notice to quit.

Greystar filed a 30 day notice to quit with the court for 3413 which is defective as a 14

day notice to quit should have been filed with the court.

## APPEAL IS STILL PENDING IN THE DISTRICT COURT.

44. **Appellate Procedure Rule 6: Stay or Injunction Pending Appeal (a) Civil Cases. (1)
    Stay Must Ordinarily be Sought in the First Instance in Lower Court; Motion for
    Stay in Appellate Court.** In civil cases, an application for a stay of the judgment or order

of a lower court pending appeal, or for approval of a bond under subsection (a) (2) of this

rule, or for an order suspending, modifying, restoring or granting an injunction during the

pendency of an appeal must ordinarily be made in the first instance in the lower court. A

motion for such relief may be made to the appellate court or to a single justice, but the

motion shall show that application to the lower court for the relief sought is not

practicable, or that the lower court has denied an application, or has failed to afford the

relief which the applicant requested, with the reasons given by the lower court for its

action. The motion shall also show the reasons for the relief requested and the facts relied

upon, and if the facts are subject to dispute the motion shall be supported by affidavits or

other statements signed under the penalties of perjury or copies thereof. With the motion

shall be filed such parts of the record as are relevant. Reasonable notice of the motion

shall be given to all parties. The motion shall be filed with the clerk of the appellate court

to which the appeal is being taken (provided that if the court be the Supreme Judicial

Court, the motion shall be filed with the clerk of the Supreme Judicial Court for Suffolk

County).

45. **An Appeal under Appellate Procedure Rule 4: Appeal - When Taken. (a) Appeals in**
**Civil Cases was timely filed.** According to MAP Rule 4, the notice of appeal can only be
taken after the motion for relief from judgment is heard. If the court finds that the time
for appeal has not yet begun because the motion for relief from judgment has not yet been
acted upon, then it means that the notice of appeal was filed prematurely. If the notice of
appeal was filed prematurely, then the appeal is still pending until the motion for relief
from judgment has been ruled upon.

## MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURIDICTION AND VOID JUDGMENT TOLLS THE FINALITY OF JUDGMENT AND IS PENDING

46. The pending motion to dismiss (based on the defective Notice to Quit) leaves the
judgment rendered susceptible to being overturned.

## MOTION FOR ATTORNEY FEES TOLLS THE FINALITY OF JUDGMENT PENDING APPEAL TO FULL BENCH OF THE APPEALS COURT TOLLS

47. Greystar's motion for reimbursement of attorney fees is based on a contract, not a statute.
As a separate claim, independent of the underlying claim or claims that comprise the
merits of the action, the judgment was not final.

## THE EXECUTION IS NOT VALID BECAUSE THE APPEAL WAS NOT PROPERLY DISMISSED IN THE DEDHAM DISTRICT COURT

48. Appeals were not dismissed on August 7, 2015 but execution was still issued on August

7, 2015, because Ms. Ashton went to court and in haste tried to get the clerk to issue

execution without first following the correct procedures to have the appeal dismissed.

The District Court docket that Greystar attached to its filings reveals that there was no

entry of a dismissal of my appeal on the docket.

## DEBTOR HAS NOT EXHAUSTED HIS APPELLATE RRIGHTS

49. Debtor has not exhausted his claims and appellate rights.

50. The judgments for possession are not valid final judgments because of pending appeals

and pending motions.

51. Cases that involve approval or denial of the waiver of an appeal bond must be approved if

the tenant is indigent and has at least non-frivolous defense.

52. Tenant has been found to be indigent by at least 4 courts. The court dockets show this

approval on several occasions. See attached docket and court approval forms.

53. Tenant has at least the one non-frivolous defense of a breach of warranty of habitability

defense

54. The breach of warranty of habitability defense is proven if there exists a Board of Health

citation for violations of the sanitation code. This standard of proof is articulated in MGL

27. Tenant possesses two board of health citations showing that there are violations of the

state sanitation code and therefore violations of the minimum standards for human

habitability.

28

55. Therefore, since tenant possesses two board of health citations, and since MGL. 27 states that existence of such board of health citations constitutes prima facie proof of a breach of warranty of habitability, then I have proven that I have a valid and legitimate breach of warranty of habitability defense, which therefore proves that the bond waiver should have been allowed in my case by the district court and the appellate division of the district court.

56. Therefore, this also means that because these courts did not approve the bond waiver and I had to go the appeals court to review the bond issue, then there is a substantial likelihood that I will prevail in my appeal to the court on the issue of whether my request to waive the appeal bond should have been allowed.

57. If it turns out that the full bench of the SJC later finds, after a full briefing/hearing, that I should have been granted a stay of execution for possession, then it would be a travesty if I was already evicted thereby making the issue of possession moot. A stay is needed to maintain the status quo so that I do not suffer irreparable harm in the meantime. The landlord will not suffer any harm in the meantime because I have already paid this month's rent and I am prepared to do so if the court requires it (please note that the rent for 3413 covers both that unit and the temporary unit 2216 while 3413 continues to be in a state of being uninhabitable).

58. If the appeal was dismissed, then it means that the dismissal of the appeal can be reversed upon the taking of a full appeal to the full bench of the appeals court. If the full bench reverses the dismissal of the full appeal, then the entire matter goes back to the appellate division of the district court where the normal process of the appeal of the denial of the continuance and the entry of default and dismissal of the counterclaim will pick up back

29

251

where it left off. According to the district court docket that process was at the point of a transfer of the record of the appeal and the formalizing the court transcripts. This was interrupted by the bond waiver parallel process when my waiver was denied. If the full bench denies relief, then my entire case is at an end and I will not be able to elect to post bond. By going this route, a tenant takes a big gamble that he will win, instead of simply paying the bond after a negative ruling by the appellate division of the district court.

59. This is where the confusion lies. The underlying summary process, defenses and counterclaims was never dismissed on the merits. It was dismissed on a technicality, that technicality was a default judgment. The underlying summary process appeal was never dismissed on the merits. It was dismissed because I did not and was not able to post the appeal bond at that time. So Greystar tries to make it sound as if the merits have been heard, and they have not been heard or addressed.

60. Now while the above process was going on, I requested a stay pending appeal which is provided for by M.A.P. Rule 6. I first sought a stay in the state district court and, then took an appeal to a single justice of the appeals court.

61. Ms. Ashton has been notified by the SJC that there is an appeal pending.

62. So this is a factual circumstance by which the default judgment could be overturned. If a stay is entered by the SJC, then the issue of possession would be held in status quo so that it does not become moot once it gets to the full bench of the appeals court.

63. Once the full bench of the appeals court hears the case, if they rule in my favor then the denial of the appeal bond will be reversed, which would cause the stay allowed under GL 239 s. 5 to kick back in and hold the status quo on possession, while the underlying summary process appeal (of the denial of the continuance, the entry of default and the

30

252

dismissal of the counterclaims) resumes back in the appellate division of the district (three judge panel).

64. Once the underlying summary process appeal is heard by the appellate division of the district court, if they rule that the motion for continuance should have been allowed and therefore that the subsequent entry of default should not have taken place, then the default judgment would be reversed and the matter remanded back to trial in the district court.

65. Under this scenario, the judgment would not be final.

66. On several occasions, Greystar has inadvertently admitted that they want to act quickly, not because they would be harmed, but because they want to short circuit my appellate rights so that the issue becomes moot.

## NON-FRIVOLOUS DEFENSE

67. Greystar has admitted that I have a non-frivolous defense. They should be asked in open court, do they believe that I have any non-frivolous defense  They conceded that they owed me money for the security deposit violation. They conceded that I am owed an abatement of rent for the time the elevator was down.

68. They conceded that there was overcharging for the water

69. There is proof that they interrupted my utilities by negligently or otherwise failing to pay for it at least three times.

70. Greystar offer me $80,000 to settle the case. Not only were they a month ago willing to pay me money to move. Why because I have significant defenses but they are afraid that I will teach other tenants how to organize and stand up to a big landlord.

31

253

71. I give and serve the community. I am an upstanding citizen in the community. I give of
myself and my time to help and serve others.

72. All appeals have not been exhausted.

73. The appeal has not been dismissed and therefore the state law stay is still in effect.

74. This landlord does not want to fix the apartment, they don't want me to move back to the
original unit, they don't want to accept rent, they want to cooperate, they just want me
out, they have said in this court that they will refuse to accept rent. This shows that there
is a retaliatory motive involved here because the behavior of the landlord makes no
rational sense. If you claim you are owed rent, and the tenant offers to pay it back, then
the landlord should gladly accept it unless there is another unspoken reason that the
landlord is trying to evict the tenants. Tenants can't be evicted for secret reasons.

75. For 2216, they admitted that I did not wrong to warrant eviction. The lease simply
expired. This is a no-fault eviction.

