UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| IN RE:<br><br>    Andre Bisasor<br><br>    Debtor, | ) REQUEST FOR EXPEDITED DETERMINATION<br>)<br>) REQUEST FOR HEARING<br>)    Chapter 7<br>)    Case No.: 15-13369<br>)<br>) |

## EMERGENCY MOTION TO BANKRUPTCY COURT TO APPLY OR EXTEND THE AUTOMATIC STAY TO CIVIL CASE

1. I, Andre Bisasor, the plaintiff-debtor in the above captioned case, hereby submit this motion for application or extension of the automatic stay to my civil action that is currently ongoing in the Suffolk Superior Court of Massachusetts ("state court") and set for hearing on motion to dismiss on Nov. 10, 2016 (in two days).

2. Emergency determination is requested because the state proceedings for hearings on motions to dismiss is scheduled for two days from now on Nov. 10, 2016. A hearing is requested while in the meantime a stay is requested until a hearing can be conducted if possible.

3. NB: My Counsel, Dmitri Lev, was unable to file this motion due to unavailability but he is aware that I am filing this motion on an emergency basis due to the exigent circumstances involved.

### A. INTRODUCTION

4. I am requesting relief from the Federal Bankruptcy Court For The District of Eastern Massachusetts ("bankruptcy court") because the bankruptcy court, as a federal court that deals with bankruptcy issues and the application of bankruptcy law to other venues, has the authority to determine the applicability of the automatic stay to my civil action in state court or whether or not the automatic stay can and should be extended or applied to my civil action in state court.

5. Given some of the arguments in this motion, relating to the intent of the automatic stay provision, the bankruptcy court has the authority to decide such matters better than the state court.

6. Given the conflicting decisions in state court, where one Superior Court judge ruled that the automatic stay applied to my case and where another ruled that it did not, the issue is ripe for determination by the bankruptcy court which has the expertise to sort out the matter.

7. Given some of my arguments in this motion, relating to unusual circumstances exception and the immediate adverse economic consequences exception (as explained further below), the bankruptcy court is in a better position to determine those issues since the bankruptcy is more familiar with the circumstances surrounding financial situation.

8. Ultimately, the bankruptcy court has more authority and jurisdiction to determine these issues than the state court because these issues directly implicate the interpretation and application of bankruptcy law.

9. The following case law demonstrates clearly the remedies available upon entry of an adverse state court decision from a state court pertaining to the automatic stay: "When a New York State court rules the stay inapplicable, the debtor has two remedies available: The debtor (i) "could have sought a stay of the decision pending appeal" (See CPLR 5519 [c]; cf. CPLR § 460.50), or (ii) "sought relief in the Bankruptcy Court in which he filed his petition." Skripek v. Skripek, supra; see also In re AUFCMP Church, 184 B.R. 207, 216 (Bankr. D. Del. 1995).". This shows that it is perfectly reasonable and expected that if a plaintiff-debtor encounters an adverse decision pertaining to the automatic stay, he can either appeal the decision in state court or he can seek relief in bankruptcy court in which he filed his petition. It is clear that I, as a plaintiff-debtor, did not have to take as final the state court judge's (Judge Peter Lauriat) decision regarding the automatic stay. It is my absolute and undeniable right to seek intervention of the bankruptcy court to determine the applicability of the automatic stay.

10. It is well-settled that federal courts have the final authority to determine the scope and applicability of the automatic stay.

## B. COUNTERCLAIMS ASSERTED AGAINST THE DEBTOR

11. On August 31, 2015, Mr. Slavenskoj filed a Special Emergency Motion To Dismiss Plaintiff's Complaint Pursuant to Mass. Gen. Laws ch. 231, Section 59H. (See Exhibit 9 - Special Emergency Motion To Dismiss)

12. On closer look, this is the Massachusetts anti-Strategic Lawsuits Against Public Participation (SLAPP) statute which allows a petitioner to file a special motion to dismiss a complaint filed against him/her based on his/her "exercise of rights of petition under the constitution of the United States or of the commonwealth."

