UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| IN RE: | ) | |
| Andre Bisasor | ) | Chapter 7 |
| | ) | Case No.: 15-13369 |
| Debtor, | ) | |

**DETAILD MEMORANDUM IN SUPPORT OF DEBTOR'S EMERGENCY MOTION TO BANKRUPTCY COURT TO APPLY OR EXTEND THE AUTOMATIC STAY TO CIVIL CASE**

45. I, Andre Bisasor, the plaintiff-debtor in the above captioned case, hereby submit this motion for application or extension of the automatic stay to my civil action that is currently ongoing in the Suffolk Superior Court of Massachusetts ("state court") and set for hearing on motion to dismiss on Nov. 10, 2016 (in two days).

46. I am requesting relief from the Federal Bankruptcy Court For The District of Eastern Massachusetts ("bankruptcy court") because the bankruptcy court, as a federal court that deals with bankruptcy issues and the application of bankruptcy law to other venues, has the authority to determine the applicability of the automatic stay to my civil action in state court or whether or not the automatic stay can and should be extended or applied to my civil action in state court.

47. Given some of the arguments in this motion, relating to the intent of the automatic stay provision, the bankruptcy court has the authority to decide such matters better than the state court.

48. Given the conflicting decisions in state court, where one Superior Court judge ruled that the automatic stay applied to my case and where another ruled that it did not, the issue is ripe for determination by the bankruptcy court which has the expertise to sort out the matter.

49. Given some of my arguments in this motion, relating to unusual circumstances exception and the immediate adverse economic consequences exception (as explained further below), the bankruptcy court is in a better position to determine those issues since the bankruptcy is more familiar with the circumstances surrounding financial situation.

50. Ultimately, the bankruptcy court has more authority and jurisdiction to determine these issues than the state court because these issues directly implicate the interpretation and application of bankruptcy law.

51. The following case law demonstrates clearly the remedies available upon entry of an adverse state court decision from a state court pertaining to the automatic stay: "When a New York State court rules the stay inapplicable, the debtor has two remedies available: The debtor (i) "could have sought a stay of the decision pending appeal" (See CPLR 5519 [c]; cf. CPLR § 460.50), or (ii) "sought relief in the Bankruptcy Court in which he filed his petition." Skripek v. Skripek, supra; see also In re AUFCMP Church, 184 B.R. 207, 216 (Bankr. D. Del. 1995).".  This shows that it is perfectly reasonable and expected that if a plaintiff-debtor encounters an adverse decision pertaining to the automatic stay, he can either appeal the decision in state court or he can seek relief in bankruptcy court in which he filed his petition. It is clear that I, as a plaintiff-debtor, did not have to take as final the state court judge's (Judge Peter Lauriat) decision regarding the automatic stay. It is my absolute and undeniable right to seek intervention of the bankruptcy court to determine the applicability of the automatic stay.

52. It is well-settled that federal courts have the final authority to determine the scope and applicability of the automatic stay.

## I. ABBREVIATED PROCEDURAL HISTORY

53. On November 18, 2014, I filed the original complaint pro se, as a placeholder, without any legal help. This was in the Suffolk Superior Court of Massachusetts ("State Court").

54. On June 19, 2015, I served the first amended complaint on defendants, which was amended once as a matter of course (i.e. before service of process was done or required), pursuant to the rules of procedure, in state court.

55. On August 27, 2015, I filed for bankruptcy in the Federal Bankruptcy Court For The District of Eastern Massachusetts ("Bankruptcy Court").

56. On September 3, 2015, I filed a suggestion of bankruptcy in state court.

57. On September 4, 2015, Judge Robert Gordon entered a stay on this case in the state court. He ordered that the entire proceedings in state court be stayed based on application of the automatic stay and that the stay will not be lifted until I completed my bankruptcy or until further orders of the bankruptcy court.

58. Customarily, every 3 months judges are rotated within the state court system. Usually two judges rotate back and forth interchangeably every 3 months within each session of the state court system.

59. On October 1,2015. Judge Peter Lauriat rotated into this case in state court. Judge Robert Gordon rotated out.

60. On October 1, 2015, Harvard filed a motion to lift the stay in state court.

61. On November 8 2015, Judge Peter Lauriat lifted the stay entered by Judge Gordon in state court. This was a reversal of Judge Gordon's entry of a stay to my case in state court.

62. On January 22, 2016, the case was removed to the Federal District Court for Massachusetts ("Federal District Court") under the statute that allows removal of a plaintiff-initiated case in state court into federal court by the plaintiff debtor.

63. Once in federal district court, Harvard requested a remand to state court.

64. Motion practice continued in federal district court for 6 months. I was not represented by counsel.

65. I filed a motion for stay in federal district court including application or extension of the automatic stay to my civil action. Harvard opposed. The federal district court denied the motion for stay.

66. On June 29, 2016, the case was remanded to state court by the federal district court judge who was on the case.

67. I immediately filed in the First Circuit Court of Appeals (The First Circuit) two appeals of these two categories of decisions that implicate the automatic stay applicability as well as the remand to state court itself.

68. These appeals are currently working their way through the First Circuit. No decision has yet been made on these appeals as the appeals process is still relatively in its beginning stages in the First Circuit.

69. On August 1, 2016, I filed a motion for renewed application or extension of the automatic stay in state court, which was denied by Judge Peter Lauriat.

70. After other motions filed by defendants, a date was set for hearing on all motions to dismiss in state court for November 10, 2016 at 2pm.

---

## II. SUMMARY INTRODUCTION

---

71. I am requesting a temporary stay of the proceeding in state court until the Bankruptcy Court can fully rule on and determine whether the automatic stay applies or not.

72. I am dealing with 5 motions to dismiss and 5 motion to dismiss hearings on November 10, 2016.

73. I am asking the Bankruptcy Court to enter a temporary stay to preserve the status quo so that these matters are not in danger of being made moot.

74. At the very least, I am requesting that the Bankruptcy Court enters a temporary stay until at least the Bankruptcy Court can decide on the motion to apply the automatic stay.

75. If the November 10, 2016 motion to dismiss hearing is not stayed, without the trustee having an opportunity to join the case, then my case could be prejudiced if dismissed. It is difficult for me to prosecute this case while still in the process of completing my bankruptcy and while matters are in a state of limbo regarding whether the trustee will join or abandon the case.