76. They should have had me pay rent on the smaller unit but they charged me rent on the
unit I was not living in.

---

## FACTS RELATED TO THE CHAPTER 13 BANKRUPTCY

---

### Facts related To Greystar's objection to certification

77. Regardless of the issue of possession, Greystar is not entitled to relief from stay on the
money judgment for rent owed. Greystar's objection to certification has no bearing on the
automatic stay that pertains to the execution for the money judgment for rent owed.

32

254

78. There are circumstances, detailed herein, under which I could cure the default that gives rise to the Judgment for Possession and Greystar admitted that at the hearing.

79. MGL 239 s 3 is one statute under non-bankruptcy law that would allow for a cure of the monetary default even after judgment for possession has entered. The statutory provision for the recall of a summary process execution for possession is G.L. c. 239, § 3, which provides for "motions to supersede or recall the execution" only where "the underlying money judgment has been fully satisfied and use and occupancy fully paid."

80. Greystar admitted in open court that there exists circumstances where the debtor-tenant could cure a monetary default under non-bankruptcy state law.

81. Moreover, the landlord can be compelled to accept a monetary cure as follows:

    i.  For 2216, it can be cured by winning my appeal or my motion to remove default or my motion to dismiss.

    j.  Landlord can be compelled to accept cure under MGL 239 8A. So MGL 239 8A is another statute in addition to MGL 239 s 3.

82. If I win my appeal in the SJC, there will be an opportunity for the state law stay to remain in effect. This bars Greystar from possession until the full bench of the Appeals Court rules on the bond issue.

83. If I win my appeal in the Appeals Court, there will be an opportunity to reverse the denial of the bond waiver, the matter will be remanded for trial, a trial will likely find 8A violations which will entitle me to either a complete reversal of the money judgment or the ability to pay the difference between what the landlord owes me versus what I owe them, which will cure any remaining monetary default, and this provision of a cure under GL 239 8A is mandatory in that the Landlord has no discretion to refuse payment.

33

84. My counterclaims could wipe out the entire monetary default plus I could have additional monies that could also go towards funding my chapter 13 plan. Greystar valued my claims to be worth at least $80,000.

## The Refusal of Rent Payment From Debtor By Greystar Does Not Invalidate The Certification as True

85. In terms of whether Greystar would accept the cure, it remains to be seen. Greystar is not the owner of the property. Greystar is simply the property management agent. Ultimately, the final decision is not up to Laura Donahue, the local Greystar manager. It is up to the corporate leadership at Deutsche Bank. Previously, there were certain decisions that Laura Donahue made that were overturned by Deutsche Bank. Therefore, the only way to know for sure is to allow me to tender payment and for Deutsche Bank to refuse it. The rent check is not to be made out to Greystar but to the owner, and so Greystar is not in a position to refuse it. Greystar is not a position to reject or accept the cure of the default. If Greystar's counsel would like to provide an affidavit from the actual owner who will be receiving the monetary payment, then that would be better than the current affidavit by a local property manager.

86. Because Greystar is merely the agent, we do not know if when I tender payment within the 30 days that the owner would accept it, or even if Greystar would change their mind once they see the hard cash.

87. I have recently sent an email to Laura Donahue's superiors in an attempt to settle this dispute. If her bosses overrule her, then her opinion is of none-effect. 2 months ago her superiors were willing to pay me $80,000 to settle and to drop my counter claims against Greystar as well as the parent company Deutsche Bank.

34

88. If they do insist on refusing the payment, then my understanding is that, under state law, they would forfeit the money and I would no longer owe the debt.

89. Greystar may not be required to accept full satisfaction of the monetary default under MGL 239 s. 3, but it does not change the fact that the circumstance to cure the default does exist under state law.

90. Whether Greystar is required or not is immaterial to the threshold issue of whether nonbankruptcy law provides circumstances under which the default could be cured. If they refuse, then they forfeit the money judgment against me owed on the apartment.

91. If Greystar refuses to accept use and occupancy and the cure of the monetary default, then this creates a major legal problem because they then forfeit the money owed. They can't have it both ways. They don't want to accept rent but then they want to evict me for non-payment of rent. This is not fair.

92. I have previously offered to pay rent but they have chosen not to accept rent. This affidavit proves that point definitively.

# DEBTOR WILLING TO CURE THE ENTIRE MONETARY DEFAULT UNDER A CHAPTER 13 PLAN

93. I would like the opportunity to cure the default under a Chapter 13 plan. A plan to pay the monetary default would be simple enough at around $500 or $600 a month for 60 months. However, the fact that Greystar has refused to accept payment of the default, this will trigger a forfeiture of the default.

## DEBTOR IS WILLING TO CURE THE ENTIRE MONETARY DEFAULT WITHIN 30 DAYS IF THE CHAPTER 13 PLAN IS REJECTED BY THE COURT

94. I would like the opportunity to have the 30 days to cure the default if my chapter 13 plan is not approved by the court in this matter. However, the fact that Greystar has refused to accept payment of the default, this will trigger a forfeiture of the default.

## JUDGMENT FOR POSSESSION FOR 3413 AND 2216 ARISE FROM THE SAME MONETARY DEFAULT/SPECIAL CONSIDERATION FOR APARTMENT 2216 CERTIFICATION

95. Both judgments were included. I did not pay rent because they said no rent is due on temporary unit 2216. The rent for the main unit 3413 covers the rent for both unit 3413 and unit 2216. The reason they charged us $0 rent on unit 2216 was because they intended the rent for unit 3413 to cover the use of unit 2216. Otherwise why not charge us rent for the use of unit 2216? There is a reason why Greystar did not charge us rent on unit 2216 and it is not because they were feeling "philanthropic" by any means.

96. Therefore the rent paid to the bankruptcy court on August 27, 2015 covered both units. Unit 2216 is an extension of unit 3413 for purposes of rent. Greystar wants it both ways. If the units are not covered by one rent and they are separate for purposes of rent, then Greystar should not benefit from any argument or position or action that ties both units together as one. Therefore, Greystar should benefit from the application of the $32,000 bond applied to unit 2216 if no rent is owed on 2216 and since the rent for 3413 does not cover the use of 2216. Therefore, there should have been no bond required on unit 2216.

97. Pertaining to unit 2216, there is no "non-monetary default". I never defaulted on anything. A default means I did something wrong. By Greystar's own testimony at the hearing, they stated that I did nothing wrong and that lease simply expired. So it is a no-fault eviction. I did not do anything wrong to merit eviction. They just simply wanted me out for no reason other asking me to vacate. I had a lease. I did not breach the terms of the lease. Therefore, In re Griggsby doesn't apply because that case pertains to a situation where a tenant does something wrong outside of a non-payment of rent scenario, and hence Greystar's objection fails on those grounds.

98. To the extent that 2216 is an extension of 3413, then both properties should be treated as one with the issues surrounding unit 3413 being determinative. On that basis, the judgment for possession for 2216 resulted from not paying rent on 3413. The state courts treated it as one and so should this court for purposes of certification.

99. Contrary to Greystar's assertions, with my chapter 13 petition I did include the judgment for possession for unit 2216 which listed the address and location of the apartment 2216. I did not list it on the petition because the court would be confused as to where to send me mail and Greystar has refused to give me a mailbox key for unit 2216, forcing me to rely on the mailbox for 3413 to get any mail, even though I was displaced from the unit. Without a key to the mailbox, mail would either bounce-back (as it has on the district docket for mail sent to the address) or it would accumulate without any ability to retrieve it.

100.     Moreover, I did pay the rent that covers both units as determined by the Dedham district court and the appellate division of the district court.

101.    Both courts said I could maintain possession of both units if I paid the rent for
3413. That is the determination of the state courts and this court should likewise follow
that grouping of the rent payment issue because this is what has allowed the eviction to
move forward. In other words, the state courts could have stated that I had to move out of
2216 for non-monetary reasons, but it did not because it treated 2216 as an extension of
3413. For example, the rent for 3413 includes the use and lease of two separate storage
units. $2390 covers both the actual apartment and the two storage units.

102.    It would be ludicrous to require that I vacate the storage units because I did not
list that on the certification specifically (since they are an extension of the 3413 unit). In
the same way, 2216 is like an additional storage unit that is attached to the 3413 unit.
This is also laid out on the lease signed for 2216 where I wrote on the last page that both
leases were not connected and that 2216 lease did not replace or supersede 3413 lease,
which was signed and agreed to by Greystar. See 2216 lease.

103.    But if the court finds that it is separate then this would lead to an illogical result.
If the 2216 unit is separate and not attached or an extension of 3413, then the state court
should have not required that I pay a $32,000 bond on that unit in order for my appeal to
continue in the appellate division of the district court. If I were not required to pay the
$32,000 bond on 2216, then I would not have been subjected to eviction from 2216. By
requiring a $32,000 bond on 2216, it meant that the state court was treating 2216 as an
extension of 3413 and treating 2216 as if the rent for 3413 covered the rent for 2216.