13. If Mr. Slavenskoj prevails on his motion to dismiss under the Massachusetts anti-SLAPP statute, the court will dismiss the lawsuit against him, and he will be entitled to recover attorneys' fees and court costs. M.G.L. c. 231, § 59H. Furthermore, if he succeeds, he may be able to bring a claim of malicious prosecution against me. By asserting an Anti-Slapp motion, Mr. Slavenskoj has in effect asserted a counterclaim and is seeking a monetary award against me. This is in violation of the automatic stay and entitles me to the protection of the automatic stay for the entire case. Mr. Slavenskoj is the lead defendant in this case and it is critical to determine if he will be in or out of this case first before any aspect of this case can move forward. It is an indispensable part of this case as this motion will decide if this defendant is in the case or out of the case. The matter should be stayed for that reason because if he succeeds on the Anti-Slapp motion, then there is potentially a liability that I am protected from by the automatic stay and we can't determine the rest of this case until we determine if this defendant is in or out of the case. Therefore, the whole thing ought to be stayed. This is solid ground for granting or extending the application of the automatic stay to my case. At the time when the Anti-Slapp motion was filed on August 31, 2015, I was already a debtor in bankruptcy as of August 27, 2015. Therefore, this motion is in violation of the automatic stay. If I were to lose this motion, then the court automatically awards attorneys' fees and there is a

colorable claim for attorneys' fees attached. So it is a counter-claim that exists although it has not been resolved.

14. This is likely one of the key reasons why Judge Robert Gordon, in his wisdom, entered an order applying and recognizing the automatic stay to my case on 9/3/15 because he had just received Danslav Slavenskoj's Special Motion To Dismiss/Anti-Slapp Motion on 8/31/15 and Judge Gordon knew that Mr. Slavenskoj had in effect asserted a counterclaim against me (NB: Judge Gordon entered an order of a stay and that no further action be taken regarding Mr. Slavenskoj's Anti-SLAPP motion until discharge in bankruptcy or further order of the bankruptcy court). On this basis alone, it turns out that Judge Robert Gordon was right. Judge Robert Gordon was more intimately familiar with the proceedings and filings because he presided over the case the three months when most of the relevant procedural events took place including the suggestion of bankruptcy, the anti-slapp motion, etc. Having only rotated-in after the fact, it is possible that Judge Peter Lauriat may not have been as intimately aware and apparently missed the import and significance of Danslav Slavenskoj's Anti-Slapp Motion, for example.

15. Here is an excerpt from the state court docket that shows the unfolding of events surrounding the Mr. Slavenskoj's Anti-Slapp motion and Judge Gordon's rulings on the matter:

    a. 09/01/2015 - |Defendant Danslav Slavenskoj's special emergency MOTION to Dismiss (MRCP 12b) Complaint of Andre Bisasor pursuant to MGL c. 231 Sec. 59h (w/o opposition) [#43]

    b. 09/02/2015 - Suggestion of bankruptcy by Plaintiff, Andre Bisasor [#46]

    c. 09/04/2015 - Motion (P#43) The plaintiff is directed to reply to defendant Slavenskoj's Special Emergency Motion to Dismiss within 21 days of the date hereof (Robert B. Gordon, Justice) (entered 9/2/15). Notices mailed 9/4/2015

    d. 09/04/2015 - Pleading(P#46) (Suggestion of Bankruptcy) - In accordance with the plaintiff's suggestion of Bankruptcy, an by operation of 11 US c. sec 362, the Action is hereby STAYED as to

all parties pending discharge of the bankrupcy estate or other order form the Bankrupcy Court (Robert B. Gordon, Justice) (entered 9/3/15) notice sent 9/4/15

e. 09/04/2015 - Court received letter from Defendant Slavenskoj to Hon. Robert Gordon regarding his motion to Dismiss: NO ACTION TAKEN. The case has been stayed in consideration of the Plaintiff's suggestion of bankruptcy as of today's date (Gordon, J.) (filed and entered 9/3/15) notice sent 9/4/15 [#47]

f. 09/11/2015 - Emergency Opposition to Plaintiff's suggestion of bankruptcy filed by Defendant Danslav Slavenskoj [#48]

g. 09/17/2015 - Emergency Opposition (P#48) - Treating this submission as a Request for Reconsideration of the Court's decision to stay the Plaintiff's action pending further direction from the Bankruptcy Court, the request is DENIED. (Robert B. Gordon, Justice). Dated 9/15/15 Notices mailed 9/16/2015

16. [NB: See Exhibits for Full State Court Docket]

17. It is clear from the state court docket that Judge Gordon took the anti-SLAPP motion into account when he entered the automatic stay on my case. The filing of the anti-SLAPP motion by Mr. Slavenskoj is one of the most compelling arguments for the application of the automatic stay to my case and why this court should enter a stay order.