76. I am pro se and I have to provide for my family. I also have a number of motions and pending proceedings in Bankruptcy court including a mediation and/or defense on an adversary proceeding as well other matters related to coordinating with and finalizing certain important matters with the trustee. It is difficult to do all of that while also prepare and focus on the underlying civil lawsuit.

77. It has been difficult to get a lawyer on this case because this matter has some underlying complexity that makes it very expensive to have a lawyer represent me in the past. Also, very few lawyers want to get involved in a case where the trustee has not joined or abandoned the case and where that is in limbo.

78. However, I also have a settlement from a landlord-tenant dispute coming to me through the bankruptcy court which will allow me to secure legal representation/assistance on this civil case.

79. I would rather have an attorney on the case rather than do this myself. I need just a little time for the settlement to be released through the trustee and the bankruptcy court.

---

## III. ARGUMENTS

---

### A. COUNTERCLAIMS HAVE BEEN ASSERTED AGAINST ME IN THIS CASE AND THUS THE AUTOMATIC STAY APPLIES

---

80. On August 31, 2015, Mr. Slavenskoj filed a Special Emergency Motion To Dismiss Plaintiff's Complaint Pursuant to Mass. Gen. Laws ch. 231, Section 59H. (See Exhibit 9 - Special Emergency Motion To Dismiss)

81. On closer look, this is the Massachusetts anti-Strategic Lawsuits Against Public Participation (SLAPP) statute which allows a petitioner to file a special motion to dismiss a complaint filed against him/her based on his/her "exercise of rights of petition under the constitution of the United States or of the commonwealth."

82. If Mr. Slavenskoj prevails on his motion to dismiss under the Massachusetts anti-SLAPP statute, the court will dismiss the lawsuit against him, and he will be entitled to recover attorneys' fees and court costs. M.G.L. c. 231, § 59H. Furthermore, if he succeeds, he may be able to bring a claim of malicious prosecution against me. By asserting an Anti-Slapp motion, Mr. Slavenskoj has in effect asserted a counterclaim and is seeking a monetary award against me. This is in violation of the automatic stay and entitles me to the protection of the automatic stay for the entire case. Mr. Slavenskoj is the lead defendant in this case and it is critical to determine if he will be in or out of this case first before any aspect of this case can move forward. It is an indispensable part of this case as this motion will decide if this defendant is in the case or out of the case. The matter should be stayed for that reason because if he succeeds on the Anti-Slapp motion, then there is potentially a liability that I am protected from by the automatic stay and we can't determine the rest of this case until we determine if this defendant is in or out of the case. Therefore, the whole thing ought to be stayed. This is solid ground for granting or extending the application of the automatic stay to my case.  At the time when the Anti-Slapp motion was filed on August 31, 2015, I was already a debtor in bankruptcy as of August 27, 2015. Therefore, this motion is in violation of the automatic stay. If I were to lose this motion, then the court automatically awards attorneys' fees and there is a colorable claim for attorneys' fees attached. So it is a counter-claim that exists although it has not been resolved.

83. This is likely one of the key reasons why Judge Robert Gordon, in his wisdom, entered an order applying and recognizing the automatic stay to my case on 9/3/15 because he had just received Danslav Slavenskoj's Special Motion To Dismiss/Anti-Slapp Motion on 8/31/15 and Judge Gordon knew that Mr. Slavenskoj had in effect asserted a counterclaim against me (NB: Judge Gordon entered an order of a stay and that no further action be taken regarding Mr. Slavenskoj's Anti-SLAPP motion until discharge in bankruptcy or further order of the bankruptcy court). On this basis alone, it turns out that Judge Robert Gordon was right. Judge Robert Gordon was more

intimately familiar with the proceedings and filings because he presided over the case the three

months when most of the relevant procedural events took place including the suggestion of

bankruptcy, the anti-slapp motion, etc. Having only rotated-in after the fact, it is possible that

Judge Peter Lauriat may not have been as intimately aware and apparently missed the import and

significance of Danslav Slavenskoj's Anti-Slapp Motion, for example.

84. Here is an excerpt from the state court docket that shows the unfolding of events surrounding the

Mr. Slavenskoj's Anti-Slapp motion and Judge Gordon's rulings on the matter:

    a.  09/01/2015 -|Defendant Danslav Slavenskoj's special emergency MOTION to Dismiss (MRCP 12b)

        Complaint of Andre Bisasor pursuant to MGL c. 231 Sec. 59h (w/o opposition) [#43]

    b.  09/02/2015 - Suggestion of bankruptcy by Plaintiff, Andre Bisasor [#46]

    c.  09/04/2015 - Motion (P#43) The plaintiff is directed to reply to defendant Slavenskoj's Special

        Emergency Motion to Dismiss within 21 days of the date hereof (Robert B. Gordon, Justice)

        (entered 9/2/15). Notices mailed 9/4/2015

    d.  09/04/2015 - Pleading(P#46) (Suggestion of Bankruptcy) - In accordance with the plaintiff's

        suggestion of Bankruptcy, an by operation of 11 US c. sec 362, the Action is hereby STAYED as to

        all parties pending discharge of the bankruptcy estate or other order form the Bankrupcy Court

        (Robert B. Gordon, Justice) (entered 9/3/15) notice sent 9/4/15

    e.  09/04/2015 - Court received letter from Defendant Slavenskoj to Hon. Robert Gordon regarding his

        motion to Dismiss: NO ACTION TAKEN. The case has been stayed in consideration of the

        Plaintiff's suggestion of bankruptcy as of today's date (Gordon, J.) (filed and entered 9/3/15) notice

        sent 9/4/15 [#47]

    f.  09/11/2015 - Emergency Opposition to Plaintiff's suggestion of bankruptcy filed by Defendant

        Danslav Slavenskoj [#48]

    g.  09/17/2015 - Emergency Opposition (P#48) - Treating this submission as a Request for

        Reconsideration of the Court's decision to stay the Plaintiff's action pending further direction from

the Bankruptcy Court, the request is DENIED. (Robert B. Gordon, Justice). Dated 9/15/15 Notices

mailed 9/16/2015

85. [NB: See Exhibits for Full State Court Docket]

86. It is clear from the state court docket that Judge Gordon took the anti-SLAPP motion into account

when he entered the automatic stay on my case. The filing of the anti-SLAPP motion by Mr.