104.    In its motion for relief from stay, the landlord uses language that admits this
attachment when it says "the accompanying temporary unit". This language is a tacit
admission to the inextricable link between the two apartments.

38

260

105.    Because the requirements of an appeal bond are not applicable to the apartment

2216 because it does not involve the non-payment of rent, then it means that the entire

edifice of the proceedings and rulings in the lower court regarding 2216 would be at once

destroyed by an irreconcilable contradiction because 2216 has been treated as if it were a

non-payment of rent case. This can only be true if it is treated as an extension of 3413. It

would a complete and utter logical contradiction for the 2216 case to be given an appeal

bond of $32,000 and then turn around and argue that no rent was due on 2216 and is

therefore not applicable to automatic stay or a curing of the monetary default that gave

rise to the judgment for possession on unit 2216.

106.    Therefore to summarize:

    k.   Both apartments are inextricably intertwined

    l.   Both apartments had the same bond amount covering them at $32,000.

    m.  The district court judge applied the monetary default to both apartments.

    n.   The appellate division of the district court applied the monetary default to

       both apartments.

    o.   If 2216 was based on a non-monetary default, then there would be no bond

       required

107.    There is no question that the property is in violation of the state building and state

sanitary code as shown by the Dedham Board of Health citations.

108.    From the inception of our tenancies to the present, our original unit has

continuously been below the minimum standards for human habitation, in violation of the

State Sanitary Code as found by the Dedham Board of Health with more than one citation

in a two year span of time (2012 and 2014).

109.    We ask the court to also take judicial note that we not only live at the premises but we also maintain home-based professional services businesses there as well. We were assured by the landlord that we could both live and work at the premises.

110.    We are faced with threat of immediate eviction from the building where we work and live and have worked and lived for the past 8 years.

111.    We have paid over $140,000 in rent to the Landlord and though we had experienced a number of defective conditions since we moved-in around July 2008, we never withheld rent until May 2014 when the elevator were condemned by the State and the apartment became uninhabitable, so much so that we had to be displaced. Therefore the landlord owes us a rebate on rent due to the diminution of value of the premises, not only for the time we have been displaced i.e. from April 2014 until present but also for the entire time that we have had to live with the defective conditions since 2008. A mere 10% in the reduction of the value of the premises would result in approx. $14,000 owed to us, which is almost half the amount of the 32,000 judgment.

112.    If Greystar is permitted to carry out their threat of evicting us, we will be deprived of our home and place of business in a single stroke. We will be physically removed from the building to face the substantial likelihood that they will be unable to find other legal live/work space in the tight Boston market. Eviction would cause a serious disruption in our personal and professional lives; our ability to live and work in peace would be irretrievably lost while our legal right to remain in the property is being adjudicated. The harm would be irreparable.

113.    The court should also take judicial note that we are African-American tenants and evicted African-American face a substantially harder time finding a place to live after

40

262

eviction. Also we, as tenants with certain disabilities, require elevator access (for any
multi-floor situation) and hypo-allergenic conditions due to our disabilities which make it
harder to find suitable residence. Our ability to conduct our work will also be affected.

114.    My outstanding motions including the **motion to remove default judgment
and/or relief from judgment** and the **motion to stay eviction pending the motion to
remove default judgment** submitted on June 8, 2015 and the **motion to dismiss**
submitted on May 11, 2015.

### THE PROPERTY IS NECESSARY TO DEBTOR'S REORGANIZATION

115.    In this case, I filed a Chapter 13 case instead of a Chapter 7, which indicates an
intention to address any obligations that I have through a reorganization plan.

116.    I have indicated that I will continue to pay monthly rent under a chapter 13 plan,
which will provide adequate protection by the periodic payments provided for it under
the Chapter 13 Plan.

117.    It would be illogical to argue that my residence is not "necessary to an effective
reorganization." I am married and have my personal services businesses that I operate
from my home and I definitely need my home to complete my chapter 13 plan.

### GREYSTAR HAS ADEQUATE PROTECTION/ GREYSTAR WILL NOT BE HARMED OR PREJUDICED BY THE AUTOMATIC STAY BUT DEBTOR WILL SUFFER IRREPARABLE HARM

118.    Greystar will not be prejudiced by the continuation of the Automatic Stay with
respect to the eviction.

119.     Greystar asserts claims for monetary damages arising from the debtor's non-payment of rent. These are claims subject to treatment through the Chapter 13 plan process in this case. Accordingly, the imposition of the fundamental protections offered by the Automatic Stay expose Greystar to no particularized harm. By contrast, requiring that I be evicted would distract me from my efforts to restructure and further divert my scant resources

120.     More fundamentally, absent exceptional circumstances that do not exist here, preventing me from curing the default and allowing an eviction will undermine the protections of the Automatic Stay and jeopardize my efforts to reorganize. It will also undermine the intent of Congress in allowing one last chance to pay the monetary default by getting caught up within 30 days in order to maintain possession and prevent eviction. Congress also intended to provide such relief under chapter 13 in part to allow debtors obtain the "breathing spell" afforded by the Automatic Stay and the consequent protection from its creditors while it reorganizes its affairs and prepares a Chapter 13 plan.

121.     My finances would be further depleted and my attention distracted from reorganizing my affairs if I were denied this basic protection of chapter 13.

## NO CAUSE EXISTS TO LIFT THE STAY

122.     There is no good cause to lift stay. If the issue is payment of rent, and I will pay rent and cure default, then why lift the stay. I have not endangered the property, I have not used illegal drugs, I have done nothing for a "for fault" eviction. Other than stop paying rent to force the landlord to fix repairs which I'm authorized to do by statute, I

have done nothing wrong. And if I am paying rent now and will cure the default, then the landlord wants me out for reasons that have not been presented to any court or this court. It is hiding its reasons including retaliation, discrimination reasons. I paid rent for 7 years almost $140,000 in rent. I stopped paying rent only after the state condemned the elevator and flooding apartment, insisting that the problems be fixed. Why are they refusing the accept rent? Then, there is no good cause

## DEBTOR HAS FILED THIS CASE FOR LEGITIMATE PURPOSES

123.    The automatic stay of §362 was intended, among other things, to stop landlords from evicting tenants who still had a legitimate interest in the property. There is a no abuse here. The code contemplates situations where a judgment for possession has occurred but intends to give a chance for the tenant to get caught up and rectify the situation before 30 days. If halting an eviction was not legitimate under the code then why did Congress put this exception in the code? Greystar would like to argue that any and every tenant or homeowner who files a chapter 13 bankruptcy to save their home and/or prevent eviction is abusing the code. This is clearly a ridiculous conclusion.

124.    I have not filed it to delay the inevitable eviction. I filed so that I can have an opportunity to have a breathing spell so that I can reorganize my affairs and interests and so that I can litigate the eviction issue in state court to permanently prevent eviction and establish my right to possession in state court. I also filed because I would like the opportunity to cure the default through the bankruptcy process.

43

## DEBTOR HAS A VALID LEASE AND TENANCY/DEBTOR WILL ASSUME THE
## LEASE

125.    Under mass statutory law, a residential tenant has a myriad of ways in which to
restore that tenancy or at least prevent one's dispossession if the tenancy is not revived,
and under equity procedures, a tenant may assert equitable defenses to prevent the
forfeiture of a lease.

126.    An equitable interest is a right fashioned by federal law in the bankruptcy court.

127.    Massachusetts law grants tenants certain rights or abilities to cure the termination
and reinstate the tenancy prior to and even after judgment for possession.

128.    The cure permitted by statute is treated as an interest in the property estate,
thereby subjecting the lease provisions to the automatic stay.

129.    The tenancy was revived by agreement from Laura Donahue, which was agreed
upon as a way to address the flooding that took place in February/March 2015. This is an
evidentiary issue that requires a follow-up hearing where evidence can be presented.

130.    Moreover, Greystar stated in its motion that the premises are "leased premises".
This is an admission that the premises are subject to a continuing lease. Therefore the
lease is not terminated.

131.    A notice to quit does not terminate all rights. Neither does a judgment. I still have
the right to appeal. I still have the right to a dwelling that meets the sanitation code. I still
have the right to a covenant of quiet enjoyment and the warranty of habitability. I still
have the right to have my security deposit returned to me. I still have the right not to be
discriminated against or retaliated against. I still have the right to not be harassed or

44

intimidated. I still have the right to not be evicted in an unlawful manner. I have the right to cure even after judgment for possession, which is like a redemption right.