18. [NB: There have been some procedural irregularities surrounding the circumstances under which Judge Gordon's firm ruling to enter the stay was then reversed by a colleague superior court judge in the same session of the state court. This was not an appeal nor was it a reconsideration by Judge Gordon who issued the firm and clear decision on the application of the automatic stay. Moreover, concerns have been outlined regarding Harvard's attempt to judge-shop the case in the state court by waiting until Judge Peter Lauriat rotated in before attempting to get Judge Lauriat to reverse Judge Gordon, along with concerns about judicial bias have also been raised regarding Judge Lauriat's employment/teaching relationship and interest with Harvard University, as a Harvard

Law School faculty/professor for over 6 years or more, among other things. See exhibits for motion to recuse.]

19. If counterclaims have been asserted against me, then the automatic stay would apply. This is a matter to be reviewed for the application of law. It is best resolved by the First Circuit or the bankruptcy court.

20. If anything, this indicates it is a matter of novel impression before the court and careful consideration is to be given this issue as a matter of first impression.

## C. VIOLATION OF SECTION 362 (a)

21. Filing a bankruptcy petition causes an automatic stay of all court proceedings and other acts to collect pre-petition liabilities from the debtor. Pursuant to 11 U.S.C. section 362(a), the filing of a bankruptcy petition stays (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;....and(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title. In my case, 1) the acts alleged against me, via Mr. Slavenskoj's anti-slapp motion, occurred prepetition. 2) The motion or action by Defendant Slavenskoj's seeks to recover a claim. 3) The motion or action seeks to employ process of a judicial proceeding against me as the plaintiff-debtor.

22. The automatic stay applies to almost any type of formal or informal action against the debtor or the property of the estate. Therefore, it applies to the special motion action regardless of whether it is a formal separate proceeding or whether it is subsumed within another proceeding.

23. By electing to file an action under this special statute, Mr. Slavenskoj knowingly and purposefully is seeking to collect, assess and recover a claim with a monetary award against me for alleged acts that occurred pre-petition.

24. According to this statute, a money award is awarded automatically to the anti-slapp filer in order to deter the party who brought the legal action from bringing similar future retaliatory lawsuits. The attorney's fees award is designed to reimburse the costs of defending an improper legal action. This is not a contract-based award of prevailing party attorney fees. It is an automatic statutory award of fees in the act itself of filing the motion. The fees are not awarded for conduct I engaged in post-petition. It is awarded for conduct I allegedly engaged in pre-petition i.e. I am being accused of wrongdoing in bringing an improper legal action in retaliation or as a retaliatory lawsuit. Mr. Slavenskoj has asserted that I engaged in retaliation or I sought to muzzle his free speech or that I have sought to engage in some kind of wrongful purpose against him. Given that Slavenskoj is pro se, it is evident that the actual language used on his special motion intends to assert counterclaims. And no matter how frivolous the motion may be, I now have to defend against the merits of Mr. Slavenskoj's charges of retaliation/wrongdoing that have nothing to do with my claim against him.

25. According to the legal dictionary, a claim is defined as: "1) v. to make a demand for money, for property, or for enforcement of a right provided by law. 2) n. the making of a demand (assert a claim) for money due, for property, for damages or for enforcement of a right." A counterclaim is defined as "A claim by a defendant opposing the claim of the plaintiff and seeking some relief from the plaintiff for the defendant." (See http://legal-dictionary.thefreedictionary.com/claim). Mr. Slavenskoj in his special anti-slapp action has made a legal assertion and demand for money (which makes it a legal claim) and he has used it in the context of opposing my claim against him and he is seeking relief against me as the plaintiff. This clearly meets the criteria for being a claim/counterclaim.