Slavenskoj is one of the most compelling arguments for the application of the automatic stay to my

case and why this court should enter a stay order.

87. [NB: There have been some procedural irregularities surrounding the circumstances under which

Judge Gordon's firm ruling to enter the stay was then reversed by a colleague superior court judge

in the same session of the state court. This was not an appeal nor was it a reconsideration by Judge

Gordon who issued the firm and clear decision on the application of the automatic stay. Moreover,

concerns have been outlined regarding Harvard's attempt to judge-shop the case in the state court

by waiting until Judge Peter Lauriat rotated in before attempting to get Judge Lauriat to reverse

Judge Gordon, along with concerns about judicial bias have also been raised regarding Judge

Lauriat's employment/teaching relationship and interest with Harvard University, as a Harvard

Law School faculty/professor for over 6 years or more, among other things. See exhibits for motion

to recuse.]

88. If counterclaims have been asserted against me, then the automatic stay would apply. This is a

matter to be reviewed for the application of law. It is best resolved by the First Circuit or the

bankruptcy court.

89. If anything, this indicates it is a matter of novel impression before the court and careful

consideration is to be given this issue as a matter of first impression.

B. AN ANTI-SLAPP ACTION IS A COUNTERCLAIM OR IS AT LEAST AN "ACTION OR PROCEEDING AGAINST A DEBTOR" WITHIN THE MEANING OF SECTION 362.

90. The anti-SLAPP suit statute was intended to encourage participation in public interest matters and avoid the chilling of such participation through "abuse of the judicial process." The anti-slapp motion is a counter-action against the non-moving party, who brought a lawsuit (against the moving party bringing the special motion) in retaliation for petitioning activity by the moving party, and is essentially an action alleging an abuse of process or wrongdoing committed by the non-moving party who brought the lawsuit.

91. Therefore, I am being accused of abuse of judicial process. In filing the antislapp motion, Mr. Slavenskoj is saying that "I abused the judicial process", instead of simply saying that "I have no case". These are accusations that I sought to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances and that I sought to deter a citizen from exercising their right to petition or to punish them for doing so or to intimidate an opponent's exercise of petitioning rights. These are all elements of a counterclaim of wrongdoing. Thus, an Anti-SLAPP action is an abuse of process tort claim. It is purportedly "based on Mr. Slavenskoj's petitioning activity" because he supposedly believes that the activity of my filing a lawsuit against him is itself an illegitimate abuse of process. His anti-slapp motion is also an injunction against me and this evidenced by the fact that the motion carries with an automatic stay on all discovery and prevents me from obtaining any discovery against the defendant that could help me prove my case. The anti-slapp action involves procedures, legal arguments and pleadings (that I now have to research myself or pay a lawyer for) that have nothing to do with Mr. Slavenskoj defending against my actual claims. The things I would have to do to defend against an abuse of process claim, I now have to do to defend against an anti-slapp action.

92. So, I am required to defend myself against these charges, spending time and resources to prove that I did not commit the wrong doing of abuse of process and that my claims are not retaliations intended to stop free speech before a government body.

93. Furthermore, there is a burden-shifting mechanism contained within the anti-slapp statute which essentially puts me in a defensive posture and the concomitant automatic award of attorney fees and costs creates recovery on a claim. If none of this makes the anti-slapp action a claim or counterclaim (however much it might be in disguise) then I don't know what will. (See Halmar Robicon Group, Inc. v. Toshiba Int'l Corp., 127 Fed. Appx. 501, 503 (Fed. Cir. 2005) (automatic stay [operates] as against actions in which debtor is in defensive posture) emphasis supplied.)).

94. It is well-settled that "counterclaims against the debtor are generally barred". Moreover, in Koolik v. Markowitz, the court held that: "[S]ince a defendant who is awarded judgment on a counterclaim is no less a judgment creditor than is a plaintiff who is awarded judgment on a claim asserted in the complaint, we construe the term 'action or proceeding'... to include any pleading that asserts a claim on which relief is sought. In this way, the Second Circuit held that an answer that asserts a counterclaim against a plaintiff that becomes a bankruptcy debtor is an "action or proceeding against the debtor" within the meaning of 11 U.S.C. section 362(a)(1), regardless of whether the plaintiff initiated the lawsuit." Please note that Koolik v Markowitz states that the definition of a counterclaim is any pleading that asserts a claim on which relief is sought and this by definition is an action or proceeding against the debtor.

95. Even if, assuming arguendo, the anti-slapp motion could be parsed out to NOT technically be a counterclaim (on which I disagree), then it is without dispute that the anti-slapp motion is an "action or proceeding against a debtor". This is the key thing because it is the fact that the motion is "an action against the debtor" that actually triggers the automatic stay provisions of the code. So whether we call it a counterclaim or not, it still causes the automatic stay to apply within the meaning of section 362.

96. Please note that a defendant's motion or pleading by itself made in the context of a plaintiff-debtor's lawsuit, can be "an action against the debtor". It need not be a separate lawsuit or proceeding unto itself. (See Howell v. Brozzetti, 240 A.D. 2d 794 (3rd Dep't1997) stating that "An answer in an action that asserted a counterclaim against a plaintiff that subsequent to the commencement of the suit became a debtor under the Bankruptcy Code, is an "action or proceeding against the Debtor" and subject to the automatic stay, even though the Debtor commenced the suit." If the pleading of an Answer with a counterclaim can be an action against a debtor, then therefore, the anti-slapp motion by Defendant Slavenskoj by itself is an action against me as the plaintiff-debtor, within the mean of the section 362).

97. Ironically, this anti-slapp motion is itself a SLAPP suit/action against me intended to deter me from my petitioning activity. Mr. Slavenskoj is not a corporation. He did not petition the government and there is no government body involved. By any means his anti-slapp claim is frivolous and intended to harass me and deter me and increase the cost and burden of litigation for me. It was as strategic decision for him to use the statute's automatic stay on discovery to prevent me from gaining discovery from him as it relates to him and other defendants. Mr. Slavenskoj told me specifically that the users of the website in question have contacted him expressing serious concern about the revealing of their identities. Thus, Mr. Slavenskoj has misused this statute. Nonetheless by seeking to do this, he has accused me of wrongdoing and falsely so. He has twisted the purpose of the statute on its head to do exactly to me what the statute was intended to stop. I, as a person of little means and resources, could in no way be the perpetrator of an SLAPP action (which is intended for very narrow circumstances which do not apply to me or this case).