132.     I live with my wife Natalie Anderson, the co-debtor in this case, in an apartment (the "Apartment") owned by RAR2 (Deutsche Bank) and operated/managed by Greystar Management Services. The lease on the Apartment (the "Lease") requires me to pay $2,390 per month in rent on or before the first day of each month. In addition, the lease provides, in relevant part, that the term of the lease shall be renewed automatically for successive terms.

133.     In my bankruptcy plan, I will propose, among other things, to cure the default on my Lease by paying all back rent over a 60-month period, and then to assume the Lease.

134.     Therefore my Chapter 13 reorganization plan will include an assumption of the Lease.

135.     Ms. Anderson, the codebtor, has not filed for bankruptcy protection under the Bankruptcy Code. However, because she is a resident at the Apartment, the automatic stay of §1301 created by Bisasor's Chapter 13 petition protects her as well.

## DEBTOR HAS COLORABLE CLAIM TO POSSESSION OF THE PREMISES

136.     Moreover, I as the debtor have a colorable claim to possession of the premises to invoke the automatic stay.

137.     Contrary to Greystar, this filing was not for the sole purpose of preventing an improper or unlawful eviction. This case was filed to allow me an opportunity to cure alleged breaches with Greystar contingent on the outcome of my pending State Court litigation filed before the filing of my bankruptcy.

45

138.    Also, the lease was not "terminated", but was "unexpired". I possess an unexpired

leasehold interest and properly retain possession of the premises in Chapter 13 because of

that interest. Therefore, since my lease was not validly "terminated" pre-petition, I seek to

cure and assume my lease. My ability to cure and require Greystar to accept my lease was

admittedly contingent upon my success in the litigation pending in the District Court at

the time I filed bankruptcy.

139.    At the time of this bankruptcy filing, my state Court action was pending. The

successful completion of that action would require Greystar to accept my tenancy and

grant me damages in excess of any back rent claim ultimately allowed to Greystar.


Respectfully Submitted under pains and penalties of
perjury,


_____ Andre Bisasor _____

Andre Bisasor
3000 Presidents Way #3413
Dedham, MA 02026
781-492-5675

Dated: September 21, 2015

46

268

UNITED STATES BANKRUPTCY COURT
EASTERN DIVISION, DISTRICT OF MASSACHUSETTS

| In re: | |
|---|---|
| Andre Bisasor | Chapter 13 |
| | Case No.   15-13369 |
| Debtor | |

DEBTOR'S *SUPPLEMENTAL* MEMORANDUM
(CORRECTED[1])

In support of his response and objection, debtor Andre Bisasor incorporates herein by reference all of his prior *pro se* statements filed in this case, his statements at the recent hearing, his affidavit filed separately together with the exhibits attached, and further states as follows:

ARGUMENT

*Finality*

As argued before, bankruptcy courts have held that §362(l) does not apply until the judgment is "final". *See* In re Alberts, 381 BR 171 (Bankr.W.D.Pa., 2008) (holding that §362(b)(22) does not apply until a judgment is final); In re Nitzsky, 516 BR 846 (Bankr. W.D.N.C., 2014) (discussing Alberts). It is true that the word "final" does not appear in the federal statute. It is also true that courts should enforce statutes as written unless the "disposition required by the test is not absurd" or ambiguous; for the same reason, the court should not read an "absent word" into the statute. *See, e.g.,* Lamie v. US Trustee, 540 US 526, 534 (2004). On the other hand, "When Congress fails to define potentially ambiguous statutory terms, it effectively delegates to federal judges the task of filling gaps in a statute." US v. Santos, 128 S.Ct. 2020, 2031 (2008) (Stevens, J., concurring). It is also true that "A provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme … because only one of the permissible meanings produces a substantive effect that is compatible with the rest of the law."  United Sav. Assn. of Tex. v. Timbers of Inwood Forest Associates, Ltd., 484 US 365, 371 (1988).

An example of this is where in chapter 11, plans were required to pay the "present value" of tax claims, §1129(a)(9)(C), even though the statute did not include the word "present". In Matter of Fi-Hi Pizza, 40 BR 258 (Bankr.D.Mass., 1984), Judge Lavien analyzed the statute and concluded that "value" meant "present value", which requires payment of interest[2], thus "filling

---

[1] In reviewing the Memorandum as filed, counsel realized that what was filed was not the final version, and some points needed clarification. Counsel regrets any inconvenience to the court.

[2] In 2005, BAPCPA substantively amended the statute, and the requirement now is "total value", not "present value".

[a] gap" in the statute.  The same concept applies here.

"Congress has not defined the term 'judgment' anywhere in the Code, let alone within 11 USC §362(b)(22)."  In re Alberts, 381 BR 171, 177 (Bankr.W.D.Pa. 2008).  The debtor believes, therefore, that the word "judgment", in this context, is ambiguous.  In Alberts, the Housing Authority of Beaver County filed a motion not unlike the present motion, combining a request that the court determine the automatic stay be not applicable, or in the alternative, for relief from the automatic stay.  Recognizing the "fundamental protection afforded by the Code [in] the automatic stay", *see also* In re Soares, 107 F.3d 969 (1st Cir. 1997), the court analyzed the statute and the facts of the case before him, and held that because a timely appeal had been filed, there was no "'judgment' *per se* for purposes of 11 USC §362(b)(22)" until the state court appellate process had run its course.  Id., at 180.  The same is true here.

Although Greystar says, on page 5 of its memorandum, that the state District Court judge "implicitly acted upon the Motion" to remove default, that is an absurd assertion since the decision (document 13-1 in this court) made no mention of the debtor's motion, and neither allowed nor denied any pending motions.  Greystar's argument implicitly recognizes that the judgment would not be "final" if the motion were pending, which it is; nowhere on the docket of either case is there an entry disposing of that motion; i.e., there is no "separate document" within the meaning of Mass.R.Civ.P. 58(a).  In the absence of statutory authority or exceptional circumstances, Massachusetts appellate courts, like federal appellate courts, will not entertain interlocutory appeals.  Pollack v. Kelly, 372 Mass. 469, 471 (1977).  What constitutes a "*final* judgment" depends not on the nomenclature used by the judge, but the fact that the judgment disposes of all matters in the case.  Jones v. Boykin, 74 Mass.App.Ct. 213 (2009) (finding that a judge's decretal statement in a memorandum of decision was not a "judgment").  If nothing else does, the debtor's motion to remove default makes all judgments in both cases non-final, if not precisely interlocutory.  There are other motions pending, however, as the dockets show.

In Massachusetts, "judgment" and "final judgment" mean the same thing.  Mass. R. Civ. P. 54(a).  The rule is clear:  "The terms 'judgment' and 'final judgment' include a decree and mean the act of the trial court finally adjudicating the rights of the parties affected by the judgment, including: …"  Thus "judgment" in §362(l) must mean "final judgment", and until the state court's decision had the requisite finality, it is not a "judgment" for purposes of §362(l).

Furthermore, a judge cannot simply enter default judgment in the amount demanded by a plaintiff; except in the rare case where the plaintiff's claims are for a "sum certain or susceptible of mathematical calculation, there must be a hearing and factual findings concerning the basis of damages or other relief included within the default judgment."  Jones v. Boykin, 464 Mass. 285 (2013).  Even then, the plaintiff is limited to the damages requested in the complaint.  The debtor never had an evidentiary hearing on damages; this is reversible error.  *See also* Hermanson v. Szafarowicz, 457 Mass. 39 (2010).

ROPT Limited Partnership v. Katin, 431 Mass. 601 (2000)[3], makes the same point in summary process cases. In that case, the court noted that Uniform Summary Process Rule 11(a), as it existed at the time, did not apply. The court noted, also, that "The indorsement the judge made on the plaintiff's motion to dismiss and the subsequent entry on the docket sheet are not sufficient to satisfy the requirements for final judgment under Mass. R. Civ. P. 54(b)." Appeals in summary process cases are now governed by Mass. Gen. Laws ch. 239 §§3 and 5. The applicable rule is Summary Process Rule 12. However, the rule indicates that a default judgment may not be appealed. This would seem to be incorrect, or improper, because neither statute says anything about default judgments. The right to appeal is a substantive right, and should be neither enlarged nor abridged by a Rule. *See, e.g.,* 28 USC 2072(b). The state District Court's judgment was not final, and §362(l) does not control.