26. Any action taken to collect money or money damages that is pending in a non-bankruptcy court, becomes a claim for bankruptcy purposes. See In re Meyertech Corp., 831 F.2d 410, 417-18 (3d Cir. 1987) (A suit for damages pending against a debtor in a non-bankruptcy court when the debtor files his petition, becomes a "claim" for bankruptcy purposes....without any final determination of the action by the non-bankruptcy court.).

27. The automatic stay serves several purposes. It gives a bankrupt a breathing spell from creditors by stopping all collection efforts, all harassment, and all foreclosure actions. Mr. Slavenkoj's motion is a collection effort and a harassing action intended to force me to defend against such claims.

28. If fees and costs are collected from me by Mr. Slavenskoj, it would undermine the purpose of the protections afforded by the bankruptcy code. For example, what if his fees are $30,000, $40,000 or $50,000? That will completely devastate me as a plaintiff-debtor.

29. Moreover, it is well-settled that the seeking of an award of costs against a debtor in bankruptcy, without permission of the bankruptcy court, is in fact a violation of the automatic stay. This is further confirmed by Judge Jones of the 9th circuit when he stated that: "Even though Gordon may have believed in good faith that seeking an award of costs was not a violation of the stay, a broad application of In re Goodman dictates that it is." Note also that in In re Merrick (BAP 9th Circuit (1994)), Judge Jones found that: "[At] the moment the bankruptcy petition was filed, any further action on a pending motion for pre-petition costs constituted a violation of the stay. The subsequent hearing on the motion and award of fees was a violation of the stay. See 11 U.S.C. § 362(a)(1).]." These examples clearly contradict Harvard's argument that "another district court noted the lack of any precedent that even implies that the imposition of attorney fees and costs should be a factor in calculating whether debtor's suits should be stayed during a bankruptcy." This is a recurring problem with Harvard's arguments i.e. they at times either misquote the cases they cite or they cherry-pick quotes from a case that support their point but ignore statements made in that same case that support my point or contradicts their argument. This illustrates another example why this

court should take with a grain of salt any quotes or citations made by Harvard defendants and to scrutinize these references to ensure consistency with their claims.

30. The mandatory nature of the award of the fees and costs adds further ammunition in conclusively treating the anti-slapp motion as a violation of the automatic stay because the mandatory nature of the award makes a difference in assessing whether the act is an attempt to collect, assess or recover on a claim. See Goodman: In re Chateaugay Corp., 920 F.2d at 187. (The primary difference between proceeding on the basis of the language of § 362(h) on one hand, and civil contempt on the other, is the mandatory nature of an award of damages as to the former compared to the permissive nature of such an award under the latter. Pursuant to § 362(h), an individual injured "shall" recover damages; pursuant to civil contempt, whether damages shall be awarded is discretionary. This distinction makes a difference in this case because the bankruptcy court in deciding not to award damages observed that in its view, the violation was "not [sufficiently] egregious" to justify damages). (Emphasis added)

31. The BAP of the 9th Circuit found that the award of fees was in violation of the automatic stay. See In re Merrick (BAP 9th Circuit (1994)) ("We note that the state court...also granted him an interest in the total costs awarded to all of the defendants, and that these costs were awarded postpetition. Assuming these costs were awarded in violation of the automatic stay...").

32. Moreover, an anti-slapp action against a debtor creates the likelihood that the debtor's estate will be divested of some (if not all) of its assets, if in fact the anti-slapp motion is successful with its automatic award of a money judgement of attorney fees and costs. This is a potential disruption of the administration of the estate and it is precisely the kind of thing that section 362 was designed to prevent. See Association of St. Croix Condominium Owners v. St. Croix Hotel Corp., (3d Cir.1982) (The potential disruption of the administration of the bankruptcy estate that would be caused by the Association's success in its cross-appeal is precisely the result section 362 was

designed to prevent. Since it would be unwise in the circumstances of this case, to stay only one of the two appeals before us, we thus stay both.)