98. In applying the procedural mechanisms of the statute, Mr. Slavenskoj is allowed to significantly interrupt my ability to pursue all of my claims and to stay discovery on all my claims until or unless the Superior Court denies the motion.

99. Please note that Harvard "coincidentally" benefits from the blocking of discovery from Mr.
Slavenskoj and the website but yet Harvard wants to move forward its defense against me with
essentially having my hands tied behind my back. This would be manifestly unfair and seems to be
calculated for unjust tactical advantage.

100.     Furthermore, it would be absurd to allow Mr. Slavenskoj to benefit from an automatic stay
prohibiting me from conducting discovery while at the same time deny me the benefit of the
automatic stay based on it being a counterclaim against me as the debtor.

101.     Please note that many courts across the nation are finding that anti-slapp motions are being
used in the exactly the same way that SLAP lawsuits are used...to delay litigation, and discovery,
and tie up resources of the Plaintiff with frivolous use of the anti-slapp motion. The anti-slapp
motion has become a paradoxical form of vexatious litigation where the anti-SLAPP action is used
as an effective-counter-action against a plaintiff's use of judicial processes themselves, by accusing
the plaintiff of an affirmative act of wrongdoing, namely intimidating or punishing an opponent.
Mr. Slavenskoj's purpose in using this motion is to use it as a counterclaim or a counter-action.

C. DEFENDANT DANSLAV SLAVENSKOJ'S ATTEMPT TO SEEK A MANDATORY MONEY
AWARD AGAINST ME IS A COUNTERCLAIM OR AT LEAST AN ACTION AGAINST A
DEBTOR THAT EITHER TRIGGERS OR VIOLATES THE AUTOMATIC STAY

102.     Filing a bankruptcy petition causes an automatic stay of all court proceedings and other acts to
collect pre-petition liabilities from the debtor. Pursuant to 11 U.S.C. section 362(a), the filing of a
bankruptcy petition stays (1) the commencement or continuation, including the issuance or
employment of process, of a judicial, administrative, or other action or proceeding against the
debtor that was or could have been commenced before the commencement of the case under this
title, or to recover a claim against the debtor that arose before the commencement of the case under
this title;....and(6) any act to collect, assess, or recover a claim against the debtor that arose before

the commencement of the case under this title. In my case, 1) the acts alleged against me, via Mr. Slavenskoj's anti-slapp motion, occurred prepetition. 2) The motion or action by Defendant Slavenskoj's seeks to recover a claim. 3) The motion or action seeks to employ process of a judicial proceeding against me as the plaintiff-debtor.

103.    The automatic stay applies to almost any type of formal or informal action against the debtor or the property of the estate. Therefore, it applies to the special motion action regardless of whether it is a formal separate proceeding or whether it is subsumed within another proceeding.

104.    By electing to file an action under this special statute, Mr. Slavenskoj knowingly and purposefully is seeking to collect, assess and recover a claim with a monetary award against me for alleged acts that occurred pre-petition.

105.    According to this statute, a money award is awarded automatically to the anti-slapp filer in order to deter the party who brought the legal action from bringing similar future retaliatory lawsuits. The attorney's fees award is designed to reimburse the costs of defending an improper legal action. This is not a contract-based award of prevailing party attorney fees. It is an automatic statutory award of fees in the act itself of filing the motion. The fees are not awarded for conduct I engaged in post-petition. It is awarded for conduct I allegedly engaged in pre-petition i.e. I am being accused of wrongdoing in bringing an improper legal action in retaliation or as a retaliatory lawsuit. Mr. Slavenskoj has asserted that I engaged in retaliation or I sought to muzzle his free speech or that I have sought to engage in some kind of wrongful purpose against him. Given that Slavenskoj is pro se, it is evident that the actual language used on his special motion intends to assert counterclaims. And no matter how frivolous the motion may be, I now have to defend against the merits of Mr. Slavenskoj's charges of retaliation/wrongdoing that have nothing to do with my claim against him.

106.    According to the legal dictionary, a claim is defined as: "1) v. to make a demand for money, for property, or for enforcement of a right provided by law. 2) n. the making of a demand (assert a

claim) for money due, for property, for damages or for enforcement of a right." A counterclaim is

defined as "A claim by a defendant opposing the claim of the plaintiff and seeking some relief

from the plaintiff for the defendant." (See http://legal-dictionary.thefreedictionary.com/claim). Mr.

Slavenskoj in his special anti-slapp action has made a legal assertion and demand for money

(which makes it a legal claim) and he has used it in the context of opposing my claim against him

and he is seeking relief against me as the plaintiff. This clearly meets the criteria for being a

claim/counterclaim.

107.    Any action taken to collect money or money damages that is pending in a non-bankruptcy

court, becomes a claim for bankruptcy purposes. See In re Meyertech Corp., 831 F.2d 410, 417-18

(3d Cir. 1987) (A suit for damages pending against a debtor in a non-bankruptcy court when the

debtor files his petition, becomes a "claim" for bankruptcy purposes....without any final

determination of the action by the non-bankruptcy court.).

108.    The automatic stay serves several purposes. It gives a bankrupt a breathing spell from creditors

by stopping all collection efforts, all harassment, and all foreclosure actions. Mr. Slavenkoj's

motion is a collection effort and a harassing action intended to force me to defend against such

claims.

109.    If fees and costs are collected from me by Mr. Slavenskoj, it would undermine the purpose of

the protections afforded by the bankruptcy code. For example, what if his fees are $30,000,

$40,000 or $50,000? That will completely devastate me as a plaintiff-debtor.