*Other issues*

Greystar cites In the Matter of an Appeal Bond, 428 Mass 1013 (1998). That decision is quoted here in its entirety:

> The petitioner appeals from a judgment of a single justice of this court denying her petition under G. L. c. 211, s. 3. We affirm.
> The petition requests that the single justice grant relief from a decision of a single justice of the Appeals Court, pursuant to G. L. c. 239, s. 5, declining to waive an appeal bond in an underlying summary process action that originated in the Housing Court. The single justice of this court correctly denied the c. 211, s. 3, petition because the petitioner had an alternative remedy. The proper course for her to have followed, if she wished further to challenge the bond, was to refuse to pay the bond, suffer the dismissal of her summary process appeal, and then appeal to the Appeals Court (on the limited bond issue) from the order of dismissal. *Ford v. Braman*, 30 Mass. App. Ct. 968, 970 (1991). See *PGR Mgt. Co. v. Credle*, 427 Mass. 636 , 638-639 (1998); *Tamber v. Desrochers*, 45 Mass. App. Ct. 234 (1998); *Home Sav. Bank v. Camillo*, 45 Mass. App. Ct. 910 (1998). We do not decide various claims raised by the appellant that were not raised before the single justice. Nor do we express any view on the merits of her claims concerning the bond.
> Judgment affirmed.

As is apparent, the decision has nothing to do with the merits of the debtor's appeal, but rather the procedure. This is all that the Supreme Judicial Court said in the present debtor's appeal. With the motion to remove default (among others) outstanding, there simply is no final,

---

[3] The case was cited for what it says about "finality", rather than amount in controversy subject matter jurisdiction. The debtor did present his argument for lack of subject matter jurisdiction in his motion to dismiss based on the amount in controversy in the state District Court, but even though his motion to dismiss was not heard, that point would not avail him anything since the statute has been amended subsequent to ROPT. His motion to dismiss was also based on other arguments including a defective notice to quit and defective summons, among other things, which were never heard.

appealable judgment on the merits, and the debtor's *pro se* attempts to protect his rights should not prejudice him. As noted above, the debtor incorporates herein all of his prior submissions and statements, both in writing and in open court, and the exhibits attached to his affidavit. The court should keep in mind that his plan (which will be filed by September 23, the date ordered by the court) will provide for curing the default through his plan.

In addition, Greystar has not moved for relief from the co-debtor stay of §1301, and that section has no provision remotely resembling §362(l). They are separate stays, and the elements of relief from §1301 are different from §362. Furthermore, the present motion was not served on Mr. Bisasor's wife. moot. Thus Greystar's objection and motion should be moot.

WHEREFORE the debtor requests that the court overrule Greystar's objection because, inter alia, the "judgment" is not final, and deny its motion for relief from stay.

September 22, 2015

Respectfully submitted,
Andre Bisasor, debtor
By his attorney,


/s/  *David G. Baker*
David G. Baker, Esq.
236 Huntington Avenue, Ste. 306
Boston, MA   02115
(617) 367-4260
BBO# 634889


Certificate of Service

The undersigned states upon information and belief that the within Corrected Memorandum will be served on the persons named below by the Court's CM/ECF system on the date set forth above.


/s/  *David G. Baker*
David G. Baker, Esq.


- Donna Ashton on behalf of Creditor Greystar Management Services LP as agent for owner RAR2-Jefferson at Dedham Station MA Inc.  - dma@ashton-law.com
- Carolyn Bankowski-13 - 13trustee@ch13boston.com
- John Fitzgerald - USTPRegion01.BO.ECF@USDOJ.GOV

# Supreme Judicial Court ... husetts

## Public Case Information

| Case Search |
| --- |
| ● **Involved Party** |
| Docket Number |
| Attorney Appearance |
| Lower Court |
| Lower Court Judge |
| Court Calendars |
| SJC Full Court |
| SJC Single Justice |
| AC Full Court |
| AC Single Justice |
| More Information |
| Contact Us |
| Comments |
| Helpful Links |

Displaying matches 1 through 5 of 5 total matches.

Bottom >

**Bisasor, Andre** - Defendant/Appellant    2015-P-1194
Case status: No briefs yet
GREYSTAR MANAGEMENT SERVICES, LP vs. NATALIE ANDERSON & another

**Bisasor, Andre** - Defendant/Appellant    2015-P-1193
Case status: No briefs yet
GREYSTAR MANAGEMENT SERVICES, LP vs. NATALIE ANDERSON & another

**Bisasor, Andre** - Defendant/Petitioner    2015-J-0306
Case status: Disposed: Case Closed
GREYSTAR MANAGEMENT SERVICE, LP vs. ANDRE BISASOR & another

**Bisasor, Andre** - Defendant/Appellant    SJC-11942
Case status: No briefs yet filed
GREYSTAR MANAGEMENT SERVICE, L.P. vs. ANDRE BISASOR & another

**Bisasor, Andre** - Defendant/Petitioner    SJ-2015-0347
Case status: Disposed: Appeal by defendant pending
GREYSTAR MANAGEMENT, AS AGENT FOR OWNER, RAR2 JEFFERSON AT DEDHAM STATION v. ANDRE BISASOR AND NATALIE ANDERSON

< Top

[ New Search ]  [ Modify Search ]

(2015-09-23 00:17:16)

© 2001 RSI

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS

| In re: | Case No. 15-13369-JNF |
|---|---|
| Andre Bisasor, | Chapter 13 |
| Debtor | |

## REQUEST FOR EVIDENTIARY HEARING

**TO THE EXTENT** that the Court finds that there are genuine issues of material facts with respect to the objection of Greystar Realty to his certification, and its motion for relief from stay, the debtor respectfully requests an evidentiary hearing. *See* In re Calore Express Co., Inc., 288 F.3d 22 (1st Cir. 2002) (further expounding on Grella v. Salem Five Cent Sav., 442 F. 3D 26 (1st Cir., 1994).

September 21, 2015

Respectfully Submitted,
Andre Bisasor, debtor
By his attorney,

/s/ *David G. Baker*
David G. Baker, Esq. (BBO# 634889)
236 Huntington Avenue, Ste. 306
Boston, MA 02115
617-367-4260

## Certificate of Service

The undersigned states upon information and belief that the within Request was served upon the undersigned by the court's CM/ECF system on September 25, 2015.

/s/ *David G. Baker*
David G. Baker, Esq.

- Donna Ashton on behalf of Creditor Greystar Management Services LP as agent for owner RAR2- Jefferson at Dedham Station MA Inc. - dma@ashton-law.com
- Carolyn Bankowski-13 - 13trustee@ch13boston.com
- John Fitzgerald - USTPRegion01.BO.ECF@USDOJ.GOV

UNITED STATES BANKRUPTCY COURT
FOR THE
DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
In re

**ANDRE BISASOR**,                                    Chapter 13
                                                      Case No. 15-13369-JNF

        Debtor
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

**ORDER**

**I.        PROCEDURAL BACKGROUND**

The matters before the Court are the Objection to Debtor's Certification Pursuant

to 11 U.S.C. Sec. 362(l)(1)(A), or in the Alternative, Request for Relief from the

Automatic Stay Regarding Apartment #3413 filed by Greystar Management Services

LP, as agent for Owner RAR2 Jefferson at Dedham Station MA Inc. ("Greystar") on

September 2, 2015 and an identically captioned pleading filed by Greystar on the same

date with respect to "temporary" Apartment #2216 (jointly, the "Motions").  Apartment

#2216 is currently occupied by the Chapter 13 debtor, Andre Bisasor (the "Debtor").

Both apartments are located in the same residential complex in Dedham, Massachusetts.

Greystar supported both Motions with the Affidavit of Laura Donahue, Greystar's

Regional Property Manager.   The Debtor opposes both Motions and seeks an

evidentiary hearing.  Through the Motions, Greystar challenges the "Certification by a

Debtor Who Resides as a Tenant of Residential Property" (the "Certification") signed by

the Debtor pursuant to 11 U.S.C. § 362(l) and set forth in his Chapter 13 petition which

1

he filed, *pro se*, on August 27, 2015. Greystar also requests that the Court determine that

the provisions of 11 U.S.C. § 362(b)(22)[1] apply immediately, or, in the alternative, that

---

[1] The filing of a petition under the Bankruptcy Code generally triggers the application of the automatic stay which enjoins actions by creditors, including "the commencement or continuation, . . . of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case. . . ;"and "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate[.]" 11 U.S.C. § 362(a)(1) and (3). Exceptions to the automatic stay are set forth in 11 U.S.C. § 362(b) and include § 362(b)(22), which provides that, subject to § 362(l), the filing of a bankruptcy petition does not trigger the protection of the stay with respect to:

> [T]he continuation of any eviction . . . , or similar proceeding by a lessor
> against a debtor involving residential property in which the debtor resides as
> a tenant under a lease or rental agreement and with respect to which the
> lessor has obtained before the date of the filing of the bankruptcy petition, a
> judgment for possession of such property against the debtor;

11 U.S.C. § 362(b)(22).

Section 362(l), in turn, establishes certain requirements which, if performed, will allow a debtor to avoid the immediate loss of the stay imposed by § 362(b)(22). Section 362(l)(1) provides:

> (1) Except as otherwise provided in this subsection, subsection (b)(22) shall
> apply on the date that is 30 days after the date on which the bankruptcy
> petition is filed, if the debtor files with the petition and serves upon the
> lessor a certification under penalty of perjury that—
>
> (A) under nonbankruptcy law applicable in the jurisdiction, there are
> circumstances under which the debtor would be permitted to cure the
> entire monetary default that gave rise to the judgment for possession,
> after that judgment for possession was entered; and
>
> (B) the debtor (or an adult dependent of the debtor) has deposited with
> the clerk of the court, any rent that would become due during the 30–
> day period after the filing of the bankruptcy petition.