33. Mr. Slavenskoj is attempting to put me in a defensive posture to answer charges of wrongdoing and abuse of process and to collect payment of an automatic money judgment attorney fees and costs. Please note that an automatic award of money under the Massachusetts anti-slapp statute is a different thing than a sanction under Rule 11 (i.e. a Rule 11 sanction is discretionary and need not be a money award).

34. The automatic stay is triggered whenever there is an attempt by a party "to exercise control over property of the estate," § 362(a)(3). It is most likely that a contention by a defendant that the debtor owes the defendant fees and costs can be equated with exercising dominion or control over property of the estate.

35. Subsection 362(a)(6) uses very broad language and courts generally construe the automatic stay provisions broadly. It applies to formal or informal proceedings against a debtor and it stays "any act to collect, assess, or recover a claim against the debtor that arose before [the filing of the petition]." The attempt to seek money award of fees and costs through an anti-slapp action is an attempt to collect, assess or recover against the debtor. (See Morgan Guar. Trust Co. v. American Sav. And Loan (9th Circuit) (1986). See also, e.g., Coben v. Lebrun (In re Golden Plan of California, Inc.), 37 B.R. 167, 170 (Bankr.E.D.Cal.1984); Wallingford's Fruit House v. Inhabitants of the City of Auburn (In re Wallingford's Fruit House), 30 B.R. 654, 659 (Bankr.D.Me.1983).)

36. These provisions stay acts that immediately or potentially threaten the debtor's possession of its property: commencement of judicial proceedings; enforcement of judgments; creation and enforcement of liens; and setoffs of debts owing to the debtor against claims against the debtor. 11 U.S.C. §§ 362(a)(1), (2), (4), (5), (7) & (8). The activities that are specifically prohibited all involve attempts to confiscate the debtor's property or require the debtor to act affirmatively to protect its interests. It is clear that Mr. Slavenskoj's antislapp motion is an act that requires me to

act affirmatively to protect my interests. The anti-slapp action with its attempt to collect an automatic money award interferes with the orderly administration of the estate, the debtor's "breathing spell," and the status quo.

37. The automatic stay prohibits any action that would inevitably have an adverse effect on property of the estate. (See In re Prudential Lines, Inc., 119 B.R. 430 (S.D.N.Y.), aff'd, 928 F.2d 565 (2d Cir.), cert. denied, PSS S.S. Co., Inc. v. Unsecured Creditors, 502 U.S. 821 (1991)). It is without dispute that this anti-slapp action would have an adverse effect on the debtor's estate.

38. If the anti-slapp motion constitutes a counterclaim subject to the automatic stay, the appropriate resolution is to stay the entire proceedings.

## D. CONCLUSION

39. I am requesting a temporary stay of the proceeding in state court until the Bankruptcy Court can fully rule on and determine whether the automatic stay applies or not.

40. I am dealing with 5 motions to dismiss and 5 motion to dismiss hearings on November 10, 2016.

41. I am asking the Bankruptcy Court to enter a temporary stay to preserve the status quo so that these matters are not in danger of being made moot.

42. At the very least, I am requesting that the Bankruptcy Court enters a temporary stay until at least the Bankruptcy Court can decide on the motion to apply the automatic stay.

43. If the November 10, 2016 motion to dismiss hearing is not stayed, without the trustee having an opportunity to join the case, then my case could be prejudiced if dismissed. It is difficult for me to prosecute this case while still in the process of completing my bankruptcy and while matters are in a state of limbo regarding whether the trustee will join or abandon the case.

## E. PRAYER OF RELIEF

44. Wherefore, I request the following:
   a. That a temporary administrative stay be allowed until the bankruptcy court reaches a decision regarding the applicability of the automatic stay, especially if a hearing is

scheduled on this matter (especially since the state court motion to dismiss hearing is scheduled for November 10, 2016 in two days).

b. That the Court grants this request to apply or extend the automatic stay.

c. That Court at least grants a stay until the Chapter 7 trustee is in a position to officially join or abandon the case.

WHEREFORE, I hereby humbly request this Honorable Court grant my request and/or other relief that the Court deems just and proper.

Respectfully submitted,

*Andre Bisasor*
Plaintiff Andre Bisasor
119 Drum Hill Rd, #233
Chelmsford MA 01824
781-492-5675

Dated: November 8, 2016