110.    Moreover, it is well-settled that the seeking of an award of costs against a debtor in bankruptcy,

without permission of the bankruptcy court, is in fact a violation of the automatic stay. This is

further confirmed by Judge Jones of the 9th circuit when he stated that: "Even though Gordon may

have believed in good faith that seeking an award of costs was not a violation of the stay, a broad

application of In re Goodman dictates that it is." Note also that in In re Merrick (BAP 9th Circuit

(1994)), Judge Jones found that: "[At] the moment the bankruptcy petition was filed, any further

action on a pending motion for pre-petition costs constituted a violation of the stay. The subsequent

hearing on the motion and award of fees was a violation of the stay. See 11 U.S.C. § 362(a)(1).].''

These examples clearly contradict Harvard's argument that "another district court noted the lack of

any precedent that even implies that the imposition of attorney fees and costs should be a factor in

calculating whether debtor's suits should be stayed during a bankruptcy." This is a recurring

problem with Harvard's arguments i.e. they at times either misquote the cases they cite or they

cherry-pick quotes from a case that support their point but ignore statements made in that same

case that support my point or contradicts their argument. This illustrates another example why this

court should take with a grain of salt any quotes or citations made by Harvard defendants and to

scrutinize these references to ensure consistency with their claims.

111.   The mandatory nature of the award of the fees and costs adds further ammunition in

conclusively treating the anti-slapp motion as a violation of the automatic stay because the

mandatory nature of the award makes a difference in assessing whether the act is an attempt to

collect, assess or recover on a claim. See Goodman: In re Chateaugay Corp., 920 F.2d at 187. (The

primary difference between proceeding on the basis of the language of § 362(h) on one hand, and

civil contempt on the other, is the mandatory nature of an award of damages as to the former

compared to the permissive nature of such an award under the latter. Pursuant to § 362(h), an

individual injured "shall" recover damages; pursuant to civil contempt, whether damages shall be

awarded is discretionary. This distinction makes a difference in this case because the bankruptcy

court in deciding not to award damages observed that in its view, the violation was "not

[sufficiently] egregious" to justify damages).  (Emphasis added)

112.   The BAP of the 9th Circuit found that the award of fees was in violation of the automatic stay.

See In re Merrick (BAP 9th Circuit (1994)) ("We note that the state court...also granted him an

interest in the total costs awarded to all of the defendants, and that these costs were awarded

postpetition. Assuming these costs were awarded in violation of the automatic stay...).

113.    Moreover, an anti-slapp action against a debtor creates the likelihood that the debtor's estate

will be divested of some (if not all) of its assets, if in fact the anti-slapp motion is successful with

its automatic award of a money judgement of attorney fees and costs. This is a potential disruption

of the administration of the estate and it is precisely the kind of thing that section 362 was designed

to prevent. See Association of St. Croix Condominium Owners v. St. Croix Hotel Corp., (3d

Cir.1982) (The potential disruption of the administration of the bankruptcy estate that would be

caused by the Association's success in its cross-appeal is precisely the result section 362 was

designed to prevent. Since it would be unwise in the circumstances of this case, to stay only one of

the two appeals before us, we thus stay both.)

114.    Mr. Slavenskoj is attempting to put me in a defensive posture to answer charges of wrongdoing

and abuse of process and to collect payment of an automatic money judgment attorney fees and

costs. Please note that an automatic award of money under the Massachusetts anti-slapp statute is a

different thing than a sanction under Rule 11 (i.e. a Rule 11 sanction is discretionary and need not

be a money award).

115.    The automatic stay is triggered whenever there is an attempt by a party "to exercise control

over property of the estate," § 362(a)(3). It is most likely that a contention by a defendant that the

debtor owes the defendant fees and costs can be equated with exercising dominion or control over

property of the estate.

116.    Subsection 362(a)(6) uses very broad language and courts generally construe the automatic stay

provisions broadly. It applies to formal or informal proceedings against a debtor and it stays "any

act to collect, assess, or recover a claim against the debtor that arose before [the filing of the

petition]." The attempt to seek money award of fees and costs through an anti-slapp action is an

attempt to collect, assess or recover against the debtor. (See Morgan Guar. Trust Co. v. American

Sav. And Loan (9th Circuit) (1986). See also, e.g., Coben v. Lebrun (In re Golden Plan of

California, Inc.), 37 B.R. 167, 170 (Bankr.E.D.Cal.1984); Wallingford's Fruit House v. Inhabitants

of the City of Auburn (In re Wallingford's Fruit House), 30 B.R. 654, 659 (Bankr.D.Me.1983).)

117.   These provisions stay acts that immediately or potentially threaten the debtor's possession of its

property: commencement of judicial proceedings; enforcement of judgments; creation and

enforcement of liens; and setoffs of debts owing to the debtor against claims against the debtor. 11

U.S.C. §§ 362(a)(1), (2), (4), (5), (7) & (8). The activities that are specifically prohibited all

involve attempts to confiscate the debtor's property or require the debtor to act affirmatively to

protect its interests. It is clear that Mr. Slavenskoj's antislapp motion is an act that requires me to

act affirmatively to protect my interests. The anti-slapp action with its attempt to collect an

automatic money award interferes with the orderly administration of the estate, the debtor's

"breathing spell," and the status quo.

118.   The automatic stay prohibits any action that would inevitably have an adverse effect on

property of the estate. (See In re Prudential Lines, Inc., 119 B.R. 430 (S.D.N.Y.), aff'd, 928 F.2d

565 (2d Cir.), cert. denied, PSS S.S. Co., Inc. v. Unsecured Creditors, 502 U.S. 821 (1991)). It is

without dispute that this anti-slapp action would have an adverse effect on the debtor's estate.

119.   If the anti-slapp motion constitutes a counterclaim subject to the automatic stay, the appropriate

resolution is to stay the entire proceedings.

## D. HARVARD HAS EFFECTIVELY ASSERTED COUNTERCLAIMS OR INTENDS TO ASSERT COUNTERCLAIMS IN AN ANSWER AFTER THE RULE 12B PHASE.