11 U.S.C. § 362(l)(1)(A) and (B).

2

the Court grant Greystar relief from the automatic stay to allow it to exercise its remedies under state law, including, but not limited to, taking possession of Apartments #3413 and #2216.

In determining the Motions, the Court has considered the following:

1.    The Debtor's petition on which he listed his address as 3000 President's Way, #3413, Dedham, Massachusetts;

2.    The Certification, which provides, in relevant part, the following: "Landlord has a judgment against the debtor for possession of debtor's residence[,]" the "Debtor claims that under applicable nonbankruptcy law, there are circumstances under which the debtor would be permitted to cure the entire monetary default that gave rise to the judgment for possession, after the judgment for possession was entered[,]" and that the Debtor "has included with his petition the deposit with the court of any rent that would become due during the 30-day period after the filing of the petition[;]"

3.    The Debtor's tender on the petition date of money orders totalling $2,390 and the Court's "Notice Releasing Rental Deposit," dated August 28, 2015, which provides, in part: "the Debtor has deposited with the Clerk the rent payment in the amount of $2,390 that would come due during the 30 day period after the filing of the Debtor's bankruptcy petition," and that "NOTICE IS HEREBY GIVEN that within 30 days of filing the voluntary petition, the debtor must file with the Court and serve upon the landlord, *a second certification that the entire monetary default giving rise to the judgment has been paid to the landlord.*" (emphasis added);

4.    The Debtor's Objection to the Motions and the Verified Memorandum filed in support of the Objection by Attorney David Baker, who filed a notice of appearance on behalf of the Debtor on September 16, 2015, and all exhibits attached to the Objection and the Verified Memorandum;

5.    The Apartment Lease Contract for Apartment #3413 executed by the Debtor and Natalie Anderson,[2] as tenants, with RAR2 Jefferson at Dedham Station Ma. Inc., as owner (the "Owner"), dated August 22, 2013, which provided an initial term from September 26, 2013 through September 14, 2014 and a monthly rental payment of $2,390 and the Apartment Lease Contract for Apartment #2216 executed by the Debtor and Ms. Anderson with the Owner, dated May 16, 2014, which provided for a two week term from May 16, 2014 through May 31, 2014 and rental charges of zero;

---

[2] Ms. Anderson is the nondebtor spouse of the Debtor.

3

6.      Greystar's statements in the Motions, which the Debtor admitted in his Objection, that it terminated the lease for Apartment #3413 by a Notice to Quit on December 23, 2014 and terminated the lease for Apartment #2216 by a Notice to Quit dated December 29, 2014;

7.      The Summary Process Summonses and Complaints filed by Greystar on February 9, 2015, in separate summary process actions commenced in the Trial Court of Massachusetts, District Court Department, Summary Process Session (the "District Court"), Docket No. 1554SU000026 (Apartment #3413) and Docket No. 1554SU000028 (Apartment #2216), through which Greystar sought eviction of the Debtor and Ms. Anderson[3] from Apartment #2216 for "Failure to vacate pursuant to a lawful notice terminating tenancy" and from Apartment #3413 for "Non-payment of rent;"[4]

8.      The Debtor's 58 page Answer, Counterclaim and Jury Demand filed on May 11, 2015 in both summary process actions[5] which contains numerous counterclaims, some of which relate to the habitability of Apartment #3413, from which the Debtor maintains he was displaced (the "Counterclaims");[6]

9.      The "Judgment for Plaintiff(s) for Possession and Rent,"[7] dated May 27, 2015, issued by the District Court, Docket No. 1554SU000026, against the Debtor and Ms. Anderson in favor of Greystar with respect to Apartment #3413, following the entry

---

[3] Although the Debtor and Ms. Anderson were both defendants in these summary process actions, the Court will refer herein to the Debtor only unless the context indicates otherwise.  According to Greystar's counsel at a hearing held in this Court on September 17, 2015, both summary process matters were always heard together in the District Court, although not formally consolidated.

[4] The Summons and Complaint for Apartment #3413 reflects rent owed in the amount of $24,650.78.

[5] This pleading, which is attached to the Debtor's Verified Memorandum, bears only Docket No. 1554SU000026 (Apartment #3413), however, the docket for Docket No. 1554SU000028 (Apartment #2216) reflects that an Answer and Counterclaim was filed by the Debtor in that action on the same date.

[6] The Debtor also attached to one of his pleadings an Inspection Form issued by the Dedham Board of Health on November 20, 2014, regarding Apartment #3413, which reflects violations relating to floor and ceiling cracks, locks, and dishwasher installation.

[7] All State Court pleadings, dockets, orders and memoranda referred to herein were attached by the parties to their respective pleadings filed in this Court.

4

default against the Debtor and Ms. Anderson, which contained a judgment amount of $32,423.31[8] and the "Judgment for Plaintiff(s) for Possession and Rent," dated May 27, 2015, issued by the District Court, Docket No. 1554SU000028, against the Debtor and Ms. Anderson in favor of Greystar with respect to Apartment #2216, following the entry of default against the Debtor and Ms. Anderson, which contained a judgment amount of zero (jointly, the "Judgments for Possession");

10.     The entry by the District Court on May 27, 2015 of judgments in favor of Greystar with respect to the Debtor's Counterclaims in both summary process actions "after defendant(s) failed to appear;"

11.     The filing by the Debtor of numerous pleadings in both summary process actions on June 8, 2015, including Motions to "Remove the Default and Vacate Default Judgment; and/or Motion for Relief from Judgment, Pursuant to M.R.C.P. 55, 59 and/or 60" (the "Motions to Reconsider"), which the Debtor maintains have never been determined by the District Court, thus precluding the finality of the Judgments for Possession;

12.     The "Memorandum of Decision Concerning Entry of Default Judgment," dated July 2, 2015, issued by the District Court (Ziemian, J.) in both summary process actions, in which the court recounted the extensive procedural history of both summary process actions, noted the numerous continuances, the issuance of the Judgments for Possession following the entry of defaults against the Debtor in both summary process actions for his failure to appear at a final pretrial hearing scheduled for May 26, 2015 and found that "the failure of both defendants to appear on 26 May 2015 was a deliberate attempt to further continue the trial of this matter because of the court's earlier order that there be no further continuances of the trial;"

13.     The "Execution on Money Judgment," in the amount of $33,191.35, and the "Execution for Possession of Leased or Rented Dwelling," both dated August 7, 2015, issued by the District Court, against the Debtor in favor of Greystar with respect to Apartment #3413, and the "Execution for Possession of Leased or Rented Dwelling," dated the same date, issued by the District Court against the Debtor in favor of Greystar with respect to Apartment #2216 (collectively, the "Executions");

14.     Copies of orders issued by the Appellate Division of the District Court, the Massachusetts Appeals Court and the Massachusetts Supreme Judicial Court ("SJC"), all of which denied the Debtor's request to review or waive appeal bonds and/or to stay levy on the Executions;

---

[8] This amount reflects the unpaid rent set forth in the Summons and Complaint, plus approximately three additional months of unpaid rent, interest and costs.

5

15.     The Order of the Massachusetts Appeals Court, dated August 17, 2015 (Katzmann, J.), denying the Debtor's motions to stay levy on the Executions with respect to both Apartments which, in pertinent part, provided:

> [T]he defendants have not shown that their appeal, though procedurally correct, is likely to be successful.  To succeed the defendants would have to demonstrate, at a minimum, that they have a nonfrivolous defense to the default.  Following review of the defendants' submission and the District Court docket, the court cannot discern any indication that the District Court judge abused his discretion when he entered the default.  Accordingly, the Motion is denied. The stay currently in place shall expire at the end of the day on August 27, 2015.  The plaintiff may levy on the execution on Friday, August 28, 2015 without the need for any further notice to the defendants.