120.   Harvard has asked for Rule 11 sanctions in its motion to dismiss filed in state court. This also

raises the issue of Harvard asserting a counterclaim based on the filing of my lawsuit because

Harvard was seeking a discretionary money award from the state court. This shows that Harvard

itself was seeking to assert a claim against me as well. Also, Harvard cannot say there are no

counterclaims because the time for formal pleading of counterclaims has not come as yet. This is a

unique situation because in many instances like this, the answer has already been filed in the case

where there is no question as to whether a counterclaim has or could be filed. I have made an email

request to Harvard's counsel asking them to tell me if any of the defendants intend to formally

assert other counterclaims in an Answer beyond the Rule 12B phase. To this date, no answer has

been forthcoming, which confirms that Harvard knows that they have or intend to file formal

counterclaims. This reveals how disingenuous Harvard's counsel is on this point because they are

trying to play both sides, have "their cake and eat it too" and are playing a sleight of hand

deception on the court. See Exhibit 5: Email To Harvard's Counsel Regarding Counterclaims.

121.    Following Harvard's cue, Defendant Vedaa has also threatened Rule 11 sanctions in similar

fashion based on the form and style of my pleadings.

122.    Given the number of claims, counterclaims, award of sanctions, award of money, being sought

by multiple defendants, all of which have put me in a defensive posture, the proper result here is to

stay all proceedings at this juncture. Otherwise, any other result would produce near anarchy when

the only discernible organizing principle (for those defendants seeking a money award from me via

sanctions, counterclaims or special motions, etc.) would be first-come-first-served. See Matter of

S.I. Acquisition, Inc., 817 F.2d 1142 (5th Cir.1987).

---

E. ANY ADVERSE RULINGS AGAINST THE DEFENDANTS CAN BE ATTACKED BY
DEFENDANTS BASED ON THE FACT THAT I AM NOT TECHNICALLY THE REAL PARTY
OF INTEREST I.E. CIVIL DOUBLE JEOPARDY

---

123.    Bostanian v. Liberty Savings Bank (Court of Appeal, Second District, Division 5,

California,1997) states: "Under federal decisional authority, a Chapter 7 debtor may not prosecute

on his or her own a cause of action belonging to the bankruptcy estate unless the claim has been

abandoned by the trustee.   (Griffin v. Allstate Ins. Co. (C.D.Cal.1996) 920 F.Supp. 127, 130; In re

Price (Bankr.N.D.Ga.1994) 173 B.R. 434, 440;  In re Davis (Bankr.N.D.Ind.1993) 158 B.R. 1000,

1002; Harris v. St. Louis University (E.D.Mo.1990) 114 B.R. 647, 648-649; see Vreugdenhil v.

Hoekstra (8th Cir.1985) 773 F.2d 213, 215.). Federal Rule of Civil Procedure 17 (28 U.S.C.), made

applicable to bankruptcy proceedings by Federal Rule of Bankruptcy Procedure 7017 (11 U.S.C.),

requires that "[e]very action shall be prosecuted in the name of the real party in interest." The

trustee controls the bankruptcy estate, therefore, she or he is the real party in interest with standing

to sue. (Griffin v. Allstate Ins. Co., supra, 920 F.Supp. at p. 130; In re Davis, supra, 158 B.R. at p.

1002.)...absent abandonment of the claim by the trustee, a debtor out of possession has no standing

to prosecute a cause of action which has passed to the bankruptcy estate....we respectfully disagree

with those cases which suggest (because the opinion fails to reveal the chapter under which the

bankruptcy petition was filed) or hold that a Chapter 7 debtor has standing to continue to prosecute

a pending cause of action which has become property of the estate...[T]he debtor may not pursue

the cause of action on his or her own unless the cause of action has been abandoned by the

trustee…it is the trustee who must prosecute the action, not the debtor."

124.    Hence, based on the above, it is clear that I cannot prosecute a case for which I am not really

the real party in interest. The statute requires that every action be prosecuted in the name of the real

party in interest. Allowing the real party in interest adequate time and opportunity to join the case

does not prevent Harvard or anyone from defending themselves.

125.    Additionally, Harvard is seeking to play a game of civil "double jeopardy". They would like for

me to continue to proceed with my case and if there are any adverse rulings, it can then reserve the

right to challenge the ruling on the grounds that I was not the real party in interest. The purpose of

FCRP Rule 17 (and MCRP Rule 17) is to protect parties from this double jeopardy scenario and to

prevent defendants from playing both sides of the fence, so to speak.

126.    This is why it is imperative that the real party in interest be given ample opportunity to join the

case and why I should not be forced to make substantive legal arguments related to the prosecution

of this case because the defendants can take a second bite at the apple. They have shown a

penchant for doing so, when they successfully took a second "bite at the apple" in state court

regarding Judge Gordon's ruling twice regarding the automatic stay.

127.   NB: In the Fed. R. Civ. P. 17 advisory committee's note (1966)…it states that the modern

function of the Rule is to "protect the defendant against a subsequent action by the party actually

entitled to recover, and to insure generally that the judgment will have its proper effect as res

judicata." Id. Essentially, the rule is meant to prevent "double dipping" by both the real party in

interest and the underlying plaintiff on whose behalf the real party in interest may act.

---

## F. THE AUTOMATIC STAY CAN & DOES APPLY TO THE PLAINTIFF'S PREPETITION CLAIMS (AS WAS RECOGNIZED BY SUPERIOR COURT JUDGE ROBERT GORDON)

---

128.   It is not always true that the automatic stay provision in 11 U.S.C. § 362(a) does not apply to

prepetition claims brought by the debtor. It can apply to claims brought by the debtor under certain

circumstance including if counterclaims are brought, if there are unusual circumstances, if there are

immediate adverse economic consequences and if the prosecution of the claim by the debtor would

require that he go into debt to do so, and if it involves arbitration.

129.   A close examination of In re Critical Fork Coal Corp. (Virgina,1982) reveals that: "Further, the

debtor is prohibited from incurring debt, other than in the ordinary course of business, without

approval of the court after notice and a hearing. See 11 U.S.C. § 364(b). The debtor's continuance

of litigation, or any judicial proceeding, incurs a debt that is generally not within the ordinary

course of the debtor's business. The debtor may not, therefore, pursue that proceeding in any

fashion without approval of this Court. In short, it appears that the filing of a petition for relief in

this Court effectively stops any further action in proceedings involving the debtor pending in other

courts, regardless of whether the debtor is plaintiff or defendant."