16.     The hearing held in this Court on September 17, 2015 with respect to the Motions,[9] and the arguments of the parties, including the representations of the Debtor that he intended to cure rental arrears over the term of his Chapter 13 plan;[10]

17.     The Supplemental Brief filed by Greystar on September 18, 2015, and the exhibits attached thereto, including the dockets of both District Court summary process actions, which reflect extensive litigation between the parties;

18.     The Supplemental Corrected Memorandum filed by the Debtor on September 23, 2015, and the exhibits attached thereto, including the dockets of appeals the Debtor commenced postpetition in the Massachusetts Appeals Court and the SJC;

19.     The Debtor's Affidavit filed on September 21, 2015, a 46-page document in which he recounts the history of the parties' relationship and their litigation in various courts, his legal theories concerning the finality of the Judgments for Possession, and the

---

[9] Section 362(l)(3)(A) provides: "If the lessor files an objection to any certification filed by the debtor under paragraph (1) or (2), and serves such objection upon the debtor, the court shall hold a hearing within 10 days after the filing and service of such objection to determine if the certification filed by the debtor under paragraph (1) or (2) is true."  11 U.S.C. § 362(l)(3)(A).

[10] The Debtor also asserted in his Verified Memorandum and Supplemental Brief that he plans to cure the rental default during the term of a plan, that his "counterclaim and his damages for breach of the warranty of habitability are likely to be far in excess of any rent that would be due" and that ultimately he "should not be required to pay *any* rent due to the breach of the warranty of habitability."

6

resulting effect on his bankruptcy case, and in which he stated that "My bankruptcy attorney is not responsible for anything I say here;"

20.  The failure of the Debtor to file any further certification or tender any amounts pursuant to 11 U.S.C. § 362(l)(2) with respect to Apartment #3413 within 30 days of the petition date;

21.  The Debtor's Request for Evidentiary Hearing filed on September 25, 2015;

22.  The Debtor's Chapter 13 plan filed on October 6, 2015, which provides for the assumption of executory contracts with Greystar and the Owner and for payment of $32,423.31 to the Owner and $90,000 to Greystar, over the 60 month term of the plan;

23. The Debtor's Schedules and Statements filed on October 6, 2015, including his Schedule B – Personal Property, in which he listed "Claims and counterclaims; too speculative to value;" and

24.  The entire record of proceedings in this Court.

## II.  FINDINGS OF FACT AND CONCLUSIONS OF LAW

Upon consideration of the foregoing, the Court concludes that the material facts necessary to determine the Motions are not in dispute, and the Court may rule on the merits of the controversy between the parties.  For the reasons stated below, the Court finds that the Debtor's interest in the leases of Apartments #2216 and #3413 terminated prior to the commencement of this case by virtue of the final Judgments for Possession issued by the District Court.  Accordingly, the Debtor has no property interest in either premises.  He does not have the ability to assume the leases as executory contracts nor cure the prepetition defaults through his Chapter 13 plan or through the procedures set forth in 11 U.S.C. § 362(l).

A. <u>Apartment #2216</u>

The Debtor's petition for relief under Chapter 13 listed his address as Apartment #3413.  He did not reference Apartment #2216 in his petition, nor did he deposit any "rent" with the Clerk of this Court for that unit pursuant to § 362(l)(1)(B).  Simply stated, there is no § 362(l) certification in the Debtor's petition related to Apartment #2216.  To the extent the Debtor seeks to extend the Certification to Apartment #2216 because it is a replacement unit for the allegedly uninhabitable Apartment #3413 and, therefore "inextricably linked" to Apartment #3413, the Court rejects such a request for the following reasons.  First, the Debtor's tenancies with respect to the two apartments were the subject of separate lease agreements with differing provisions.  The leases were terminated on different grounds and were the subject of separate Judgments for Possession and Executions issued in separate summary process actions in the District Court.  Second, the provisions of § 362(l), which can shield a debtor from the immediate effect of § 362(b)(22), cannot be invoked where, as here, the underlying Judgment for Possession was based on a non-monetary termination of the tenancy.   There simply is no "monetary default" to cure and no "rent that would have become due during the 30-day period after the filing of the bankruptcy petition."  *See* 11 U.S.C. § 362(l)(1)(A) and (B).  *See also* <u>In re Griggsby</u>, 404 B.R. 83, 88 (Bankr. S.D. N.Y. 2009)(Section 362(l) does not apply where prepetition judgment of possession and warrant of eviction are based upon a non-monetary default that cannot be cured by payment of money.); <u>In re Harris</u>, 424 B.R. 44, 54 (Bankr. E.D. N.Y. 2010)("Section 362(l) does not protect a debtor from the

8

operation of Section 362(b)(22) when a landlord's underlying judgment of possession is based on a non-monetary default.").

Greystar's objection to the Certification for Apartment #2216, to the extent it exists at all, is sustained. Pursuant to § 362(l)(3)(B)(i), in the event a court upholds the objection of a lessor filed under § 362(l)(3)(A), "subsection (b)(22) shall apply immediately and relief from the stay provided under subsection (a)(3) shall not be required to enable the lessor to complete the process to recover full possession of the property."[11] In the alternative, the Court also denies the Debtor's request for an evidentiary hearing and grants Greystar's request for relief from the automatic stay as it has established "cause" pursuant to § 362(d)(1) and a "colorable" right to possession of Apartment #2216 in this summary proceeding. *See* <u>Grella v. Salem Five Cent Savings Bank</u>, 42 F.3d 26, 33 (1st Cir. 1994). Accordingly, Greystar may proceed with its rights against the Debtor under state law with respect to Apartment #2216, subject to rights of Ms. Anderson as a codebtor under 11 U.S.C. § 1301.

B. <u>Apartment #3413</u>

The Judgment for Possession of Apartment #3413 arose as a result of a monetary default, i.e., nonpayment of rent. The Debtor seeks to cast doubt on the finality of that judgment, and presumably Greystar's ability to rely on the exception to the automatic

---

[11] To the extent the Debtor maintains that § 362(b)(22) requires the Judgment for Possession of Apartment #2216 to be final, the Court finds that such judgment is final, as discussed in further detail below.

9

stay set forth in § 362(b)(22), due to the pendency of the Motions to Reconsider and because the Debtor has "not exhausted all of his State Appellate rights."

It is unclear why the Debtor filed the Certification under § 362(l), which can serve to delay the immediate effect of § 362(b)(22), when he is seeking a determination that there is no recognizable "judgment" for purposes of § 362(b)(22). It is also unclear why the Debtor maintains that "absent a final judgment, the terms of § 362(l)(3) should not control," as he asserted in his Verified Memorandum. Although the Debtor originally commenced his bankruptcy case *pro se*, his counsel has never sought to withdraw the Certification or otherwise amend the Debtor's petition.[12]

Despite the Debtor's argument about the applicability of § 362(b)(22) and the absence of the modifier "final" before the phrase "judgment for possession" in either § 362(b)(22) or § 362(l), the Court will address his contention that the Judgments for Possession are not final. The Court finds that both Judgments for Possession are final.

The Motions to Reconsider were filed on June 8, 2015 and through them the Debtor sought to vacate the default judgments entered against him in both summary process actions on May 27, 2015. The "Memorandum of Decision *Concerning Entry of Default Judgment*" (emphasis added) was issued by the District Court *after* the filing of the Motions to Reconsider, on July, 2, 2015. It explicitly referred to the "numerous motions" filed by the Debtor on June 8, 2015, and specifically dealt with and provided

---

[12] The Debtor cites In re Weinraub, 361 B.R. 586 (Bankr. S.D. Fla. 2007), a case involving vastly different facts than those involved here. In that case, the court allowed the debtors' motion to waive the requirements of § 362(l). The Debtor has filed no such motion here.

the rationale for the entry of the default judgments, i.e., the deliberate attempt of the

defendants to further continue a trial by failing to appear on May 26, 2015.  While there

may be no separate docket entries on the District Court dockets denying the Motions to

Reconsider, this Court has no doubt that the District Court considered them and denied

them as set forth in the Memorandum dated July 2, 2015.  Further, the Massachusetts

Appeals Court also addressed the propriety of the entry of the default judgments in its

August 17, 2015 Order: "Following review of the defendants' submission and the

District Court docket, the court cannot discern any indication that the District Court

judge abused his discretion when he entered the default."  Lastly, even if the Motions to

Reconsider were still pending in the District Court, such fact would not affect the

finality of the Judgments for Possession or the judgment with respect to the

Counterclaims under the applicable Massachusetts rules of summary process and civil

procedure.  Mass. Uniform Summary Process Rule 11, entitled "Relief from Judgment"

provides:

> (a) **District and Boston Municipal Departments.** In the District Court  . . . ,
> Rules 60 and 62(b) and (d) of the Massachusetts Rules of Civil Procedure,
> which deal with relief from judgment and stay of execution, respectively,
> shall apply to summary process actions; *provided that relief under Rule 60(b)
> shall be available only in cases where the judgment has been entered on default or
> dismissal.* In cases that have been heard on the merits, relief under Rule 60(b)
> shall not be available.