130.   Based on In re Critical Fork Coal Corp., it is clear that the automatic stay applies to cases

initiated by a plaintiff-debtor, where the plaintiff-debtor has to incur a debt to pay for legal fees,

costs associated with transactions with the court or with the defendants such as serving and filing

of papers, and costs associated with the expenses of conducting discovery or a trial. Because I

would have to incur debt in order to prosecute my case, then the stay should apply. This is the clear

reading of section 364 of the code as articulated by the 9th Circuit.

131.    Otherwise, because of lack of resources, a debtor could simply not respond and let a case

default (whether due to lacks of funds or legal error) and then the trustee would lose the ability to

prosecute the case. Similarly, in my case, I am trying to preserve the case for the trustee and I am

trying to preserve the status quo so that the trustee, who has the resources and the knowledge to

prosecute this case can have time to ratify/join (or otherwise abandon) the case.

132.    Harvard wants to block this from happening clearly because it would rather fight me in court, a

lone under-resourced black male pro se defendant, versus a well-funded and legally skilled federal

trustee. This is obvious. Harvard would absolutely not be prejudiced if a stay is entered until my

bankruptcy discharge or until the trustee has had a proper chance to ratify/join the case. See Delpit

v. CIR, 18 F.3d 768 (9th Cir. 1994) ("However, the trustee's right to appeal a Tax Court judgment

can be fully preserved only if all existing appeals are stayed. Otherwise, the debtor might default

on its appeal for any number of reasons (e.g., lack of funds, legal error), and thus deprive the

trustee of its ability to prosecute an appeal on the debtor's behalf.")

133.    Another example that supports my argument is related to arbitration proceedings initiated by

the debtor. The scope of the automatic stay is broad and covers all proceedings against a debtor,

including arbitration. In Acands Inc. v. Travelers Cas. & Sur. Co. (2006), the 3rd circuit found that

"the automatic stay applied to the arbitration" even though it was initiated by the debtor, that "the

arbitration award is invalid because it diminishes the property of the estate" and that "the panel's

award violates the automatic stay and is therefore void ab initio. See Maritime Elec. Co., 959 F.2d

at 1206." It is important to note that **initially the District Court in this case held that the

automatic stay did not apply because the arbitration was an action initiated by the debtor.**

But the 3rd circuit court reversed stating that although "defenses, as opposed to counter-claims, do not violate the automatic stay because the stay does not seek to prevent defendants sued by a debtor from defending their legal rights and the defendant in the bankrupt's suit is not, by opposing that suit, seeking to take possession of it. . . .", that therefore "to avoid interfering with the broad purposes served by the automatic stay, it was necessary for the arbitration proceeding to halt as soon as the scope of the parties' submissions supported an award that could diminish [the] estate. By continuing beyond this point, the proceeding violated § 362(a)(1), and the panel's deliberations and the resulting award are therefore void." **This shows that the correct way to analyze whether the anti-slapp motion is a counterclaim or an action against the debtor subject to the automatic stay is not to focus on whether the plaintiff debtor initiated the lawsuit but whether at a certain point in the proceeding, a certain action is taken that extracts or seeks to extract a monetary award from the debtor.**

134.  This is also backed-up by examples of tax court proceedings. In Delpit v. CIR (9th Cir. 1994), the court found that: "The mere fact that a debtor "initiates" an action in Tax Court is not dispositive; we must examine the proceedings as a whole to determine whether they are in fact initiated "against the debtor." See In re Bloom, 875 F.2d 224, 226 (9th Cir.1989) (holding that a motion by a creditor to strike a pre-bankruptcy action violates the automatic stay even though the debtor initiated the proceeding and was the plaintiff)."

135.  [NB: So although the 362 statute does not explicitly address actions brought by the debtor, it also does not rule out extension of the stay to actions brought by the debtor when circumstances warrant it. Because it is silent on the issue, it does not mean that there are not circumstances under which it would apply as shown in the above examples.]

136.  See Matter of S.I. Acquisition, Inc., 817 F.2d 1142 (5th Cir.1987) stating that: "We also are of the opinion that our decision that Eastway's state court action is stayed by section 362(a)(3) carries out the general policies of the Bankruptcy Code....Its action is based upon allegations that if

proven would benefit all of S.I.A.'s creditors, i.e., making more assets available to satisfy S.I.A. debts....Thus, not to stay Eastway's action would promote the first-come-first-served unequal distribution dilemma that the Bankruptcy Code and In re MortgageAmerica sought to prevent."

## G. THERE ARE SEVERAL PURPOSES OF THE AUTOMATIC STAY THAT ALLOWS FOR CONSIDERATION OF THE FINANCIAL CIRCUMSTANCES OF THED DEBTOR

137.    There are several purposes to the automatic stay provisions of the bankruptcy code.

138.    The automatic stay is intended to provide a breathing spell from the financial pressures that drive the debtor into bankruptcy. It also provides a breathing spell to allow the real party in interest to join the case. See In re Merrick (BAP 9th Circuit (1994)), ("The trustee contended that § 362 affords time for evaluation of the estate's assets and determination of the proper course of action relative thereto. If such time is needed, the trustee may seek a discretionary stay from the bankruptcy court pursuant to § 105."). One of the things that I have been attempting to do is to seek a stay because "such time is needed" (as shown above) for the trustee to evaluate the lawsuit and determine whether to join or abandon the case. Since the trustee has not yet acted on this case, I am allowed to seek a stay to preserve the status quo to allow him a reasonable time to do so. This is the clear meaning of the above cited case and it removes any doubt as to whether seeking a stay under these circumstances is somehow impermissible or unwarranted or procedurally incorrect.

139.    I am not seeking to prevent defendants from opposing my lawsuit or to prevent them from protecting their legal rights. I am seeking a stay until my bankruptcy is completed, until the trustee ratifies/joins or abandons the case or at least for discrete period of time wherein I can clear scheduling conflicts that include overseas work commitments. This does not prevent the exercise of any rights of the defendants. If anything, it only defers them until a discrete period of time in the future.

140.    Additionally, please note that there are several objectives intended by the bankruptcy code and

the automatic stay provision. By simply quoting one or two of those objectives, that ignores the

fact that there are other objectives of the code intended as well such as: not dissipating the assets of

the debtor or his estate, relieving the debtor of crushing financial pressures giving him a chance to

reorganize or get on his feet, and giving the trustee time to investigate the matters related to the

debtor assets including whether to ratify/join or abandon a pre-petition lawsuit, and protecting the

debtor from having to engage in multi-forum litigation, etc.