Mass. Uniform Summary Process Rule 11(a) (emphasis added). That Rule directly refers

to Mass R. Civ. P. 60(b), which provides, in part: "A motion under this subdivision (b)

does not affect the finality of a judgment or suspend its operation." Mass R. Civ. P. 60(b).

While the Debtor may complain that he has not been heard in the state courts on the merits of his Counterclaims, the Court finds that result to be of the Debtor's own making, and one which does not affect the finality of the default judgments. *See* D'Amour v. Birchall (In re Birchall), 501 B.R. 142, 149 (Bankr. D. Mass. 2013)("Default judgments generally do not have preclusive effect, because the issues therein were not actually litigated. Nevertheless, courts have recognized an exception to this rule when the party against whom the default judgment was entered 'substantially participated' in the action.")(footnotes omitted). The procedural history of the summary process actions, recounted above, leaves no doubt that the Debtor substantially participated in those actions and was not simply defaulted for failing to answer.

The Debtor's contention that he has not exhausted all of his appellate rights with respect to the Judgments for Possession is belied by the record and is insufficient to preclude the finality of the Judgments for Possession. Greystar obtained more than Judgments for Possession, it obtained Executions on August 7, 2015, following the July 2, 2015 ruling of Judge Ziemian with respect to the entry of the default judgments. Both the Massachusetts Appeals Court and the SJC denied the Debtor's motions to stay levy on the Executions, on August 17 and 27, 2015, respectively. It is unclear what, if any, further appellate rights the Debtor can legitimately pursue with respect to the merits of the summary process actions. *See* Mass. Uniform Summary Process Rule 12, entitled "Appeals" ("Any judgment in a summary process action, *except a default judgment*, may

12

be appealed by an aggrieved party in accordance with the provisions of law.")(emphasis added). Although the Debtor continues to prosecute postpetition appeals, that does not alter the preclusive effect of the Judgments for Possession. *See* Taatjes v. Maggio (In re Maggio), 518 B.R. 179, 189 (Bankr. D. Mass. 2014)(holding that the pendency of an appeal does not preclude the Court from determining whether collateral estoppel may apply).[13]

The Court finds that the Judgments for Possession are final and that the safe harbor provisions set forth in § 362(l), with which the Debtor failed to fully comply, do not preclude the application of the exception to the automatic stay set forth in § 362(b)(22). There are no "circumstances under which the debtor would be permitted to cure the entire monetary default that gave rise to the judgment for possession" of Apartment #3413 under § 362(l). Greystar terminated the leases and obtained the Judgments for Possession and the Executions in the summary process actions all before the petition date of August 27, 2015. The Debtor has no interest in the leases and no right to cure the defaults or revive his tenancies pursuant to Mass. Gen. Laws ch 186, § 11. Section 11 provides, in relevant part, the following:

> Upon the neglect or refusal to pay the rent due under a written lease, fourteen days' notice to quit, given in writing by the landlord to the tenant, shall be sufficient to determine the lease, unless the tenant, on or before the day the answer is due, in an action by the landlord to recover possession of the premises, pays or tenders to the landlord or to his attorney all rent then due, with interest and costs of suit. . . .

---

[13] In Maggio, this Court relied on O'Brien v. Hanover Ins. Co., 427 Mass. 194, 200, 692 N.E.2d 39 (1998)("The Federal rule, followed by a majority of the States, is that a trial court judgment is final and has preclusive effect regardless of the fact that it is on appeal. . . . We are persuaded by the majority rule.").

13

Mass. Gen. Laws ch 186, § 11.  *See also* Mass. Gen. Laws ch. 239, § 3 (". . . the plaintiff

shall not be required to accept full satisfaction of the money judgment. Any refusal by

the plaintiff to accept full satisfaction of the money judgment under this paragraph shall

not be a bar to the enforcement of said judgment in any lawful manner.").  In this case,

there is no dispute that the Debtor did not tender rent due with respect to Apartment

#3413 by the time he filed his Answers in the summary process actions, and there is no

dispute that Greystar refuses to accept full satisfaction of its monetary judgment, as

attested to in the Affidavit of Laura Donahue.

The Debtor seeks to avoid application of Mass. Gen. Laws ch. 239, § 3 due to the

alleged absence of final judgments, relying on Ropt Limited P'ship v. Katin, 431 Mass.

601, 729 N.E.2d 282 (2000)(Holding that under Rule 11(a) of the Uniform Summary

Process Rules, a defendant in a summary process action cannot raise lack of subject

matter jurisdiction pursuant to Rule 60(b)(4) once there is a final judgment on the

merits, but that such bar did not apply as the lower court did not issue a final judgment

on defendant's counterclaim which was disposed of through a plaintiff's motion to

dismiss). That case is factually and legally distinguishable from this case and is

inapposite here. The Debtor has not provided any controlling authority under

Massachusetts law pursuant to which the Debtor is permitted, at this juncture, to cure

the default that gave rise to the Judgment for Possession of Apartment #3413.

14

The Debtor's reliance on his Counterclaims as a means for curing or offsetting the rent he owes is misplaced.[14]  The District Court entered judgments for Greystar on the Counterclaims following the Debtor's default on May 27, 2015.  The Debtor is free to pursue those Counterclaims, to the extent permitted by applicable law in the appropriate forum, but they do not provide a means for satisfying the requirements of § 362(l).  The Debtor failed to file a further certification within 30 days of the petition date pursuant to § 362(l)(2), certifying that he has cured "the entire monetary default that gave rise to the judgment."  If the debtor fails to perform either the initial or further certification, "subsection (b)(22) shall apply immediately" upon such failure and "relief from the stay provided under subsection (a)(3) shall not be required to enable the lessor to complete the process to recover full possession of the property." 11 U.S.C. § 362(l)(4)(A).  Additionally, the Debtor's proposal to cure the rental arrears through his assumption of executory contracts as provided in his plan would circumvent the purpose of § 362(l).  *See* In re Williams, 371 B.R. 102, 108 (Bankr. E.D. Pa. 2007)(Section 362(l) requires cure of the default in 30 days, not under a Chapter 13 plan as the debtors proposed.).  The Debtor's proposed assumption of the leases through his plan is also not permitted under the circumstances of this case.  *See* Pyramid Operating Authority, Inc. v. City of Memphis (In re Pyramid Operating Authority, Inc.), 144 B.R. 795, 808 (Bankr. W.D. Tenn. 1992)(stating that "[i]t is well established that an agreement or contract which is validly terminated prepetition under applicable state law is not

---

[14]  At the September 17, 2015 hearing in this Court, the Debtor represented that "it may turn out that, in fact, the landlord owes him more money than the rent he owes."

15

assumable under section 365(a)").  In other words, the leases are no longer executory contracts.

Lastly, the Rooker–Feldman doctrine bars this Court from acting as an appellate tribunal with respect to the Judgments for Possession and the judgments on the Counterclaims as it " 'strip[s] federal subject matter jurisdiction over lawsuits that are, in substance, appeals from state court decisions.' " In re Sanders, 408 B.R. 25, 33 (Bankr. E.D. N.Y. 2009) (quoting Book v. Mortg. Elec. Registration Sys., 608 F.Supp.2d 277, 288 (D. Conn. 2009)(citing Hoblock v. Albany Cnty. Bd. of Elections, 422 F.3d 77, 84 (2d Cir. 2005)).

For all of the above reasons, the Court sustains Greystar's Objection to the Certification with respect to Apartment #3413.  Pursuant to the above quoted provisions of § 362(l), the provisions of § 362(b)(22) shall apply immediately with respect to Greystar.  In the alternative, the Court also denies the Debtor's request for an evidentiary hearing and grants Greystar's request for relief from the automatic stay as it has established "cause" pursuant to § 362(d)(1) and a "colorable" right to possession of Apartment #3413 in this summary proceeding.  See Grella v. Salem Five Cent Savings Bank, 42 F.3d 26, 33 (1st Cir. 1994).  Accordingly, Greystar may proceed with its rights against the Debtor under state law with respect to Apartment #3413, subject to rights of Ms. Anderson as a codebtor under 11 U.S.C. § 1301.

III.   CONCLUSION

The Objections to the Certification are sustained, and the Motions are allowed. The Court denies the Debtor's request for an evidentiary hearing, and it will not

16

consider the lengthy arguments set forth in his Affidavit as he is represented in this matter by counsel. *See* Grella, 42 F.3d at 33 (a hearing on a motion to lift the stay is not a proceeding for determining the merits of the underlying substantive claims, defenses, or counterclaims but is analogous to a preliminary injunction hearing, requiring a speedy and necessarily cursory determination of the reasonable likelihood that a creditor has a legitimate claim to a debtor's property).

By the Court,

Dated: October 19, 2015        Joan N. Feeney
United States Bankruptcy Judge

17