141.    According to Maritime vs United Jersey Bank (3rd Circuit): "The automatic stay serves several

purposes. First, it gives a bankrupt a breathing spell from creditors by stopping all collection

efforts, all harassment, and all foreclosure actions. Id. The stay permits a bankrupt to attempt a

repayment or reorganization plan or simply to be relieved of the financial pressures that drove him

into bankruptcy. Second, the stay protects creditors by preventing particular creditors from acting

unilaterally in self-interest to obtain payment from a debtor to the detriment of other creditors. Id.

In other words, the stay "protect[s] the bankrupt's estate from being eaten away by creditors'

lawsuits and seizures of property before the trustee has had a chance to marshal the estate's assets

and distribute them equitably among the creditors."

142.    Moreover, in Association of St. Croix Condominium Owners v. St. Croix Hotel Corp., (3d

Cir.1982), it states: "In explaining the purpose of the automatic stay, the House Report

accompanying the Bankruptcy Reform Act of 1978 states: The automatic stay is one of the

fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing

spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It

permits the debtor to attempt a repayment or reorganization plan or simply to be relieved of the

financial pressures that drove him into bankruptcy."

143.    Moreover, when Congress authorized the new Bankruptcy code in 2005, "Under the new Code,

relief from a stay must be authorized by the Bankruptcy Court to prevent certain creditors from

gaining a preference for their claims against the debtor; to forestall the depletion of the debtor's

assets due to legal costs in defending proceedings against it; and, in general, to avoid interference

with the orderly liquidation or rehabilitation of the debtor."

144.     Similarly, Delpit v. CIR, 18 F.3d 768 (9th Cir. 1994) states: "The automatic stay allows

debtors, during the period of the stay, "to be relieved of the financial pressures that drove [them]

into bankruptcy." Id. at 6297. Accordingly, Section 362 is "extremely broad in scope" and "should

apply to almost any type of formal or informal action against the debtor or the property of the

estate." 2 Collier on Bankruptcy ¶ 362.04, at 362-34 (15th ed. 1993) (emphasis added)."

145.     In addition to protecting relative positions of creditors, the automatic stay is designed to shield

Chapter 7 debtor from financial pressure during pendency of bankruptcy proceeding. (See In re

Stringer (1988, CA9 Cal) 847 F2d 549, 17 BCD 1169, 19 CBC2d 233, CCH Bankr L Rptr P

72297.)

146.     Therefore, it is clear that "to attempt a repayment or reorganization plan or simply to be

relieved of the financial pressures that drove him into bankruptcy" or "in general, to avoid

interference with the orderly liquidation or rehabilitation of the debtor" is one of the main

objectives of the automatic provisions of the bankruptcy code and that clearly stated purpose is

something that Harvard keeps ignoring. Harvard only wants to focus on the other purposes but

ignore this one, when it is clear that Congress intended multiple purposes of the automatic stay.

"To be relived of the financial pressures that drives a debtor into bankruptcy" has nothing to do

directly with creditors or an analysis of the rights of the creditors. It also has nothing to do directly

with the trustee's management of the estate. It has to with the debtor's financial situation. This

means that Congress intended the automatic stay to protect or shield the debtor specifically from

further financial ruin or distress i.e. pressure points that drove him into bankruptcy in the first

place. It would be inimical to the intent of congress for a debtor to file bankruptcy, only to be made

worse off than if he never filed bankruptcy at all. Bankruptcy was not intended to punish debtors or

to be punitive for debtors. It was meant to be rehabilitative; it was meant to provide the debtor an opportunity to regain his financial footing or to reorganize his financial affairs so that he can improve his financial situation. Congress never intended for the bankruptcy process to drive a debtor further into financial ruin or despair. Hence, the automatic stay provision that deals directly with the explicit intent of congress to "relieve the debtor of the financial pressures that drive him into bankruptcy". This is also not only consistent with the clear meaning of the above words, it is also consistent with the spirit/context of what was intended by the code and it is also consistent with logic, equity and the interests of justice.

## H. THE COURT IMMEDIATELY SHOULD ISSUE AN ADMINISTRATIVE STAY

147.    The debtor further requests that the bankruptcy court immediately issue an administrative stay that stays the proceedings in state court while the bankruptcy court reviews whether the automatic stay should be applied or extended to my case. Granting an administrative stay would minimize unnecessary disruption and confusion. If no administrative stay were issued, for instance, the state court might dismiss the case while this motion to stay is pending before this Court. If this Court were to not grant the debtor's motion and issue a stay, the plaintiff could suffer irreparable harm in that the harmless error doctrine could be used to deny him on appeal.

## V. CONCLUSION

148.    Wherefore, I request the following:

a.    That a temporary administrative stay be allowed until the bankruptcy court reaches a decision regarding the applicability of the automatic stay, especially if a hearing is scheduled on this matter (especially since the state court motion to dismiss hearing is scheduled for November 10, 2016 in two days).

b.    That the Court grants this request to apply or extend the automatic stay.

c. That Court at least grants a stay until the Chapter 7 trustee is in a position to officially join or abandon the case.

WHEREFORE, I hereby humbly request this Honorable Court grant my request and/or other relief that the Court deems just and proper.

Respectfully submitted,

Plaintiff Andre Bisasor
119 Drum Hill Rd, #233
Chelmsford MA 01824
781-492-5675

Dated: November 8, 2016

## CERTIFICATE OF SERVICE

I further certify that on this date, I caused a copy of the foregoing to be served upon each of the following parties:

William Mekrut

Murphy & Riley P.C.

101 Summer Street

Boston, MA 02110


Joseph P. Dever, Esquire

Riley & Dever, P.C.

Lynnfield Woods Office Park

210 Broadway, Suite 101

Lynnfield, MA 01940-2351


Ken Vedaa, pro se

16970 Highland Cir

Paeonian Springs, VA 20129


Danslav Slavenskoj, pro se

2 Greenough Ave., #8

Boston, MA 02130


John Aquino, Chapter 7 Trustee by email


All other parties registered by ECF

Plaintiff Andre Bisasor
119 Drum Hill Rd, #233
Chelmsford MA 01824
781-492-5675

Dated: November 8, 2016